Receipt # 060934

ECF

ORIGINAL

FILED
JUL 6 2004
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DIE CASTERS INTERNATIONAL, INC.,**

Plaintiff,

- against -

NO. 04-1113C

**UNITED STATES OF AMERICA,**

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

**COMES NOW** Plaintiff, Die Casters International, Inc. ("DCI"), by its attorneys, Goldberg and Connolly, and hereby files this Complaint appealing a deemed final decision of the Contracting Officer (the "Contracting Officer") of the Defense Threat Reduction Agency ("DTRA"), denying DCI's certified claims ("Claims") duly presented and filed with the Contracting Officer on February 26, 2004 with respect to Contract No. DNA001-95-C-0169 for Defense Conversion for the Ukraine (the "Contract"), and states as follows:

**JURISDICTION AND PARTIES**

1. The United States Court of Federal Claims has jurisdiction to consider and determine this action pursuant to the Contract Disputes Act of 1978 U.S.C. §§ 601 - 613 and pursuant to 28 U.S.C. §1491.

2. This Complaint is timely as it is filed within twelve months of June 25, 2004, the date of the Contracting Officer's final decision denying DCI's Claims.

3. Plaintiff, DCI, is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Wayne, New Jersey, and is a small business company that was formed to implement the formation of a die casting industry in the independent states of the former Soviet Union.

4. Defendant is the United States of America on behalf of the DTRA, an executive agency of the Federal government, established by 10 U.S.C. §111.

**FACTUAL ALLEGATIONS**

5. On October 27, 1995, the Defense Nuclear Agency ("DNA"), the predecessor in interest to the Defense Special Weapons Agency ("DSWA"), which in turn was the predecessor in interest to the DTRA, awarded the Contract to Plaintiff. (A copy of the Contract is annexed hereto as Exhibit A).

6. The Contract was a cost sharing contract with total original estimated costs of $4,100,427.00 of which the Defendant's share was $3,034,316.00 and Plaintiff's share was $1,066,111.00.

7. Pursuant to the Statement of Work, dated 95JUN21 ("SOW"), which was incorporated by reference into the Contract, Plaintiff was to provide capital equipment, material, training and business assistance/advisory services (hereinafter referred to collectively as the "Equipment") to a joint venture (hereinafter the "Joint Venture") to be established between Plaintiff and a Ukrainian Joint Venture Partner ("UJVP"). The UJVP was to supply an existing die casting

factory (the "Facility") which was to be improved by the installation of the Equipment designed and provided by Plaintiff.

8. The Joint Venture was to own and operate the modernized die casting Facility.

9. The UJVP was identified in the SOW as Meridian Joint Stock Company ("Meridian"). The UJVP was subsequently changed to Burevestnik (in association with another Ukrainian entity, TechnoMet), (hereinafter collectively referred to as "Burevestnik").

10. Pursuant to an agreement between Plaintiff and Meridian, Plaintiff was to receive a 50% interest in the Joint Venture as consideration for providing the Equipment and installation of same and the UJVP was to receive a 50% interest in the Joint Venture as consideration for providing the Facility. Plaintiff was also to receive control of the Board of Directors of the Joint Venture and was to be the exclusive distributor of products produced by the Joint Venture.

11. Pursuant to a later agreement between Plaintiff and Burevestnik, Plaintiff was to originally receive a 51.2% interest in the Joint Venture as consideration for providing the Equipment, services, expenses and cash. Burevestnik was to contribute the facility, equipment, tooling and dies, a backlog of orders and cash for the remaining interest in the Joint Venture.

12. The SOW further provided that the Joint Venture and the improved Facility that it would create would "serve as the groundwork for future business and/or joint ventures." The Facility was to be the model for the establishment by the Joint Venture of other die casting facilities in the Ukraine. These future business relationships would provide very substantial financial benefits to Plaintiff and were the consideration for Plaintiff making considerable investments pursuant to the cost sharing Contract with the Defendant. Plaintiff's substantial investments included, but were not limited to, the continued development of its intellectual

property that was incorporated in the design of the Equipment and the development of its business plan.

13. Plaintiff advised Defendant of its business plan, which included the establishment of its distributorship rights with respect to products produced by the Joint Venture's Facility and its anticipated interests in future business enterprises.

14. In 1996, as a Contract requirement, Plaintiff submitted to Defendant its business plan detailing the "future business" activities of the Joint Venture. This business plan detailed the anticipated revenues to be derived by the Joint Venture from these "future business" activities.

15. In 1997, Plaintiff submitted a revised business plan to Defendant reflecting the new UJVP and other revised circumstances. Plaintiff's revised business plan detailed the operating and marketing plan for the Joint Venture based upon an additional $8,000,000 investment and provided detailed financial data including projected revenues and net income.

16. In 1999, Plaintiff supplemented its 1997 business plan to include an additional $50,000,000 investment. Plaintiff shared its supplemented business plan with certain Department of Defense and other officials of the Defendant.

17. The changes required to obtain a new Facility, to replace the original Facility and the changed UJVP, substantially impacted both the cost and the schedule of the Contract and further precipitated the need to find additional funding beyond the $4,100,427 available under the Contract.

18. Plaintiff proceeded in accordance with the terms and conditions of the Contract to acquire the Equipment, but expended all the Contract funding prior to shipping and installing the Equipment in the Facility.

19. Plaintiff stored the Equipment for its own account in Kiev, Ukraine and Tiraspol, Moldova, awaiting the additional funds which had been promised by Defendant that were needed by Plaintiff to ship and install the Equipment at the Facility.

20. By letter dated June 13, 2000, Defendant's Contracting Officer advised Plaintiff that it would close out the Contract in due course and that it would negotiate an "equitable distribution" of "all property produced or purchased under the contract, based upon the share of costs incurred by each party." (A copy of the letter is annexed hereto as Exhibit B).

21. At times subsequent to October of 2001, Defendant, acting through its authorized contractors, and without Plaintiff's consent, took possession and control of Equipment that was stored in Moldova and the Ukraine.

22. Defendant, again without Plaintiff's consent, through its contractor, shipped and delivered possession and control of the Equipment to the UJVP and other third parties.

23. By letter dated April 14, 2003, Plaintiff was advised by Defendant's Contracting Officer that the contract "is considered closed". (A copy of the letter is annexed hereto as Exhibit C).

24. By letter dated February 25, 2004, received by Defendant on February 26, 2004, Plaintiff filed its certified Claims together with pertinent information with respect to the Claims and requested Defendant's Contracting Officer to file a final decision on the Claims. (A copy of the letter is annexed hereto as Exhibit D).

25. By letter dated April 14, 2004, Defendant's Contracting Officer, acknowledged receipt of Plaintiff's claims and notified Plaintiff that "a final decision regarding your claims will be issued on or before June 30, 2004." (A copy of the letter is annexed hereto as Exhibit E).

26. By letter dated June 25, 2004, Defendant's Contracting Officer advised Plaintiff of his "final decision" denying all of Plaintiff's claims "in their entirety". (A copy of the letter is annexed hereto as Exhibit F).

**COUNT ONE - BREACH OF CONTRACT (FAILURE OF DEFENDANT TO PROVIDE PLAINTIFF WITH THE PLAINTIFF'S SHARE OF THE EQUITABLE DISTRIBUTION OF THE EQUIPMENT REQUIRED PURSUANT TO FAR 52.232-20(h)**

27. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 of the Complaint as if set forth fully herein.

28. At all times relevant hereto, Defendant's conduct was governed by the terms, conditions and requirements of the Contract.

29. The contract contains standard clause FAR 52.232.20 (Apr 1984), entitled Limitation of Cost.

30. Sub-section (h) of FAR 52.232-20 provides as follows:

> "If this contract is terminated or the estimated cost is not increased, the Government and the Contractor shall negotiate an equitable distribution of all property produced or purchased under the contract based upon the share of costs incurred by each."

31. The wrongful and illegal removal and disposition of the Equipment by Defendant as alleged in paragraphs 21 and 22 effectively terminated the Contract and pursuant to FAR 52.232-20(h) required the Defendant to negotiate with Plaintiff an "equitable distribution of all of the

property produced or purchased under the contract based upon the share of costs incurred by each."

32. Defendant admitted this obligation to negotiate an "equitable distribution" in Defendant's Contracting Officer's June 3, 2000 letter (Exhibit B).

33. Although Plaintiff requested the negotiation of an "equitable distribution" Defendant has failed and refused to enter into such negotiations or to provide Plaintiff with its share of an "equitable distribution".

34. The failure and refusal of Defendant to negotiate and pay Plaintiff its share of an "equitable distribution" as required under FAR 52.232-20(h) constitutes a breach of the Contract on behalf of the Defendant.

35. By reason of Defendant's breach of the Contract, Plaintiff is entitled to recover damages from Defendant in the sum of $2,921,653.49, representing Plaintiff's costs incurred in connection with the Contract, in addition to a reasonable profit of $438,248.02.

## COUNT TWO - BREACH OF CONTRACT (DEFENDANT'S WRONGFUL AND ILLEGAL REMOVAL AND DISPOSITION OF THE EQUIPMENT WAS A BREACH OF THE CONTRACT PROVISIONS GOVERNING THE REQUIRED ULTIMATE USE OF AND TITLE TO THE EQUIPMENT)

36. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 35 of the Complaint as if set forth fully herein.

37. At all relevant times, Defendant's conduct was governed by the terms, conditions and requirements of the Contract.

38. The Contract contains under Section H - SPECIAL CONTRACT REQUIREMENTS, Paragraph 5 entitled Use and Ownership/Disposition of Government - Provided Property.

39. Sub-section (a) of Paragraph 5 provides:

> "a. All property, equipment and materials acquired with United States (U.S.) Government funding under this Contract shall be acquired solely for the use of the joint venture, or business arrangement formed by the U.S. Contractor and the Former Soviet Union (FSU) enterprise partner in performance of the terms of this contract."

Sub-section (b) of Paragraph 5 provides in part:

> "Title and ownership of all property, equipment and materials acquired with U.S. government funding under this Contract shall vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer. Prior to conclusion of the Contract, the U.S. Contractor is accountable for said items in accordance with standard government property clauses cited under SECTION I of this contract. Title and ownership of all property, equipment and materials provided by the U.S. Contractor or the FSU enterprise partner shall be determined in accordance with the terms of the agreement between said parties."

40. The Defendant's wrongful and illegal removal and disposition of the Equipment as alleged in paragraphs 21 and 22 constituted a breach of the provisions of Section H5 of the Contract.

41. By reason of Defendant's breach of the Contract, Plaintiff was precluded from contributing to the Joint Venture the Equipment worth at least $5,955,969.49 for which Plaintiff would have received its negotiated share of the Joint Venture and distribution rights.

42. By reason of Defendant's breach of the Contract, Plaintiff is entitled to recover damages from Defendant in the sum of $5,955,969.49, representing all of the costs incurred under the Contract together with a reasonable profit of $893,395.42.

**COUNT THREE - BREACH OF CONTRACT (DEFENDANT'S WRONGFUL AND ILLEGAL REMOVAL AND DISPOSITION OF THE EQUIPMENT WAS A BREACH OF THE CONTRACT PROVISIONS GOVERNING THE REQUIRED ULTIMATE USE OF AND TITLE TO THE EQUIPMENT AND THE INTENDED FUTURE BENEFITS OF THE PLAINTIFF)**

43. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 of the Complaint as if set forth fully herein.

44. By reason of Defendant's breach of the Contract, including but not limited to Defendant's wrongful and illegal removal and disposition of the Equipment to other than the Joint Venture, Plaintiff was wrongfully deprived of the ability to implement its previously disclosed and detailed business plans, for utilizing the Equipment and the resultant Joint Venture as Plaintiff's lynch pin in the formation of a die casting industry in the independent states of the former Soviet Union.

45. By reason of Defendant's breach of the Contract, Plaintiff is entitled to recover damages from Defendant in the sum of $103,147,275.80, representing anticipated lost profits related to these anticipated efforts that were fully disclosed and known to the Defendant.

**COUNT FOUR - BREACH OF CONTRACT (DEFENDANT'S ACTIONS WERE A BREACH OF THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING)**

46. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 45 of the Complaint as if set forth fully herein.

47. The totality of Defendant's conduct, including but not limited to the wrongful and illegal removal and disposition of the Equipment deprived Plaintiff of the benefits for which it bargained under the Contract.

48. By reason of the foregoing, Defendant breached its implied obligations of good faith and fair dealing with respect to the Contract.

49. By reason thereof Plaintiff has been damaged by Defendant in the sum of $109,996,640.71.

**COUNT FIVE - TAKING OF PROPERTY (DEFENDANT'S ACTIONS INCLUDING BUT NOT LIMITED TO DEFENDANT'S WRONGFUL AND ILLEGAL REMOVAL AND DISPOSITION OF PLAINTIFF'S PROPERTY AND RIGHTS CONSTITUTE A TAKING FOR WHICH JUST COMPENSATION IS DUE PLAINTIFF UNDER THE FIFTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES)**

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 of the Complaint as if set forth fully herein.

51. The totality of Defendant's conduct, including the wrongful and illegal removal and disposition of the Equipment has deprived Plaintiff of its property and rights and constitutes a taking for which just compensation is due Plaintiff pursuant to the Fifth Amendment of the Constitution of the United States.

52. By reason of the Defendant's taking of Plaintiff's property and rights, Plaintiff is entitled to just compensation in an amount of $109,996,640.71.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant it the following relief:

On Count One, a declaration that Defendant's actions constituted a breach of the Contract and an award to Plaintiff of damages in the sum of $3,359,901.51;

On Count Two, a declaration that Defendant's actions constituted a breach of the contract and an award to Plaintiff of damages in the sum of $6,849,364.91;

On Count Three, a declaration that Defendant's actions constituted a breach of the Contract and an award to Plaintiff of damages in the sum of $103,147,275.80;

On Count Four, a declaration that Defendant's actions constituted a breach of the contract and an award to Plaintiff of damages in the sum of $109,996,640.71;

On Count Five, a declaration that Defendant's actions constituted a taking of Plaintiff's property and rights for which just compensation is due Plaintiff and an award to Plaintiff of just compensation in the amount of $109,996.640.71; and

On all Counts, for interest and for such costs, expenses, attorneys' fees as are available under applicable law, and such other relief as this Court may deem necessary and proper under the circumstances.

**DATED:** July 1, 2004

Respectfully submitted,

By: ______________________

Gary Marcus, Esq. (3853)
Goldberg & Connolly
Attorneys for Plaintiff
66 North Village Avenue
Rockville Centre, NY 11570
(516) 764-2800
(516) 764-2827 (Facsimile)