AWARD/CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) ▶ RATING: DX-C9 | PAGE 1 OF PAGES 29

2. CONTRACT (Proc. Inst. Ident.) NO.: DNA001-95-C-0169

3. EFFECTIVE DATE: SEE BLOCK 20C

4. REQUISITION/PURCHASE REQUEST/PROJECT NO.: PR# BRQS 940261B

5. ISSUED BY: HD2001

HEADQUARTERS
DEFENSE NUCLEAR AGENCY (AM)
6801 TELEGRAPH ROAD
ALEXANDRIA, VA 22310-3398

THOMAS L. COX (703) 325-1196

6. ADMINISTERED BY (If other than Item 5) CODE S3101A

DCMAO SPRINGFIELD
955 SOUTH SPRINFIELD AVENUE
SPRINGFIELD, NJ 07801-3544

(FOR: PROPERTY ADMINISTRATION AND PLANT CLEARANCE ONLY)

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)

DIE CASTERS INTERNATIONAL, INCORPORATED
ONE SPRUCE TERRACE
WAYNE, NEW JERSEY 07470

APPROVED: Date 27 OCT 95

[signature]

LAWRENCE M. BATES
Acting Director, Acquisition Mgmt.

CODE 03VE3 | FACILITY CODE

8. DELIVERY
☐ FOB ORIGIN ☐ OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT
N/A
NET 30 DAYS

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN: ▶ ITEM G-1

11. SHIP TO/MARK FOR CODE

SEE BLOCK 5 AND ATTACHMENT NO. 2

12. PAYMENT WILL BE MADE BY CODE HD 2001

Headquarters, DNA
ATTN: F&A
6801 Telegraph Rd., Alexandria, VA 22310-3398

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
☐ 10 USC 2304(c) ( ) ☐ 41 USC 253(c) ( )

14. ACCOUNTING AND APPROPRIATION DATA
97X0134.4201 9547 P9501-259000
BT00554000 S49146 $3,034,316.00

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| 1 | SUBJECT: DEFENSE CONVERSION FOR THE UKRAINE | LOT | N/A | N/A | |
| | | Contractor's Share | | | $ 1,066,111.00 |
| | | Government's Share | | | $ 3,034,316.00 |

15G. TOTAL AMOUNT OF CONTRACT $ 4,100,427.00

16. TABLE OF CONTENTS


| (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|
| | | PART I - THE SCHEDULE | |
| X | A | SOLICITATION/CONTRACT FORM | 1 |
| X | B | SUPPLIES OR SERVICES AND | 2 |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 2 |
| X | D | PACKAGING AND MARKING | 2 |
| X | E | INSPECTION AND ACCEPTANCE | 3 |
| X | F | DELIVERIES OR PERFORMANCE | 3-4 |
| X | G | CONTRACT ADMINISTRATION DATA | 5 |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 5-7 |
| | | PART II - CONTRACT CLAUSES | |
| X | I | CONTRACT CLAUSES | 9-18 |
| | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER | |
| X | J | LIST OF ATTACHMENTS | 19 |
| | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| | L | INSTRS., CONDS., AND NOTICES TO | |
| | M | EVALUATION FACTORS FOR AWARD | |


CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 1 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ______ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER (Type or print)
DIE CASTERS INTERNATIONAL, INCORPORATED

19B. NAME OF CONTRACTOR
[signature]
(Signature of person authorized to sign)

19C. DATE SIGNED: 26 Oct 1995

20A. NAME OF CONTRACTING OFFICER
SCOTT G. MORTON
Contracting Officer

20B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

20C. DATE SIGNED: OCT 27 1995

NSN 7540-01-152-8069
PREVIOUS EDITION UNUSABLE

26-107
Form designed using PerForm Pro software.

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA

PART I - THE SCHEDULE

SECTION B - SUPPLIES OR SERVICES AND PRICES/COST

1. CONSIDERATION AND PAYMENT (COST SHARE)

a. The total estimated cost for the performance of all work called for under this contract is $4,100,427.00. The estimated cost to the Government for the performance of this contract is $3,034,316.00, which is the amount referred to in the clause in Section I entitled LIMITATION OF FUNDS, and the Contractor's share is $1,066,111.00.

b. The absorbtion by the Contractor of the aforementioned amount ($1,066,111.00) shall be accomplished through the discounting of invoices or public vouchers.

c. Invoices or public vouchers submitted in accordance with the clause of this contract entitled ALLOWABLE COST AND PAYMENT shall include all costs experienced by the Contractor for the period represented by the voucher , and all such costs shall be subject to audit. As a result of the cost sharing agreement between the Government and the Contractor, the Government's share shall be limited to 74 % of the vouchered costs and vouchers prepared by the Contractor shall show a reduction of 26 %, including facilities capital cost of money, in accordance with the cost sharing agreement. The portion of the costs borne by the Contractor shall be unallowable as a charge, either direct or indirect, to this or any other Government contract or grant.

2. Final Payment

Final payment under this Contract shall be predicated upon X receipt and acceptance by the Government of all services and/or supplies called for hereunder; ___ receipt by the Contracting Officer of the Contractor's certificate that he has exerted the level(s) of effort called for by the Paragraph of this Contract entitled Level-of-Effort; X final accounting for and disposition of Government property; X the assignment to the Government of any refunds and the release discharging the Government from liabilities, as called for by the Clauses entitled ALLOWABLE COST AND PAYMENT; and X final audit by the cognizant audit agency.

SECTION C - DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

1. Statement of Work dated 95JUN21, referred to herein as Attachment No. 1.

2. Contract Data Requirements List (DD Form 1423) dated 95JUL03, referred to herein as Attachment Number 2.

SECTION D - PACKAGING AND MARKING

All deliverable contract items shall be packaged in accordance with established commercial practices.

PART I - THE SCHEDULE

## SECTION E - INSPECTION AND ACCEPTANCE

NOTICE: The following solicitation provisions and/or contract clauses pertinent to this section are hereby incorporated by Reference:

| | FAR Text Reference | FAR Clause Number | Clause Title | Date |
|---|---|---|---|---|
| X | 46.303 | 52.246-3 | INSPECTION OF SUPPLIES - COST REIMBURSEMENT | (APR 1984) |

Final inspection and acceptance of all contractual items listed herein and in the Contract Data Requirements List (DD Form 1423) shall be made by the Contracting Officer's Technical Representative (COTR) at destination.

## SECTION F - DELIVERIES OR PERFORMANCE

NOTICE: The following solicitation provisions and/or contract clauses pertinent to this section are hereby incorporated by Reference:

| | FAR Text Reference | FAR Clause Number | Clause Title | Date |
|---|---|---|---|---|
| X | 12.505(b)(2) | 52.212-13 | STOP WORK ORDER - ALTERNATE I | (AUG 1989) |

1. The term of this Contract shall extend from the effective date of contract award through twenty-four (24) months thereafter.

2. The Technical Data to be provided are set forth in the Contract Data Requirements List (DD Form 1423), Attachment No. 2 to this Contract.

3. Reports and Briefings:

a. Reports Coding. Reports submitted by the Contractor shall include (on the front cover of technical or scientific reports and in the body of letter-type progress reports) the following:

(i) THIS WORK SPONSORED BY THE DEFENSE NUCLEAR AGENCY

RDT&E RMSS CODE: B 9010 D JT 00554 2630 A UK

(ii) PREPARED FOR:

DIRECTOR
DEFENSE NUCLEAR AGENCY
6801 TELEGRAPH ROAD
ALEXANDRIA, VA 22310-3398

(AGENCY SEAL)

(iii) For reports co-sponsored by DNA and other organizations, the cover page shall include Agency seal and titles of DNA and other sponsoring organizations. For those organizations not sponsoring the project but who are participating in the project, their names and agency seals will appear in smaller print at the bottom of the cover as "participants." If not specified elsewhere herein, names of both "sponsors" and "participants" shall be obtained from the Contracting Officer's Technical Representative sufficiently in advance of report preparation dates.

b. SF 298 Coding. Block 5 of the Report Documentation Page, SF 298, dated February 1989, as it may be amended, shall include the following:

| DNA FSUTR | UK | JT | 00554 |
|---|---|---|---|
| Program Element | Project | Task Area | Work Unit |

c. Publication and Distribution. Publication and distribution of reports shall be in accordance with instructions on the DD Form 1423, Attachment No. 2 to this Contract.

d. Oral Briefing. If so requested by COTR, the Contractor shall, at a time and place of mutual convenience, present an oral briefing on the results of the research he has performed.

4. Approval for Public Release

The Contractor shall obtain written authorization from the Contracting Officer or the designated representative prior to dissemination of any briefings, news releases, articles, speeches, films, photographs, fact sheets, brochures, advertisements, or other information material prepared for public release as a result of work performed or to be performed under this Contract. The Contractor shall submit for clearance and release six copies of the material at least sixty working days in advance of the presentation or publication deadline dates to Director, DNA, 6801 Telegraph Road, Alexandria, Virginia 22310-3398, ATTN: CSTI. The restrictions contained herein are not applicable to approved channels or relationships between the Contractor and consultants, subcontractors, or other Government contractors.

5. Acknowledgment of Sponsorship

a. With regard to the release of information, the Contractor agrees that such release shall include a statement to the effect that the project depicted was or is sponsored by:

HQ, Defense Nuclear Agency
6801 Telegraph Road
Alexandria, Virginia 22310-3398

b. Further, all information, including briefings, should prominently display the Agency name and seal where compatible with the materials being used.

c. For the purpose of this Clause, "information" includes, but is not limited to, news releases, articles, speeches, films, photographs, fact sheets, brochures, advertisements, or other information material prepared for public release.

d. Nothing in the foregoing shall affect compliance with the requirements of the Clause (if applicable) of this Contract entitled "Security Requirements."

e. The Contractor further agrees to include this Clause in any subcontracts awarded as a result of this contract, except subcontracts awarded to Russian Enterprises pursuant to the objectives of the program.

## SECTION G - CONTRACT ADMINISTRATION

1. Submit vouchers (Standard Form 1034) in eight (8) copies to the address listed below, through your cognizant Defense Contract Audit Agency. At the time of submission of vouchers through DCAA, also forward a separate information copy of all vouchers directly to the designated Contracting Officer's Technical Representative (COTR).

Headquarters, Defense Nuclear Agency
Finance and Accounting Division (COMP-3)
ATTN: Commercial Accounts, (703) 325-9575
6801 Telegraph Road
Alexandria, Virginia 22310-3398

2. Contractor Payments. Payments will be made to the following address:

Die Casters International, Incorporated
One Spruce Terrace
Wayne, New Jersey 07470

## SECTION H - SPECIAL CONTRACT REQUIREMENTS

1. Consultants

Services of consultants shall be at rates and for periods approved in advance by the Contracting Officer. Requests for approval shall be submitted to the Contracting Officer prior to using a consultant under this Contract and shall include (a) a copy of the proposed consultant agreement, (b) a brief biography of the consultant, and (c) an indication of the area(s) in which consultant's expertise will be utilized. In addition, significant deviations from the dollar amount approved for consultant services, or changes in the consultants to be utilized, must likewise be approved in advance upon submission of adequate justification.

2. Travel

a. Reimbursement for travel-related expenses shall be in accordance with FAR 31.205-46.

b. In connection with direct charge to the contract of travel-related expenses, the Contractor shall hold travel to the minimum required to meet the objectives of the contract, and substantial deviations from the amount of travel agreed to during contract negotiation shall not be made

without the authorization of the Contracting Officer. When practicable, the Contractor shall notify the COTR of proposed travel of an employee.

c. Approval of the Contracting Officer shall be obtained in advance for attendance by personnel at training courses, seminars, and other meetings not directly related to contract performance.

d. All foreign travel for personnel traveling under DoD sponsorship and direction shall be authorized and approved in advance and in writing by the Contracting Officer. Requests for such travel must be submitted to the Contracting Officer at least 45 days in advance of the traveler's anticipated departure date and shall include the traveler's itinerary on United States Flag Air Carriers. For ease of administration, at contract inception the contractor shall submit an itinerary to cover anticipated overseas travel needs which shall be modified as the need arises.

e. The General Services Administration maintains agreements with some airlines allowing contractors traveling under cost-reimbursement Government contracts to obtain Government air fare rates. To obtain these rates, contractor personnel must show proper identification furnished by the Contracting Officer. Payment can be by cash or credit card. (NOTE: The GSA schedule contracts also allow for payment by Government Travel Requests (GTR's). However, because of the administrative costs associated with their issuance, DNA will not furnish GTR's for domestic travel.)

f. Further information, including identification of hotels and motels which offer discounts, names of airlines with GSA Schedule contracts, and identification of city-to-city connections, is contained in the booklets, "Federal Hotel/Motel Discount Directory" and "Federal Travel Directory," which can be obtained for a small fee from:

Superintendent of Documents
U.S. Government Printing Office
Washington, DC 20402
(Telephone 202-783-3238)

g. Under cost-reimbursement contracts, upon receipt of a request from the Contractor, the Contracting Officer will provide documentation certifying that specified employees are under contract to DNA and are eligible to receive discount rates associated with official travel under such contracts. The request must contain information sufficient to support the contractor's assertion that the named individuals are expected to travel in direct support of the contract. This documentation will be issued with the understanding that the Contractor will maintain full accountability and institute controls to prevent any abuse. Unless there are extenuating circumstances which would result in a greater overall cost, Contractor personnel shall obtain travel discounts whenever they are available.

3. Acquisition and Disposition of Government Property

a. Part 45 of the Federal Acquisition Regulation (FAR) requires contractors performing Government contracts to provide all property necessary to perform the contracts, unless otherwise exempted.

b. Property (see FAR 45.101) of any kind, unless incorporated in a physical end item to be delivered, shall not be acquired for the Government's account under the contract unless the

Contracting Officer has provided prior written approval, or unless the property is specifically identified in the contract. The contractor will not be reimbursed for such unauthorized purchases, either directly or indirectly, and the parties agree that costs associated with such unauthorized purchases are specifically unallowable.

(1) Prior to acquiring Industrial Plant Equipment (IPE) (245.301 of DoD FAR Supplement), existing Government equipment shall be screened pursuant to Part 245.302-1(b)(1)(A) of the DoD FAR Supplement.

(2) Prior to acquiring Automatic Data Processing Equipment, existing Government equipment will be screened pursuant to Part 245.302-1(b)(1)(B) of the DoD FAR Supplement and DoD 7950.1-M, Defense Automation Resources Management Manual.

c. If the contractor is an educational or non-profit contractor and Alternate 1 to the Government Property clause applies, title to property with an acquisition cost of $5,000.00 or more shall vest in the Government.

d. Government property that is no longer needed for this contract shall be listed by the contractor on appropriate inventory schedules (FAR 45.606). The contractor shall forward the inventory schedules to the cognizant Plant Clearance Officer at the contract administration office (DCAS/AFPRO/NAVPRO) for processing. The type and sequence of screening depends on the nature of the property involved as specified in FAR Table 45-1. Property determined by the Plant Clearance Officer to be subject to agency screening or special item screening requirements of FAR 45.608-3 and 45.608-5 shall be screened by the Plant Clearance Officer who shall route their request to Headquarters, Defense Nuclear Agency, ATTN: SSLB. (Note: Address to ATTN: IRMO if ADPE.) The time periods imposed by FAR Part 45 for this agency screening or for special item screening shall be adhered to in all cases. Upon completion of all required screening, the Plant Clearance Officer will provide instructions for all remaining property.

4. <u>Safety and Accident Prevention</u>

a. In performing any work under this Contract on premises which are under the direct control of the Government, the Contractor shall conform to all safety rules and requirements established for the premises in effect on the date of this Contract, and take such additional precautions as the Contracting Officer may reasonably require for safety and accident prevention purposes.

b. The Contractor agrees to take all reasonable steps and precautions to prevent accidents and preserve the life and health of Contractor personnel performing or in any way coming in contact with the performance of this Contract on any such premises. Any violation of such rules and requirements, unless promptly corrected as directed by the Contracting Officer, shall be grounds for termination of this Contract in accordance with the default provisions hereof.

5. <u>USE AND OWNERSHIP/DISPOSITION OF GOVERNMENT-PROVIDED PROPERTY</u>

a. All property, equipment and materials acquired with United States (U.S.) Government funding under this Contract shall be acquired solely for the use of the joint venture, or business arrangement formed by the U.S. Contractor and the Former Soviet Union (FSU) enterprise partner in performance of the terms of this Contract. All property, equipment and materials provided by the

U.S. Contractor or the FSU enterprise partner shall be used in accordance with the terms of the agreement between said parties.

b. All property, equipment and materials acquired with U.S. Government funding under this contract is considered a third-party contribution which is separate and distinct from property, equipment, or materials contributed by the U.S. Contractor or the FSU enterprise partner. Title and ownership of all property, equipment and materials acquired with U.S. Government funding under this Contract shall vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer. Prior to conclusion of the Contract, the U.S. Contractor is accountable for said items in accordance with standard government property clauses cited under SECTION I of this contract. Title and ownership of all property, equipment and materials provided by the U.S. Contractor or the FSU enterprise partner shall be determined in accordance with the terms of the agreement between said parties."

PART II - CONTRACT CLAUSES
SECTION I

NOTICE: The following solicitation provisions and/or contract clauses pertinent to this section are hereby incorporated by Reference:

| | FAR Text Reference | FAR Clause Number | Clause Title | Date |
|---|---|---|---|---|
| X | 2.201 | 52.202-1 | DEFINITIONS | (SEP 1991) |
| X | 3.102-2 | 52.203-1 | OFFICIALS NOT TO BENEFIT | (APR 1984) |
| X | 3.202 | 52.203-3 | GRATUITIES | (APR 1984) |
| X | 3.404(c) | 52.203-5 | COVENANT AGAINST CONTINGENT FEES | (APR 1984) |
| X | 3.503-2 | 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT | (JUL 1985) |
| X | 3.502-3 | 52.203-7 | ANTI-KICKBACK PROCEDURES | (OCT 1988) |
| X | 3.104-10(c) | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY | (SEP 1990) |
| X | 3.808(b) | 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS | (JAN 1990) |
| X | 9.409(b) | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT | (NOV 1992) |
| X | 10.011(e)(2) | 52.210-5 | NEW MATERIAL | (APR 1984) |
| X | 12.304(b) | 52.212-8 | DEFENSE PRIORITY & ALLOCATION REQUIREMENTS | (SEP 1990) |
| X | 15.106-1(b) | 52.215-1 | EXAMINATION OF RECORDS BY COMPTROLLER GENERAL | (FEB 1993) |
| X | 15.106-2(b) | 52.215-2 | AUDIT - NEGOTIATION | (FEB 1993) |
| X | 15.804-8(a) | 52.215-22 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA | (JAN 1991) |
| X | 15.804-8(c) | 52.215-24 | SUBCONTRACTOR COST OR PRICING DATA | (DEC 1991) |
| X | 15.804-8(e) | 52.215-27 | TERMINATION OF DEFINED BENEFIT/PENSION PLANS | (SEP 1989) |
| X | 15.904(b) | 52.215-31 | WAIVER OF FACILITIES CAPITAL COST OF MONEY | (SEP 1987) |
| X | 15.406-3(b) | 52.215-33 | ORDER OF PRECEDENCE | (JAN 1986) |
| X | 16.307(a) | 52.216-7 | ALLOWABLE COST AND PAYMENT | (JUL 1991) |
| X | 16.307(f)(1) | 52.216-12 | COST-SHARING CONTRACT - NO FEE | (APR 1984) |
| X | 19.708(a) | 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS | (FEB 1990) |
| X | 19.902 | 52.219-13 | UTILIZATION OF WOMEN-OWNED SMALL BUSINESSES | (AUG 1986) |
| X | 20.302(a) | 52.220-3 | UTILIZATION OF LABOR SURPLUS AREA CONCERNS | (APR 1984) |
| X | 22.103-5(b) | 52.222-2 | PAYMENT FOR OVERTIME PREMIUMS | (JUL 1990) |
| X | 22.202 | 52.222-3 | CONVICT LABOR | (APR 1984) |
| X | 22.810(e) | 52.222-26 | EQUAL OPPORTUNITY | (APR 1984) |
| X | 22.1308(a) | 52.222-35 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED & VIETNAM ERA VETERANS | (APR 1984) |

PART II - CONTRACT CLAUSES
SECTION I

| | | | | |
|---|---|---|---|---|
| X | 22.1408(a) | 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS | (APR 1984) |
| X | 22.1308(b) | 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS & VETERANS OF THE VIETNAM ERA | (JAN 1988) |
| X | 23.105(b) | 52.223-2 | CLEAN AIR AND WATER | (APR 1984) |
| X | 25.704 | 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES | (MAY 1992) |
| X | 26.104(a) | 52.226-1 | UTILIZATION OF INDIAN ORGANIZATIONS AND INDIAN-OWNED ECONOMIC ENTERPRISES | (AUG 1991) |
| X | 27.201-2(a) | 52.227-1 | AUTHORIZATION AND CONSENT | (APR 1984) |
| X | 27.201-2(b) | 52.227-1 | AUTHORIZATION AND CONSENT - ALTERNATE I | (APR 1984) |
| X | 27.202-2 | 52.227-2 | NOTICE & ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT | (APR 1984) |
| X | 27.303(a) | 52.227-11 | PATENT RIGHTS - RETENTION BY THE CONTRACTOR (SHORT FORM) | (JUN 1989) |
| X | 28.311-2 | 52.228-7 | INSURANCE - LIABILITY TO THIRD PERSONS | (APR 1984) |
| X | 29.402-2(a) | 52.229-8 | TAXES - FOREIGN COST REIMBURSEMENT CONTRACTS | (MAR 1990) |
| X | 32.111(c)(2) | 52.232-9 | LIMITATION ON WITHHOLDING OF PAYMENTS | (APR 1984) |
| X | 32.617(a) | 52.232-17 | INTEREST | (JAN 1991) |
| X | 32.705-2(a) | 52.232-20 | LIMITATION OF COST | (APR 1984) |
| X | 32.806(a)(1) | 52.232-23 | ASSIGNMENT OF CLAIMS - ALTERNATE I | (JAN 1986) |
| X | 32.908(c) | 52.232-25 | PROMPT PAYMENT | (SEP 1992) |
| X | 33.214 | 52.233-1 | DISPUTES | (DEC 1991) |
| X | 33.106(b) | 52.233-3 | PROTEST AFTER AWARD - ALTERNATE I | (AUG 1989) |
| X | 42.802 | 52.242-1 | NOTICE OF INTENT TO DISALLOW COSTS | (APR 1984) |
| X | 42.903 | 52.242-13 | BANKRUPTCY | (APR 1991) |
| X | 43.205(b)(1) | 52.243-2 | CHANGES - COST-REIMBURSEMENT | (AUG 1987) |
| X | 43.205(b)(6) | 52.243-2 | CHANGES - COST-REIMBURSEMENT - | (AUG 1987) |
| X | 44.204(b) | 52.244-2 | SUBCONTRACTS (COST- REIMBURSEMENT & LETTER CONTRACTS) - ALTERNATE I | (JUL 1985) |
| X | 45.106(a) | 52.245-1 | PROPERTY RECORDS | (APR 1984) |
| X | 47.104-4 | 52.247-1 | COMMERCIAL BILL OF LADING NOTATIONS | (APR 1984) |
| X | 49.503(a)(1) | 52.249-6 | TERMINATION (COST- REIMBURSEMENT) | (MAY 1986) |
| X | 51.205 | 52.251-2 | INTERAGENCY MOTOR POOL VEHICLES AND SERVICES | (JAN 1991) |

DoD FAR SUPPLEMENT CLAUSES

| | DOD FAR Supp Text Reference | DOD FAR Supp Clause | Clause Title | Date |
|---|---|---|---|---|
| X | 201.602-70 | 252.201-7000 | CONTRACTING OFFICER'S REPRESENTATIVE | (DEC 1991) |
| X | 203.170-4 | 252.203-7000 | STATUTORY PROHIBITIONS ON COMPENSATION TO FORMER DEPARTMENT OF DEFENSE EMPLOYEES | (DEC 1991) |
| X | 203.570-5 | 252.203-7001 | SPECIAL PROHIBITION ON EMPLOYMENT | (APR 1993) |
| X | 204.404-70(a) | 252.204-7000 | DISCLOSURE OF INFORMATION | (DEC 1991) |
| X | 205-470-2 | 252.205-7000 | PROVISION OF INFORMATION TO COOPERATIVE AGREEMENT HOLDERS | (DEC 1991) |
| X | 209.103-70 | 252.209-7000 | ACQUISITION FROM SUBCONTRACTORS SUBJECT TO ON-SITE INSPECTION UNDER THE INTERMÉDIATE-RANGE NUCLEAR FORCES (INF) TREATY | (DEC 1991) |
| X | 215.804-8(1) | 252.215-7000 | PRICING ADJUSTMENTS | (DEC 1991) |
| X | 215.811-70(h) | 252.215-7002 | COST ESTIMATING SYSTEM REQUIREMENTS | (DEC 1991) |
| X | 219.7107 | 252.219-7008 | PILOT MENTOR-PROTEGE PROGRAM | (OCT 1992) |
| X | 223.570-3 | 252.223-7004 | DRUG-FREE WORK FORCE | (SEP 1988) |
| X | 225.109-70(a) | 252.225-7002 | QUALIFYING COUNTRY SOURCES AS SUBCONTRACTORS | (DEC 1991) |
| X | 225.7002-4(a) | 252.225-7012 | PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES | (DEC 1991) |
| X | 225.7105 | 252.225-7025 | FOREIGN SOURCE RESTRICTIONS | (APR 1993) |
| X | 225.770-4 | 252.225-7031 | SECONDARY ARAB BOYCOTT OF ISRAEL | (JUN 1992) |
| X | 225.408(a)(4) | 252.225-7036 | NORTH AMERICAN FREE TRADE AGREEMENT IMPLEMENTATION ACT | (JAN 1994) |
| X | 225.408(a)(4) | 252.225-7037 | DUTY FREE ENTRY – NAFTA COUNTRY END-PRODUCTS AND SUPPLIES | (JAN 1994) |
| X | 227.403-70(e) | 252.227-7013 | RIGHTS IN TECHNICAL DATA & COMPUTER SOFTWARE | (OCT 1988) |
| X | 227.403-72(a) | 252.227-7018 | RESTRICTIVE MARKINGS ON TECHNICAL DATA | (OCT 1988) |
| X | 227.403-72(a) | 252.227-7029 | IDENTIFICATION OF TECHNICAL DATA | (APR 1988) |
| X | 227.405-70( | 252.227-7031 | DATA REQUIREMENTS | (OCT 1988) |
| X | 227.304-4 | 252.227-7034 | PATENTS - SUBCONTRACTS | (APR 1984) |
| X | 227.403-74( | 252.227-7036 | CERTIFICATION OF TECHNICAL DATA CONFORMITY | (MAY 1989) |
| X | 227.473-4(a) | 252.227-7037 | VALIDATION OF RESTRICTIVE MARKINGS ON TECHNICAL DATA | (APR 1988) |
| X | 228.370(d) | 252.228-7003 | CAPTURE AND DETENTION | (DEC 1991) |
| X | 228.370(e) | 252.228-7005 | ACCIDENT REPORTING AND INVESTIGATION INVOLVING AIRCRAFT, MISSILES, AND SPACE LAUNCH VEHICLES | (DEC 1991) |

PART II - CONTRACT CLAUSES
SECTION I

| | | | | |
|---|---|---|---|---|
| X | 231.100-70 | 252.231-7000 | SUPPLEMENTAL COST PRINCIPLES | (DEC 1991) |
| X | 231.7002-6 | 252.231-7001 | PENALTIES FOR UNALLOWABLE COSTS | (APR 1993) |
| X | 232.111-70 | 252.232-7006 | REDUCTION OR SUSPENSION OF CONTRACT PAYMENTS UPON FINDING | (JAN 1992) |
| X | 233.7001 | 252.233-7000 | CERTIFICATION OF CLAIMS AND REQUESTS FOR ADJUSTMENT OR RELIEF | (APR 1993) |
| X | 242.570. | 252.242-7000 | POSTAWARD CONFERENCE | (DEC 1991) |
| X | 242.7206 | 252.242-7004 | MATERIAL MANAGEMENT AND ACCOUNTING SYSTEM | (DEC 1991) |
| X | 251.107 | 252.251-7001 | USE OF INTERAGENCY FLEET MANAGEMENT SYSTEM (IFMS) VEHICLES & RELATED SERVICES | (DEC 1991) |
| X | 270.007 | 252.270-7000 | RECOVERY OF NONRECURRING COSTS AND ROYALTY FEES ON COMMERCIAL SALES | (DEC 1991) |

PART II - CONTRACT CLAUSES

1. FAR 52.203-9 REQUIREMENT FOR CERTIFICATE OF PROCUREMENT INTEGRITY MODIFICATION (NOV 1990)

(a) Definition. The definitions at FAR 3.104-4 are hereby incorporated in this clause.

(b) The Contractor agrees that it will execute the certificate set forth in paragraph c. of this clause when requested by the Contracting Officer in connection with the execution of any modification of this contract.

(c) Certifications. As required in paragraph b. of this clause, the offeror or employee responsible for the modification proposal shall execute the following certification.

CERTIFICATE OF PROCUREMENT INTEGRITY - MODIFICATION (NOV 1990)

1. I, ____________________________ (NAME OF CERTIFIER), am the officer or employee responsible for the preparation of this modification proposal and hereby certify that, to the best of my knowledge and belief, with the exception of any information described in this certification, I have no information concerning a violation or possible violation of subsection 27(a), (b), (d), or (f) of the Office of Federal Procurement Policy Act, as amended* (41 U.S.C. 423), (hereafter referred to as "the Act"), as implemented in the FAR, occurring during the conduct of this procurement ____________________________ (CONTRACT AND MODIFICATION NUMBER).

2. As required by subsection 27(e)(1)(B) of the Act, I further certify that to the best of my knowledge and belief, each officer, employee, agent, representative, and consultant of ____________________________ (NAME OF OFFEROR) who has participated personally and substantially in the preparation or submission of this proposal has certified that he or she is familiar with, and will comply with, the requirements of subsection 27(a) of the Act, as implemented in the FAR, and will report immediately to me any information concerning a violation or possible violation of subsections 27(a), (b), (d), or (f) of the Act, as implemented in the FAR, pertaining to this procurement.

3. Violation or possible violation: (Continue on plain bond paper, if necessary and label 'Certificate of Procurement Integrity - Modification (Continuation Sheet)' ENTER "NONE" IF NONE EXISTS)

______________________________________________

______________________________________________

______________________________________________

______________________________
(Signature of the officer or employee responsible for the modification proposal)

______________________________
(Name and Title)

______________
(Date)

*Subsections 27(a), (b), and (d) are effective on December 1, 1990. Subsection 27(f) is effective on June 1, 1991.

THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF AN AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER TITLE 18, UNITED STATED CODE, SECTION 1001.

(END OF CERTIFICATION)

(d) In making the certification in paragraph (2) of the certificate, the officer or employee of the competing Contractor responsible for the offer or bid, may rely upon a one-time certification from each individual required to submit a certification to the competing Contractor, supplemented by periodic training. These certifications shall be obtained at the earliest possible date after an individual required to certify begins employment or association with the contractor. If a contractor decides to rely on a certification executed prior to the suspension of section 27 (i.e., prior to December 1, 1989), the Contractor shall ensure that an individual who has so certified is notified that section 27 has been reinstated. These certifications shall be maintained by the Contractor for a period of 6 years from the date a certifying employee's employment with the company ends or, for an agency representative, or consultant, 6 years from the date such individual ceases to act on behalf of the contractor.

(e) The certification required by paragraph (c) of this clause is a material representation of fact upon which reliance will be placed in executing this modification.

(END OF CLAUSE)

2. <u>FAR 52.204-1 APPROVAL OF CONTRACT (DEC 1989)</u>

This contract is subject to the written approval of <u>the Head of the Contracting Activity</u> and shall not be binding until so approved.

3. <u>FAR 52.252-2 CLAUSES INCORPORATED BY REFERENCE (JUN 1988)</u>

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

(END OF CLAUSE)

4. <u>FAR 52.252-4 ALTERATIONS IN CONTRACT (APR 1984)</u>

Portions of the Contract are altered as follows:

a. In FAR 52.222-2 PAYMENT FOR OVERTIME PREMIUMS, the amount to be inserted in paragraph (a) is understood and agreed to be ZERO.

b. In FAR 52.232-25, PROMPT PAYMENT, delete the definition of "foreign vendor" from the last sentence of the lead-in paragraph; and in paragraph (a)(5); delete the last sentence: "An interest penalty shall not be paid on contracts awarded to foreign vendors outside the United States for work performed outside the United State."

(END OF CLAUSE)

5. <u>DOD FAR SUP. 252.247-7023 TRANSPORTATION OF SUPPLIES BY SEA (DEC 1991)</u>

(a) <u>Definitions</u>: as used in this clause:

(1) "Components" means articles, materials, and supplies incorporated directly into end products at any level of manufacture, fabrication or assemble by the Contractor or any subcontractor.

(2) "Department of Defense" (DoD) means the Army, Navy, Air Force, Marine Corps, and defense agencies.

(3) "Foreign flag vessel" means any vessel that is not a U.S.-flag vessel.

(4) "Ocean transportation" means any transportation aboard a ship, vessel, boat, barge, or ferry through international waters.

(5) "Subcontractor" means a supplier, materialman, distributor or vendor at any level below the prime contractor whose contractual obligation to perform results from, or is conditioned upon, award of the prime contract and who is performing any part of the work or other requirement of the prime contract.

(6) "Supplies" means all property, except land and interests in land, that is clearly identifiable for eventual use by or owned by the DoD at the time of transportation by sea.

(i) An item is clearly identifiable for eventual use by the DoD if, for example, the contract documentation contains a reference to a DoD contract number or a military destination.

(ii) "Supplies" includes (but is not limited to) public works; buildings and facilities; ships; floating equipment and vessels of every character type, and description, with parts, subassemblies, accessories, and equipment; machine tools; material; equipment, stores of all kinds; end items; construction materials; and components of the foregoing.

(7) "U.S.-flag vessel" means a vessel of the United States or belonging to the United States, including any vessel registered or having national status under the laws of the United States.

(b) The Contractor shall employ U.S.-flag vessels in the transportation by sea of any supplies to be furnished in the performance of this contract. The Contractor and its subcontractors may request that the Contracting Officer authorize shipment in foreign flag vessels, or designate available U.S.-flag vessels, if the Contractor or a subcontractor believes that -

(1) U.S.-flag vessels are not available for timely shipment;
(2) The freight charges are inordinately excessive or unreasonable; or
(3) Foreign charges are higher than charges to private persons for transportation of like goods.

(c) The Contractor must submit any request for use of other than U.S.-flag vessels in writing to the Contracting Officer at least 45 days prior to the sailing date for the shipper necessary to meet its delivery schedules. The Contracting Officer will process requests submitted after such date(s) as expeditiously as possible, but the Contracting Officer's failure to grant approvals to meet the shipper's sailing date will not of itself constitute a compensable delay under this or any other clause of this contract. Request shall contain at a minimum:

(1) Type, weight, and cube of cargo.
(2) Required shipping date.
(3) Special handling and discharge requirements.
(4) Loading and discharge points.
(5) Name of shipper and consignee.
(6) Prime contract number.

(7) A documented description of efforts made to secure U.S.-flag vessels, including points of contact (with names and telephone numbers) with at least two U.S.-flag carriers contacted. Copies of telephone notes, telegraphic and facsimile messages or letters will be sufficient for this purpose.

(d) The Contractor shall, within (30) days after each shipment covered by this clause, provide the Contracting Officer and the Division of National Cargo, Office of Market Development, Maritime Administration, U.S. Department of Transportation, Washington, DC 20590, one copy of the rated on board vessel operating carrier's ocean-bill-of-lading, which shall contain the following information:

(1) Prime contract number;
(2) Name of vessel;
(3) Vessel flag of registry;
(4) Date of loading;
(5) Port of loading;
(6) Port of final discharge;
(7) Description of commodity;
(8) Gross weight in pounds and cubic feet if available;
(9) Total ocean freight in U.S. dollars; and
(10) Name of the steamship company.

(e) The Contractor agrees to provide with its final invoice under this contract a representation that to the best of its knowledge and belief:

(1) No ocean transportation was used in the performance of this contract;

(2) Ocean transportation was used and only U.S.-flag vessels were used for all ocean shipments under the contract;

(3) Ocean transportation was used, and the Contractor had the written consent of the Contracting Officer for all non-U.S.-flag ocean transportation; or

(4) Ocean transportation was used and some or all of the shipments were made on non-U.S.-flag vessels without the written consent of the Contracting Officer. The Contracting Officer shall describe these shipments in the following format:

| ITEM DESCRIPTION | CONTRACT LINE ITEMS QUANTITY |
|---|---|
| Total | |

(f) If the final invoice does not include the required representation, it will be rejected and returned to the Contractor as an improper invoice for the purposes of the Prompt Payment clause of this contract. In the event there has been authorized use of non-U.S.-flag vessels in the performance of this contract, the Contracting Officer is entitled to equitably adjust the contract, based on the unauthorized use.

(g) The Contractor shall include this clause, including this paragraph (g) in all subcontracts under this contract which exceed the small purchase limitation of section 13.000 of the Federal Acquisition Regulation.

(END OF CLAUSE)

6. DOD FAR SUP. 252.247-7024 NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (DEC 1991)

(a) The Contractor has indicated by the response to the solicitation provision Representation of Extent of Transportation by Sea, that it did not anticipate transporting by sea any supplies. If, however, after the award of this contract, the Contractor learns that supplies, as defined in the Transportation of Supplies by Sea clause of this contract, will be transported by sea, the Contractor-

(1) Shall notify the Contracting Officer of that fact; and

(2) Hereby agrees to comply with all the terms and conditions of the Transportation of Supplies by Sea clause of this contract.

(b) The Contractor shall include this clause, including this paragraph (b), revised as necessary to reflect the relationship of the contracting parties, in all subcontracts hereunder.

(END OF CLAUSE)

7. DOD FAR SUP. 252.249-7002 NOTIFICATION OF PROPOSED PROGRAM TERMINATION OR REDUCTION (AUG 1993)

NOTE: Use this clause in all contracts of $500,000.00 or more.

(a) Within two weeks after the Government notifies the Contractor that this contract may be adversely affected by a program termination or reduction, the Contractor shall provide notice of such proposed termination or reduction to--

(1) Each representative of the Contractor's employee whose work is directly related to the contract; or

(2) If there is no such representative at that time, each such employee;

(3) The State dislocated worker unit or office described in section 311(b)(2) of the Job Training Partnership Act (29 U.S.C. 1661(b)(2)), and the chief elected official of the unit of general local government within which the adverse effect may occur; and

(4) Each affected subcontractor.

(b) If the proposed program termination or reduction is likely to result in plant closure or mass layoff, the notice provided an employee under paragraph (2) of this clause shall have the same effect as a notice of termination to the employee for the purposes of determining whether such employee is eligible for training, adjustment assistance, and employment services under section 325 or 325A of the Job Training Partnership Act. If the Contractor has specified that the proposed program termination or reduction is not likely to result in plant closure or mass layoff, the employee shall only be eligible to receive services under section 314(b) and paragraphs 1 through 14, 16, and 18 of section 314(2) or the Job Training Partnership Act.

(c) If the Government subsequently withdrew a notice issued in accordance with paragraph (a) of this clause, the Contractor, within two weeks after receipt of the withdrawal notice, shall provide notice of the withdrawal to--

(1) The representatives, employees, offices, officials, and subcontractors specified in paragraph (a) of this clause, and

(2) Each grantee under section 325(a) or 325A(a) of the Job Training Partnership Act, as the case may be, providing training, adjustment assistance, and employment services to each employee described in this paragraph.

(d) An employee who receives notice of withdrawal shall not be eligible for training, adjustment assistance, and employment services under section 325 of the Job Training Partnership Act, or section 325A of such Act, as the case may be, beginning on the date the employee receives such notice.

(e) The Contractor shall insert the substance of this clause in all subcontracts of $500,000.00 or more.

(END OF CLAUSE)

PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS

SECTION J - LIST OF ATTACHMENTS

| NUMBER | ATTACHMENT | PAGE(S) |
| --- | --- | --- |
| 1 | STATEMENT OF WORK ENTITLED "Defense Conversion in Ukraine" DATED 95JUN21. | 4 |
| 2 | CONTRACT DATA REQUIREMENTS LIST (DD FORM 1423), DATED 95JUL03. | 6 |

95 JUN 21

# I. STATEMENT OF WORK REQUIREMENTS

## 1. SCOPE.

The scope of work for this proposal comprises assistance and DCI investment to include capital equipment, material, training and business assistance/advisory services to the Meridian Joint Stock Company, Kyiv, Ukraine, (Meridian) and to the wholly-owned DCI subsidiary operation to be located in Ukraine in the areas of marketing of existing and transformed product lines, retrofitting and retooling their existing die cast manufacturing equipment base, and support in industrial restructuring of those facilities to establish productive, commercially successful commercial enterprises in Ukraine. Please note that Meridian (new name) was formerly known as the Korolev Production Amalgamation.

### 1.1. Proposal Background.

This proposal is submitted in response to the Defense Nuclear Agency's (DNA) responsibilities (Solicitation Offer DNA001-94-R-0084) for establishing programs for the defense conversion in Ukraine.

In August and September, 1994, key executives of Die Casters International, Inc. ("DCI) traveled to Kyiv and other locations in Ukraine to visit several companies listed in DNA's solicitation offer/amendments. The purpose of this trip was to identify specific program needs that match DCI's Project Team capabilities with those requested by the DNA in consultation with the companies selected in Ukraine. Prior to that trip, DCI contacted most of the targeted conversion companies identified in the solicitation and presented DCI's conversion program. These activities had generated strong interest from more than ten of the companies.

After review of those companies' capabilities and during DCI's visit to Ukraine, it was determined that DCI's capabilities fit best with the program needs of Meridian, Fiolent Joint Stock Company (located in the Crimea, Ukraine) and Mayak (a third conversion company located in Kyiv) in matching the specific needs and criteria as outlined by DNA. In-depth discussions were held at those meetings and through subsequent discussions with Meridian's, Fiolent's and Mayak's management teams as to programs and resources that the DCI Project Team could provide in meeting their immediate and future requirements for their conversion from a defense manufacturing base to one that can respond to the commercial, consumer market.

DCI's visit and discussions have confirmed that DCI can provide the three companies with realistic, technically feasible and cost effective programs to meet the goals and objectives indicated in the scope of the project. To this end, DCI and each of the three companies entered into individual Letters of Protocol to form joint ventures to convert their defense manufacturing assets to die casting and related, commercially-oriented manufacturing assets. After numerous discussions with DNA, DCI agreed to focus its activities and proposal on Meridian and Fiolent and to exclude Mayak. Including the two Ukraine companies to work with DCI, leverages many of DCI's services, reduces the risk of failure, and gives DNA much greater leverage on the conversion funds it awards.

However, following further considerations by DNA related to funds available, it was determined that DCI, under this contract, shall provide its services, technology, and equipment to Meridian alone,

shall reduce or eliminate services for training and quality control, and shall extend efforts towards the furtherance of continued defense conversion in Ukraine and in other NIS republics.

### 1.2. Objectives.

The primary objective of this defense conversion proposal is to provide assistance to Meridian to support the conversion and privatization of its defense related manufacturing base to the commercial production of consumer products (primarily die cast products) to meet consumer market demand, both internally within Ukraine and externally, for product export shipments to other NIS countries and to the free world markets.

This proposal is based upon capital equipment requirements, critically needed spare parts and supplies, technical assistance and training requirements, and ongoing entrepreneurial oriented business consulting and market assistance services that were identified by Meridian's management during DCI's visit and during DCI's continued discussions.

The specific format of the proposed business relationship is based upon DCI's plan to form up to two joint venture stock ownership companies ("JV's") between Meridian and DCI as soon as possible. The JV's will be the legal entities upon which DCI will effectively produce close and enduring business relationships with Meridian. DCI will also build direct relationships with Meridian to enhance Meridian's individual capabilities to convert other assets to commercial production.

## 2. WORK REQUIREMENTS.

### 2.1. Proposal Overview.

2.1.1. This statement of work requirements defines DCI's tasks in conjunction with a program of U.S. Government assistance to Meridian, a Ukraine state owned enterprise which will undergo privatization. It is believed that this proposal executes a balanced and integrated program that will maximize the benefits of DNA's allocation of appropriated funds for defense conversion and business assistance in establishing long term commercial business for Meridian and for DCI's JV's in Ukraine.

2.1.2. This proposal is based upon DCI's in-house and project team services which will be provided by professionals with backgrounds in production, quality control, sales and marketing, strategic business development, corporate finance and executive management. Along with DCI's coordinating role, DCI's project team will work closely with Meridian's management teams to assure their understanding and involvement in the market evaluation, product/business development, budgeting, and business planning process. DCI has assembled a strong project management team that can call upon, within the limits of funding provided by DNA, civilian industry specialists in manufacturing technology, corporate finance, accounting, economic analysis, technical product design, investment banking and training, to include quality management training. It is the intent of DCI to use local Ukraine professionals where appropriate, as will be the case when staffing its Ukraine subsidiary. DCI

believes that this proposal reflects a business and investment strategy to optimize the employment at the JV's and within Meridian, with their eventual success as self-sustaining, profitable enterprises.

2.1.3. DCI intends to provide the necessary personnel, equipment, materials and training to accomplish the requirements as proposed in this statement of work requirements.

2.1.4. DCI will attempt to establish a JV with an NIS-based new die cast machine manufacturer as a source for machines and other equipment for DCI's die casting JV's. If this is not practical or possible, DCI will source its equipment from other sources.

**2.2. Tasks.**

**2.2.1. Task 1: Business Assistance.**

DCI will assist in the conversion of selected and identified parts of Meridian, located in Kyiv, Ukraine, that are being privatized from a military (defense) industry to a commercial industry. Those business areas that become part of DCI's JV's, i.e., die casting and die cast machine remanufacturing operations, will be privatized from government ownership much faster. The formation of the JV's and continued assistance to Meridian should yield a long lasting, effective and visibly successful defense transformation to the maximum extent possible considering the objectives identified in the Evaluation Criteria as outlined in RFP DNA001-94-R-0084.

**2.2.2. Task 2: Project Management.**

DCI will prepare a final business plan within sixty (60) days to include an expanded working list of the tasks and objectives identified during the pre-proposal phase of DNA's procurement. This final business plan will also include an updated letter of intent between DCI and Meridian indicating agreement to cooperate jointly on this proposal. Such plans may also include the final JV agreements for government approval, as well as documents relating to DCI's Ukraine subsidiary.

DCI will participate in a contract kick-off meeting with DNA and representatives of Meridian as soon as such a meeting can reasonably be scheduled. Ideally, prior to this meeting, DCI would plan to visit Meridian as soon as possible after the contract award for in-country fact finding, meeting with Meridian management, and to begin negotiations to form the joint ventures.

**2.2.3. Task 3: Task Development.**

The Department of Defense (DoD) is looking for innovation and bold ideas that can provide maximum benefit to Meridian. DCI's proposal meets and/or exceeds the tasks as identified by DNA that include:

(a) DCI will provide training, investment and technical assistance to the JV's and Meridian to produce marketable products or services.

(b) DCI will provide the JV's and Meridian with business services, patented USA technology, and capital equipment. DCI's proposal provides the maximum social and conversion

returns for DNA's infusion of capital equipment to convert Meridian's military production capabilities into commercial applications and in improvements in their production capacity.

(c) DCI will provide marketing assessment and advice related to the products produced by the JV's and by Meridian.

(d) DCI will provide business development assistance and strategic planning services to the JV's.

(e) DCI will modernize the JV's die cast production facilities through equipment and software purchases.

(f) DCI will transfer manufacturing technology appropriate for the intended commercial products and install die casting equipment and technology at the Ukrainian JV facilities. DCI also will provide training for this new technology and for the new equipment as required.

(g) DCI will provide technical support in developing in-house logistics systems, quality assurance and quality control, and storage and distribution systems as appropriate to the die cast products to be produced by the Ukrainian JV's.

(h) DCI will institute cost accounting and financial controls necessary for the long term business development at the JV's and will assist Meridian to do the same.

**2.2.4. Continued Efforts.**

The initial relationship shall serve as the groundwork for future business and/or joint ventures that would further assist Meridian in its defense conversion, commercial efforts. During the project and at the end of this effort, defined as the time when U.S. Government funding has been utilized, DCI plans to assist its subcontractors to form joint ventures in Ukraine, to further develop products and services with the JV's for sale into old and emerging international markets, and to assist Meridian to sell commercial products in Ukraine, in the NIS, and in Europe.

# CONTRACT DATA REQUIREMENTS LIST
(2 Data Items)

Form Approved
OMB No. 0704-0188

See Section J - List of Attachments for information regarding public reporting burden for this form

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT:
C. CATEGORY: TDP ______ TM ______ OTHER Reports
D. SYSTEM/ITEM: Defense Conversion for the Ukraine
E. CONTRACT/PR NO.: DNA001-95-C-0169
F. CONTRACTOR: Die Casters International, Inc.

1. DATA ITEM NO.: 1
2. TITLE OF DATA ITEMS: Letter of Intent
3. SUBTITLE: N/A
4. AUTHORITY (Data Acquisition Document No.): N/A
5. CONTRACT REFERENCE: SECTION F
6. REQUIRING OFFICE: DNA /ACTR
7. DD 250 REQ: N/A
8. APP CODE: N/A
9. DIST STATEMENT REQUIRED: N/A
10. FREQUENCY: One time unless changes are made
11. AS OF DATE: 30 Days After Contract Award
12. DATE OF FIRST SUBMISSION: 30 Days After Contract Award
13. DATE OF SUBSEQUENT SUBMISSION: Updates when changes are made

14. DISTRIBUTION

| a. Addressee | b. COPIES Draft | Reg | Repro |
|---|---|---|---|
| TRDC/PM | | 1 | 0 |
| | | | |
| | | | |
| 15. TOTAL | | 1 | 0 |

16. REMARKS
Letter of Intent shall signify an agreement between the contractor and the Ukrainian enterprise to proceed with a long-lasting business arrangement. If the enterprise is not privatized, the letter must demonstrate the commitment to privatization. The letter shall document the legal nature of the business arrangement.

1. DATA ITEM NO.: 2
2. TITLE OF DATA ITEM: Program Management Plan
3. SUBTITLE: N/A
4. AUTHORITY (Data Acquisition Document No.): N/A
5. CONTRACT REFERENCE: SECTION F
6. REQUIRING OFFICE: DNA/ACTR
7. DD 250 REQ: N/A
8. APP CODE: N/A
9. DIST STATEMENT REQUIRED: N/A
10. FREQUENCY: When required
11. AS OF DATE: 3 Months After Contract Award
12. DATE OF FIRST SUBMISSION: 3 Months After Contract Award
13. DATE OF SUBSEQUENT SUBMISSION: Updates when changes are made

14. DISTRIBUTION

| a. Addressee | b. COPIES Draft | Reg | Repro |
|---|---|---|---|
| TRDC/PM | | 1 | 1 |
| | | | |
| | | | |
| | | | |
| 15. TOTAL | | 1 | 1 |

16. REMARKS
The planning document should include: (1) Work organization and planning, (2) Schedule planning, (3) Financial planning, and (4) Technical performance planning and measurement.

G. PREPARED BY: Thomas L. Cox, Contract Specialist
H. DATE: 95JUL03
I. APPROVED BY: Scott G. Morton, Contracting Officer
J. DATE: 95JUL03

DD FORM 1423-2, JUN 90 Previous editions are obsolete



A001-95-C-0169

Attachment 2

# CONTRACT DATA REQUIREMENTS LIST
(2 Data Items)

Form Approved
OMB No. 0704-0188

See Section J - List of Attachments for information regarding public reporting burden for this form

| | | |
|---|---|---|
| A. CONTRACT LINE ITEM NO. N/A | B. EXHIBIT | C. CATEGORY TDP ____ TM ____ OTHER Reports |
| D. SYSTEM/ITEM: Defense Conversion for the Ukraine | E. CONTRACT/PR NO. DNA001-95-C-0169 | F. CONTRACTOR: Die Casters International, Inc. |

| | |
|---|---|
| 1. DATA ITEM NO. | 3 |
| 2. TITLE OF DATA ITEMS | Cost and Performance Report |
| 3. SUBTITLE | N/A |
| 4. AUTHORITY (Data Acquisition Document No.) | N/A |
| 5. CONTRACT REFERENCE | SECTION F |
| 6. REQUIRING OFFICE: | DNA /ACTR |
| 7. DD 250 REQ | N/A |
| 8. APP CODE | N/A |
| 9. DIST STATEMENT REQUIRED | N/A |
| 10. FREQUENCY | Monthly |
| 11. AS OF DATE | End of Month |
| 12. DATE OF FIRST SUBMISSION | 3 Months After Contract Award |
| 13. DATE OF SUBSEQUENT SUBMISSION: | Monthly |

16. REMARKS Report will address both program status and business status. The program portions must address progress toward achieving program performance goals. The business portions shall provide summarized details on the status of resources (federal funds & non-federal cost sharing), including an accounting of expenditures for the period covered by the report. The report should compare the resource status with any payment & expenditure schedules or plans provided in the original grant; explain any major deviations from those schedules; and discuss actions that will be taken to address the deviations.

| 14. DISTRIBUTION a. Addressee | b. COPIES Draft | FINAL Reg | FINAL Repro |
|---|---|---|---|
| ACTR/PM | | 1 | 0 |
| DNA/AM | | 1 | 0 |
| | | | |
| 15. TOTAL | | 2 | 0 |

| | |
|---|---|
| 1. DATA ITEM NO. | 4 |
| 2. TITLE OF DATA ITEM: | Equipment Delivery Schedule |
| 3. SUBTITLE | N/A |
| 4. AUTHORITY (Data Acquisition Document No.) | N/A |
| 5. CONTRACT REFERENCE | SECTION F |
| 6. REQUIRING OFFICE | DNA/ACTR |
| 7. DD 250 REQ | N/A |
| 8. APP CODE | N/A |
| 9. DIST STATEMENT REQUIRED | N/A |
| 10. FREQUENCY | One time unless changes are made |
| 11. AS OF DATE | 3 Months After Contract Award |
| 12. DATE OF FIRST SUBMISSION | 3 Months After Contract Award |
| 13. DATE OF SUBSEQUENT SUBMISSION | Updaes when chages are made |

16. REMARKS

| 14. DISTRIBUTION a. Addressee | b. COPIES Draft | FINAL Reg | FINAL Repro |
|---|---|---|---|
| ACTR/PM | | 1 | 0 |
| | | | |
| | | | |
| | | | |
| 15. TOTAL | | 1 | 0 |

| | | | |
|---|---|---|---|
| G. PREPARED BY: Thomas L. Cox, Contract Specialist | H. DATE: 95JUL03 | I. APPROVED BY: Scott G. Morton, Contracting Officer | J. DATE: 95JUL03 |

# CONTRACT DATA REQUIREMENTS LIST
(2 Data Items)

Form Approved
OMB No. 0704-0188

See Section J - List of Attachments for information regarding public reporting burden for this form

| | | |
|---|---|---|
| A. CONTRACT LINE ITEM NO. N/A | B. EXHIBIT | C. CATEGORY TDP ____ TM ____ OTHER Reports |
| D. SYSTEM/ITEM: Defense Conversion for the Ukraine | E. CONTRACT/PR NO. DNA001-95-C-0169 | F. CONTRACTOR: Die Casters International, Inc. |

| | | |
|---|---|---|
| 1. DATA ITEM NO. 5 | 2. TITLE OF DATA ITEMS Industrial Partnership Questionaire | 3. SUBTITLE N/A |
| 4. AUTHORITY (Data Acquisition Document No.) N/A | 5. CONTRACT REFERENCE SECTION F | 6. REQUIRING OFFICE: DNA /ACTR |
| 7. DD 250 REQ N/A | 9. DIST STATEMENT REQUIRED N/A | 10. FREQUENCY Every Other Month |
| 8. APP CODE N/A | | 11. AS OF DATE N/A |
| 12. DATE OF FIRST SUBMISSION Will be provided by PM | 13. DATE OF SUBSEQUENT SUBMISSION: Provided by PM | |

16. REMARKS

14. DISTRIBUTION

| a. Addressee | b. COPIES Draft | Reg | Repro |
|---|---|---|---|
| TRDC/PM | | 1 | 0 |
| | | | |
| | | | |
| 15. TOTAL | | 1 | 0 |

| | | |
|---|---|---|
| 1. DATA ITEM NO. 6 | 2. TITLE OF DATA ITEM: Privatization Timetable | 3. SUBTITLE N/A |
| 4. AUTHORITY (Data Acquisition Document No.) N/A | 5. CONTRACT REFERENCE SECTION F | 6. REQUIRING OFFICE DNA/ACTR |
| 7. DD 250 REQ N/A | 9. DIST STATEMENT REQUIRED N/A | 10. FREQUENCY One Time |
| 8. APP CODE N/A | | 11. AS OF DATE 6 Months After Contract Award |
| 12. DATE OF FIRST SUBMISSION 6 Months After Contract Award | 13. DATE OF SUBSEQUENT SUBMISSION None | |

16. REMARKS

14. DISTRIBUTION

| a. Addressee | b. COPIES Draft | Reg | Repro |
|---|---|---|---|
| TRDC/PM | | 1 | 1 |
| | | | |
| | | | |
| | | | |
| 15. TOTAL | | 1 | 1 |

| | | | |
|---|---|---|---|
| G. PREPARED BY: Thomas L. Cox, Contract Specialist | H. DATE: 95JUL03 | I. APPROVED BY: Scott G. Morton, Contracting Officer | J. DATE: 95JUL03 |

DD FORM 1423-2, JUN 90 Previous editions are obsolete



DNA001-95-C-0169

Attachment 2

# CONTRACT DATA REQUIREMENTS LIST
(2 Data Items)

Form Approved
OMB No. 0704-0188

See Section J - List of Attachments for information regarding public reporting burden for this form

A. CONTRACT LINE ITEM NO. N/A
B. EXHIBIT
C. CATEGORY TDP ____ TM ____ OTHER Reports
D. SYSTEM/ITEM: Defense Conversion for the Ukraine
E. CONTRACT/PR NO. DNA001-95-C-0169
F. CONTRACTOR: Die Casters International, Inc.

1. DATA ITEM NO. 7
2. TITLE OF DATA ITEMS: Final Report
3. SUBTITLE: N/A
4. AUTHORITY (Data Acquisition Document No.) N/A
5. CONTRACT REFERENCE: SECTION F
6. REQUIRING OFFICE: DNA /ACTR
7. DD 250 REQ: N/A
8. APP CODE: N/A
9. DIST STATEMENT REQUIRED: N/A
10. FREQUENCY: One Time
11. AS OF DATE: End of performance period
12. DATE OF FIRST SUBMISSION: 3 Months after contract performance period
13. DATE OF SUBSEQUENT SUBMISSION: None
16. REMARKS

14. DISTRIBUTION

| a. Addressee | b. COPIES Draft | Reg | Repro |
|---|---|---|---|
| ACTR/PM | | 1 | 0 |
| | | | |
| | | | |
| 15. TOTAL | | 1 | 0 |

1. DATA ITEM NO. 8
2. TITLE OF DATA ITEM: Progress Report - Letter Type
3. SUBTITLE: N/A
4. AUTHORITY (Data Acquisition Document No.) DI-MGMT-80227
5. CONTRACT REFERENCE: N/A
REQUIRING OFFICE: DNA/ACTR
7. DD 250 REQ: N/A
8. APP CODE: N/A
9. DIST STATEMENT REQUIRED: N/A
10. FREQUENCY: Monthly
11. AS OF DATE
12. DATE OF FIRST SUBMISSION: 30 Days After Award
13. DATE OF SUBSEQUENT SUBMISSION: Monthly
16. REMARKS: Summary of work performed during the month. Format to be approved by the Project Manager.

14. DISTRIBUTION

| a. Addressee | b. COPIES Draft | Reg | Repro |
|---|---|---|---|
| DNA/PM | | 1 | 0 |
| | | | |
| | | | |
| | | | |
| 15. TOTAL | | 1 | 0 |

G. PREPARED BY: Thomas L. Cox, Contract Specialist
H. DATE: 95JUL03
I. APPROVED BY: Scott G. Morton, Contracting Officer
J. DATE: 95JUL03

DD FORM 1423-2, JUN 90 Previous editions are obsolete Page 4 of 6 Pages

A001-95-C-0169

Attachment 2

COST/PERFORMANCE REPORT

1. Reporting shall be on a quarterly basis, to be submitted as soon as practicable after the Contractor's quarterly fiscal close-out. More frequent or less frequent reporting may be appropriate under circumstances where reporting will cause hardship or disproportionate expenditure in reporting compliance. Contracts which are in excess of $500,000.00 in cumulative amount, and where duration is in excess of six months, shall be reported.

2. Reports shall be submitted in two copies: one copy to Headquarters, DNA, Acquisition Management Directorate (AM), 6801 Telegraph Road, Alexandria, Virginia 22310-3398 and the other copy to the appointed Contracting Officer's Technical Representative (COTR).

3. The purpose of the report is to determine current status of funds expended as this relates to technical progress. These aspects are to be reported as to current reporting period, cumulative-to-date, and projection-to-completion. Additionally, the Contractor will break out costs in one of two ways; either by task and related subtasks (work breakdown structure) or by labor distribution (converted to dollars, and work area distribution of such labor). In either of these forms, the resource expended will be compared to technical progress as of the date of funds expenditure (or labor distribution) reported.

4. OMB Form 22R02, suitably modified may be used for reporting purposes. A suitable modification would be the Contractor's own computer printout which contains the requisite information as indicated below. As a minimum, the report shall contain the following:

See attachment hereto.

# COST/PERFORMANCE REPORT

CONTRACTOR'S NAME ______________________ DNA'S PROJECT MANAGER ______________________

CONTRACTOR'S PERFORMANCE ADDRESS ______________________ PROJECT MANAGER'S OFFICE ______________________

______________________ REPORTING PERIOD: (Beginning and ending dates) ______________________

CONTRACT NO. DNA001-______________________ DATE OF SUBMISSION: ______________________

TYPE OF CONTRACT: ______________________

PROGRAM NAME, OR SHORT FORM DESIGNATION: ______________________ ______________________ Name, Title and Signature of Submitting Official

6. In columnar format, the minimum data required: ______________________

| Item description (WBS Element, Task, Subtask, etc.) | Current Period | | | | | Cumulative to Date | | | | | At Completion | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Budgeted Cost Work Scheduled | Work Performed | Actual Cost of Work Performed | Variance | | Budgeted Cost | | Actual Cost of Work Performed | Variance | | Budgeted | Latest Revised Estimate | Varia |
| | | | | Schedule | Cost | Schedule | Performed | | Schedule | Cost | | | |
| TOTALS: | | | | | | TOTALS: | | | | | | | |

Variation from the above is permitted provided that all information is provided and such information is in a useable and understandable form.

7. Variances shall be footnoted and explained.. Particularly important are those variances which indicate gross cost growth potential (10% or more or gross overfunding (5% or more). Progress that is not in line with prior projections will be explained, as will be variances in budgeted cost areas. Each will require some recovery planning, and description of such, along with revised projection data (both as to cost and technical progre Reports which simply 'parrot' the original schedules and cost budgets will be questioned by recipients.