**Defense Threat Reduction Agency**
8725 John J. Kingman Road MSC 6201
Ft Belvoir, VA 22060-6201

Goldberg & Connolly
Attn: Mr. Gary Marcus
66 North Village Avenue
Rockville Centre, NY 11570

June 25, 2004

Dear Mr. Marcus:

By letter dated 25 February 2004, Die Casters International, Inc. (DCI) asserts several claims related to contract DNA001-95-C-0169. Claim number 1, in the amount of $3,359,901.51, is based on DCI's assertion of rights to an equitable adjustment pursuant to FAR 52.232-20(h), Limitation of Cost. Claim number 2, in the amount of $109,996,640.71, represents alleged damages and lost profits. Finally, DCI claims entitlement to settlement expenses in the amount of $137,191.74. For the reasons set forth below, all claimed amounts are denied in their entirety.

**Background**

Contract DNA001-95-C-0169 was awarded to DCI on 27 October 1995. The term of the contract was established in Section F.1 of the contract as effective on the date of contract award through twenty-four months thereafter. The contract was a cost-sharing arrangement with an estimated cost of $4,100,427.00. The maximum Government liability was established as 74% of the estimated costs or $3,034.316.00. The contractor share was $1,066,111.00.

The contract was modified three times. Modification P00001 added Federal Acquisition Regulation (FAR) clause 52.245-5, Government Property (Cost-Reimbursement, Time & Material, or Labor Hour Contract). Modification A00001 changed the Paying Office. Modification P00002 provided for a no-cost extension of the contract term to 30 January 1998 as requested in DCI letter dated 8 October 1997.

The contract Statement of Work (SOW) cites the objective of the contract:

> The primary objective of this defense conversion proposal is to provide assistance to Meridian to support the conversion and privatization of its defense related manufacturing base to the commercial production of consumer products . . . .

The Sow further states:

> The specific format of the proposed business relationship is based upon DCI's plan to form up to two joint venture stock ownership companies ("JV's") between Meridian and DCI as soon as possible. The JV's will be the legal entities upon which DCI will effectively produce close and enduring business relationships with Meridian. DCI will also build direct relationships with Meridian to enhance Meridian's individual capabilities to convert other assets to commercial production.

In recognition of DCI's plan to form the joint ventures, the contract included Special Contract requirement number 5, Use and Ownership/Disposition of Government-Provided Property. In part, this clause specifies that:

> All property, equipment and materials acquired with United States (U.S.) Government funding under this contract shall be acquired solely for the use of the joint venture, or business arrangement formed by the U.S. Contractor and the Former Soviet Union (FSU) enterprise partner in performance of the terms of this contract.

The clause also states:

> Title and ownership of all property, equipment and materials acquired with U.S. Government funding under the Contract shall vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer. Prior to conclusion of the Contract, the U.S. Contractor is accountable for said items in accordance with standard government property clauses cited under Section I of this contract.

**Discussion**

DCI proceeded to purchase equipment and attempted to form the Joint Ventures which were the cornerstone of DCI's plan to meet the objectives of the contract. DCI invoiced for, and the Government paid for the purchased equipment up to the maximum Government liability of $3,034,316.00. While DCI was able to purchase equipment, DCI was unsuccessful in its attempts to establish the joint ventures. In fact, no joint ventures were ever established. When the term of the contract ended, DCI realized they needed to submit additional billings and, accordingly, requested a no-cost extension of the contract by letter dated 21 November 1997. In part, the letter states:

> This letter submits our request for your consideration and favorable approval in granting a "No-Cost" contract extension (DNA001-95-C-0169) through January, 1998. Please note that this request does not request additional funding, as we can

> complete the contract within the allocated funds originally authorized. However, it is our understanding that all billings for this contract must be completed by the end of October, 1997, as per Section F, Paragraph 1, of the base contract. Therefore, we are requesting approval to continue billings against authorized amounts through January, 1998.

DCI's request was granted and Modification P00002 extended the term of the contract through 30 January 1998. It is clear that DCI understood the contract would end on 30 January 1998 and that the Government was not responsible for any payments in excess of the Government's maximum liability established in the contract at $3,034,316.00. While DCI made a number of attempts to secure additional funding and, apparently, incurred costs after 30 January 1998, the Contracting Officer never promised or authorized additional funding or granted any extensions to the January 1998 contract end date. Moreover, DCI was notified on at least three occasions that the Government had not committed to provide additional funding and, in fact, intended to close out the contract. Any additional costs incurred by DCI are the sole responsibility of DCI.

DCI claims that the Government wrongfully appropriated and disposed of the equipment purchased under the contract. DCI asserts that, "In the event the Contract is not completed, the contractual remedy is provided for under paragraph (h) of FAR 52.232-20 Limitation of Cost which provides for an "equitable distribution based upon the share of costs incurred" by each party. I disagree. The contract was, in fact, completed, albeit unsuccessfully. DCI was not able to perform under the contract and meet the contract objectives. In absence of successful completion, the contract ended by virtue of reaching both the end of the contract term and the maximum Government liability for reimbursement of costs.

Since a joint venture was never formed, the title and ownership provisions of special contract requirement number 5 had no effect. Instead, the Government Property clause of the contract governed the accountability and ownership for the purchased equipment. This clause specifies that:

> Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the vendor's delivery of such property.

The clause further requires the contractor to:

> Establish and maintain a program for the use, maintenance, repair, protection, and preservation of Government property in accordance with sound business practice and the applicable provisions of FAR Subpart 45.5.

Unfortunately, DCI lacked the resources to protect the property and the Government was forced to take action to prevent seizure and loss of the property.

The Government believes it has paid all the costs for the property in question and, therefore, has full right to protect its property and dispose of it as deemed appropriate. I disagree that DCI has any right to possess or utilize the equipment since the contract had unsuccessfully ended due to DCI's poor performance and the Government had paid up to its maximum liability. Furthermore, there was no evidence presented that DCI ever used its own funds to make payments on any of the costs that comprise its 26% share. Therefore, DCI's claim to recover $2,921,653.49 together with a reasonable profit of $438,248.02 is denied.

With respect to its Claim number 2, DCI asserts entitlement to recovery of " . . . $5,955,969.49 representing the total value of the Equipment that DCI had a right to possess and utilize in the formation of the Joint Venture which was wrongfully disposed of by DTRA together with a reasonable profit of $893,395.42 with respect to the Equipment and lost profits of $103,147,275.80." As stated above, the Government does not believe DCI has a right to possess and utilize the equipment and, therefore, denies the claim. In addition, the claim for lost profits is extremely speculative, at best, and inappropriate for payment by the Government.

Finally, DCI claims entitlement to settlement expenses in the amount of $137,191.74 plus interest. Since the Government believes there is no need for any additional settlement activities, this claim is denied as well.

This is the final decision of the Contracting officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedures for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Robert J. Bemben

Robert J. Bemben
Contracting Officer

cc: Mr. Alan C. Frederickson, President
Die Casters International, Inc.
One Spruce Terrace
Wayne, New Jersey 07470