property that was incorporated in the design of the Equipment and the development of its business plan.

13. Plaintiff advised Defendant of its business plan, which included the establishment of its distributorship rights with respect to products produced by the Joint Venture's Facility and its anticipated interests in future business enterprises.

14. In 1996, as a Contract requirement, Plaintiff submitted to Defendant its business plan detailing the "future business" activities of the Joint Venture. This business plan detailed the anticipated revenues to be derived by the Joint Venture from these "future business" activities.

15. In 1997, Plaintiff submitted a revised business plan to Defendant reflecting the new UJVP and other revised circumstances. Plaintiff's revised business plan detailed the operating and marketing plan for the Joint Venture based upon an additional $8,000,000 investment and provided detailed financial data including projected revenues and net income.

16. In 1999, Plaintiff supplemented its 1997 business plan to include an additional $50,000,000 investment. Plaintiff shared its supplemented business plan with certain Department of Defense and other officials of the Defendant.

17. The changes required to obtain a new Facility, to replace the original Facility and the changed UJVP, substantially impacted both the cost and the schedule of the Contract and further precipitated the need to find additional funding beyond the $4,100,427 available under the Contract.

18. Plaintiff proceeded in accordance with the terms and conditions of the Contract to acquire the Equipment, but expended all the Contract funding prior to shipping and installing the Equipment in the Facility.

19. Plaintiff stored the Equipment for its own account in Kiev, Ukraine and Tiraspol, Moldova, awaiting the additional funds which had been promised by Defendant that were needed by Plaintiff to ship and install the Equipment at the Facility.

20. By letter dated June 13, 2000, Defendant's Contracting Officer advised Plaintiff that it would close out the Contract in due course and that it would negotiate an "equitable distribution" of "all property produced or purchased under the contract, based upon the share of costs incurred by each party." (A copy of the letter is annexed hereto as Exhibit B).

21. At times subsequent to October of 2001, Defendant, acting through its authorized contractors, and without Plaintiff's consent, took possession and control of Equipment that was stored in Moldova and the Ukraine.

22. Defendant, again without Plaintiff's consent, through its contractor, shipped and delivered possession and control of the Equipment to the UJVP and other third parties.

23. By letter dated April 14, 2003, Plaintiff was advised by Defendant's Contracting Officer that the contract "is considered closed". (A copy of the letter is annexed hereto as Exhibit C).

24. By letter dated February 25, 2004, received by Defendant on February 26, 2004, Plaintiff filed its certified Claims together with pertinent information with respect to the Claims and requested Defendant's Contracting Officer to file a final decision on the Claims. (A copy of the letter is annexed hereto as Exhibit D).

25. By letter dated April 14, 2004, Defendant's Contracting Officer, acknowledged receipt of Plaintiff's claims and notified Plaintiff that "a final decision regarding your claims will be issued on or before June 30, 2004." (A copy of the letter is annexed hereto as Exhibit E).

26. By letter dated June 25, 2004, Defendant's Contracting Officer advised Plaintiff of his "final decision" denying all of Plaintiff's claims "in their entirety". (A copy of the letter is annexed hereto as Exhibit F).

**COUNT ONE - BREACH OF CONTRACT (FAILURE OF DEFENDANT TO PROVIDE PLAINTIFF WITH THE PLAINTIFF'S SHARE OF THE EQUITABLE DISTRIBUTION OF THE EQUIPMENT REQUIRED PURSUANT TO FAR 52.232-20(h)**

27. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 of the Complaint as if set forth fully herein.

28. At all times relevant hereto, Defendant's conduct was governed by the terms, conditions and requirements of the Contract.

29. The contract contains standard clause FAR 52.232.20 (Apr 1984), entitled Limitation of Cost.

30. Sub-section (h) of FAR 52.232-20 provides as follows:

> "If this contract is terminated or the estimated cost is not increased, the Government and the Contractor shall negotiate an equitable distribution of all property produced or purchased under the contract based upon the share of costs incurred by each."

31. The wrongful and illegal removal and disposition of the Equipment by Defendant as alleged in paragraphs 21 and 22 effectively terminated the Contract and pursuant to FAR 52.232-20(h) required the Defendant to negotiate with Plaintiff an "equitable distribution of all of the