UNITED STATES COURT OF FEDERAL CLAIMS
-------------------------------------------------------------------X

DIE CASTERS INTERNATIONAL, INC.,

Plaintiff,

No. 04-1113C
(Judge Braden)

-against-

UNITED STATES OF AMERICA,

Defendant.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

GOLDBERG & CONNOLLY
Attorneys for Defendant
66 North Village Avenue
Rockville Centre, New York 11570
(516)764-2800

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| A. Contract Award | 2 |
| B. Disposition of the Equipment | 3 |
| ARGUMENT | 6 |
| I. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT HAS MET ITS BURDEN IN DEMONSTRATING THAT NO GENUINE ISSUE OF FACT EXISTS | 6 |
| A. Standard for Summary Judgment | 6 |
| B. Application of Law to Undisputed Facts | 7 |
| 1. Applicability of FAR 52.232-20(h) | 7 |
| 2. Defendant's Failure to Negotiate | 8 |
| 3. Valuation of Plaintiff's Interest in the Equipment | 8 |
| CONCLUSION | 10 |



D:\MyFiles\DC1SummaryJudgmentBrief rev1.wpd - September 20, 2004

# TABLE OF AUTHORITIES


**CASES** **PAGE**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . 6, 7

Celotex Corp. v. Catrett, 477 U.S. 317, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . 6

L.W. Matteson, Inc. v. United States, 2004 U.S. Claims *Lexis* 175 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Salvador Cornejo-Ortega v. United States 2004 U.S. Claims *Lexis* 173 (2004)256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES**

41 USC 601 *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**COURT RULES**

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1. 6

**REGULATIONS**

FAR 33.201 *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FAR 52.232 - 20 (Apr 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 7, 8, 10

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in support of its Motion for Partial Summary Judgment pursuant to RCFC 56.

Pursuant to the Disputes Act of 1978 (41 USC 601 *et. seq.*) and FAR Subparagraph 33.2 (FAR 33.201 *et. seq.*), on February 25, 2004, Plaintiff filed with Defendant its certified claims which included the claim which is the basis for this Motion for Partial Summary Judgment. On June 25, 2004, the Defendant's Contracting Officer issued his "final decision" denying all of Plaintiff's claims.

Plaintiff filed its complaint in this action on July 6, 2004. Defendant filed its answer on September 17, 2004.

Count One of Plaintiff's complaint, which is the basis of this Motion for Partial Summary Judgement, seeks damages in the amount of $3,359,901.51, for breach of contract arising from Defendant's failure to negotiate and to provide Plaintiff with Plaintiff's share of the "equitable distribution" of the Equipment which Plaintiff designed and acquired under Contract DNA001-95-C-0169 (the "Contract") as required by FAR 52.232-20(h) (Frederickson Moving Aff., Ex. 1, Complaint at 6-7).

## BACKGROUND

### A. Contract Award

Plaintiff was incorporated on January 25, 1994, in the State of New Jersey. Its principal place of business is 1 Spruce Terrace, Wayne, NJ 07470. Plaintiff is and has always been a "small business" as that term is utilized in the Federal Acquisition Regulations ("FAR"). (Frederickson Moving Aff., ¶ 4 and 5).

After a competitive procurement, on October 27, 1995, Plaintiff was awarded Contract DNA001-95-C-0169 for Defense Conversion For The Ukraine (the "Contract"). The Contract was a Cost Sharing Contract with total Original Estimated Costs of $4,100,427.00 of which Defendant's Share was $3,034,316.00 and Plaintiff's Share was $1,066,111.00. ( Id., ¶ 6 and 7 ).

Pursuant to the Statement of Work ("SOW") which was incorporated by reference into the Contract, Plaintiff was to provide capital equipment, material, training and business assistance/advisory services (hereinafter referred to collectively as the "Equipment") to a joint venture ("Joint Venture") to be established between Plaintiff and a Ukrainian Joint Venture Partner ("UJVP"). The UJVP was to supply an existing die casting factory (the "Facility") which was to be improved by the installation of Equipment provided and designed by Plaintiff. The Joint Venture was to own and operate the modernized die casting Facility. The UJVP was identified in the SOW as Meridian Joint Stock Company ("Meridian"). Subsequently another Ukrainian company, Burevestnik (in association with another Ukrainian entity TechnoMet), was substituted for Meridian and became the UJVP. ( *Id.*, ¶ 8, 9, 11 and 12).

The SOW provided that the Joint Venture and the modernized Facility that it would create would "serve as the groundwork for future business and/or joint ventures." The Facility was to be the model for the establishment by the Joint Venture of other die casting facilities in the Ukraine. These future business relationships would have a very substantial financial benefit to Plaintiff and were the consideration for Plaintiff to enter into this cost sharing Contract. Plaintiff was required and did make substantial investments which included the continued development of its intellectual property that was incorporated in the design of the Equipment and its business plans. (*Id.*, ¶ 10).

**B. Disposition of the Equipment**

Plaintiff proceeded to acquire the Equipment and stored the Equipment for its own account in Kiev, Ukraine and Tiraspol, Moldova, awaiting additional funds, that were needed by Plaintiff to install the Equipment at the Facility. (*Id.*, ¶ 13 and 14). While the Equipment remained in storage in Kiev, Ukraine and Tiraspol Moldova, awaiting Defendant's decision on further funding or termination of the Contract, Defendant acknowledged and admitted, in a series of communications, that Plaintiff had rights in the Equipment and that, if the Contract was not continued, Plaintiff was entitled to an "equitable distribution" as required under FAR 52.232-20(h).

These admissions and acknowledgements included:

A. A May 5, 2000 Memorandum from Defendant's Director of Cooperative Threat Reduction Policy in which he recognized Plaintiff's interest in the Equipment. (*Id.*, ¶ 15 and Ex. 3).

B. A May 31, 2000 letter from Defendant's Contracting Officer advising Plaintiff that it "is understood that DCI and others may have a financial interest in the equipment". (*Id.*. ¶ 15 and Ex. 4).

C. A June 2, 2000 letter from Defendant's Contracting Officer reiterating to Plaintiff that "DTRA has no intention of disregarding DCI's interest in the equipment." (*Id.*, ¶ 15 and Ex. 5).

D. A June 4, 2000 telephone conversation with Plaintiff's counsel, during which Defendant's Contracting Officer acknowledged that Plaintiff had ownership rights in the Equipment. (*Id.*, ¶ 15 and Ex. 6).

E. A June 13, 2000 letter wherein Defendant's Contracting Officer advised Plaintiff that it would close out the Contract in due course and that it would negotiate an "equitable distribution" of "all property produced or purchased under the contract, based upon the share of costs incurred by each party". (*Id.*, ¶ 15 and Ex. B to the Complaint which is Ex. 1 to the Frederickson Moving Aff.).

F. A July 14, 2000 letter wherein Defendant requested Plaintiff to submit the acquisition costs and Plaintiff's contribution to same. Plaintiff responded by an e-mail of July

21, 2000. (*Id.,* ¶ 15 and Ex. 7). On July 21, 2000, Defendant's Contracting Officer, during a telephone conversation, acknowledged the receipt and sufficiency of Plaintiff's e-mail of July 21, 2000.

At times subsequent to October of 2001, Defendant, acting through its authorized contractors, and without Plaintiff's consent, took possession of Equipment that was stored in Moldova and the Ukraine. Furthermore, and again without Plaintiff's consent, Defendant, through its contractors, shipped and delivered possession of the Equipment to the UJVP and other third parties. Plaintiff believes that Defendant did not receive any payment or other compensation from the parties to whom Defendant's contractor delivered the Equipment. (*Id.,* ¶ 16 and 17). Thereafter, by letter dated April 14, 2003, Plaintiff was advised by Defendant that the Contract "is considered closed". (*Id.,* ¶ 18).

Notwithstanding Defendant's numerous acknowledgements and admissions of Plaintiff's interests in the Equipment and the applicability of FAR 52.232-20 and the required "equitable distribution" thereunder, Defendant has repeatedly rejected Plaintiff's demands to negotiate and/or provide Plaintiff with its share of the required "equitable distribution". (*Id.,* ¶ 30).

## ARGUMENT

## POINT I

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT HAS MET ITS BURDEN IN DEMONSTRATING THAT NO GENUINE ISSUE OF FACT EXISTS

### A. Standard for Summary Judgment

Summary judgment shall be granted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." RCFC 56(c). The burden rests on the party seeking summary judgment to show that no genuine issue of fact exists. *See Salvador Cornejo-Ortega v. United States*, 2004 U.S. Claims *Lexis* 173 at *5-*6 (2004). However, once the moving party meets this burden, the burden will shift to the nonmoving party to show that a genuine issue exists. *See id.* In order to defeat a summary judgment motion, the nonmoving party must demonstrate more than some doubt as to the material facts and "cannot rely on conclusory statements or assertions." *L.W. Matteson, Inc. v. United States*, 2004 U.S. Claims *Lexis* 175 at 27 (2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 –52, 106 S.Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Furthermore, "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . ." (*Matteson, supra,* at 25) (Citing *Anderson*, 477 U.S. 242, 247). "Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." (*Anderson, supra,* at 248).

**B. <u>Application of Law to Undisputed Facts</u>**

In the present case, plaintiff is entitled to summary judgment because there is no genuine issue as to any material fact regarding Plaintiff's entitlement to its "equitable distribution" pursuant to FAR 52.232-20(h). The application of the law to the undisputed facts is very simple and straightforward with respect to cause of action embodied in Count One of the complaint, the basis of this Motion for Partial Summary Judgment.

1. **Applicability of FAR 52.232-20(h):**

The contract contained a provision (Subsection (h) of FAR 52.232-20), that specifically addressed the rights of the parties in the event the Contract was "terminated or the estimated cost is not increased". (Frederickson Moving Aff. ¶ 19 and 20). Defendant's actions of wrongfully and illegally removing the Equipment from Plaintiff's bailee, without Plaintiff's consent, and delivering it to third parties, effectively terminated the Contract and triggered the provisions of FAR 52.232-20(h). (*Id.*, ¶ 21). Defendant's Contracting Officer explicitly admitted the application of FAR 52.232-20(h) as part of the closeout of the Contract (*Id.*, ¶ 15 (E) and Exhibit B to the Complaint which is Exhibit 1 to Frederickson Moving Aff.). In addition, Defendant, on no less than five other occasions, admitted that Plaintiff had an interest in the Equipment which Defendant would recognize in the event the Contract is terminated. (*Id.*, ¶ 15).

2. **Defendant's failure to negotiate:**

FAR 52.232-20(h) provides in the event the Contract "is terminated or the "estimated cost is not increased" the parties to the Contract were to negotiate an "equitable distribution". (*Id.*, ¶ 20). Defendant, although recognizing the application of this FAR provision (Supra.), has steadfastly refused to enter into such negotiations that would lead to Plaintiff receiving its required share of the "equitable distribution". (*Id.*, ¶ 22).

3. **Valuation of Plaintiff's interest in the equipment:**

FAR 52.232-20(h) requires that the "equitable distribution" be "based upon the share of costs incurred by each" party to the Contract. (*Id.*, ¶ 20). The total costs incurred under the Contract were $5,955,933.32 (*Id.*, ¶ 27). Defendant reimbursed the Plaintiff $3,034,316.00, leaving Plaintiff incurred costs of $2,921,653.49. (*Id.*)

While this FAR provision explicitly anticipates that if the Contract were terminated the Equipment would be available to be distributed to the parties based upon the negotiations, the illegal and wrongful acts of Defendant of unilaterally disposing of the equipment precluded such a distribution. To make matters worse, Defendant apparently received no consideration for the equipment it illegally disposed of and, therefore, there are not even proceeds of the sale of the Equipment to equitably distribute. (*Id.*, ¶ 17).

The only way for Plaintiff to recover its interest in the Equipment is for this Court to award damages based upon the market value of the Equipment as of the time the Contract was effectively terminated. Since the Equipment is unique and is not available to be offered in the

marketplace to obtain a market value, the only practical valuation would be on the basis of its cost, i.e., the costs incurred of $5,955,933.32, notwithstanding the fact that the market value of the Equipment was equal or greater than the costs incurred. (*Id.*, ¶ 25 and 26). Utilizing Plaintiff's investment in the Equipment, as reflected in its share of the unreimbursed incurred costs of $2,921,653.49, Plaintiff is entitled to receive a damage award in lieu of its equitable adjustment of $3,359,901.51, which includes a reasonable profit of $438,248.02.

Finally, the validity and allowability of the vast majority of the incurred costs is indisputable insomuch as 84% of these costs have been previously audited by DCAA. The only reason the remaining 16% haven't been audited is because Defendant has ignored Plaintiff's requests to allow DCAA to complete its audit. (*Id.*, ¶ 28 and 29).

## CONCLUSION

Defendant's (i) breach of its admitted contractual obligations pursuant to 52.232-20(h) to negotiate an "equitable distribution" of the Equipment, (ii) illegal and wrongful actions of unilaterally disposing of the Equipment, (iii) failure to compensate Plaintiff for Plaintiff's interests in the Equipment and (iv) failure to allege facts sufficient to raise the issues with respect to its affirmative defenses of failure of consideration and estoppel, entitle Plaintiff to Summary Judgment on Count One of the Complaint in the amount of $3,359,901.51.

Dated: Rockville Centre, New York
September 21, 2004

Respectfully submitted,

GOLDBERG & CONNOLLY

By: ______________________
Gary Marcus
Attorney for Plaintiff
66 North Village Avenue
Rockville Centre, New York 11570
Telephone No. (516) 764-2800
Fax No. (516) 764-2827