No. 04-1113C
(JUDGE BRADEN)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DIE CASTERS INTERNATIONAL, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Defense Threat Reduction Agency

Dated: November 18, 2004

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 2

Nature Of The Case . . . . . . . . . . . . . . . . . . . . . 2

Statement Of The Issues . . . . . . . . . . . . . . . . . . 2

Statement Of Facts . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. DCI Is Not Entitled To Summary Judgment Upon The Issue Of Whether DTRA wrongfully Removed Contract Equipment And Failed To Negotiate An Equitable Interest With DCI Because There Are Genuine Issues Of Fact To Be Decided By The Court . . . . . . . . . . . . . . . . . . . . . . . . 9

II. DCI's Claim That DTRA Wrongfully Removed The Equipment And Failed To Negotiate An Equitable Share Of The Equipment Is Barred By The Doctrine Of Estoppel . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES


| CASE | PAGE(S) |
|---|---|
| Algonac Manufacturing Co. v. United States, 192 Ct. Cl. 649, 428 F.2d 1241 (1970) . . . . . . . . . . | 12 |
| American General Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54 (1978) . . . . . . . . . . . | 12 |
| Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . | 10 |
| Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . | 10, 11 |
| Emeco Industries, Inc. v. United States, 202 Ct. Cl. 1006, 485 F.2d 652 (1973) . . . . . . . . . . | 14 |
| Firestone Tire & Rubber Co. v. United States, 195 Ct. Cl. 21, 444 F.2d 547 (1971) . . . . . . . . . . . | 13 |
| Kilmer Village Corp. v. United States, 139 Ct. Cl. 231, 153 F. Supp. 393 (1957) . . . . . . . . | 13 |
| Pacific Gas & Electric Co. v. United States, 3 Cl. Ct. 329 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . | 13 |
| Ran-Paige Co. v. United States, 35 Fed. Cl. 117 (1996) . . . . . . . . . . . . . . . . | 14 |
| Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . | 10 |
| United International Investigative Services v. United States, 33 Fed. Cl. 363 (1995) . . . . . . . . . . . . . . . . | 15 |
| United States v. William Cramp & Sons Ship & Engine Building Co., 206 U.S. 118 (1907) . . . . . . . . . . . . . . . . . . | 15 |

## STATUTES AND REGULATIONS

**PAGE(S)**

48 C.F.R. § 52.216-7 . . . . . . . . . . . . . . . . . . . . 3, 4

48 C.F.R. § 52.232-20 . . . . . . . . . . . . . . . . . . . . 4, 5

48 C.F.R. § 52.245-5 . . . . . . . . . . . . . . . . . . 8, 9, 13

## MISCELLANEOUS

Fed. Rule Civ. Proc. 1 . . . . . . . . . . . . . . . . . . . . 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1113C |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S AMENDED
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant opposes the motion for partial summary judgment brought by plaintiff, Die Casters, Inc. ("DCI"), upon the grounds that DCI is not entitled to partial summary judgment because there are material issues of fact in dispute that would preclude finding summary judgment in favor of DCI. However, defendant respectfully cross-moves for an order granting the United States summary judgment, pursuant to Rule 56(b) of the Rules of the Court of Federal Claims, upon the grounds that there is no genuine issue as to any material fact that would preclude a finding of summary judgment in favor of defendant and that defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon the pleadings, our brief, our proposed findings of uncontroverted fact, and the attached appendix.

DEFENDANT'S BRIEF

Nature Of The Case

DCI seeks damages in the amount of $113,356,542.22 against the United States based upon actions arising from a contract awarded to it by the former Defense Nuclear Agency, subsequently succeeded first by the Defense Special Weapons Agency and later by the Defense Threat Reduction Agency ("DTRA"), to establish a joint venture in Ukraine for the purpose of converting and privatizing Ukraine's defense-related manufacturing base to commercial production of consumer products, primarily in the die casting industry. The Government paid DCI the full amount that the Government was obligated to pay under the contract, but DCI failed to contribute its full share, failed to establish the joint venture, and failed to deliver certain required equipment to Ukraine. Nevertheless, DCI alleges, among other things, that the United States breached the contract by taking possession of the equipment that DCI was contractually required to obtain, and by failing to negotiate or to provide DCI with an equitable distribution share of the equipment.

Statement Of The Issues

1. Whether DCI is entitled to summary judgment upon its claim that the Government wrongfully removed equipment and failed to negotiate with DCI an equitable interest in the equipment.

2. Whether DCI is estopped from claiming that DTRA breached the contract by wrongfully removing the equipment and failing to negotiate an equitable distribution share of the equipment.

## Statement Of Facts

DCI was awarded Contract DNA001-95-C-0169 ("Contract") on October 27, 1995. CP., Exhibit A.[1] The Contract required DCI to create a joint venture with a Ukrainian company to establish a die casting business within twenty-four months after award. Creating the joint venture entailed, among other things, acquiring and installing die casting machinery in a facility located in Ukraine in partnership with a company in Ukraine. Id. The Contract was a cost sharing arrangement in which DCI agreed to contribute $1,066,111.00, approximately 26 percent, and the Government was to fund $3,034,316.00, approximately 74 percent, of Contract costs in the total amount of $4,100,427.00. Id.

The contract contained a clause entitled "ALLOWABLE COST AND PAYMENT," FAR 52.216-7 (JUL 1991), which provided:

> The Government shall make progress payments to the Contractor when requested as work progresses, but (except for small business concerns) not more often than once every two weeks, in **amounts determined to be allowable by the Contracting Officer in accordance with Subpart 31.2 of the Federal Acquisition Regulation** in effect on the date of this contract and the terms of this contract.

CP., Exhibit A at 9; 48 C.F.R. § 52.216-7 (emphasis added). The

[1] "CP." is a citation to the complaint in this case.

exception for small business invoicing included in the clause allows payments to be made more frequently and further permits the contractor to " . . . invoice and be paid for items or services purchased directly for the contract, even though the concern has **not yet paid** for those items or services." Id. (emphasis added).

Paragraph 1.c. of Section B of the contract required that: "Invoices or public vouchers submitted in accordance with the clause of this contract entitled ALLOWABLE COST AND PAYMENT shall include **all costs experienced by the Contractor** for the period represented by the voucher, and **all such costs shall be subject to audit.**" CP., Exhibit A at 2 (emphasis added).

The contract also contained a clause entitled "LIMITATION OF COST," FAR 52.232-20 (APR 1984), which provided that: "The Government is not obligated to reimburse the Contractor for costs incurred in excess of . . . (i) if this is a cost-sharing contract, the estimated cost to the Government specified in the Schedule . . ." CP., Exhibit A at 10; 48 C.F.R. § 52.232-20.

In addition, the contract contained a clause that states, in pertinent part, that: "Title and ownership of all property, equipment and materials acquired with U.S. Government funding under this Contract shall **vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer.**" CP., Exhibit A at 8 (emphasis added).

The Contract also included a clause entitled "GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME –AND-MATERIAL, OR LABOR-HOUR CONTRACTS)," FAR 52.245-5 (JAN 1986), which provided: "Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract **shall pass to and vest in the Government upon the vendor's delivery** of such property." Def. App. 74; 48 C.F.R. § 52.245-5 (emphasis added).

On March 15, 1996, almost five months after award of the contract, DCI's Executive Vice-President and Chief Financial Officer, C.W. Maillefert, wrote to the contracting officer ("CO") informing him that DCI was experiencing serious problems that "may impede or impair its ability to implement the contract, including, *inter alia*, the resignation of certain key officers and employees." Def. App. 1.[2] The March 15, 1996 letter stated that "[a]s a result of irreconcilable differences with senior management over personnel matters, the manner in which resources are being obligated and the overall implementation of the project, together with the demonstrable lack of progress in obtaining financing required to cover DCI's cost share and to pay salaries, three of the Company's four full time employees and one of its part time employees intend to resign immediately." Id.

[2] "Def. App." is a citation to the appendix attached to our brief.

The employees included the Chief Financial Officer, the Corporate Counsel, another attorney who spoke Russian and was responsible for legal matters in Ukraine, and DCI's Vice-President for Ukraine Operations who was responsible for implementation of the joint venture facility rehabilitation. Def. App. 1-2. The letter also described DCI's inability to finance its share of the costs associated with the contract through February 1996, with no reasonable prospect to improve its situation to complete the project. Def. App. 1-3.

Concerned about this situation, the CO met with DCI's president, Alan C. Frederickson, who convinced the CO that he was taking steps "to enable DCI to perform successfully" under the Contract. Def. App. 4. These steps included hiring new personnel, receiving quotes for equipment to be purchased, and finding financial sources to invest in DCI. Def. App. 4-6.

However, those efforts were not fruitful. DCI acquired the equipment, but failed to establish the joint venture or deliver all of the equipment to Ukraine within the contract performance period, which originally was scheduled to end on October 27, 1997. Def. App. 8-9.

On October 8, 1997, DCI requested a no-cost extension of the Contract "through January, 1998" to submit additional billings. Def. App. 13. The request specifically stated "Please note that this request does not request additional funding, as we can

complete the contract within the allocated funds originally authorized." Id. By a modification to the Contract, P00002, DCI was given until January 30, 1998, to complete the contract performance requirements, but no additional funds. Def. App. 12-16.

DCI submitted vouchers from time to time during the course of the Contract. DCI's vouchers reflected its total expenses for the applicable calendar years as follows: 1995, $108,123, Def. App. 19, 22; 1996, $637,259, Def. App. 28; 1997, $3,010,548, Def. App. 40; and 1998, $340,362. Def. App. 52.

The total amount billed was $4,096,292. Of that amount, the United States reimbursed DCI in the total amount of $3,034,316, the maximum amount required under the Contract. Def. App. 8. The difference between the amount that DCI billed ($4,096,292) and the amount DCI was reimbursed by DTRA ($3,034,316) is $1,061,976, or $4,135 less than DCI's required cost share under the Contract.

However, DCI's invoices were audited by the Defense Contract Audit Agency ("DCAA") to determine whether the recorded and billed costs were allowable in accordance with the Allowable Cost and Payment clause and FAR Subpart 31.2. Def. App. 17-59. The allowable costs were significantly less than the amount DCI was reimbursed: 1995, $87,043, Def. App. 22; 1996, $438,314, Def. App. 28; 1997, $2,113,359, Def. App. 40; and 1998, $7,133. Def.

App. 52. The total amount allowed was $2,645,849.

The difference between the amounts billed and the amounts deemed allowable results in part from DCI's practice of having its employees and suppliers discount their invoices by 26 percent (DCI's share of costs expressed as a percentage) while recording the full amount of costs as if they had been paid. Def. App. 23, 32-33, 42-43, 55. There is no evidence that DCI ever paid its 26 percent share of the total costs.

Further, DCI still did not succeed in establishing a viable joint venture even with the additional period of time allowed by Modification P00002. Def. App. 9. The first proposed joint venture partner, Meridian, was a company "with no die cast experience and no viable contribution other than a building." Def. App. 62. Also, Meridian "pulled out of the project in 1997." Id. The second proposed joint venture partner, Burevestnik, had "significant die cast experience, and skilled management, in an on-going, profitable die cast business." Id. However, DCI never consummated a joint venture relationship with Burevestnik. Def. App. 9. Thus, no entity was available to assume title to the equipment that DCI purchased with Government funds, other than the United States, pursuant to the Government Property clause, FAR 52.245-5 (JAN 1986). Def. App. 74; 48 C.F.R. § 52.245-5 (emphasis added).

Some of the equipment that DCI purchased was temporarily imported to Moldava, where DCI caused modifications to be made. Def. App. 60, 63-64. However, DCI never shipped the equipment to Ukraine. Id. Instead, DCI notified DTRA that Moldavian customs intended to confiscate the equipment because it had been retained in Moldava for a period longer than permitted under a temporary import license. Id. Subsequently, DTRA paid the cost to ship the equipment to Ukraine to ensure that the equipment located in Moldava was safeguarded. Def. App. 64. DTRA also was required to pay storage fees for the equipment located in Ukraine. Id.

Ultimately, custody of the equipment was given to Burevestnik, DCI's proposed joint venture partner. Id. Title to the equipment remains with the United States at this time. Id.

## ARGUMENT

### I. DCI Is Not Entitled To Summary Judgment Upon The Issue Of Whether DTRA wrongfully Removed Contract Equipment And Failed To Negotiate An Equitable Interest With DCI Because There Are Genuine Issues Of Fact To Be Decided By The Court

DCI claims that it is entitled to summary judgment for breach of contract because the Government wrongfully removed the equipment acquired under the Contract from DCI's bailee, without DCI's consent, delivered the equipment to third parties, and failed to negotiate DCI's interest in the equipment. Pl. Br. at 1, 8.[3] DCI's contention is without merit because DCI is wrong

[3] "Pl. Br." is a citation to DCI's Memorandum Of Law In Support Of Its Motion For Partial Summary Judgment.

and there are genuine issues of material fact involved in the determination of that issue by the Court.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Celotex Corp. v. Catrett, 477 U. S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). A dispute is genuine only if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. Id. at 248; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

The Supreme Court has determined that summary judgment must be viewed as an "integral part of the Federal Rules as a whole, which are designed 'to secure the just speedy and inexpensive determination of every action.' Fed. Rule Civ. Proc. 1 . . . ." Celotex, 477 U.S. at 327; accord Sweats Fashions, Inc., 833 F.2d at 1562. Thus, Rule 56 must be construed to preserve defendant's right to demonstrate prior to trial that a plaintiff's claims lack factual basis. Celotex, 477 U.S. at 327.

First, whether DCI consented to the release of the equipment is irrelevant. Some of the equipment was in jeopardy of being confiscated by the Moldavian government because DCI allowed the equipment to remain in Moldava longer than permitted as a result of DCI's failure to ship the equipment to Ukraine in a timely manner. Def. App. 60, 63-64. Therefore, taking the equipment was not wrongful. To the contrary, it was necessary because, had DTRA not rescued the equipment, neither DCI nor DTRA would have it; it would be in the hands of the Moldavian government. DTRA shipped that equipment from Moldava to Ukraine and provided it to DCI's proposed joint venture partner, Burevestnik, which was the object of the Contract. Id. DTRA also provided the equipment in storage in Ukraine to Burevisnik rather than continue to pay storage fees for it, a duty of DCI that DCI was unable to perform. Id.

Second, whether DCI had any financial interest in the equipment also is disputed. If DCI had no financial interest in the equipment, there was nothing to negotiate. According to DCAA's audits, the total allowable costs submitted by DCI was $2,645,849, which was $388,467 less than the maximum allowed amount of $3,034,316 paid to DCI by DTRA, under the Contract. Def. App. 17-59.

DCI's version of the facts that it expended $5,955,933.32, $1,859,641.32 more than the total of its invoices, and that these

expenditures were for costs allowable under FAR Subpart 31.2, is directly contradicted by DCAA's audits. Thus, there is a fundamental difference with respect to a material fact regarding DCI's financial contribution sufficient to deny partial summary judgment to DCI.

DCI's contentions that the Government admitted DCI is entitled to an equitable share is mistaken. The Government's position was that DCI "**may** have a financial interest in the equipment." Def. App. 73. Further, that position was prior to the series of DCAA audits that revealed DCI's questionable practice of billing for all costs, even though 26 percent of the costs (DCI's share) were not in fact paid either prior to the billing, which a small business is entitled to do, or ever.

DCI also offers no basis for its implication that the contract ceiling was increased above $4,100,316.00, inclusive of DCI’s share of costs. Certainly, there was no contract modification to that effect.

It is well-settled that no implied-in-fact agreement can exist where there is an express, written agreement between the parties. See Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 673, 428 F.2d 1241, 1255 (1970); see also American General Leasing, Inc. v. United States, 218 Ct. Cl. 367, 373, 587 F.2d 54, 58 (1978). Extensive negotiations, which the parties hope will lead to an agreement, do not create an implied-in-fact

contract. Pacific Gas & Electric Co. v. United States, 3 Cl. Ct. 329, 339 (1983), aff'd, 738 F. 2d 452 (Fed. Cir. 1984)(table); see also, Kilmer Village Corp. v. United States, 139 Ct. Cl. 231, 236, 153 F. Supp. 393, 397 (1957) (negotiations and efforts by plaintiffs in developing idea and proposals for housing project lease that were agreed upon and accepted by Army did not ripen into implied-in-fact contract in absence of final approval). Moreover, contract interpretation cannot rest upon a party's subjective belief concerning what the contract entails. See, e.g., Firestone Tire & Rubber Co. v. United States, 195 Ct. Cl. 21, 30, 444 F.2d 547, 551 (1971) ("unexpressed, subjective unilateral intent of one party is insufficient to bind the other contracting party").

Third, DCI failed to satisfy its obligations under the Contract because it failed to establish a viable joint venture. As the contract stated, "Title and ownership of all property, equipment and materials acquired with U.S. Government funding under this Contract shall **vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer**." CP., Exhibit A at 8 (emphasis added). Without a viable joint venture, there was no entity to take legal possession of the equipment other than the United States, pursuant to the Government Property Clause of the Contract. Def. App. 74; 48 C.F.R. § 52.245-5.

Accordingly, DCI is not entitled to partial summary judgment upon the issue of whether the Government breached the Contract by allegedly removing the equipment wrongfully and failing to negotiate with DCI an equitable distribution share of the equipment.

II. DCI's Claim That DTRA Wrongfully Removed The Equipment And Failed To Negotiate An Equitable Share Of The Equipment Is Barred By The Doctrine Of Estoppel

As this Court previously has stated: "[t]he elements of equitable estoppel are (1) misleading conduct, which may include silence and inaction; (2) reliance on this conduct; and (3) material prejudice if the delayed assertion is permitted." Ran-Paige Co. v. United States, 35 Fed. Cl. 117, 122 (1996) (citing Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc., 971 F.2d 732, 734, reh'g denied (Fed. Cir. 1992); see also Emeco Industries, Inc. v. United States, 202 Ct. Cl. 1006, 1015, 485 F.2d 652, 657 (1973) ("It is not, however, essential that the party against whom an estoppel is urged to have made a representation of any kind.").

Here, DCI had represented to DTRA in March 1996 that it could perform the Contract successfully despite its loss of key personnel and financial problems. Def. App. 4-6. Again in October 1997, near the end of the original Contract schedule, DCI represented that it was not seeking any increase in the Contract funding when it requested an extension of time for Contract

performance. Def. App. 13. DTRA relied upon those representations when it allowed DCI to continue the Contract and when it granted DCI a modification to the Contract, extending the time for performance through January 1998, as requested by DCI. Def. App. 12-16.

It is well-settled that reservations of a right or claim for damage must be made manifest and explicit. United Int'l Investigative Servs. v. United States, 33 Fed. Cl. 363, 367 (1995); see also, United States v. William Cramp & Sons Ship & Engine Bldg. Co., 206 U.S. 118, 128 (1907) ("If parties intend to leave some things open and unsettled their intent so to do should be made manifest.").

However, DCI subsequently notified DTRA that the equipment in Moldava was in jeopardy of being confiscated by the Moldavian government as a result of DCI's failure to ship the equipment to Ukraine in a timely manner. Def. App. 60, 63-64. DCI apparently was financially unable to ship the equipment to Ukraine and pay any remaining costs for the equipment. Therefore, DCI was powerless to stop the equipment from being confiscated. In addition, DCI was unable to pay storage fees for the equipment located in Ukraine. Def. App. 64. DTRA was forced to pay for those storage fees. Id. There was no evidence that DCI had any ability to safeguard the equipment at any location.

Essentially, DTRA completed the Contract for DCI. The only obligation that remained was for DCI to consummate the joint venture agreement with Burevestnik, a duty DCI was obligated to perform and only DCI could complete. Therefore, to now allow DCI to claim that it was entitled to additional funding or that it could have and would have safeguarded the equipment would result in material prejudice to DTRA.

Accordingly, DCI is estopped from claiming that DTRA wrongfully removed the equipment and failed to negotiate with DCI an equitable share of the equipment.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny DCI's amended motion for partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ *Mark A. Melnick*
MARK A. MELNICK
Assistant Director

/s/ *William K. Olivier*
WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Defense Threat Reduction Agency

Dated: November 18, 2004