**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1113C |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS AND DEFENDANT'S ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to Rule 56 (h)(2) of the Rules of the United States Court of Federal Claims, defendant submits these responses to plaintiff's proposed findings of uncontroverted facts and defendant's additional proposed findings of uncontroverted facts in support of defendant's cross-motion for summary judgment. To the extent that defendant agrees or does not disagree with any of plaintiff's proposed findings of fact, defendant does so solely for the purposes of these cross-motions for summary judgment and reserves the right to controvert any or all of plaintiff's proposed findings of fact should this matter proceed to trial.

I. Plaintiff's Proposed Findings Of Fact And Defendant's Responses

1. Plaintiff, is a corporation existing under the laws of the State of New Jersey. (Frederickson Moving Aff., ¶ 4).

Defendant does not disagree with the above proposed finding of fact.

2. Plaintiff is a small business, as that term is utilized in the relevant Federal Acquisition Regulations ("FAR").

(Frederickson Moving Aff., ¶ 5).

Defendant does not disagree with the above proposed finding of fact.

3. On October 27, 1995, defendant awarded the Contract DNA 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 ("Contract") to plaintiff. (Frederickson Moving Aff., ¶ 6).

Defendant agrees with the above proposed finding of fact.

4. The Contract was a cost sharing contract with total original estimated costs of $4,100,427.00 of which Defendant's share was $3,034,316.00 and Plaintiff's share was $1,066,111.00. (Frederickson Moving Aff., ¶ 7).

Defendant agrees with the above proposed finding of fact.

5. Under the Contract, plaintiff was to provide capital equipment, material, training and business assistance/advisory services (hereinafter referred to collectively as the "Equipment") to a joint venture (hereinafter the "Joint Venture") to be established between plaintiff and a Ukrainian Joint Venture Partner ("UJVP"). The UJVP was to supply an existing die casting factory ("Facility") which was to be improved by the installation of the Equipment designed and provided by plaintiff. The Joint Venture was to own and operate the modernized die casting Facility. (Frederickson Moving Aff., ¶ 8).

Defendant disagrees with plaintiff's description of the "equipment" to be provided under the Contract. The only

"equipment" that properly is the subject of this dispute is capital equipment. Def. App. 65-72.[1] Therefore, defendant would restate the proposed finding as follows:

Under the Contract, plaintiff was to provide capital equipment, material, training and business assistance/advisory services to a joint venture ("Joint Venture") to be established between plaintiff and a Ukrainian Joint Venture Partner ("UJVP"). The UJVP was to supply an existing die casting factory ("Facility") which was to be improved by the installation of the equipment designed and provided by plaintiff. The Joint Venture was to own and operate the modernized die casting Facility. CP., Exhibit A.

6. Plaintiff was required to make substantial investments which included the continued development of its intellectual property that was incorporated in the design of the equipment and its business plans. (Frederickson Moving Aff., ¶ 10).

Defendant does not disagree with the above proposed finding of fact.

7. Plaintiff proceeded to perform in accordance with the terms and conditions of the Contract to acquire and provide the equipment, but expended all the Contract funding prior to

---

[1] "Def. App." is a citation to defendant's appendix attached to defendant's response to plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment. "CP." is a citation to the complaint in this case.

shipping and installing the equipment in the Facility. (Frederickson Moving Aff., ¶ 14).

Defendant agrees with the above proposed finding of fact.

8. Plaintiff had the equipment stored for its own account in Kiev, Ukraine and Tiraspol, Moldova. (Frederickson Moving Aff., ¶ 14).

Defendant agrees with the above proposed finding of fact.

9. At various times while the equipment was in storage in Kiev, Ukraine and Tiraspol, Moldova, defendant acknowledged and admitted plaintiff's interests in the equipment and the application of FAR 52.232-20 to the disposition of the equipment, if the Contract were to be terminated. (Frederickson Moving Aff., ¶ 15). These admissions and acknowledgments include the following:

A. A May 5, 2000 Memorandum in which defendant's Director of Cooperative Threat Reduction Policy recognized plaintiff's interest in the equipment. (Frederickson Moving Aff., ¶ 15A).

B. A May 31, 2000 letter from defendant's Contracting Officer which advised Plaintiff that it "is understood that DCI and others may have a financial interest in the equipment." (Frederickson Moving Aff., ¶ 15B).

C. A June 2, 2000 letter from defendant's Contracting Officer reiterating to plaintiff that "DTRA has no intention of

disregarding DCI's interest in the equipment." (Frederickson Moving Aff., ¶ 15C).

D. A June 4, 2000 telephone conversation in which defendant's Contracting Officer acknowledged that plaintiff had ownership rights in the equipment. (Frederickson Moving Aff., ¶15D).

E. A June 13, 2000 letter from defendant's Contracting Officer advising Plaintiff that it would close out the Contract in due course and that it would negotiate an "equitable distribution" of "all property produced or purchased under the contract, based upon the share of costs incurred by each party." (Frederickson Moving Aff., ¶ 15E).

F. A July 14, 2000 letter from defendant requesting plaintiff to submit the acquisition costs and plaintiff's contribution to same. Plaintiff responded by an e-mail of July 21, 2000. Defendant's Contracting Officer, on July 21, 2000, acknowledged the receipt and sufficiency of plaintiff's e-mail of July 21, 2000. (Frederickson Moving Aff., ¶ 15F).

Defendant does not disagree with the above proposed findings of fact to the extent that the term "equipment" is limited to certain capital equipment listed in defendant's appendix. Def. App. 65-72. However, defendant notes that all of the above documents relied upon by plaintiff predated the majority of the Defense Contract Audit Agency's ("DCAA") audit reports in which

plaintiff's financial contribution was questioned. Def. App. 24-59. Therefore, defendant disagrees that it has admitted that plaintiff has a valid financial interest in the equipment.

10. Subsequent to October of 2001, defendant, acting through its authorized contractors, and without plaintiff's consent, took possession and control of equipment that was stored in Moldova and the Ukraine. (Frederickson Moving Aff., ¶ 16).

Defendant does not disagree with the above proposed finding of fact. However, defendant notes that defendant took possession of the equipment in order to safeguard the equipment and transport it to its contractually specified destination, a task plaintiff was unable to perform even though it was plaintiff's duty to perform. Def. App. 60, 63-72.

11. Defendant, without plaintiff's consent, shipped and delivered through its contractor, possession and control of the equipment to the UJVP and other third parties. (Frederickson Moving Aff., ¶ 17).

Defendant does not agree with the above proposed finding of fact. Def. App. 60, 63-72. Defendant would restate it as follows: Defendant shipped and delivered, through its contractor, possession and control of the equipment to Burevestnik, the proposed joint venture partner that plaintiff had identified, pursuant to the Contract requirements that plaintiff was duty bound to abide by, because plaintiff was

unable or unwilling to do so.

12. Plaintiff did not receive any payments or other compensation from the party or parties to whom defendant's contractor delivered the equipment. (Frederickson Moving Aff., ¶ 17).

Defendant has no knowledge of whether plaintiff received any payment or compensation from Burevestnik, to whom defendant delivered the equipment.

13. On April 14, 2003, plaintiff was advised by defendant's Contracting Officer that the contract "is considered closed". (Frederickson Moving Aff., ¶ 18).

Defendant does not disagree with the above proposed finding of fact. However, defendant notes that defendant had contributed the maximum amount defendant was obligated to contribute to the contract and the equipment had been delivered to its contractual destination. CP., Exhibit A; Def. App. 9. The Contract stated, "at the end of this effort, defined as the time that when U.S. Government funding has been utilized." CP., Exhibit A, I. Statement of Work Requirements, paragraph 2.2.4. Therefore, any remaining activity to be performed by plaintiff was extra-contractual.

14. The Contract incorporates by reference FAR clause 52.232.20 (Apr 1984), entitled Limitation of Cost. (Frederickson Moving Aff., ¶19).

Defendant agrees with the above proposed finding of fact.

15. Sub-section (h) of FAR 52.232-20 provides that: "If this contract is terminated or the estimated cost is not increased, the Government and the Contractor shall negotiate an equitable distribution of all property produced or purchased under the contract based upon the share of costs incurred by each." (Frederickson Moving Aff., ¶ 20).

Defendant agrees with the above proposed finding of fact. However, defendant notes that the contract was deemed completed, not terminated, because the contract performance period had expired and all authorized funds had been utilized. Def. App. 9; CP., Exhibit A, section I, paragraph 2.2.4.

16. The removal and disposition of the equipment by defendant has effectively terminated the Contract. (Frederickson Moving Aff., ¶ 21).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law, not a statement of fact. In any event, defendant would restate it as follows: The removal and disposition of the equipment by defendant has effectively completed the Contract. Def. App. 9.

17. Upon termination of the Contract, FAR 52.232-20(h) required defendant to negotiate with plaintiff an "equitable distribution of all of the property produced or purchased under the contract based upon the share of costs incurred by each."

(Frederickson Moving Aff., ¶21).

Defendant does not disagree with the above proposed finding of fact because it constitutes a conclusion of law, not a statement of fact. Defendant would restate it as follows: FAR 52.232-20(h) required defendant to negotiate with plaintiff an "equitable distribution of all of the property produced or purchased under the contract based upon the share of costs incurred by each," if the Contract was terminated.

18. Defendant has continued to refuse to enter into such negotiations or to provide plaintiff with its share of an "equitable distribution", although plaintiff has on numerous occasions requested such negotiations and receipt of its "equitable distribution." (Frederickson Moving Aff., ¶ 22).

Defendant does not agree with the above proposed finding of fact. Defendant would restate it as follows: Defendant has not entered into such negotiations or provided plaintiff with an "equitable distribution" share, although plaintiff has on numerous occasions requested such negotiations and receipt of an "equitable distribution" share.

19. Defendant's unilateral actions of removing and disposing of the equipment, without receiving any compensation, have precluded plaintiff from attempting to establish a market value for the equipment by offering to sell same in the market place. (Frederickson Moving Aff., ¶ 23).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law. Defendant states that the Contract has precluded plaintiff from selling the equipment in the market place, not defendant's actions. CP., Exhibit A.

20. Insomuch as the equipment is unique and the value can not be established by offering to sell it in the market place, the market value of the equipment is difficult, if not impossible, to calculate. (Frederickson Moving Aff., ¶ 24).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law. Methods of valuation include the cost to purchase and modify the equipment, which are documented.

21. The market value of the equipment (including the embedded intellectual property) was equal to or greater than the costs incurred in the design and acquisition of same. (Frederickson Moving Aff., ¶ 25).

Defendant does not agree with the above proposed finding of fact. Plaintiff was paid a salary as part of "direct labor" for its work in modifying the equipment, which is included in plaintiff's costs. Def. App. 17-59.

22. The total costs incurred with respect to the design and acquisition of the equipment costs were $5,955,933.32 of which $3,034,316.00 were reimbursed to plaintiff by defendant under the

Contract. (Frederickson Moving Aff., ¶ 27).

Defendant does not agree with the above proposed finding of fact. The total allowable costs incurred for the entire Contract were identified by DCAA as $2,645,849. Def. App. 17-59. Thus, defendant would restate plaintiff's proposed finding as follows: The total allowable costs incurred by DCI were $2,645,849, for which $3,034,316 was reimbursed to plaintiff by defendant under the Contract based upon plaintiff's invoices.

23. The balance of the incurred costs, $2,921,653.49, represents plaintiff's share of the incurred costs. (Frederickson Moving Aff., ¶ 27).

Defendant does not agree with the above proposed finding of fact. Defendant would restate it as follows: The difference between the amount that plaintiff was paid by defendant of $3,034,316.00 and the amount of allowable costs incurred by plaintiff of $2,645,849, represents the amount that defendant overpaid plaintiff for plaintiff's share of the incurred costs. Def. App. 17-59.

24. Plaintiff is entitled to a reasonable profit on its incurred costs of $438,248.02. (Frederickson Moving Aff., ¶ 27).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law and because this was a cost-sharing contract and plaintiff does not have a right under the Contract to unilaterally use and possess the equipment.

CP., Exhibit A; Def. App. 10.

25. Approximately 84% of the total incurred costs have been audited by the Defense Contract Audit Agency ("DCAA"). (Frederickson Moving Aff., ¶ 28).

Defendant does not agree with the above proposed finding of fact. DCAA has audited 100 percent of the total allowable incurred costs as presented to DCAA by plaintiff. Def. App. 17-59.

26. Although requested by plaintiff, defendant has made no effort to complete the audit or provide plaintiff with its "equitable distribution" as required by FAR 52-232-20. (Frederickson Moving Aff., ¶ 30).

Defendant does not agree with the above proposed finding of fact. DCAA has completed its audit of all allowable incurred costs presented by plaintiff within the scope of the Contract. Def. App. 17-59.

II. Defendant's Additional Proposed Findings Of Fact

27. The Contract required DCI to create a joint venture with a Ukrainian company to establish a die casting business within twenty-four months after award. CP., Exhibit A.

28. Creating the joint venture entailed, among other things, acquiring and installing die casting machinery in a facility located in Ukraine in partnership with a company in Ukraine. Id.

29. The contract contained a clause entitled "ALLOWABLE COST AND PAYMENT," FAR 52.216-7 (JUL 1991), which provided:

> The Government shall make progress payments to the Contractor when requested as work progresses, but (except for small business concerns) not more often than once every two weeks, in amounts determined to be allowable by the Contracting Officer in accordance with Subpart 31.2 of the Federal Acquisition Regulation in effect on the date of this contract and the terms of this contract.

CP., Exhibit A at 9; 48 C.F.R. § 52.216-7. The exception for small business invoicing included in the clause allows payments to be made more frequently and further permits the contractor to " . . . invoice and be paid for items or services purchased directly for the contract, even though the concern has not yet paid for those items or services." Id.

30. Paragraph 1.c. of Section B of the contract required that: "Invoices or public vouchers submitted in accordance with the clause of this contract entitled ALLOWABLE COST AND PAYMENT shall include all costs experienced by the Contractor for the period represented by the voucher, and all such costs shall be subject to audit." CP., Exhibit A at 2.

31. The contract also contained a clause entitled "LIMITATION OF COST," FAR 52.232-20 (APR 1984), which provided that: "The Government is not obligated to reimburse the Contractor for costs incurred in excess of . . . (i) if this is a cost-sharing contract, the estimated cost to the Government

specified in the Schedule . . ." CP., Exhibit A at 10; 48 C.F.R. § 52.232-20.

32. The contract contained a clause that states, in pertinent part, that: "Title and ownership of all property, equipment and materials acquired with U.S. Government funding under this Contract shall vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer." CP., Exhibit A at 8.

33. The Contract included a clause entitled "GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME –AND-MATERIAL, OR LABOR-HOUR CONTRACTS)," FAR 52.245-5 (JAN 1986), which provided: "Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the vendor's delivery of such property." Def. App. 74; 48 C.F.R. § 52.245-5.

34. The Contract ended at the time "when U.S. Government funding has been utilized." CP., Exhibit A, I. Statement of Work Requirements, paragraph 2.2.4.

35. On March 15, 1996, almost five months after award of the contract, DCI's Executive Vice-President and Chief Financial Officer, C.W. Maillefert, wrote to the contracting officer ("CO") informing him that DCI was experiencing serious problems that "may impede or impair its ability to implement the contract,

including, *inter alia*, the resignation of certain key officers and employees." Def. App. 1.

36. The March 15, 1996 letter stated that "[a]s a result of irreconcilable differences with senior management over personnel matters, the manner in which resources are being obligated and the overall implementation of the project, together with the demonstrable lack of progress in obtaining financing required to cover DCI's cost share and to pay salaries, three of the Company's four full time employees and one of its part time employees intend to resign immediately." Id.

37. The employees that intended to rsign included the Chief Financial Officer, the Corporate Counsel, another attorney who spoke Russian and was responsible for legal matters in Ukraine, and DCI's Vice-President for Ukraine Operations who was responsible for implementation of the joint venture facility rehabilitation. Def. App. 1-2.

38. The March 15, 1996 letter also described DCI's inability to finance its share of the costs associated with the contract through February 1996, with no reasonable prospect to improve its situation to complete the project. Def. App. 1-3.

36. Concerned about this situation, the CO met with DCI's president, Alan C. Frederickson, who convinced the CO that he was taking steps "to enable DCI to perform successfully" under the Contract, which included hiring new personnel, receiving quotes

for equipment to be purchased, and finding financial sources to invest in DCI. Def. App. 4-6.

37. DCI acquired the necessary equipment for the Contract, but failed to establish the joint venture or deliver all of the equipment to Ukraine within the contract performance period, which originally was scheduled to end on October 27, 1997. Def. App. 8-9.

38. On October 8, 1997, DCI requested a no-cost extension of the Contract "through January, 1998" to submit additional billings. The request specifically stated "Please note that this request does not request additional funding, as we can complete the contract within the allocated funds originally authorized." Def. App. 13.

39. By a modification to the Contract, P00002, DCI was given until January 30, 1998, to complete the contract performance requirements, but no additional funds. Def. App. 12-16.

40. DCI submitted vouchers from time to time during the course of the Contract. DCI's vouchers reflected its total expenses for the applicable calendar years as follows: 1995, $108,123, Def. App. 19, 22; 1996, $637,259, Def. App. 28; 1997, $3,010,548, Def. App. 40; and 1998, $340,362. Def. App. 52.

41. The United States reimbursed DCI in the total amount of $3,034,316, the maximum amount required under the Contract. Def.

App. 8.

42. The difference between the amount that DCI billed ($4,096,292) and the amount DCI was reimbursed by DTRA ($3,034,316) is $1,061,976, or $4,135 less than DCI's required cost share under the Contract.

43. However, DCI's invoices were audited by the Defense Contract Audit Agency ("DCAA") to determine whether the recorded and billed costs were allowable in accordance with the Allowable Cost and Payment clause and FAR Subpart 31.2. Def. App. 17-59.

44. The total amount allowed was $2,645,849. The allowable costs were significantly less than the amount DCI was reimbursed: 1995, $87,043, Def. App. 22; 1996, $438,314, Def. App. 28; 1997, $2,113,359, Def. App. 40; and 1998, $7,133. Def. App. 52.

45. The difference between the amounts billed and the amounts deemed allowable results in part from DCI's practice of having its employees and suppliers discount their invoices by 26 percent (DCI's share of costs expressed as a percentage) while recording the full amount of costs as if they had been paid. Def. App. 23, 32-33, 42-43, 55.

46. DCI still did not succeed in establishing a viable joint venture even with the additional period of time allowed by Modification P00002. Def. App. 9.

47. The first proposed joint venture partner, Meridian, was a company "with no die cast experience and no viable contribution

other than a building." Def. App. 62.

48. Meridian "pulled out of the project in 1997." Id.

49. The second proposed joint venture partner, Burevestnik, had "significant die cast experience, and skilled management, in an on-going, profitable die cast business." Id.

50. DCI never consummated a joint venture relationship with Burevestnik. Def. App. 9.

51. No entity was available to assume title to the equipment that DCI purchased with Government funds, other than the United States, pursuant to the Government Property clause, FAR 52.245-5 (JAN 1986). Def. App. 74; 48 C.F.R. § 52.245-5.

52. Some of the equipment that DCI purchased was temporarily imported to Moldava, where DCI caused modifications to be made. Def. App. 60, 63-64.

53. DCI never shipped the equipment in Moldava to Ukraine. Id.

54. DCI notified DTRA that Moldavian customs intended to confiscate the equipment because it had been retained in Moldava for a period longer than permitted under a temporary import license. Id.

55. DTRA paid the cost to ship the equipment to Ukraine to ensure that the equipment located in Moldava was safeguarded. Def. App. 64.

56. DTRA also paid storage fees for the equipment located in Ukraine. Id.

57. Ultimately, custody of the equipment was given to Burevestnik, DCI's proposed joint venture partner. Id.

58. Title to the equipment remains with the United States at this time. Id.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ *Mark A. Melnick*
MARK A. MELNICK
Assistant Director

/s/ *William K. Olivier*
WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Defense Threat Reduction Agency

Dated: November 18, 2004