**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 Fax: (201) 696 - 9194

September 5, 1997

Phone 703 . 325-1307

Faxed 6 Sept. Cook ✓ Upston ✓

Mr. Harry Cook
Program Management Office
Defense Special Weapons Agency, Suite 207
6940 South Kings Highway
Alexandria, VA 22310

Via Fax (703) 325-7522 (8 pages)

Dear Harry:

**RE: DCAA Audit of Contract DNA001-95-C-0169**

This letter asks for your consideration in assisting Die Casters International ("DCI") in replying to an audit just conducted by the Defense Contract Audit Agency ("DCAA"). Specifically, we request a letter from your office advising DCAA that the Defense Special Weapons Agency ("DSWA") had accepted the manner in which DCI billed its direct expenses, and in particular, its direct costs for salaries and subcontracts. We had discussed financing of these costs with your office on several occasions and have followed a billing and payment procedure based upon those discussions.

**BACKGROUND:**

In August, 1997, the New Jersey regional office of DCAA conducted an audit review of DCI's 1995 financial statements and government billings. The audit period covered our contract billing numbers 95-01 through 95-04 to DSWA for the period November through December, 1995.

Based on communications just received from this audit office, their preliminary assessment is to take issue with the manner in which we billed DSWA for direct contract costs for labor and subcontracts. The specific costs under review are summarized on an attached exhibit.

**DCI Billing Procedure.** DCI, for the audit period, billed DSWA a summary total of $71,076.78 for direct labor, and $10,000.00 for subcontract costs, as shown on the attachment referenced above. This represented full value of services received. DCI's employees and subcontractors agreed to provide DCI with financing by accepting only 74% of the amounts earned and/or billed to DSWA. The remaining 26% amount has been accrued by DCI, to be paid back upon receipt of permanent financing.

All employees and subcontractors have entered into legally binding arrangements supporting this procedure, where DCI has legally binding liabilities for all amounts billed, but not yet paid.

**DCAA Audit Position.** DCAA takes exception to this policy and recommends that the unpaid amounts be classified as unallowable until such time that they are paid. DCAA bases its position of FAR 52-217-7(b), a copy of which is attached to this letter.

DISCUSSION OF DCAA FINDINGS.

Since the outset of this contract, DCI has operated under the guidance initially received from DSWA. In reviewing the contract cost reimbursement billing procedures with DSWA, DCI clearly informed the government that it was its intent to bill DSWA for full services received. This was predicated on the assumption that DCI was in the process of obtaining financing, at which time the holdback, i.e., financed amounts, would be paid to all parties, including both employees (direct labor) and subcontractors.

It further should be noted that in all instances, every party, to whom this holdback applied, agreed prior to working with DCI that such an arrangement was acceptable. DCI legally agreed to pay all holdbacks in full upon realization of permanent financing.

In addition, DCI arranged financing for major pieces of equipment purchased under the contract workscope requirements with its USA and foreign (Moldova) strategic partners. Financing terms with those suppliers are based upon a three year payout, with no principal in the first year.

DCI is classified as a "small business," in accordance with DoD guidelines. It's sole purpose to date has been the fulfillment of this DSWA contract. DCI established these financing policies as standard operating policy and procedure from the initial beginning of the contract. Therefore, the full value of services and equipment loans was considered to be incurred during the normal course of business and should be allowable.

At no time throughout the fulfillment of this contract to date has DCI ever represented anything other than the above to DSWA and/or DCAA. We take exception to DCAA's preliminary findings and believe that we have operated properly and in full accord with the intent of this contract.

RECOMMENDED ACTION STEP.

DCI requests that the DSWA contract officer prepare a letter addressing the above issues and stating that DCI billing and payment procedures were conducted in full compliance and approval of DSWA. We believe that receipt of such a letter from DSWA to DCAA could result in a favorable audit finding when the final report is prepared and submitted through the appropriate channels.

The specific DSWA auditor assigned to this contract is Ms. Regina A. Hanel. She can be reached at 973-785-6664 by telephone, 973-785-5943 by fax. As indicated on the attached enclosures, the official addressee for such a letter would be as follows:

Mr. Thomas F. Pezanowski, Branch Manager
Defense Contract Audit Agency
Mid-Atlantic Region, Northern New Jersey Branch Office
440 Route 17 North, Suite 6
Harsbrouck Heights, NJ 07604-3000

Once you have had a chance to review this letter, please call me, Bernard Skown or John Upston to discuss this matter in further detail. I welcome your advice as how to best proceed and respond to these preliminary DCAA audit findings. Thank you.

Sincerely,

Alan Frederickson
President

cc: Bernard Skown
John Upston

Enclosures:

1. Summary Schedule - DCI Billings vs. Recommended DCAA Direct Contract Costs
2. Draft Copy of DCAA Audit Findings Dated 28 August 1997
3. Copy of FAR 52.216-7(b)

REVIEW OF DCAA 1995 AUDIT REPORT
DCAA Letter Dated 28 August 1997

| Item | DCI Billings to DSWS (95-01 thru 95-04) | DCAA Review (8/28 Ltr) | Variance | Comments |
|---|---|---|---|---|
| Direct Labor | $71,076.78 | $52,596.82 | $18,479.96 | No Credit for 26% ~~Cost Share~~ Holdback |
| Travel | $15,126.28 | $15,126.28 | $0.00 | |
| Material | $10,146.41 | $10,146.41 | $0.00 | |
| Communications | $1,773.73 | $1,773.73 | $0.00 | |
| Subcontract | $10,000.00 | $7,400.00 | $2,600.00 | No Credit for 26% ~~Cost Share~~ Holdback |
| **Sub-Total, Direct** | **$108,123.20** | **$87,043.24** | **$21,079.96** | |
| Indirect Costs | $6,487.40 | $6,487.40 | $0.00 | |
| **Sub-Total, Direct & Indirect** | **$114,610.60** | **$93,530.64** | **$21,079.96** | |
| Less 26% Cost Share | $29,798.76 | $24,317.97 | $5,480.79 | |
| **Total Costs** | **$84,811.84** | **$69,212.67** | **$15,599.17** | |
| | | | | |
| Composite G&A | 6.00% | 7.45% | | |

**DCAA - MID-ATLANTIC REGION**
**NORTHERN NEW JERSEY BRANCH**
**KG&N SUBOFFICE**

# FAX COVER SHEET

DATE: 9/2/97

TO: Die Casters International Inc.

ATTN: Mr. Bernard Skown & Mr. Alan Frederickson

FAX NO. 872-4707

---

FROM: NORTHERN NEW JERSEY BRANCH OFFICE
KEARFOTT GUIDANCE & NAVIGATION
DCAA SUBOFFICE

TEL NO. 973-785-6664
FAX NO. 973 ~~201~~-785-5943

SUBJECT: Rate letter. Please review & call me back as to questions etc. If you are going to sign you can sign & fax me back a copy as well.

REMARKS:

We are transmitting 3 pages, including this cover sheet. If there are any pages missing or quality problems on pages transmitted, please call us immediately.

Thank you
Regina

***** WARNING *****

Imaged produced on facsimile machines using thermal paper are highly unstable and will deteriorate SIGNIFICANTLY in a few years. Copies produced on thermal paper should be copied on plain paper prior to filling as a record.

Attachment 2

DEFENSE CONTRACT AUDIT AGENCY
MID-ATLANTIC REGION
NORTHERN NEW JERSEY BRANCH OFFICE
440 ROUTE 17 NORTH, SUITE 6
HASBROUCK HEIGHTS, NEW JERSEY 07604-3000

IN REPLY REFER TO

6201-97B10250006

28 August 1997

Die Casters International, Inc.
One Spruce Terrace
Wayne, New Jersey 07470
Attn: Mr. Alan C. Frederickson, President

Dear Mr. Frederickson:

This letter sets forth the agreed upon final indirect cost rates established by audit determination in accordance with FAR 42.705-2(b)(2)(iii) and DoD FAR Supplement 242.705-2(b)(2)(iii). The final annual indirect cost rate for calendar year ended 31 December 1995 is as follows:

| Indirect Expense Pool | Rate | Allocation Base |
|---|---|---|
| Composite G&A | 7.45% | Total Cost Input |

This rate is applicable to the base costs specified for the government contract performed during CY 1995. The contract's indirect cost and allocation base for the CY is as shown in Attachment 1.

This indirect rate understanding shall not change any monetary ceiling, contract obligation, or specific cost allowance or disallowance provided for in the contract listed in Attachment 1. This understanding is incorporated into the affected contract upon execution.

Please confirm your concurrence of the audit determination by signing and returning this copy to this office. A duplicate of this letter is enclosed for your records.

Care should be taken that amounts claimed do not exceed contract limitations or contract indirect cost rate ceilings.

Sincerely,

Thomas F. Pezanowski,
Branch Manager

Encl. a/s

Die Casters International, Inc. accepts the above stated final indirect rate.

NAME ______________________ SIGNATURE ______________________
TITLE ______________________ DATE ______________________

Attachment 1

# Schedule of Recommended Contract Costs

## Calendar Year 1995

| Cost Element | DNA001-95-C-0169 |
|---|---|
| Direct Labor | $52,597 |
| Travel | 15,126 |
| Material | 10,146 |
| Communications | 1,774 |
| Subcontract | 7,400 |
| Subtotal Costs | $87,043 |
| Indirect Cost | 6,487 |
| Subtotal Costs | $93,530 |
| Less 26% Cost Share | 24,318 |
| Total Costs | $69,212 |