# U.S. Department of Justice

**Fax Number:**
**11th Floor - (202) 514-7965**

**Date:** 11-19-04

**To:** Gary Marcus

**Fax No:** (516) 764-2827

**From:** **William Olivier**
**(202) 307-6288**
**(202) 616-8131 (direct)**

**Page(s) sent:** 18 **(including cover)**

Die Casters v. U.S.

Attached is the complete
1995 Audit Report
(Dated 2-10-99)

MID-ATLANTIC REGION NORTHERN NEW JERSEY BRANCH OFFICE
DEFENSE CONTRACT AUDIT AGENCY
BUILDING 350 SOUTH, PICATINNY ARSENAL
PICATINNY, NJ 07806-5000
TELEPHONE (973) 724-4932
FAX (973) 724-2187
E-Mail: fao6201@rma.dcaa.mil

IN REPLY REFER TO

February 10, 1999

MEMORANDUM FOR: Mr. Scott G. Morton, Contract Administration Office, Defense Threat Reduction Agency, 6801 Telegraph Road, Alexandria, VA 22310-3398

SUBJECT: Cautionary Statement Related to Audit Report No. 6201-97B10250006, Dated February 8, 1999 for CY 1995 Incurred Cost Audit, Die Casters International, Inc. (DCI), One Spruce Terrace, Wayne, NJ

The attached audit report addresses certain matters that have raised a suspicion of potential fraud on the part of DCI. Specifically, those matters are related to DCI's submission of public vouchers which, to date, have resulted in the reimbursement of 100% of DCI payments made to employees and subcontractor for labor and subcontract costs incurred on Defense Threat Reduction Agency Contract No. DNA001-95-C-0169 for CY 1995, when the contract was 26% Cost Share. We are willing to discuss these matters with you, your counsel, and representative of the cognizant criminal investigative organization in an effort to reach a proper disposition of these issues in light of the requirements of DoD Directive 7050.5, Coordination of Remedies for Fraud and Corruption Related to Procurement Activities.

Peter W. Kornutick
Branch Manager

FOR OFFICIAL USE ONLY

# DEFENSE CONTRACT AUDIT AGENCY

## AUDIT REPORT

February 10, 1999

**PREPARED FOR:**

Defense Threat Reduction Agency
Formerly, Defense Special Weapons Agency (DSWA)
ATTN: Mr. Scott G. Morton, Contracting Officer
6801 Telegraph Road
Alexandria, Virginia 22310-3398

**PREPARED BY:**

Northern New Jersey Branch Office
Building 350 South
Picatinny Arsenal
Picatinny, NJ 07806-5000
Telephone No. (973) 724-4932
FAX No. (973) 724-2187
E-mail Address: *fao6201@rma.dcaa.mil

**SUBJECT:** Audit of Incurred Costs for Calendar Year 1995

**REFERENCES:** DCAA: Audit Report No. 6201-97B10250006

**CONTRACTOR:**

Die Casters International, Inc. (DCI)
One Spruce Terrace
Wayne, NJ 07470

**REPORT RELEASE RESTRICTIONS:** See Page 9

**CONTENTS:**


| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 1 |
| Results of Audit | 2 |
| Contractor's Accounting System | 7 |
| DCAA Personnel and Report Authorization | 8 |
| Audit Report Distribution and Restrictions | 9 |
| Contractor's Certificate of Indirect Costs | Attach. 1 |
| DCAA Form 1 | Attach. 2 |
| Schedule of Cumulative Allowable Costs | Attach. 3 |


FOR OFFICIAL USE ONLY

## SUBJECT OF AUDIT

We audited Die Casters International, Inc.'s (DCI's) September 12, 1996 certified incurred cost submission and related books and records for reimbursement of Calendar Year (CY) 1995 incurred costs. The purpose of the audit was to determine the allowability of direct costs and indirect cost rates and establish audit determined indirect cost rates for January 1, 1995 through December 31, 1995. The proposed rates apply to the contractor's sole contract in that year, cost share contract No. DNA001-95-C-0169. A copy of DCI's Certificate of Indirect Costs, dated September 12, 1996, is included as Attachment 1 to the report (see page 7).

The proposal is the responsibility of the contractor. Our responsibility is to express an opinion based on our audit.

## EXECUTIVE SUMMARY

Our audit did not disclose any exceptions to the contractor's proposed indirect costs of $6,487; however, due to our reduction of the direct costs included in the allocation base, we adjusted the proposed indirect cost rate of 6% upward to 7.45%. We questioned $15,599 of the direct costs proposed, which represent 26% of the submitted labor and subcontract costs.

## SCOPE OF AUDIT

We conducted our audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the data and records reviewed are free of material misstatement. An audit includes:

- reviewing the contractor's internal controls, assessing control risk and determining the extent of audit testing needed based on the control risk assessment;
- examining, on a test basis, evidence supporting the amounts and disclosures in the data and records reviewed;
- assessing the accounting principles used and significant estimates made by the contractor;
- evaluating the overall data and records presentation; and
- determining the need for technical specialist assistance.

We evaluated the proposal using the applicable requirements contained in the:

- Federal Acquisition Regulation (FAR), and
- DoD FAR Supplement (DFARS).

The contractor claims exemption under 48 CFR 9930.201-1(b)(3) from the practices required by the Cost Accounting Standards Board rules and regulations because it considers itself a small business concern.

As detailed in our Audit Report No. 6201-95B17740130, dated February 22, 1995, DCI's accounting system was considered adequate. However, the last initial pricing audit report, ref. A/R No 6201-95B210000150, dated April 11, 1995, disclosed the contractor needed to properly define its direct labor/indirect labor functions and adjust its indirect rate calculations. Also, DCI is a small company with limited resources to be applied to compliance procedures and testing. Our audit scope reflects our assessment of control risk and provides a reasonable basis for our opinion.

The concurrent verification of labor and materials was omitted in this review.

## RESULTS OF AUDIT

Indirect Rates. Our audit did not disclose any exceptions to the contractor's proposed indirect costs of $6,487; however due to our reduction of direct costs included in the allocation base, the rate was adjusted upward from 6% to 7.45% as shown below.

| Indirect Category | Proposed Expense Pool | Proposed Indirect Cost Rate | Questioned Expense Pool | Questioned Indirect Cost Rate | Ref. | Page |
|---|---|---|---|---|---|---|
| Composite G&A (a) | $ 6,487 | 6.00% | $ 0 | (1.45)% | Exh. A | 4 |

( ) =Denotes Upward Adjustment.

(a) Allocation Base - Total cost input (proposed: $108,123; audit determined $87,043)

Direct Costs. We questioned $15,599 of direct costs proposed under contract DNA001-95-C-0169. Direct costs not questioned are provisionally approved pending final acceptance. Final acceptance of amounts proposed under government contracts does not take place until performance under the contract is completed and accepted by the cognizant authorities and the audit responsibilities have been completed. A summary of the contractor's proposed and our questioned cost is as shown below.

| | Proposed | Questioned | Ref. | Page |
|---|---|---|---|---|
| Direct costs Incurred | $108,123 | $21,080 | | |
| Less DCI 26% Cost Share | 28,112 | 5,481 | | |
| Total Direct Cost | $ 80,011 | $ 15,599 | Exh. B | 5 |

## GOVERNMENT PARTICIPATION IN ALLOCATION BASES

| Contract Type In Allocation Base | CY 1995 Indirect Expense Pool G & A | |
|---|---|---|
| Gov't Cost Share Flexibly Priced | 100.00% | |
| Gov't Firm Fixed Price and Commercial Work | 0.00% | |
| Total | | 100.00% |

We provided and discussed the audit results with the contractor's representative, Mr. Bernard Skown and Mr. Alan Frederickson, President, on an ongoing basis during the audit and again on 29 August 1997 and 17 September 1997. Mr. Frederickson understood the basis of our adjustments to the direct costs but did not agree with our results and would not sign the indirect rate agreement letter.

EXHIBIT A
Page 1 of 1

STATEMENT OF PROPOSED CY 1995 G&A
EXPENSES AND RATE AND RESULTS OF AUDIT

| Cost Element | Proposed | Questioned & Nonconcurred | Notes | Page |
|---|---|---|---|---|
| Total G&A Pool | $ 6,487 | $ 0 | | |
| Total Cost Input Base | $ 180,123 | $ 21,080 | 1 | 4 |
| G&A Expense Rate | | | | |
| Proposed | 6.00% | | | |
| Questioned | (1.45)% | | | |
| Audit Determined | 7.45% | | | |
| Nonconcurred | (1.45)% | | | |

( ) Denotes upward adjustment.

Explanatory Notes:

1. Total Cost Input Base

a. Summary of Conclusions:

The $21,080 reduction in the G&A base is comprised of $18,480 of labor costs and $2,600 in subcontracts, which represents 26% of those cost elements proposed (See Exhibit B for more details).

b. Basis of Proposed Costs:

The cost input base includes labor, travel, material, communications expense and subcontract costs incurred in CY 1995, including the 26% of labor and subcontract costs not paid by the company to its employees and subcontractor, respectively.

c. Audit Evaluation:

We reduced the proposed total cost input base by $21,080 for the questioned direct costs.

d. Contractor's Reaction:

The contractor's representative, Mr. Alan Frederickson, President, understood the basis of our adjustments to the direct costs but did not agree with our results.

EXHIBIT B
Page 1 of 2

## STATEMENT OF PROPOSED CY 1995 DIRECT COSTS AND RESULTS OF AUDIT

| Cost Element | Proposed | Audit Adjusted | Questioned | Notes | Page |
|---|---|---|---|---|---|
| Direct Labor | $ 71,077 | $ 52,597 | $18,480 | 1 | 5 |
| Travel | 15,126 | 15,126 | | 2 | 6 |
| Material | 10,146 | 10,146 | | 2 | 6 |
| Communications | 1,774 | 1,774 | | 2 | 6 |
| Subcontract | 10,000 | 7,400 | 2,600 | 1 | 5 |
| Costs Incurred | $108,123 | $ 87,043 | $21,080 | | |
| Less: DCI 26% Cost Share | 28,112 | 22,631 | 5,481 | | |
| Total Direct Cost | $ 80,011 | $ 64,412 | $15,599 | | |

Explanatory Notes:

1. Direct Labor and Subcontract Costs.

a. Summary of Conclusions:

We questioned 26% of the proposed labor and subcontract costs. These amounts represent payments withheld from employees and the subcontractor based on oral agreements. Although an accrued liability is established for these costs, they have not been paid in the ordinary course of business; in fact, they have not been paid to date. Therefore, the costs are considered unallowable per FAR 31.201-2 since, according to the contract terms (FAR 52.216-7(b)), the costs must be paid in the ordinary course of business.

b. Basis of Proposed Costs:

The contractor is including total labor and subcontract costs incurred in CY 1995 based on the value of labor hours expended and subcontract invoices received, including the 26% of each not paid by the company to the employees or the subcontractor.

c. Audit Evaluation:

We traced the labor costs supporting public voucher 95-02 to timesheets and payroll records, reviewed the payroll journal and general ledger concerning CY 1995 labor costs incurred and discussed the 26% holdback of salaries with the contractor's President, Mr. Alan Frederickson. We also reviewed the subcontract costs included on public voucher 95-02, by obtaining invoices and canceled checks for the amounts paid. Our review of the documentation disclosed that the payments to the subcontractor did not

EXHIBIT B
Page 2 of 2

include 26% of costs invoiced. We requested written agreements with employees and the subcontractor which would bind the company to future payment of the costs incurred, but were told by the contractor that the agreements were oral only and no written documentation exists.

d. Contractor's Reaction:

The contractor does not agree with our results and stated they will not sign a rate agreement letter. The contractor feels they have oral agreements with employees and the subcontractor in which both agree to the 26% hold back and that the costs Die Casters submitted are valid and were incurred, regardless of whether or not they have been paid to date. Also, DCI stated that if and when outside financing is received the employees and subcontractor will be paid for the hold back costs.

e. Auditor's Response:

We informed the contractor that it is still our opinion that the costs identified, because they have not been paid in the ordinary course of business, are considered unallowable. We also informed the contractor we would have to issue a DCAA Form 1, recommending the questioned costs not be reimbursable under the contract.

2. Direct Travel, Material & Communications Costs.

a. Summary of Conclusions:

We took no exception to the travel, material or communications costs proposed.

b. Basis of Proposed Costs:

The costs are based on actuals incurred by DCI in CY 1995.

c. Audit Evaluation:

We selectively traced the various costs to source documents such as invoices, travel vouchers and cancelled checks, as applicable.

d. Contractor's Reaction:

The contractor agreed with our results concerning these costs.

# CONTRACTOR'S ACCOUNTING SYSTEM

**Accounting System:**

Die Casters International, Inc.'s accounting period is from 1 January to 31 December. Die Casters International, Inc. maintains an accounting system on the accrual basis in accordance with generally accepted accounting principles. The contractor utilizes the Peachtree Accounting software for its job cost accounting system which is fully integrated in the overall accounting system. However, because the contractor only has one contract to which all costs are booked, the accounting system is not yet properly set up to provide clear segregation of direct and indirect costs.

Indirect Cost Pools and Allocation Bases:

| Indirect Cost Pool | Allocation Base |
| --- | --- |
| G&A Expenses | Total Incurred Cost exclusive of G&A Expense |

Independent Research and Development (IR&D)/ Bid and Proposal (B&P)

The contractor did not incur IR&D and B&P type costs in CY 1995.

The Following Effort is Normally Charged Direct:

Employee labor costs, including vacation and holiday pay
Purchased parts, equipment and subcontracted items used in the performance of contracts
Travel expenses incurred by employees in performance of contract efforts
Freight charges for direct raw materials, purchased parts and equipment and subcontracted items
Professional services and consultant fees related to the contract performance
Temporary help to perform direct effort on contracts
Communications expenses

The following Effort is Normally Charged Indirect:

Social Security, unemployment insurance, workman's compensation, group insurance, pension expense
Other expenses not included above: such as general operating supplies depreciation, utilities, pre-employment, rental costs of facilities, and general purpose equipment.

## DCAA PERSONNEL

Telephone No.

Primary contact regarding this audit:

Regina A. Hanel, Senior Auditor (973) 785-6664
Martin J. Lenhard, Supervisory Auditor (973) 785-6103

Other contacts regarding this audit report:

Peter W. Kornutick, Branch Manager (973) 724-4932
Margaret Casola, Technical Specialist (973) 244-6455

FAX No.
Northern New Jersey Branch Office (973) 724-2187

E-Mail Address
*fao6201@tma.dcaa.mil

**AUDIT REPORT AUTHORIZED BY:**

/s/
PETER W. KORNUTICK
Branch Manager
Northern New Jersey Branch Office

# AUDIT REPORT DISTRIBUTION AND RESTRICTIONS

## DISTRIBUTION

Defense Threat Reduction Agency
Formerly, Defense Special Weapons Agency (DSWA)
ATTN: Mr. Scott G. Morton, Contracting Officer
6801 Telegraph Road
Alexandria, Virginia 22310-3398

## RESTRICTIONS

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Make proprietary determinations in the event of an external request for access. Consider the restrictions of 18 U.S.C. 1905 before releasing this information to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.26(b)(2), DCAA will refer any Freedom of Information Act requests for audit reports received to the cognizant contracting agency for determination as to releasability and a direct response to the requester.

3. Do not use the information contained in this audit report for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

DNA001-95-C-0169 Die Casters [illegible]

**Certificate of Indirect Costs**

1. I have reviewed this indirect cost proposal.

2. All costs included in the proposal — Contract DNA-001-95-C-0169, dated 27 October 1996 — [illegible] billing or final indirect cost rates for 27 October 1995 thru 31 December 1995 are allowable in [illegible] requirements of contracts to which they apply and with the cost principles of the Department of [illegible] to those contracts.

3. This proposal does not include any costs which are unallowable under applicable cost principles [illegible] ment of Defense, such as (without limitation): advertising and public relations costs, contributions [illegible] entertainment costs, fines and penalties, lobbying costs, defense or fraud proceedings, and goodwill.

4. All costs included in this proposal are properly allocable to Defense contracts on the basis of a [illegible] causal relationship between the expenses incurred and the contracts to which they are allocated in [illegible] applicable acquisition regulations.

I declare under penalty of perjury that the foregoing is true and correct.

DIE CASTERS INTERNATIONAL, INC.

Alan C. Fredrickson
President
September 12, 1996



FOR OFFICIAL USE ONLY

**DEFENSE CONTRACT AUDIT AGENCY**
**NOTICE OF CONTRACT COSTS SUSPENDED AND/OR DISAPPROVED**

PAGE 1 OF 1

| TO: (Name and Address of Contractor) | Contract Number | Notice Number |
|---|---|---|
| Die Casters International, Inc. (DCI)<br>One Spruce Terrace<br>Wayne, NJ | DNA001-95-C-0169 | 1 |
| | Disbursing Office: DFAS-Indianapolis<br>DFAS-IN-AEA<br>8899 E. 56th Street<br>Indianapolis, IN 46249-1325 | Contract Administration Office<br>Defense Threat Reduction Agency<br>6801 Telegraph Road<br>Alexandria, Virginia 22310-3398 |

1. This notice is issued pursuant to the authority of DoD Directive 5105.36, as implemented by the Federal Acquisition Regulation and DoD FAR Supplement. It constitutes notice of costs suspended and/or disapproved incident to the audit of contractor costs incurred under referenced contract(s). Description of items and reasons for the action are stated below.

2. SUSPENDED COSTS, as referred to herein, are costs which, for the reasons stated below, have been determined by the undersigned to be inadequately supported or otherwise questionable, and not appropriate for reimbursement under the contract terms at this time. Such costs may be determined reimbursable after the contractor provides the auditor additional documentation or explanation as specified below.

3. DISAPPROVED COSTS, as referred to herein, are costs which, for the reasons stated below, have been determined by the undersigned to be unallowable, that is not reimbursable under the contract terms.

4. If the contractor disagrees with this/these determinations, the contractor may (1) request in writing the cognizant contracting officer to consider whether the unreimbursed costs should be paid and to discuss his or her findings with the contracting auditor (2) file a claim under the "Disputes" clause of the contract(s).

5. The auditor will submit copies of the acknowledged notice to the cognizant disbursing officer for appropriate action and to the cognizant

| DCAA AUDITOR | Date of Notice | Address | Signature |
|---|---|---|---|
| | 2/5/99 | Northern NJ Branch Office, Building 350 South Picatinny Arsenal, Picatinny, NJ 07806-5000 | [signature] |

**CONTRACTOR'S ACKNOWLEDGMENT OF RECEIPT**
The contractor or its authorized representative shall acknowledge receipt of this notice to the DCAA auditor.

| Date of Receipt | Name and Title of Authorized Official | Signature |
|---|---|---|
| 8 Feb 99 | Mr. Alan C. Frederickson, President | [signature] |

| ITEM NO. | Description of Items and Reasons for Action | Amount of Costs: Suspended | Amount of Costs: Disapproved |
|---|---|---|---|
| 1 | DCI was awarded a Cost Share type contract by the Defense Threat Reduction Agency (formerly the Defense Special Weapons Agency) on October 27, 1995 which contained a cost share provision of 26%. DCI did reduce the costs submitted on their public vouchers in CY 1995 by 26%; however the cost submitted included CY '95 costs incurred which have not been paid to date. This effectively resulted in DCI's reimbursement of 100% of payments made. Therefore, the costs are considered unallowable per FAR 31.201-2 since, according to contract terms (FAR 52.216-7(b)), they must be paid in the ordinary course of business. Also, FAR 52.216-7(c) concerning small businesses states that: "a small business concern may be paid more often than every 2 weeks and may invoice and be paid for | $15,599 | |

DCAA Form 1 (EF)
February 1988

Supersedes August 1987 Edition of DCAA Form 1

DEFENSE CONTRACT AUDIT AGENCY
NOTICE OF CONTRACT COSTS SUSPENDED AND/OR DISAPPROVED
*(Continuation Sheet)*

PAGE 2 OF 2 PAGES

CONTRACTOR: Die Casters International, Inc.

NOTICE NUMBER: 1

ITEM NO. | DESCRIPTION OF ITEMS AND REASONS FOR ACTION *(Continued)*

1

recorded costs for items or services purchased directly for the contract, even though the concern has not yet paid for those items or services." (emphasis added) Although this subparagraph doesn't require the costs of items or services actually be paid in order to be reimbursed, the word "yet" implies the costs will ultimately be paid by the contractor. Therefore, until DCI supplies evidence of payment or the intent to pay, we suspend the net questioned CY 1996 costs, as shown below:

| Cost Element | Proposed | Audit Adjusted | Questioned | Suspended |
|---|---|---|---|---|
| Direct Labor | $ 71,077 | $ 52,597 | $ 18,480 | |
| Travel | 15,126 | 15,126 | | |
| Material | 10,146 | 10,146 | | |
| Communications | 1,774 | 1,774 | | |
| Subcontract | 10,000 | 7,400 | 2,600 | |
| Subtotal | $108,123 | $ 87,043 | $ 21,080 | |
| Less: DCI 28% Cost Share | 28,112 | 22,831 | 5,481 | |
| Total Direct Cost | $ 80,011 | $ 84,412 | $ 15,599 | $ 15,599 |

FOR OFFICIAL USE ONLY

DCAA FORM 1-C (EF)
February 1988

Supersedes August 1987 Edition of DCAA Form 1-C



FOR OFFICIAL USE ONLY

**SUMMARY SCHEDULE OF**
**CUMULATIVE ALLOWABLE COSTS/AMOUNTS THROUGH 1995**
**FOR FLEXIBLY PRICED CONTRACTS/SUBCONTRACTS**

| Contract Number/Subcontract (Job) | Order | Subject To DFARS Penalty Clause | Cumulative Allowable Costs/Amounts: Prior Settled Years | CYE 12/31/95 | CYE | Subtotal | Less: Contract Limitations (1) | Rebates or Credits | Total (2) | Assist Audit Amount (3) | Closing Information (Note 4): Contract Physically Complete | Ready To Close | Actual LOE/CUM Hours (If applicable) | Fee | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Defense Special Weapons Agency | | | | | | | | | | | | | | | |
| Cost Type: Contracts | | | | | | | | | | | | | | | |
| DNA001-95-C-0169 | | N | - | $ 93,530 | | $ 93,530 | $ 24,318 | $ - | $ 69,212 | | N | N | | | (5) |
| TOTAL-Cost Type Contracts | | | | $ 93,530 | $ | $ 93,530 | | | $ 69,212 | | | | | | |

NOTES:

(1) Contract limitations include costs incurred that are (i) in excess of contract ceiling rates, (ii) unallowable per contract terms, (iii) outside the period of performance, or (iv) in excess of contract ceiling amounts that are not already excluded. (In DCI's case, the contract limitation is the 26% cost share).

(2) The cumulative allowable amounts in this column should not exceed contract ceiling amounts. This amount should include any unresolved costs associated with assist audits. If amounts in excess of the contract ceiling are in dispute or if the contractor has requested that the contracting agency increase the contract ceiling, please include the amounts in the "Contract Limitation" column and provide an explanation in a footnote.

(3) Costs in this column are considered unresolved pending receipt of an assist audit report.

(4) Closing information is provided only for those contracts which the contractor has indicated work was physically complete as of the fiscal years audited. If the contractor asserts that the work was physically complete and there are no other known barriers to closing the contract, the contract should be considered ready to close. If the work is physically complete, but the contract is not ready to close, the reason, such as outstanding assist audits or unsettled rates, should be stated in a separate note. Actual Cumulative Level of Effort Hours, fee and outstanding assist audit amounts should include explanatory notes, as necessary.

(5) Contractor is not in agreement with allowable costs. A DCAA Form-1 has been issued.