Defense Threat Reduction Agency
8725 John J Kingman Road MS 6201
Ft Belvoir, VA 22060-6201

JUN 5 2001

Mr. Alan Frederickson
President
Die Casters International Inc.
One Spruce Terrace
Wayne, New Jersey 07470

Dear Mr. Frederickson:

I came to Defense Threat Reduction Agency (DTRA) as the Director of Acquisition Management in April 2000, and became aware of the issues associated with DCI and DTRA contract DNA001-95-C-0169 shortly after my arrival. I have participated in numerous meetings to assess options for bringing this contract to closure, and I have reviewed a significant amount of documentation associated with this contract. I have not seen any documentation that supports your assertion that DCI was "promised funding". No one other than the contracting officer is authorized to obligate funds on behalf of the US Government, and there is documentation that DCI has been notified of this on several occasions. DCI has been reminded of the limitations of the Government's liability in accordance with FAR 52.216-24 and has also been reminded that any costs incurred beyond the contractually stipulated limitations have been at DCI's own risk. The contract is subject to the Contract Disputes Act, and FAR 52.233-1 provides guidance for resolution of any certified claims that may be submitted by DCI or by the Government. I can find no evidence that DCI has submitted any claims against the Government under this contract.

Based on my review of available information, it is apparent that DTRA program management and contracting personnel have communicated with you on a regular basis. Therefore, I cannot accept your assertion that all you have received is "arrogant silence". Although you may not have agreed with the information you received from DTRA, I cannot agree that we have been "silent."

During the past year, DTRA and Office of the Secretary of Defense (OSD)/Policy personnel have worked very hard to identify the best alternatives for bringing the Ukrainian conversion project to closure. DCI's accounting practices and financial status have exacerbated the difficulty in finding an appropriate solution to this issue. This has been frustrating for the Government, as I am sure it has been for DCI. It is our goal to identify optimum resolution of this contract within the parameters established by the Federal Acquisition Regulation, governing contractual and fiscal policy, and applicable agreements between the United States and Ukraine.

The Government was made aware of DCI's accrual accounting system during pre-award reviews conducted by Defense Contract Management Command and

REFERENCE H

Defense Contract Audit Agency. Accrual accounting systems are acceptable for purposes of government contracts, and prior to contract award, DCI's specific accounting systems were determined to be acceptable. That fact did not absolve DCI of its responsibility to contribute its 26% share as stipulated in the cost-share arrangement in the contract. In fact, FAR 52.216-12 was included in the contract, and authorizes the Government to withhold payment until the contractor sets aside a reserve adequate to protect the Government's interest. Irrespective of the type of accounting system utilized by DCI, I have seen no documentation to support that DCI has contributed any amount toward its required 26% share. It is this lack of contribution toward the cost-share arrangement, not the accrual accounting system, which has rendered this situation so difficult to resolve. The lack of documented contribution toward the cost-share arrangement is also a factor in our assessment of title for the property purchased under this contract.

OSD/Policy is currently in discussions with Ukrainian officials to determine an acceptable resolution for this project. DTRA AM and CT personnel have worked closely with the Policy staff to insure relevant contractual and fiscal issues have been given appropriate consideration. As soon as DTRA is informed of the decisions reached by the appropriate representatives of these two governments, we will contact DCI to advise you of the actions that will be taken. It is my understanding we expect feedback by June 25, 2001.

I am personally committed to closing this contract as quickly as possible and I have communicated the need for bringing this project to contractual closure to both Brig Gen (R) Tom Kuenning and Mr. Jim Reid. They understand the contractual and fiscal concerns we must deal with and they are committed to working with me and the Contracting Officer, Mr. Herbert Thompson, to resolve this project as quickly as possible. Although it has taken a long time for us to reach this point, I am confident we will be able to definitively articulate a closure plan by the end of this month.

If you would like to discuss this matter further, you may contact me at (703) 767-4761 or contact the Contracting Officer, Mr. Thompson, at (703) 767-7875.

Ann Bridges Steely
Director
Acquisition Management