# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------------X

DIE CASTERS INTERNATIONAL, INC.,

Plaintiff,

N0. 04-1113C
(Judge Braden)

v.

UNITED STATES OF AMERICA,

Defendant.

-------------------------------------X

## PLAINTIFF'S REPLY BRIEF

# TABLE OF CONTENTS


| | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STANDARD OF REVIEW | 3 |
| ARGUMENTS | 4 |
| I. THE DEFENDANT BY MISSTATING THE PREMISE FOR PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT HAS ATTEMPTED TO BUT FAILED TO RAISE A GENUINE ISSUE OF FACT | 4 |
| II. THE GENUINE ISSUES OF FACT ALLEGED BY DEFENDANT TO BE DECIDED BY THE COURT ARE EITHER IRRELEVANT, NOT SUPPORTED BY THE UNCONTRIVERTED FACTS, CONTROVERTED BY DEFENDANT'S ADMISSIONS OR CONTROVERTED BY DEFENDANT'S COURSE OF DEALING | 5 |
| III. THE DEFENDANT'S CLAIM THAT PLAINTIFF LACKED A FINANCIAL INTEREST IN THE EQUIPMENT IS BARRED BY THE DOCTRINE OF ESTOPPEL | 11 |
| IV. OTHER ISSUES RAISED BY THE DEFENDANT ARE NOT RELEVANT TO THIS AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT | 12 |
| V. DEFENDANT'S POSITION THAT PLAINTIFF'S CLAIM THAT DTRA WRONGFULLY REMOVED THE EQUIPMENT AND FAILED TO NEGOTIATE AN EQUITABLE SHARE OF THE EQUIPMENT IS BARRED BY THE DOCTRINE OF ESTOPPEL IS NOT FACTUALLY ACCURATE | 13 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES


**CASES** **PAGE**

Bataco Indus., Inc. v. United States, 29 Fed. Cl. 318, 322 (1993), aff'd, 31 F. 3d 1176 (Fed. Cir. 1994) ..................... 3

DeVito v. United States, 188 Ct. Cl. 979, 413 F.2d 1147 (1969) ........................ 12

Home Ins. Co. v. Aetna Casualty & Sur. Co., 528 F.2d 1388, 1390 (2d Cir. 1976) ........................................................................ 3

Levine v. Fairleigh Dickinson Univ., 646 F.2d 825, 833 (3d Cir. 1981) ............. 3

LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 866 (1969) ............................................................ 3

Mingus Constructors, Inc., 812 F.2d at 1391 ..................................................... 3

Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987) .............................. 3

Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968) ........................ 3

**STATUTES**

FAR 52.216-7 ......................................................................................... 8

FAR 52.232-20 ....................................................................................... 1,2,4,5,6,7,10, 11, 12

RCFC 56(c) ............................................................................................ 7

## PRELIMINARY STATEMENT

Defendant, in its response to Plaintiff's Amended Motion for Partial Summary Judgment, does not dispute the basic four underlying elements that conclusively entitle Plaintiff to summary judgment with respect to Count One of the Complaint. Instead the Defendant raises certain irrelevant , erroneous and unsupported facts and contentions in an effort to deflect attention away from the Plaintiff's undeniable right to summary judgment and has attempted to fabricate a factual dispute that would preclude Plaintiff from obtaining such a judgment.

Plaintiff's amended motion is predicated upon the sole issue that the Defendant did not negotiate or pay the "equitable distribution" as required by FAR 52.232-20 (h). (Plaintiff's Amended Motion for Summary Judgment, p. 2). In order to sustain this position, the Plaintiff only had to show four elements, all of which are either admitted or not disputed by the Defendant. The four elements are (1) that FAR 52.232-20 was incorporated into the Contract (Def. Brief p. 4, and Defendant's Response To Plaintiff's Findings of Uncontroverted Facts and Defendant's Additional Proposed Findings of Uncontroverted Facts.[1] (¶14.), (2) that the Defendant's removal of the Equipment rendered the Plaintiff's ability to complete the Contact impossible and therefore effectively terminated the Contract (Def. Brief p.16 and Plaintiff's Proposed Findings of Uncontroverted Facts ¶16)[2] [3], (3) that in the event of a termination there

---

[1] Hereinafter "Def. Uncontr. Facts".

[2]Defendant, in its response to Plaintiff's Proposed Findings of Uncontroverted Facts, makes a disingenuous argument that the Contract was not terminated but it was "completed, albeit unsuccessfully" (Def. Uncontr. Facts ¶16 and Def. App. 9). It is

was an obligation on the Defendant to negotiate an equitable distribution of the Equipment (Def. Brief p.11 and Def. Uncontr. Facts ¶17.), and (4) that the Defendant failed to negotiate or pay the equitable distribution required under FAR 52.232-20 (h). (Def. Brief p.11 and Def. Uncontr. Facts ¶18.). Once the Plaintiff has established these four elements the Defendant's liability is absolute and Plaintiff is entitled to an order granting it Partial Summary Judgment with respect to Count One of the Complaint. Additionally, the amount of damages Plaintiff is entitled to by reason of Defendant's failure to negotiate and to pay the required equitable distribution based upon Plaintiff's incurred costs is, for the reasons set forth below, clearly established by the

---

extremely difficult to understand how Defendant can make such an argument when at the same time it argues that Plaintiff did not complete vital portions of the Statement Of Work Requirements under the Contract such as failing "to deliver certain required Equipment to the Ukraine" (Defendant's Brief, p. 2) and failing "to establish the Joint Venture" (Defendant's Brief, pp. 2, 13). However, in the end, Defendant's argument does succeed anyway because FAR 52.232-20(h) provides: If this Contract is terminated or the <u>estimated cost is not increased</u>, the Government and the Contractor shall negotiate an equitable distribution of all property produced or purchased under the Contract, based upon the share of costs incurred by each". (Emphasis added)(Def. Uncontr. Facts ¶15 and Exhibit 19). Defendant categorically states in its Brief at page 12 that the "estimated costs (were) not increased (also see Frederickson Reply Aff., ¶17) and in a June 13, 2000 letter from the Contracting Officer where it advised the Plaintiff: "As you are aware, no funds remain on the Contract to continue performance. And, it has been determined that the Government will not modify the subject Contract to increase funding." (Exhibit B to Exhibit 1) (also see Exhibit 16). The letter then references FAR 52.232-20 and states that "DTRA will negotiate an equitable distribution of all property . . ." (*Id.*) Whether the Contract was terminated or in Defendant's creative semantics "completed, albeit unsuccessfully" or "the estimated cost is not increased", Plaintiff is entitled to an equitable distribution of the Equipment.

[3]Hereinafter "Pl. Uncontr. Facts".

undisputed facts[4] and not subject to challenge by the Defendant as a matter of law.

## STANDARD OF REVIEW

The fact that both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988)* (citing *Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).* "Simply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968),* cert. denied, *393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 866 (1969);* see also *Levine v. Fairleigh Dickinson Univ., 646 F.2d 825, 833 (3d Cir. 1981); Home Ins. Co. v. Aetna Casualty & Sur. Co., 528 F.2d 1388, 1390 (2d Cir. 1976).* Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968); Bataco Indus., Inc. v. United States, 29 Fed. Cl. 318, 322 (1993),* aff'd, *31 F.3d 1176 (Fed. Cir. 1994).* The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc., 812 F.2d at 1391.* Applying these principles of law to the facts presented in this case, the plaintiff's motion for partial summary judgment should be granted and the defendant's cross motion should be

---

[4]As 84% was audited by DCAA (Frederickson Reply Aff. ¶16) and $4 million of which was verified by the DOD IG (Def. Aff. 61).

denied.

## ARGUMENTS

### I. THE DEFENDANT BY MISSTATING THE PREMISE FOR PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT HAS ATTEMPTED TO BUT FAILED TO RAISE A GENUINE ISSUE OF FACT.

In its effort to create an issue of fact, where one does not exist, the Defendant, in its brief, deliberately misstates Plaintiff's basis for its Amended Motion for Partial Summary Judgment by introducing the non relevant issue of whether or not the Defendant "wrongfully removed the Equipment"(Def. Brief, Statement Of The Issues ¶ 1). The Defendant states as its Issue 1 "Whether DCI is entitled to summary judgment upon its claim <u>that the Government wrongfully removed equipment</u> and failed to negotiate with DCI an equitable interest in the equipment." (Emphasis added). *Id.*

As clearly stated in the motion papers, Plaintiff's motion is predicated upon:

> "Defendant's breach of contract in failing to negotiate and provide to Plaintiff, Plaintiff's share of the 'equitable distribution' required under a provision of Contract DNA001-95-C-0169 (the "Contract"). Federal Acquisition Regulation FAR 52.232-20 (h), which was incorporated by reference into the Contract, required the Defendant to negotiate an 'equitable distribution' of the Equipment in the event the Contract was terminated. Defendant, by its actions, terminated the Contract but has failed to negotiate or pay Plaintiff the required 'equitable distribution." (Plaintiff's amended Motion For Partial Summary Judgment p. 2).

In stating its entitlement as set forth above, Plaintiff makes no reference to the Defendant's "removal" of the Equipment whether wrongful or not.

Additionally, Plaintiff, in its Proposed Findings of Uncontroverted Facts, at ¶ 10 and 11, makes no mention of the removal as being "wrongful".

While Defendant did wrongfully remove and dispose of the Equipment acquired by Plaintiff under the Contract, that is not an issue that is relevant to this Amended Motion which

solely addresses Count One of the Complaint. Defendant's wrongful and illegal acts are relevant and central to the remaining Counts of the Complaint and, at the proper time, Plaintiff will show that there is no genuine issue of fact with respect to those acts. However, the only relationship of the Defendant's removal of the Equipment to this amended motion is that the removal effectively terminated the Contract by preventing Plaintiff from ever completing the Contract and thereby triggered the equitable distribution required pursuant to FAR 52.232-20 (h).[5]

In order to defeat Plaintiff's Amended Motion For Partial Summary Judgment, Defendant must show that no genuine issue of fact exists. (See Pl. Memo Of Law p.6, 7). An attempted misstatement of the premise of Plaintiff's Amended Motion For Partial Summary Judgment does not create such a genuine issue. Absent a genuine issue of fact, Plaintiff is entitled to summary judgment as a matter of law.

## II. THE GENUINE ISSUES OF FACT ALLEGED BY DEFENDANT TO BE DECIDED BY THE COURT ARE EITHER IRRELEVANT, NOT SUPPORTED BY THE UNCONTROVERTED FACTS, CONTROVERTED BY DEFENDANT'S ADMISSIONS OR CONTROVERTED BY DEFENDANT'S COURSE OF DEALING.

The Defendant argues that "there are genuine issues of fact to be decided by the court" that would defeat Plaintiff's Amended Motion For Partial Summary Judgment (Defendant's Brief p. 9, 10). These so called issues are: (1) "whether DCI consented to the release of the Equipment" *Id.* p11, (2) "whether DCI had any financial interest in the Equipment" *Id.* p. 11, and (3) whether "DCI failed to satisfy its obligations under the Contract because it failed to

---

[5]The provisions of FAR 52.232-20(h) were also triggered by the government "not increasing the estimated costs". See Footnote 1.

establish a viable joint venture" *Id.* p. 13. Lacking any real issue of fact that could defeat Plaintiff's Amended Partial Summary Motion, Defendant raises two issues that are not relevant to either liability or damages and one issue that would be only relevant to damages, if the issue did exist, which it does not.

The two alleged issues that are totally irrelevant to this cause of action are the Plaintiff's consent or non consent to the release of the Equipment (Defendant's Issue 1) and Plaintiff's alleged failure to establish a viable joint venture. (Defendant's Issue 3).

For the reasons stated in Argument I above, the "removal" of the Equipment whether wrongful or not; and whether consented to by the Plaintiff or not; have no relevance or bearing on Count One of the Complaint which is the basis of this Amended Motion for Partial Summary Judgment. For the record, the "removal" by the Defendant was wrongful and illegal (Complaint ¶ 40, 44, 47, 51) and was not consented to by the Plaintiff (*Id.*) (¶21, 22). The issue of wrongful "removal" by the Defendant and lack of Plaintiff's consent are relevant to other Counts in the Complaint and at the appropriate time Plaintiff will show that wrongful removal and that there is no issue of fact concerning same.

Similarly, the establishment or "failure to establish a viable joint venture" and any associated argument concerning the ownership and title to the Equipment (Def. Brief p.13) has no relevance or bearing on Count One of the Complaint, which is the basis of this Amended Motion for Partial Summary Judgment. This Amended Motion is based solely upon Defendant's breach of its obligations under FAR 52.232-20 (h) and the equitable distribution required thereunder. (See Argument I above). Again, for the record, the Defendant's actions including but not limited to the "removal" of the Equipment, prevented the Plaintiff from finalizing the establishment of the joint venture by terminating the Contract (Pl. Uncontr. Facts ¶16) before

Plaintiff could deliver the Equipment to the Ukraine and finalize the joint venture (Def. Uncontr. Facts ¶28). Furthermore, the characterizations of the ownership and title to the Equipment asserted by the Defendant are erroneous (Plaintiff's Reply to Def. Uncontr. Facts ¶32 & 33), but since neither is relevant to this Amended Partial Summary Judgment Motion, Plaintiff will not address those issues here.

Finally, by arguing that there is an issue concerning "whether DCI had any financial interest in the Equipment", Defendant attempts to raise a damage issue, where one does not exist. It should be noted that this argument concedes that Defendant has incurred liability in failing to negotiate an "equitable distribution" to Plaintiff pursuant to 52.232-20 (h) but argues that since "DCI had no financial interest in the Equipment, there was nothing to negotiate." (Def. Brief p.11). Therefore, as a starting point, this court should grant Plaintiff summary judgment on the liability aspect of this motion. RCFC 56(c).

With respect to the damage portion of Defendant's argument concerning Plaintiff's alleged lack of "financial interest in the Equipment", Plaintiff's interest has been established by the Uncontroverted Facts, the Defendant's admissions and the Defendant's course of dealing. Defendant bases its argument of Plaintiff's lack of financial interest upon an a series of erroneous recommendations by the Defense Contact Audit Agency ("DCAA") (Def. App. 61, Frederickson Reply Aff. ¶4-18 ) that were only recommendations that were never accepted by the Defendant's Contracting Officer. (*Id.*)

From the inception of the Contract, Plaintiff fully advised Defendant that it intended to submit Public Vouchers to Defendant for the "full services received" but to defer a portion of certain Equipment acquisition costs and employee salaries until such time as Plaintiff received "permanent financing". These deferrals were all made pursuant to an agreement with the

respective supplier or employee. (Frederickson Reply Aff. ¶4). The Defendant, by its words and actions, explicitly agreed that Plaintiff could and would use this billing procedure. (*Id.* ¶5, 7, 8, 9, 13, 14, 17). DCAA in its audits for 1995, 1996, 1997 and 1998 questioned the deferred portions of these costs on what was an erroneous interpretation of the Federal Acquisition Regulations, the Cost Accounting Standards and an apparent misunderstanding of the explicit agreement between the Plaintiff and the Defendant concerning this particular billing practice. (*Id.* ) It should be emphasized that these DCAA recommendations were recommendations only, and the Contracting Officer was free to accept or reject them as he deemed appropriate. The Defendant, in its Brief, actually emphasizes the fact that it is the Contracting Officer who is to determine the allowability of costs (not DCAA). (Defendant's Brief, p. 3 and Def. Uncontr. Facts ¶29 citing FAR 52.216-7 Allowable Cost and Payment (July 1991). That FAR provision states, in part: "amounts determined to be allowable by the Contracting Officer" (not DCAA). Even DCAA states: "Our responsibility is to express an <u>opinion</u> based on our audit" (Emphasis added) (Def. App. 18, 25, 36, 48). In its Form 1 issued to the Plaintiff, DCAA states: "The purpose of this Form 1 is to initiate Contracting Officer action in reaching a final decision on the questioned costs associated with the issue described herein which the Contractor does not agree. It is our <u>opinion</u> that the Contractor has been fully paid for the suspended costs and should be required to reimburse the government for same." (Emphasis added). (Exhibit 14 p.3, Exhibit 15 p.3). The Form 1s also acknowledge that DCAA notified the Contracting Officer of DCAA's position. In response to this report and recommendation, the Defendant elected, by its inaction, not to accept the recommendation and to proceed to administrate the contract in a manner that was consistent with its agreement with the Plaintiff concerning its approval of Plaintiff's billing procedures. (Frederickson Reply Aff. ¶ 5, 7, 8, 9, 13, 14).

From 1995 through January 5, 2001, the Defendant with full knowledge and consent of Plaintiff's billing practices, honored all of Plaintiff's Public Vouchers and did nothing to indicate to the Plaintiff that it would not continue to abide by its agreement with Plaintiff concerning its approval of Plaintiff's billing practices. (*Id.* ). Suddenly, in June, 2001, on the eve of Defendant plotting to remove the Equipment, Defendant for the first time raises the argument that Plaintiff did not contribute its share with a half-hearted declaration that "I have seen no documentation to support that DCI contributed any amount toward its 26% share." (Exhibit 17 p.2).

This position, which is adopted by Defendant in its brief (Def. Brief p. 11), is totally without merit. In fact, more than a year prior to Defendant's June 5, 2001 letter (Exhibit 17), Defendant, in its May 5, 2000 Memorandum, stated:

> "Die Casters submitted $4 million in vouchers and was reimbursed in accordance with the Contract $3 million for the work performed. <u>Die Casters funded the remaining $1 million</u>." and "<u>since DOD only reimbursed DCI for $3 million, DCI's investment was $1 million</u>." (Emphasis added) (Def. App. 61)

Given the overwhelming evidence of the approval by Defendant of Plaintiff's billing practice of deferring certain portions of Equipment acquisition costs and employee salaries, the Plaintiff's reliance on that approval (Frederickson Reply Aff. ¶9), the fact that the Plaintiff's billing procedures were in compliance with all relevant laws and regulations (Frederickson Reply Aff. ¶10), and the fact that DCAA's questioning of certain costs was a recommendation only that was not accepted by the Defendant, there is no question of fact concerning Plaintiff's lack of financial interest in the Equipment.

Additionally, and most convincing, the Defendant's Contracting Officer on June 13, 2000 wrote the Plaintiff:

> "As you are aware, no funds remain on the contract to continue performance. And, it has been determined that the Government will not modify the subject contract to increase funding. In that regard, your attention is invited to Federal Acquisition Regulation (FAR) 52.232-20, Limitation of Cost, .............DTRA will negotiate an equitable distribution of all property produced or purchased under the contract, based upon the share of costs incurred by each party." (Exhibit B to Exhibit 1 Plaintiff's Complaint).

On no less that five other occasions in May through July, 2000, Defendant again admitted that Plaintiff had a financial interest in the Equipment. (Fredrickson Moving Aff. p15A-F). Defendant's position, on page 12 of its Brief, that these admissions in 2000 were "prior to the series of DCAA audits that revealed DCI's questionable practice of billing for all costs, even though 26 percent of the costs (DCI share) were not in fact paid . . ." is definitively rebutted by the Defendant's own documents which indicate that the first audit report was issued to Defendant on February 10, 1999 (Def. App. 17), and the matter was discussed with the Contracting Officer on July 1, 1999 (Exhibit 14 p. 3) as well as the fact that it is irrefutable that Defendant was well aware of the issue in March of 1996 and in September of 1997 (Frederickson Reply Aff. ¶5 and Exhibit 11). The Plaintiff's billing practices which were in effect for 5 years were fully implemented by the spring of 2000. (Frederickson Reply Aff. ¶17). Given these admissions and the undisputable and uncontroverted facts evidencing an agreement with respect to Plaintiff's billing practices as detailed above, it is difficult to understand how Defendant can rely on DCAA's recommendations that are based upon faulty premises to try to substantiate its position that Defendant did not have a financial interest in the Equipment.

Plaintiff's interest in the Equipment is $2,921,653.49 which is comprised of two parts: (1) its original cost share of $1,066,111.00, and (2) $1,855,542.32, which represents Plaintiff's investment over its minimum cost share of $1,066,111.00. (Pl. Uncontr. Facts ¶42). This additional investment was required because of changes to the Statement Of Work Requirements

(CP., Attachment 1, Statement Of Work Requirements), and the extra efforts required during the 5-year expanded period of Contract performance from January 30, 1998 (Def. App. 12) to the time the Defendant terminated the Contract by removing the Equipment (Def. App. 64 ¶9) and the settlement and administrative costs until April 14, 2003, when the Defendant advised Plaintiff "the contract is considered closed".[6] The amount due Plaintiff as an "equitable distribution" is $2,921,653.32 or 49.05% of the Equipment value and is "based upon the share of costs incurred by each", FAR 52.232-20(h), not the original cost shares in the Contract.

## III. THE DEFENDANT'S CLAIM THAT PLAINTIFF LACKED A FINANCIAL INTEREST IN THE EQUIPMENT IS BARRED BY THE DOCTRINE OF ESTOPPEL.

The Plaintiff concurs with the Defendant's statement of the law and the cases cited in support thereof that "the elements of equitable estoppel are: (1) misleading conduct, which may include silence and inaction; (2) reliance on this conduct; and (3) material prejudice if the delay assertion is permitted." (Def. Brief p.14). As more particularly set forth in Argument II above, the Defendant by its words and actions represented to Plaintiff that its billing procedure of deferring portions of payments to certain vendors and employees was approved and acceptable (Frederickson Reply Aff. ¶ 5-9, 13-14). Plaintiff relying on Defendant's representations continued to perform under the Contract in a manner consistent with its agreement with Defendant with respect to that billing procedure. (Frederickson Reply Aff. ¶9). Finally to allow

---

[6]While the Contract was terminated on December 21, 2001 when the Defendant removed the Equipment, Plaintiff continued to incur settlement and administrative costs until April 14, 2003, when Defendant advised the Plaintiff that "the contract is considered closed". (Exhibit 16). A copy of Defendant's April 14, 2003 letter is annexed as Exhibit 16.

the Defendant at this late date to reverse its approval of Plaintiff's billing procedures would create material prejudice and severely damage the Plaintiff. Therefore, as a matter of law, Defendant is estopped to deny that Plaintiff contributed its required share under the contract or that the Plaintiff does not have a financial interest in the Equipment.

## IV. OTHER ISSUES RAISED BY THE DEFENDANT ARE NOT RELEVANT TO THIS AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT.

The Defendant, in its attempt to create an issue of fact that would defeat this Amended Motion For Partial Summary Judgment, has tried to interject other issues that are not relevant to this motion. These issues are not relevant for the following reasons:

1. The references to limitation of the amount of government reimbursement contained in the Limitation Of Cost clause FAR 52.232-20 (Apr 1984) (Def. Brief p.4), are not relevant to the calculation of damages arising from the Defendant's failure to negotiate an equitable distribution because the equitable distribution is to be based "upon the share of costs incurred by each". (FAR 52.232-20(h)). Plaintiff, under Count One of the Complaint, seeks only to recover the balance of its unreimbursed incurred costs that it would have recovered upon an "equitable distribution" of the Equipment as provided for by FAR 52.232-20 (h)[7] and is not seeking to have the Defendant incur any liability for additional costs under the Contract.

2. The Defendant's discussion of the Contract completion date (Def. Brief p.6, 7) is also erroneous and not relevant to this Amended Motion For Partial Summary Judgment. For the record, Defendant, by its actions, has waived any prior completion date and has never established a new completion date. As stated in *DeVito v. United States*, 188 Ct. Cl. 979, 991-992, 413 F.2d

---

[7] $2,921,653.49 plus a reasonable profit of $438,248.02 (CP. ¶35 and Pl. Uncontr. Facts ¶42).

1147, 1154 (1969):

> "Time is of the essence in any contract containing fixed dates for performance. When a due date has passed and the contract has not been terminated for default within a reasonable time, the inference is created that time is no longer of the essence so long as the constructive election not to terminate continues and the contractor proceeds with performance. The proper way thereafter for time to again become of the essence is for the Government to issue a notice under the Default clause setting a reasonable but specific time for performance on pain of default termination."

Here, for a period of almost 5-years (January 30, 1998 - December 21, 2001) (see Footnote 6), the Defendant did not terminate the Plaintiff and continued to encourage the Plaintiff to perform various activities under the Contract. As a matter of law, the Defendant has waived the completion date of January 30, 1998 established by P00002 (Def. App. 12) and has failed to establish any new completion date.

## V. DEFENDANT'S POSITION THAT PLAINTIFF'S CLAIM THAT DTRA WRONGFULLY REMOVED THE EQUIPMENT AND FAILED TO NEGOTIATE AN EQUITABLE SHARE OF THE EQUIPMENT IS BARRED BY THE DOCTRINE OF ESTOPPEL IS NOT FACTUALLY ACCURATE.

The Defendant in this claim again deliberately misstates the premise of Plaintiff's Amended Motion For Partial Summary Judgment to include an issue of "wrongfully removed the Equipment". For the reasons stated in Point I above this claim lacks merit and is only presented in an effort to create an issue of fact to defeat Plaintiff's motion.

Additionally, the Defendant's argument is difficult to answer because it is inarticulately

drawn and it appears to be based on factual premises that are not accurate. The issue of the government of Moldova confiscating the Equipment was not a 2001 development, it had existed since 1999 and was handled successfully by the Plaintiff each time it arose in 1999 and 2000. (Frederickson Reply Aff. ¶19, Def. App. 60 and Exhibit 18). However, in the final analysis, this annually recurring crisis was certainly no basis for the Defendant to surruptisously and illegally appropriate Equipment that was stored in the Plaintiff's name in Moldova. It also doesn't in anyway justify the Defendant's illegal approriation of the Plaintiff's Equipment stored in the Ukraine, which even in the Defendant's version of the facts would make no sense and provide no justification.

Accordingly, the Defendant's claim of estopple is not supportable by the uncontroverted facts or as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests partial summary judgment for the relief requested in Count One of the complaint and denial of Defendant's cross-motion for summary judgment.

Dated: Rockville Centre, New York
December 6, 2004

Respectfully submitted,

/s/ Gary Marcus
Goldberg & Connolly
66 North Village Avenue
Rockville Centre, NY 11570
Tel: (516) 764-2800
Fax: (516) 764-2827
E-Mail: gmarcus@goldbergconnolly.com

Attorneys for Plaintiff