IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, | ) | |
| v. | ) | No. 04-1113C (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS AND DEFENDANT'S ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to Rule 56 (h)(2) of the Rules of the United States Court of Federal Claims, Plaintiff submits this reply to Defendant's Response to Plaintiff's Proposed Findings Of Uncontroverted Facts and Defendant's Additional Proposed Findings Of Uncontroverted Facts in support of Plaintiff's Amended Motion For Partial Summary Judgment. To the extent that Plaintiff agrees or does not disagree with any of Defendant's Proposed Findings Of Fact, Plaintiff does so solely for the purposes of this Amended Motion For Partial Summary Judgment and in opposition to Defendant's Cross-Motion for Summary Judgment and reserves the right to controvert any or all of Defendant's Proposed Findings Of Fact should this matter proceed to trial.

I. Plaintiff's Proposed Findings Of Fact And Defendant's Responses

1. Plaintiff, is a corporation existing under the laws of the State of New Jersey. (Frederickson Moving Aff., ¶ 4).

Defendant does not disagree with the above proposed finding of fact.

2. Plaintiff is a small business, as that term is utilized in the relevant Federal Acquisition Regulations ("FAR"). (Frederickson Moving Aff., ¶ 5).

Defendant does not disagree with the above proposed finding of fact.

3. On October 27, 1995, defendant awarded the Contract DNA 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 ("Contract") to plaintiff. (Frederickson Moving Aff., ¶ 6).

Defendant agrees with the above proposed finding of fact.

4. The Contract was a cost sharing contract with total original estimated costs of $4,100,427.00 of which Defendant's share was $3,034,316.00 and Plaintiff's share was $1,066,111.00. (Frederickson Moving Aff., ¶ 7).

Defendant agrees with the above proposed finding of fact.

5. Under the Contract, plaintiff was to provide capital equipment, material, training and business assistance/advisory services (hereinafter referred to collectively as the "Equipment") to a joint venture (hereinafter the "Joint Venture") to be established between plaintiff and a Ukrainian Joint Venture Partner ("UJVP"). The UJVP was to supply an existing die casting factory ("Facility") which was to be improved by the installation of the Equipment designed and provided by plaintiff. The Joint

Venture was to own and operate the modernized die casting Facility. (Frederickson Moving Aff., ¶ 8).

Defendant disagrees with plaintiff's description of the "equipment" to be provided under the Contract. The only "equipment" that properly is the subject of this dispute is capital equipment. Def. App. 65-72.[1] Therefore, defendant would restate the proposed finding as follows:

Under the Contract, plaintiff was to provide capital equipment, material, training and business assistance/advisory services to a joint venture ("Joint Venture") to be established between plaintiff and a Ukrainian Joint Venture Partner ("UJVP"). The UJVP was to supply an existing die casting factory ("Facility") which was to be improved by the installation of the equipment designed and provided by plaintiff. The Joint Venture was to own and operate the modernized die casting Facility. CP., Exhibit A.

6. Plaintiff was required to make substantial investments which included the continued development of its intellectual property that was incorporated in the design of the equipment and its business plans. (Frederickson Moving Aff., ¶ 10).

---

[1] "Def. App." is a citation to defendant's appendix attached to defendant's response to plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment. "CP." is a citation to the complaint in this case.

Defendant does not disagree with the above proposed finding of fact.

7. Plaintiff proceeded to perform in accordance with the terms and conditions of the Contract to acquire and provide the equipment, but expended all the Contract funding prior to shipping and installing the equipment in the Facility. (Frederickson Moving Aff., ¶ 14).

Defendant agrees with the above proposed finding of fact.

8. Plaintiff had the equipment stored for its own account in Kiev, Ukraine and Tiraspol, Moldova. (Frederickson Moving Aff., ¶ 14).

Defendant agrees with the above proposed finding of fact.

9. At various times while the equipment was in storage in Kiev, Ukraine and Tiraspol, Moldova, defendant acknowledged and admitted plaintiff's interests in the equipment and the application of FAR 52.232-20 to the disposition of the equipment, if the Contract were to be terminated. (Frederickson Moving Aff., ¶ 15). These admissions and acknowledgments include the following:

A. A May 5, 2000 Memorandum in which defendant's Director of Cooperative Threat Reduction Policy recognized plaintiff's interest in the equipment. (Frederickson Moving Aff., ¶ 15A).

B. A May 31, 2000 letter from defendant's Contracting Officer which advised Plaintiff that it "is understood that DCI and others may have a financial interest in the equipment." (Frederickson Moving Aff., ¶ 15B).

C. A June 2, 2000 letter from defendant's Contracting Officer reiterating to plaintiff that "DTRA has no intention of disregarding DCI's interest in the equipment." (Frederickson Moving Aff., ¶ 15C).

D. A June 4, 2000 telephone conversation in which defendant's Contracting Officer acknowledged that plaintiff had ownership rights in the equipment. (Frederickson Moving Aff., ¶15D).

E. A June 13, 2000 letter from defendant's Contracting Officer advising Plaintiff that it would close out the Contract in due course and that it would negotiate an "equitable distribution" of "all property produced or purchased under the contract, based upon the share of costs incurred by each party." (Frederickson Moving Aff., ¶ 15E).

F. A July 14, 2000 letter from defendant requesting plaintiff to submit the acquisition costs and plaintiff's contribution to same. Plaintiff responded by an e-mail of July 21, 2000. Defendant's Contracting Officer, on July 21, 2000, acknowledged the receipt and sufficiency of plaintiff's e-mail of July 21, 2000. (Frederickson Moving Aff., ¶ 15F).

Defendant does not disagree with the above proposed findings of fact to the extent that the term "equipment" is limited to certain capital equipment listed in defendant's appendix. Def. App. 65-72. However, defendant notes that all of the above documents relied upon by plaintiff predated the majority of the Defense Contract Audit Agency's ("DCAA") audit reports in which plaintiff's financial contribution was questioned. Def. App. 24-59. Therefore, defendant disagrees that it has admitted that plaintiff has a valid financial interest in the equipment.

10. Subsequent to October of 2001, defendant, acting through its authorized contractors, and without plaintiff's consent, took possession and control of equipment that was stored in Moldova and the Ukraine. (Frederickson Moving Aff., ¶ 16).

Defendant does not disagree with the above proposed finding of fact. However, defendant notes that defendant took possession of the equipment in order to safeguard the equipment and transport it to its contractually specified destination, a task plaintiff was unable to perform even though it was plaintiff's duty to perform. Def. App. 60, 63-72.

11. Defendant, without plaintiff's consent, shipped and delivered through its contractor, possession and control of the equipment to the UJVP and other third parties. (Frederickson Moving Aff., ¶ 17).

Defendant does not agree with the above proposed finding of fact. Def. App. 60, 63-72. Defendant would restate it as follows: Defendant shipped and delivered, through its contractor, possession and control of the equipment to Burevestnik, the proposed joint venture partner that plaintiff had identified, pursuant to the Contract requirements that plaintiff was duty bound to abide by, because plaintiff was unable or unwilling to do so.

12. Plaintiff did not receive any payments or other compensation from the party or parties to whom defendant's contractor delivered the equipment. (Frederickson Moving Aff., ¶ 17).

Defendant has no knowledge of whether plaintiff received any payment or compensation from Burevestnik, to whom defendant delivered the equipment.

13. On April 14, 2003, plaintiff was advised by defendant's Contracting Officer that the contract "is considered closed". (Frederickson Moving Aff., ¶ 18).

Defendant does not disagree with the above proposed finding of fact. However, defendant notes that defendant had contributed the maximum amount defendant was obligated to contribute to the contract and the equipment had been delivered to its contractual destination. CP., Exhibit A; Def. App. 9. The Contract stated, "at the end of this effort, defined as the time that when U.S.

Government funding has been utilized." CP., Exhibit A, I. Statement of Work Requirements, paragraph 2.2.4. Therefore, any remaining activity to be performed by plaintiff was extra-contractual.

14. The Contract incorporates by reference FAR clause 52.232.20 (Apr 1984), entitled Limitation of Cost. (Frederickson Moving Aff., ¶19).

Defendant agrees with the above proposed finding of fact.

15. Sub-section (h) of FAR 52.232-20 provides that: "If this contract is terminated or the estimated cost is not increased, the Government and the Contractor shall negotiate an equitable distribution of all property produced or purchased under the contract based upon the share of costs incurred by each." (Frederickson Moving Aff., ¶ 20).

Defendant agrees with the above proposed finding of fact. However, defendant notes that the contract was deemed completed, not terminated, because the contract performance period had expired and all authorized funds had been utilized. Def. App. 9; CP., Exhibit A, section I, paragraph 2.2.4.

16. The removal and disposition of the equipment by defendant has effectively terminated the Contract. (Frederickson Moving Aff., ¶ 21).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law, not a statement

of fact. In any event, defendant would restate it as follows: The removal and disposition of the equipment by defendant has effectively completed the Contract. Def. App. 9.

17. Upon termination of the Contract, FAR 52.232-20(h) required defendant to negotiate with plaintiff an "equitable distribution of all of the property produced or purchased under the contract based upon the share of costs incurred by each." (Frederickson Moving Aff., ¶21).

Defendant does not disagree with the above proposed finding of fact because it constitutes a conclusion of law, not a statement of fact. Defendant would restate it as follows: FAR 52.232-20(h) required defendant to negotiate with plaintiff an "equitable distribution of all of the property produced or purchased under the contract based upon the share of costs incurred by each," if the Contract was terminated.

18. Defendant has continued to refuse to enter into such negotiations or to provide plaintiff with its share of an "equitable distribution", although plaintiff has on numerous occasions requested such negotiations and receipt of its "equitable distribution." (Frederickson Moving Aff., ¶ 22).

Defendant does not agree with the above proposed finding of fact. Defendant would restate it as follows: Defendant has not entered into such negotiations or provided plaintiff with an "equitable distribution" share, although plaintiff has on

numerous occasions requested such negotiations and receipt of an "equitable distribution" share.

19. Defendant's unilateral actions of removing and disposing of the equipment, without receiving any compensation, have precluded plaintiff from attempting to establish a market value for the equipment by offering to sell same in the market place. (Frederickson Moving Aff., ¶ 23).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law. Defendant states that the Contract has precluded plaintiff from selling the equipment in the market place, not defendant's actions. CP., Exhibit A.

20. Insomuch as the equipment is unique and the value can not be established by offering to sell it in the market place, the market value of the equipment is difficult, if not impossible, to calculate. (Frederickson Moving Aff., ¶ 24).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law. Methods of valuation include the cost to purchase and modify the equipment, which are documented.

21. The market value of the equipment (including the embedded intellectual property) was equal to or greater than the costs incurred in the design and acquisition of same. (Frederickson Moving Aff., ¶ 25).

Defendant does not agree with the above proposed finding of fact. Plaintiff was paid a salary as part of "direct labor" for its work in modifying the equipment, which is included in plaintiff's costs. Def. App. 17-59.

22. The total costs incurred with respect to the design and acquisition of the equipment costs were $5,955,933.32 of which $3,034,316.00 were reimbursed to plaintiff by defendant under the Contract. (Frederickson Moving Aff., ¶ 27).

Defendant does not agree with the above proposed finding of fact. The total allowable costs incurred for the entire Contract were identified by DCAA as $2,645,849. Def. App. 17-59. Thus, defendant would restate plaintiff's proposed finding as follows: The total allowable costs incurred by DCI were $2,645,849, for which $3,034,316 was reimbursed to plaintiff by defendant under the Contract based upon plaintiff's invoices.

23. The balance of the incurred costs, $2,921,653.49, represents plaintiff's share of the incurred costs. (Frederickson Moving Aff., ¶ 27).

Defendant does not agree with the above proposed finding of fact. Defendant would restate it as follows: The difference between the amount that plaintiff was paid by defendant of $3,034,316.00 and the amount of allowable costs incurred by plaintiff of $2,645,849, represents the amount that defendant

overpaid plaintiff for plaintiff's share of the incurred costs. Def. App. 17-59.

24. Plaintiff is entitled to a reasonable profit on its incurred costs of $438,248.02. (Frederickson Moving Aff., ¶ 27).

Defendant does not agree with the above proposed finding of fact because it constitutes a conclusion of law and because this was a cost-sharing contract and plaintiff does not have a right under the Contract to unilaterally use and possess the equipment. CP., Exhibit A; Def. App. 10.

25. Approximately 84% of the total incurred costs have been audited by the Defense Contract Audit Agency ("DCAA"). (Frederickson Moving Aff., ¶ 28).

Defendant does not agree with the above proposed finding of fact. DCAA has audited 100 percent of the total allowable incurred costs as presented to DCAA by plaintiff. Def. App. 17-59.

26. Although requested by plaintiff, defendant has made no effort to complete the audit or provide plaintiff with its "equitable distribution" as required by FAR 52-232-20. (Frederickson Moving Aff., ¶ 30).

Defendant does not agree with the above proposed finding of fact. DCAA has completed its audit of all allowable incurred costs presented by plaintiff within the scope of the Contract. Def. App. 17-59.

II. <u>Defendant's Additional Proposed Findings Of Fact and Plaintiff's Reply.</u>

27. The Contract required DCI to create a joint venture with a Ukrainian company to establish a die casting business within twenty-four months after award. CP., Exhibit A.

Plaintiff does not agree with Defendant's Proposed Finding of Fact and would restate it as follows:

> Under the Contract, Plaintiff was to provide equipment, material, training and business assistance/advisory services (hereinafter referred to collectively as the "Equipment") to a joint venture (hereinafter the "Joint Venture") to be established between Plaintiff and a Ukrainian Joint Venture partner ("UJVP"). The UJVP was to supply an existing die cast factory ("Facility") which was to be improved by the installation of the Equipment designated and provided by the Plaintiff. The Joint Venture was to own and operate the modernized die casting Facility (*Id.* and Frederickson Moving Aff., ¶8 and Plaintiff's Proposed Findings of Uncontroverted Facts, ¶5). Additionally, the UJVP identified in the Contract was Meridian. (CP., Exhibit A, Statement of Work Requirements, Attachment 1). The original term of the Contract was 24 months. (*Id.* p.3).

28. Creating the joint venture entailed, among other things, acquiring and installing die casting machinery in a facility located in Ukraine in partnership with a company in Ukraine. <u>Id.</u>

Plaintiff agrees with Defendant's Proposed Finding of Fact, except notes that the "company in the Ukraine" identified in the statement of work was Meridian. (*Id.*, Statement of Work

Requirements, Attachment 1).

29. The contract contained a clause entitled "ALLOWABLE COST AND PAYMENT," FAR 52.216-7 (JUL 1991), which provided:

> The Government shall make progress payments to the Contractor when requested as work progresses, but (except for small business concerns) not more often than once every two weeks, in amounts determined to be allowable by the Contracting Officer in accordance with Subpart 31.2 of the Federal Acquisition Regulation in effect on the date of this contract and the terms of this contract.

CP., Exhibit A at 9; 48 C.F.R. § 52.216-7. The exception for small business invoicing included in the clause allows payments to be made more frequently and further permits the contractor to " . . . invoice and be paid for items or services purchased directly for the contract, even though the concern has not yet paid for those items or services." Id.

Plaintiff agrees with the above Proposed Finding of Fact.

30. Paragraph 1.c. of Section B of the contract required that: "Invoices or public vouchers submitted in accordance with the clause of this contract entitled ALLOWABLE COST AND PAYMENT shall include all costs experienced by the Contractor for the period represented by the voucher, and all such costs shall be subject to audit." CP., Exhibit A at 2.

Plaintiff does not disagree with the above Proposed Finding of Fact, but, for the sake of completeness, adds the sentence following Defendant's quoted portion of Paragraph 1.c of Section

B of the Contract: "As a result of the Cost-Sharing Agreement between the Government and the Contractor, the Government's share shall be limited to 74% of the vouchered costs and the vouchers prepared by the Contractor shall show a reduction of 26%, including Facility's cost of money, in accordance with the Cost-Sharing Agreement. *Id.*, p.2.

31. The contract also contained a clause entitled "LIMITATION OF COST," FAR 52.232-20 (APR 1984), which provided that: "The Government is not obligated to reimburse the Contractor for costs incurred in excess of . . . (i) if this is a cost-sharing contract, the estimated cost to the Government specified in the Schedule . . ." CP., Exhibit A at 10; 48 C.F.R. § 52.232-20.

Plaintiff does not disagree with the above Proposed Finding of Fact, but, for the sake of completeness, it is attaching a copy of the entire clause as Exhibit 19.

32. The contract contained a clause that states, in pertinent part, that: "Title and ownership of all property, equipment and materials acquired with U.S. Government funding under this Contract shall vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer." CP., Exhibit A at 8.

Plaintiff does not disagree with the above Proposed Finding of Fact, but would include the entire clause as set forth below:

> 5. USE AND OWNERSHIP/DISPOSITION OF GOVERNMENT-PROVIDED PROPERTY.
>
> a. All property, equipment and materials acquired with United States (U.S.) Government funding under this Contract shall be acquired solely for the use of the joint venture or business arrangement formed by the U.S. contractor and the former Soviet Union (FSU) enterprise partner in the performance of the terms of this Contract. All property, equipment and materials provided by the U.S. contractor or the FSU enterprise partner shall be used in accordance with the terms of the agreement between said parties. (Emphasis added)
>
> b. All property, equipment or materials acquired with U.S. Government funding under this Contract is considered a third-party contribution which is separate and distinct from property, equipment or materials contributed by the U.S. contractor or the FSU enterprise partner. Title and ownership of all property, equipment and materials acquired with U.S. Government funding under this Contract shall vest with the joint venture upon conclusion of the Contract, as determined by the Contracting Officer. Prior to the conclusion of the Contract, the U.S. contractor is accountable for said items in accordance with the standard Government property clause cited under Section 1 of this Contract. Title and ownership of all property, equipment and materials provided by the U.S. contractor or the FSU enterprise partner shall be determined in accordance with the terms of the agreement between the parties. *Id.*, p. 7,8. (Emphasis added).

33. The Contract included a clause entitled "GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME -AND-MATERIAL, OR LABOR-HOUR CONTRACTS)," FAR 52.245-5 (JAN 1986), which provided: "Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the

vendor's delivery of such property." Def. App. 74; 48 C.F.R. § 52.245-5.

Plaintiff does not disagree with the Proposed Finding of Fact set forth above. However, Plaintiff notes that this clause is inconsistent with the clause cited in Paragraph 32 above. The only way these two clauses can be read consistently is to have FAR 52.245-5 apply only to the extent that it is referenced in the clause set forth in Paragraph 32 and, in particular, to that portion of the clause that reads "prior to the conclusion of the Contract, the U.S. Contractor <u>is accountable</u> for said items in accordance with <u>the standard government property clause cited under Section 1</u> of this Contract." (Emphasis added). Therefore, this clause only applies to the accountability of the property by the contractor prior to the conclusion of the Contract. (Exhibit A to Exhibit 1, p. 7 & 8). Furthermore, this clause was not in the Contract, but Defendant attempted to add it by unilateral modification P00001. (Def. App. 74). This is not a permitted modification pursuant to FAR 43.103(b) and, therefore, is not an operative clause.

34. The Contract ended at the time "when U.S. Government funding has been utilized." CP., Exhibit A, I. Statement of Work Requirements, paragraph 2.2.4.

Plaintiff does not agree with the above Proposed Finding of Fact. The Contract ends when the statement of work is completed

or the Contract is terminated. *Id.* (Statement of Work Requirements, Attachment 1 p. 1 - 4).

35. On March 15, 1996, almost five months after award of the contract, DCI's Executive Vice-President and Chief Financial Officer, C.W. Maillefert, wrote to the contracting officer ("CO") informing him that DCI was experiencing serious problems that "may impede or impair its ability to implement the contract, including, *inter alia*, the resignation of certain key officers and employees." Def. App. 1.

Plaintiff does not disagree with the above Proposed Finding of Fact.

36. The March 15, 1996 letter stated that "[a]s a result of irreconcilable differences with senior management over personnel matters, the manner in which resources are being obligated and the overall implementation of the project, together with the demonstrable lack of progress in obtaining financing required to cover DCI's cost share and to pay salaries, three of the Company's four full time employees and one of its part time employees intend to resign immediately." Id.

Plaintiff does not disagree with the above Proposed Finding of Fact.

37. The employees that intended to resign included the Chief Financial Officer, the Corporate Counsel, another attorney who spoke Russian and was responsible for legal matters in

Ukraine, and DCI's Vice-President for Ukraine Operations who was responsible for implementation of the joint venture facility rehabilitation. Def. App. 1-2.

Plaintiff does not disagree with the above Proposed Finding of Fact.

38. The March 15, 1996 letter also described DCI's inability to finance its share of the costs associated with the contract through February 1996, with no reasonable prospect to improve its situation to complete the project. Def. App. 1-3.

Plaintiff disagrees with the above Proposal Finding of Fact because it is a conclusion not a statement of fact.

36. Concerned about this situation, the CO met with DCI's president, Alan C. Frederickson, who convinced the CO that he was taking steps "to enable DCI to perform successfully" under the Contract, which included hiring new personnel, receiving quotes for equipment to be purchased, and finding financial sources to invest in DCI. Def. App. 4-6.

Plaintiff does not disagree with the above Proposed Finding of Fact.

37. DCI acquired the necessary equipment for the Contract, but failed to establish the joint venture or deliver all of the equipment to Ukraine within the contract performance period, which originally was scheduled to end on October 27, 1997. Def. App. 8-9.

Plaintiff disagrees with the above Proposed Finding of Fact and would restate it as follows:

> DCI acquired the necessary Equipment for the Contract, but failed to establish the Joint Venture or to deliver all of the Equipment to Ukraine by October 27, 1997, the originally scheduled Contract termination date. (Def. App. 8 - 9).

38. On October 8, 1997, DCI requested a no-cost extension of the Contract "through January, 1998" to submit additional billings. The request specifically stated "Please note that this request does not request additional funding, as we can complete the contract within the allocated funds originally authorized." Def. App. 13.

Plaintiff does not disagree with the above Proposed Finding of Fact, except that Plaintiff also respectfully refers to Def. App. 13 and the language therein that states "there are several material costs remaining".

39. By a modification to the Contract, P00002, DCI was given until January 30, 1998, to complete the contract performance requirements, but no additional funds. Def. App. 12-16.

Plaintiff does not disagree with the above Proposed Finding of Fact.

40. DCI submitted vouchers from time to time during the course of the Contract. DCI's vouchers reflected its total expenses for the applicable calendar years as follows: 1995,

$108,123, Def. App. 19, 22; 1996, $637,259, Def. App. 28; 1997, $3,010,548, Def. App. 40; and 1998, $340,362. Def. App. 52.

Plaintiff disagrees with the above Proposed Finding of Fact and states that Plaintiff submitted vouchers through 14 April 2003 indicating total incurred costs of $5,955,933.32 which are more specifically set forth in a schedule which is annexed hereto as Exhibit 20.

41. The United States reimbursed DCI in the total amount of $3,034,316, the maximum amount required under the Contract. Def. App. 8.

Plaintiff does not disagree with the above Proposed Finding of Fact.

42. The difference between the amount that DCI billed ($4,096,292) and the amount DCI was reimbursed by DTRA ($3,034,316) is $1,061,976, or $4,135 less than DCI's required cost share under the Contract.

Plaintiff disagrees with the above Proposed Finding of Fact and would restate it as follows:

> The difference between the total incurred costs that Plaintiff billed ($5,955,933.32) and the amount that Plaintiff was reimbursed by DTRA ($3,034,316.00) is $2,921,653.32, which represents Plaintiff's share of the total incurred costs under the Contract. Plaintiff's share of the total incurred cost is comprised of its original cost share of $1,066,111.00 and $1,855,542.32, which represents Plaintiff's investment over its minimum cost share of $1,066,111.00. This additional investment was required because of changes to the Statement Of Work Requirements (CP., Attachment 1, Statement Of Work Requirements), and the extra efforts required during the 5-year expanded period of Contract performance from January 30, 1998 (Def. App. 12) to the time the Defendant terminated the Contract by removing the Equipment (Def. App. 64 ¶9) and certain settlement and administrative costs until Defendant advised Plaintiff that "the Contract is considered closed" on April 14, 2003 (Exhibit 16).

43. However, DCI's invoices were audited by the Defense Contract Audit Agency ("DCAA") to determine whether the recorded and billed costs were allowable in accordance with the Allowable Cost and Payment clause and FAR Subpart 31.2. Def. App. 17-59.

Plaintiff does not disagree with the above Proposed Finding of Fact. However, Plaintiff would add the following:

> "A. From the inception of the Contract, Plaintiff advised Defendant of its intent to bill, and did bill the Defendant for 'full services received' but to hold back and not to pay a portion of certain Equipment acquisition costs and employee salaries until 'realization of permanent financing'. (Exhibit 11)
>
> B. The deferral of these costs were all pursuant to agreements with the respective vendors and employees. *Id.*

C. At a meeting held in March of 1996, Defendant's Contracting Officer approved Plaintiff's billing procedures including, but not limited to, deferral of a portion of the incurred costs of certain suppliers and employees. (Frederickson Reply Aff. ¶5).

D. In August and September of 1997, DCAA advised Plaintiff of its preliminary finding relating to some of Plaintiff's 1995 incurred costs which were being questioned because they were deferred and unpaid. (Def. App. 22).

E. Plaintiff disagreed with that finding and objected to the DCAA recommendations. (Exhibit 12, p. 7).

F. On September 5, 1997, Plaintiff requested Defendant to issue a letter to DCAA advising DCAA that 'DCI billing and payment procedures were conducted in full compliance and approval of DSWA'. (Exhibit 11, p. 2).

G. Defendant did nothing to accept DCAA's recommendations and continued to honor all of Plaintiff's public vouchers as submitted and otherwise did nothing to indicate to the Plaintiff that it would not abide by the agreement it had with the Plaintiff concerning its approval of Plaintiff's billing practices. (Frederickson Reply Aff. ¶8).

H. Plaintiff, relying on its agreement with Defendant, and Defendant's apparent refusal to adopt the DCAA recommendations, continued to incur costs needed to perform under the Contract and otherwise to expend its limited resources in furtherance of the Contract objectives. (Frederickson Reply Aff. ¶9).

I. Plaintiff's method of billing utilizing these deferred payments was in compliance with all relevant laws and regulations and was consistent with Plaintiff's disclosures concerning same, and was implemented as approved by, and agreed to by, the Defendant's Contracting Officer. (Def. App. 61 and Frederickson Reply

Aff. ¶10).

J. On July 1, 1999, DCAA, as part of its audit of Plaintiff's 1996 incurred costs, again questioned certain of Plaintiff's costs that were deferred and unpaid (Def. App. 24 - 34, and Exhibit 14) and discussed the matter with Herbert Thompson, Defendant's Contracting Officer, who 'did not comment'. (Exhibit 14, p. 3).

K. Plaintiff disagrees, as it had previously disagreed and objected to the DCAA recommendations. (Def. App. 24 - 34, and Exhibit 14). After receipt of the DCAA audit reports for 1997 and 1998, as it had previously done for the 1995 and 1996 audit reports, Defendant never accepted any of the recommendations of DCAA including the recovery of any alleged overpayments (Exhibit 14, p.3 and Exhibit 15, p.3), or in any way indicated to Plaintiff that it would not continue to abide by its agreement with the Plaintiff concerning the approval of Plaintiff's billing practices. (Frederickson Reply Aff. ¶13 and 14).

L. DCAA's audits did not question the reasonableness, authenticity or allocability of Plaintiff's costs that were charged to the Contract. DCAA only questioned the allowability of certain costs per its mistaken interpretations of the FAR and the cost accounting standards. (Frederickson Reply Aff. ¶15). Defendant, in its May 5, 2000 Memorandum, states "that the DOD IG has verified the invoices submitted to DOD for $4 million were valid expenses." (Def. App. 61).

M. The Defendant's Memorandum dated May 5, 2000 states categorically that the investigations of DCI "were unable to find any evidence of improper billing. Die Casters submitted $4 million in vouchers and was reimbursed in accordance with the Contract $3 million for the work performed. Die Casters funded the remaining $1 million." (Def. App. 61).

44. The total amount allowed was $2,645,849. The allowable

costs were significantly less than the amount DCI was reimbursed: 1995, $87,043, Def. App. 22; 1996, $438,314, Def. App. 28; 1997, $2,113,359, Def. App. 40; and 1998, $7,133. Def. App. 52.

Plaintiff does not agree with the above Proposed Finding of Fact and cites that DCAA's audits are recommendations only which the Contracting Officer is free to accept or reject. In this case, the Contracting Officer rejected by his words and actions all of DCAA's recommendations and, instead, proceeded to abide by its previous agreement with the Plaintiff concerning DCI's billing procedures and the propriety of same. (FAR 52.216-7 Allowable Costs and Payment (July 1991)). (Def. Uncontr. Facts, ¶29). (Def. App. 18, 25, 36, 48).

45. The difference between the amounts billed and the amounts deemed allowable results in part from DCI's practice of having its employees and suppliers discount their invoices by 26 percent (DCI's share of costs expressed as a percentage) while recording the full amount of costs as if they had been paid. Def. App. 23, 32-33, 42-43, 55.

Plaintiff does not agree with the above Proposed Finding of Fact. Plaintiff would restate this finding as follows:

> Plaintiff has, from the inception of the Contract, advised Defendant that the Plaintiff intended to bill and did, in fact, bill Defendant for "full services received" but to hold back and not pay a portion of certain Equipment acquisition costs and employee salaries until the "realization of permanent financing". The deferral of these

> costs were all pursuant to agreements with the respective vendors and employees. (Exhibit 11).

46. DCI still did not succeed in establishing a viable joint venture even with the additional period of time allowed by Modification P00002. Def. App. 9.

Plaintiff does not disagree with the above Proposed Finding of Fact.

47. The first proposed joint venture partner, Meridian, was a company "with no die cast experience and no viable contribution other than a building." Def. App. 62.

Plaintiff does not disagree this is an accurate quote from the referenced document.

48. Meridian "pulled out of the project in 1997." Id.

Plaintiff does not disagree this is an accurate quote from the referenced document.

49. The second proposed joint venture partner, Burevestnik, had "significant die cast experience, and skilled management, in an on-going, profitable die cast business." Id.

Plaintiff does not disagree with the above Proposed Finding of Fact.

50. DCI never consummated a joint venture relationship with Burevestnik. Def. App. 9.

Plaintiff disagrees with the above Proposed Finding of Fact. Plaintiff entered into a Protocol of Intention with Burevestnik.

A copy of the Protocol of Intention is annexed as Exhibit 21.

51. No entity was available to assume title to the equipment that DCI purchased with Government funds, other than the United States, pursuant to the Government Property clause, FAR 52.245-5 (JAN 1986). Def. App. 74; 48 C.F.R. § 52.245-5.

Plaintiff does not agree with the above Proposed Finding of Fact and would restate it as follows:

> No entity was available to assume title to the Equipment that DCI purchased, since no Joint Venture between DCI and a Ukrainian Joint Venture partner was ever finalized. The Contract having been terminated by Defendant's acts and/or the Contract not having been additionally funded by the Defendant, the provisions of FAR 52.232-20(h) apply and there should have been a negotiation of an equitable distribution of the Equipment. (FAR 52.232-20(h))

52. Some of the equipment that DCI purchased was temporarily imported to Moldava, where DCI caused modifications to be made. Def. App. 60, 63-64.

Plaintiff does not disagree with the above Proposed Finding of Fact.

53. DCI never shipped the equipment in Moldava to Ukraine. Id.

Plaintiff does not disagree with the above Proposed Finding of Fact.

54. DCI notified DTRA that Moldavian customs intended to confiscate the equipment because it had been retained in Moldava for a period longer than permitted under a temporary import

license. Id.

Plaintiff does not disagree with the above Proposed Finding of Fact, except to add that this was an issue in 1999, 2000 and 2001, and due to Plaintiff's efforts the crisis was solved in both 1999 and 2000. (Frederickson Reply Aff. ¶19 & 20 and Def. App. 60 and Exhibit 18).

55. DTRA paid the cost to ship the equipment to Ukraine to ensure that the equipment located in Moldava was safeguarded. Def. App. 64.

Plaintiff disagrees with the above Proposed Finding of Fact and would restate it as follows:

> Plaintiff's Contract with Kirov Plant, the bailee of the Equipment in Tiraspol Moldova, had a provision whereby the shipment to the Ukraine and installation was included in the Contract price (Exhibit 22 p.3). Plaintiff has no first-hand knowledge of the extent or the purpose of any payments made by Defendant or its agents to secure the release of the Equipment. A copy of the Kirov Plant/DCI Purchase Order is annexed as Exhibit 22.

56. DTRA also paid storage fees for the equipment located in Ukraine. Id.

Plaintiff does not agree with the above Proposed Finding of Fact. See response to Paragraph 55 above.

57. Ultimately, custody of the equipment was given to Burevestnik, DCI's proposed joint venture partner. Id.

Plaintiff does not disagree with the above Proposed Finding of Fact, but has no knowledge of the exact circumstances by which

the Defendant transferred the Equipment to the Ukraine. Plaintiff, however, understands that a certain portion of the Equipment purchased under the Contract was eventually transferred to a company in Estonia.

58. Title to the equipment remains with the United States at this time. Id.

Plaintiff does not agree with the above Proposed Finding of Fact. However, Plaintiff is not fully knowledgeable of all the facts concerning the transfer of the Equipment to the Ukraine and the subsequent transfer of some Equipment to Estonia. Plaintiff also questions whether or not the transfer of "responsibility" to the Ukraine does not entail a transfer of title as well as custody. (Def. App. 65, 67, 69, 71).

Respectfully submitted,

/s/ Gary Marcus
Goldberg & Connolly
66 North Village Avenue
Rockville Centre, NY 11570
Tel: (516) 764-2800
Fax: (516) 764-2827
E-Mail: gmarcus@goldbergconnolly.com

Attorneys for Plaintiff

Dated: December 6, 2004