No. 04-1113C
(JUDGE BRADEN)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DIE CASTERS INTERNATIONAL, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Defense Threat Reduction Agency

Dated: December 23, 2004

# TABLE OF CONTENTS

**PAGE(S)**

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The Issues Raised By The Government In Its Cross-Motion Are Not Irrelevant To The Court's Determination Of Liability . . . . . . . . . . 2

II. DTRA Is Not Barred By The Doctrine Of Estoppel From Claiming That DCI Lacked A Financial Interest In the Equipment . . . . . . . . . . 6

III. DCI's Claim That DTRA Wrongfully Removed The Equipment And Failed To Negotiate An Equitable Share Of The Equipment Is Barred By The Doctrine Of Estoppel . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**CASE** **PAGE(S)**

American Electronic Laboratories v. United States,
774 F.2d 1110 (Fed. Cir. 1985) . . . . . . . . . . . . . . . 7

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . 10, 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . 10

Consortium Venture Corp. v. United States,
5 Cl. Ct. 47 (1984) . . . . . . . . . . . . . . . . . . . . 7

DeVito v. United States,
188 Ct. Cl. 979, 413 F.2d 1147 (1969) . . . . . . . . . . . 5

Emeco Industries, Inc. v. United States,
202 Ct. Cl. 1006, 485 F.2d 652 (1973) . . . . . . . . . 8, 9

Federal Crop Insurance Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . 6

Housing Corporation of America v. United States,
199 Ct. Cl. 705, 468 F.2d 922 (1972) . . . . . . . . . . . 6

Martin J. Simko Construction, Inc. v. United States,
11 Cl. Ct. 257, 275 (1986) . . . . . . . . . . . . . . . . . 7

Ran-Paige Co. v. United States,
35 Fed. Cl. 117 (1996) . . . . . . . . . . . . . . . . . . 8

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . 11

Trauma Service Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . 2

## STATUTES AND REGULATIONS

**STATUTES** **PAGE(S)**

48 C.F.R. § 31.201-2 . . . . . . . . . . . . . . . . . . . . . . 7

48 C.F.R. § 52.216-7(b) . . . . . . . . . . . . . . . . . . . . . 7

48 C.F.R. § 52.232-20(h) . . . . . . . . . . . . . . . . . . 3, 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1113C |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

In its response to defendant's cross-motion for summary judgment, plaintiff, Die Casters, Inc. ("DCI"), contends that: (1) the issues of whether defendant wrongfully removed the equipment that DCI was required to procure under Contract DNA001-95-C-0169 ("Contract"), whether DCI had any financial interest in the equipment, whether DCI consented to the release of the equipment, whether DCI failed to establish a joint venture, whether the Defense Threat Reduction Agency ("DTRA") had paid all of the costs that it was contractually obligated to pay under the limitation of cost clause of the Contract, and whether the Contract was completed are irrelevant to a determination of liability in this matter; (2) defendant's claim that DCI lacked a financial interest in the equipment is barred by the doctrine of estoppel; and (3) DCI's claim that DTRA wrongfully removed the equipment and failed to negotiate an equitable share of the equipment are not barred by the doctrine of estoppel. DCI simply is wrong.

DEFENDANT'S BRIEF

I. The Issues Raised By The Government In Its Cross-Motion Are Not Irrelevant To The Court's Determination Of Liability

DCI contends that the issues of whether defendant wrongfully removed the equipment that DCI was required to procure under Contract, whether DCI had any financial interest in the equipment, whether DCI consented to the release of the equipment, whether DCI failed to establish a joint venture, whether DTRA had paid all of the costs that it was contractually obligated to pay under the limitation of cost clause of the Contract, and whether the Contract was completed are irrelevant to a determination of liability in this matter. Plaintiff's Reply Brief at 4-6. DCI cites no legal authority for any of these contentions and they are wrong.

In order to establish a breach of obligation by DTRA, DCI must establish that DTRA failed to perform a duty that was owed to DCI under the Contract. See Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (no breach where no duty owed). DCI has not established any duty upon DTRA that was breached. DCI's attempt to narrow the focus of the dispute simply to whether DTRA failed to negotiate an equitable share of the equipment procured under the Contract is misleading and fails to consider whether an obligation to negotiate an equitable share even arose under the Contract. Indeed, no such obligation arose because of all the facts raised in our cross-motion.

First, the contract was not terminated. There is no Contract document that even purports to terminate the Contract. The Contract was completed, pursuant to paragraph 2.2.4, because DTRA paid all of the money that it was required to pay under the Contract. CP., Exhibit A; Def. App. 8.[1] Thus, the provision that addresses a requirement to negotiate an equitable distribution of the equipment procured under the Contract was never triggered. See CP., Exhibit A; 48 C.F.R. § 52.232-20(h).

Second, any remaining tasks to be performed under the Contract were exclusively within the responsibility of DCI. The Contract required DCI to create a joint venture with a Ukrainian company to establish a die casting business within twenty-four months after award. CP., Exhibit A. Creating the joint venture entailed, among other things, acquiring and installing die casting machinery in a facility located in Ukraine in partnership with a company in Ukraine. Id. However, DCI failed to establish any joint venture. Def. App. 8.

The Contract was a cost sharing arrangement in which DCI agreed to contribute $1,066,111.00, approximately 26 percent, and the DTRA was to fund $3,034,316.00, approximately 74 percent, of Contract costs in the total amount of $4,100,427.00. CP.,

---

[1] "CP." is a citation to the complaint in this case. "Def. App." is a citation to the appendix attached to Defendant's Response TO Plaintiff's Amended Motion For Partial Summary Judgment And Defendant's Cross-Motion For Summary Judgment.

Exhibit A. However, the Defense Contract Audit Agency ("DCAA") questioned whether DCI had actually paid the costs it claimed in its invoices. Def. App. 18-19, 22, 25-29, 36-38, 40-44, 48-57. According to DCAA's audits, the total allowable costs submitted by DCI was $2,645,849, which was $388,467 less than the maximum allowed amount of $3,034,316 paid to DCI by DTRA, under the Contract. Def. App. 17-59.

Contrary to DCI's contention, Plaintiff's Reply Brief at 9, it is not DCI's billing procedures that are the problem, it is DCI's lack of payment. DCI has never produced any evidence that the questioned costs were ever actually paid, even though they were allegedly incurred approximately six years ago and the "loans" that DCI claims it incurred for payment of its share expired in 2000. Further, DCI's failure to pay its share of the costs are not limited to a damages issue, as DCI contends, it is an element in the basis for negotiating an equitable share of the equipment. See 48 C.F.R. § 52.232-20(h).

DCI cannot escape the facts that DCI failed to deliver the equipment to the proposed joint venture partner, Def. App. 60, that DCI notified DTRA that the equipment in Moldova was in jeopardy of being confiscated, Def. App. 64, and that DCI failed to consummate a joint venture agreement with its proposed joint venture partner. Def. App. 8. In response to DCI's notification that the equipment in Moldova was in jeopardy of being

confiscated, DTRA paid the cost to ship the equipment to Ukraine to ensure that the equipment located in Moldova was safeguarded. Def. App. 64. DTRA also paid storage fees for the equipment located in Ukraine. Id. Custody of the equipment was given to Burevestnik, DCI's proposed joint venture partner. Id.

Those facts are not irrelevant, as DCI contends. They go to the very heart of whether either party satisfied its obligations under the Contract. DTRA did satisfy its obligations and, thus, there was nothing to negotiate. It simply does not make sense that DCI unilaterally can declare the Contract terminated and try to recoup money that it did not pay for equipment when the only tasks that remained to be performed were to deliver the equipment to Ukraine and consummate a joint venture agreement, tasks that were exclusively within the responsibility of DCI.

DCI's reliance upon DeVito v. United States, 188 Ct. Cl. 979, 991-92, 413 F.2d 1147, 1154 (1969), for the proposition that DTRA waived the completion date by failing to set a new date is inapplicable. Plaintiff's Reply Brief at 12. DCI's Contract was completed when DTRA fully paid its obligations under the Contract. CP., Exhibit A, ¶ 2.2.4. The fact that DCI still had some responsibilities to perform did not require DTRA to set a new date for DTRA to pay money that was already paid.

Accordingly, DTRA did not breach any obligation to negotiate an equitable distribution share of the equipment with DCI.

II. DTRA Is Not Barred By The Doctrine Of Estoppel From Claiming That DCI Lacked A Financial Interest In the Equipment

In its response to the United States's cross-motion for summary judgment, DCI contends that the Government is barred by the doctrine of estoppel from claiming that DCI lacked a financial interest in the equipment. Plaintiff's Reply Brief at 11-12. DCI's contention is without merit.

Here, DCI claims that representations were made in letters and conversations acknowledging that DCI had a financial interest in the equipment. However, the May 31, 2000 letter of the contracting officer cited by DCI merely stated that "DCI and others **may** have a financial interest in the equipment." Def. App. 73. Where there is a "may," there also is a "may not."

Further, DCI cannot rely on any statements made by anyone other than the contracting officer. The well-settled rule that the Government is not bound by the unauthorized acts of its agents, Housing Corporation of America v. United States, 199 Ct. Cl. 705, 711, 468 F.2d 922, 925 (1972), has been strictly followed by this Court.

> The rule is that the government cannot be bound by the utterances of agents not delegated requisite authority. In government contracting it is not enough that a person may appear to have authority to enter into or amend an agreement, that person must actually have the requisite delegated authority to do so. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S. Ct. 1, 92 L. Ed. 10 (1947). The government is not bound by the unauthorized acts of its agents **and generally**

> **will not be estopped from denying such authority where none exists**. It is the responsibility of the one who contracts with the government to make sure that the person with whom it deals has actual authority to bind the government. Consortium Venture Corp. v. United States, 5 Cl. Ct. 47, 49 (1984).

Martin J. Simko Construction, Inc. v. United States, 11 Cl. Ct. 257, 275 (1986)(emphasis added).

In addition, the audits performed of DCI's financial records that disclosed DCI's practice of claiming costs for 26 percent of the total costs that DCI had not, in fact, paid were performed from 1999 through 2001. At that time, DTRA expected the costs to be paid, if not at the time of the invoice, at some point in time in the near future and certainly after DCI was paid by DTRA upon those invoices. See 48 C.F.R. §§ 31.201-2, 52.216-7(b) (costs are unallowable if not paid in the ordinary course of business).

The truth is that DCI never paid those costs, either before it included the costs in the invoices, after the invoices were submitted, or even after DTRA paid the invoices. At the time that DTRA discussed the possibility of DCI having a financial interest in the equipment, DCI knew the truth and DTRA did not. Therefore, DCI cannot hold any statements made by DTRA regarding DCI's alleged financial interest in the equipment against DTRA upon an estoppel theory. See American Electronic Laboratories v. United States, 774 F.2d 1110, 1113 (Fed. Cir. 1985)(party to be estopped must be aware of true facts).

Accordingly, DTRA is not estopped from claiming that DCI lacked a financial interest in the equipment.

III. DCI's Claim That DTRA Wrongfully Removed The Equipment And Failed To Negotiate An Equitable Share Of The Equipment Is Barred By The Doctrine Of Estoppel

In response to our contention that DCI is barred by the doctrine of estoppel from claiming that DTRA wrongfully removed the equipment, DCI contends that there are no uncontroverted facts or law to support the Government's position. Plaintiff's Reply Brief at 13. DCI's contention is without merit.

The law that supports our contention was clearly stated in our prior brief. "The elements of equitable estoppel are (1) misleading conduct, which may include silence and inaction; (2) reliance on this conduct; and (3) material prejudice if the delayed assertion is permitted." Ran-Paige Co. v. United States, 35 Fed. Cl. 117, 122 (1996) (citing Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc., 971 F.2d 732, 734, reh'g denied (Fed. Cir. 1992); see also Emeco Industries, Inc. v. United States, 202 Ct. Cl. 1006, 1015, 485 F.2d 652, 657 (1973) ("It is not, however, essential that the party against whom an estoppel is urged to have made a representation of any kind.").

We also carefully documented the facts that supported our contention. DCI had represented to DTRA in March 1996 that it could perform the Contract successfully despite its loss of key personnel and financial problems. Def. App. 4-6. Again in

October 1997, near the end of the original Contract schedule, DCI represented that it was not seeking any increase in the Contract funding when it requested an extension of time for Contract performance. Def. App. 13. DTRA relied upon those representations when it allowed DCI to continue the Contract and when it granted DCI a modification to the Contract, extending the time for performance through January 1998, as requested by DCI. Def. App. 12-16.

However, DCI subsequently notified DTRA that the equipment in Moldova was in jeopardy of being confiscated by the Moldavian government as a result of DCI's failure to ship the equipment to Ukraine in a timely manner. Def. App. 60, 63-64. DCI apparently was financially unable to ship the equipment to Ukraine and pay any remaining costs for the equipment. In addition, DCI was unable to pay storage fees for the equipment located in Ukraine. Def. App. 64. DTRA was forced to pay for those storage fees. Id.

Now DCI claims that 2001, when DTRA took action to rescue the equipment from confiscation and deliver all the equipment to Ukraine, was not the first time that confiscation by Moldova was threatened. Plaintiff's Reply Brief at 14. On that basis, DCI claims that it was able to save the equipment before, in 1999 and 2000, and that it could do so again in 2001. Id.

First, DCI's claim is pure speculation, not fact, uncontroverted or otherwise, and, therefore, should not be relied upon by the Court in making its decision. Second, the exact opposite inference from those facts of prior confiscation attempts is more likely, that Moldova would make good on its confiscation threats after being stalled by DCI on two prior occasions. Third, if DCI could save the equipment without the assistance of DTRA, then DCI's concomitant claim that it needed additional money from DTRA to deliver the equipment to Ukraine was disingenuous.

The uncontroverted facts remain: (1) DCI represented just prior to the completion of the performance period that it needed more time, but no more money; (2) DTRA paid all of the money that it was obligated to pay under the terms of the contract; (3) DCI notified DTRA that Moldova intended to confiscate the equipment situated in Moldova; and (4) DTRA retrieved the equipment and delivered it to Ukraine for DCI. Def. App. 12-16, 60, 63-64.

Accordingly, DCI is estopped from claiming that DTRA wrongfully removed the equipment and failed to negotiate with DCI an equitable share of the equipment.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247-48 (1986). A dispute is genuine only if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. Id. at 248; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny DCI's amended motion for partial summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ *Mark A. Melnick*
MARK A. MELNICK
Assistant Director

/s/ *William K. Olivier*
WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Defense Threat Reduction Agency

Dated: December 23, 2004

Attorneys for Defendant