**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---------------------------------------- X

**DIE CASTERS INTERNATIONAL, INC.,**

Plaintiff,

v.

**UNITED STATES OF AMERICA,**

Defendant.

---------------------------------------- X

No. 04-1113C
(Judge Braden)

**PLAINTIFF'S MOTION FOR AN ORDER PURSUANT TO RCFC 37(a)(2)(A) COMPELLING DEFENDANT TO MAKE REQUIRED DISCLOSURES**

Pursuant to Rule 7(b) of the Rules of the United States Court of Federal Claims, Plaintiff respectfully moves for an order compelling Defendant to make required disclosures.

In support of this Motion, Plaintiff is filing with this Court an Affirmation of Gary Marcus in Support of Plaintiff's Motion ("Affirmation") and an Affirmation of Good Faith Pursuant to RCFC 37(a)(2)(A).

Plaintiff is entitled to an order pursuant to RCFC 37(a)(2)(A) compelling Defendant to make required disclosures for the reasons set forth in the Affirmation.

Respectfully submitted,

s/Gary Marcus

Attorney for Plaintiff
Goldberg & Connolly
66 North Village Avenue
Rockville Centre, NY 11570
Tel: (516) 764-2800
Fax: (516) 764-2827
E-Mail: gmarcus@goldbergconnolly.com

Dated: April 29, 2005

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---------------------------------------------------------------------- X

**DIE CASTERS INTERNATIONAL, INC.,**

Plaintiff,

- against -

**UNITED STATES OF AMERICA,**

Defendant.

---------------------------------------------------------------------- X

No. 04-1113C
(Judge Braden)

**AFFIRMATION**

GARY MARCUS, an attorney duly admitted to practice law in the courts of the State of New York, affirms the following under penalty of perjury:

1. I am an attorney associated with the law firm of Goldberg & Connolly, attorneys for Plaintiff, Die Casters International, Inc. ("DCI") in the above captioned action and I am familiar with the facts and circumstances set forth herein.

2. I submit this affirmation in support of Plaintiff's motion pursuant to RCFC 37 (a) (2) (A) for an order compelling Defendant to make required disclosures, together with such other and different relief as this Court may deem just and proper.

3. Plaintiff has served the following discovery demands:

   a. On November 8, 2004 - Plaintiff's First Request For Production Of Documents (hereinafter "Document Request" or "Doc. Req."), a copy of which is annexed as Exhibit A.

   b. On January 20, 2005 - Plaintiff's Notice Of Deposition of:

      i. Scott Morton

ii. Harry Cook

iii. Herbert A. Thompson

iv. Mark West

v. Edward Archer

vi. John C. Connell, Jr.

vii. Anne Bridges Steely

viii. A Representative of The Defense Threat Reduction Agency.

4. In response to Plaintiff's discovery demands Defendant has:

a. On December 13, 2004, served Defendant's Responses To Plaintiff's First Request For Production Of Documents, a copy of which is annexed as Exhibit B;

b. On December 31, 2004, provided Plaintiff with documents bate stamped 00001-05706;

c. On February 8, 9, 10 and 11, 2005 arranged for Plaintiff to take the depositions of the witnesses set forth in ¶3(b) above. (hereinafter "Defendant Witnesses");

d. On April 18, 2005, provided Plaintiff with documents bate stamped 05707-06317.

5. Defendant's responses to Plaintiff's Document Request was woefully inadequate in so much as the Defendant has failed to produce documents that have been requested by the Plaintiff and that are material and necessary for Plaintiff's prosecution of this action. The documents not produced by the Defendant include but are not limited to:

a. Any and all communications, documents or other correspondence which discusses the formation or administration of the clauses in Section H of the Contract entitled "Special Contract Requirements" and paragraph 5 entitled "Use and Ownership/Disposition of Government-Provided Property". ("Doc. Req. ¶2).

b. Any and all documents or any communications by and between Defense Threat Reduction Agency ("DTRA") or any Agency or Department of the United States Government on the one hand and the Ukranian Government on the other concerning the ownership of the Equipment or by implication relating to Equipment. ("Doc. Req. ¶3).

c. Any and all documents or other records in any way pertaining to the negotiations between the governments of the United States and the Ukraine concerning the Contract or the Equipment to be delivered thereunder or any benefits to be derived therefrom. ("Doc. Req. ¶4).

d. Any and all documents in any way pertaining to the analysis by DCI, DTRA or any Department or Agency of the United States Government or the Ukranian Government concerning the present and future economic benefits of the Contract or the future and anticipated benefits arising therefrom. In particular, any analysis of any Future Business that was to be derived from the investments made in this Contract. ("Doc. Req. ¶5).

e. Any and all documents in any way pertaining to any subsequent funding of the Contract including any requests by DCI for subsequent funding of the Contract. ("Doc. Req.¶7).

f. Any and all documents pertaining to any changes in scope under the Contract, whether the changes were incorporated into Change Orders or modifications, or not. ("Doc. Req.¶13).

g. Any and all documents concerning the analysis of other funding sources for the Contract. ("Doc. Req. ¶14).

h. Any and all documents in any way pertaining to any potential investment by the Defense Enterprise Fund and /or any other communications or documents with respect to the Defense Enterprise funding taking over any portion of the Contract or any assets or business relationships of DCI or any of the Equipment procured under the Contract. ("Doc. Req. ¶16).

i. Any and all documents in any way pertaining to any decisions by DTRA or any other Department or Agency of the United States Government or the government of the Ukraine to fund or not to fund the Contract beyond the original funding of $3,034,316.00. ("Doc. Req. ¶18).[1]

j. Any and all documents or records of any communications concerning the retention by DTRA or any Agency or Department of the United States Government of any third-party or contractor ("Contractor"), to take possession of the Equipment either in the Ukraine or in Moldova that was being stored by DCI for the Contract. ("Doc. Req. ¶19).

k. Any and all documents in any way connected with the Contractor who was retained by DTRA or any Agency or Department of the United States Government to retrieve the Equipment and any and all payments that were made by that Contractor with respect to the retrieval of, or installation of the Equipment, and any related training or plant refurbishments or upgrades. ("Doc. Req. ¶20).[2]

l. Any and all documents in any way concerning any economic analysis or benefit, whether they were prepared by DTRA, any Agency or Department of the United States Government, a contractor retained by DTRA, or any foreign government concerning the Future Benefit to be derived from the disposition of the Equipment. ("Doc. Req. ¶22).

m. Any and all documents in any way pertaining to or communications pertaining to, by and among DTRA, the Defense Contract Audit Agency and the Defense Criminal Investigative Service in any way concerning the accounting methods of DCI, the invoicing methods of DCI, the payments made to DCI, and the propriety or impropriety of those invoices, payments or accounting methods. ("Doc. Req. ¶23).

n. Any and all documents in any way pertaining to any analysis by DTRA or any other government agency or department or any consultants or third parties concerning the business plans and projections of DCI. ("Doc. Req.¶ 24).

6. The Document Requests concerning: the ownership of the Equipment (¶5a,b,c above), the disposition of the Equipment by the Defendant (¶5j,k above), the Defendant's

[1] In particular, plaintiff needs Department of State documents relating to the Defense Enterprise Fund and the DOS decision to recommend no further funding of Plaintiff. In particular, Plaintiff requires Defendant to produce documents prepared or in the control of Kim Savat. These documents are required as a prerequisite to a deposition of Ms. Savat.

[2] Defendant's additional but late document production of April 18, 2005, does contain some documents responsive to this request, but there are additional documents that were not produced.

interference with Plaintiff's attempts to obtain funding (¶5e,g,h,i above), the Defendant's actions or inactions with respect to DCIS and DCAA requests and recommendations (¶5m above), and the evaluations of Plaintiff's economic benefits to be derived under the Contract (¶5d,l,n above) are particularly critical to Plaintiff's prosecution of this action. The documents, which Defendant failed to produce, include but are not limited to documents that were sent by the Plaintiff to the Defendant and should have been in Defendant's files, as well as documents that were created by the Defendant. To demonstrate the total inadequacy of the Defendant's document production, a most cursory of reviews by the Plaintiff was the was able to identify three letters, written within a 7 day period in November of 1998 that are responsive to the Document Request but were not produced by the Defendant. Copies of those three letters are annexed as Exhibit C). Additionally also obviously missing from the Defendant's document production are the Plaintiff's claim filed on February 25, 2004 and any analysis of it, and the contractual documents by and between the Defendant and Raytheon Technical Services. These examples only scratch the surface of the vast amount of documents the Defendant has failed to produce. It is not the Plaintiff's responsibility find and cite each and every instance of the Defendant's failure, it is the Defendant's obligation to produce all responsive documents.

7. Additionally, Plaintiff's Document request was broad enough to encompass not just the Defense Threat Reduction Agency and its predecessors ("DTRA"), but also to encompass other parts of the federal government, including but not limited to other parts of DOD, that worked hand-in-hand with DTRA in defense threat reduction. (see Doc. Req. ¶3-5, 15-24). It appears that the only documents produced were from DTRA and that there were no documents produced from the other agencies of the Department of Defense, or from the

Department of State [see Footnote 1], which are relevant to this litigation and were under the purview of Plaintiff's Document Request.

8. Furthermore, the paltry sum of documents produced by the Defendant were not produced "as they are kept in the usual course of business" nor were they "organize and label them to correspond with the categories in the request" as required by RCFC 34 (b) and paragraph (k) of the Definitions and Instructions of the Plaintiff's Document Request. The production was also unresponsive to paragraph (d) of the Definitions and Instructions of the Plaintiff's Document Request which required that:

> The source of all documents requested should be identified, as well as the person or entity that had custody over them. The system by which the original documents were filed should be duplicated, with duplicate file folder captions; or, in the alternative, organized and labeled so as to correspond to the categories in this request.

9. Additionally, notwithstanding Defendant's counsel's statement during Mr. West's deposition in response to my request to produce a position paper that "My reaction is the same as what I stated earlier, that we produced everything that we had in response to any of your requests" (see Exhibit H, West Dep. Page 54 lines 11-13), by letter dated April 15, 2005, Defendant's counsel advised me that he was producing an additional 610 pages of responsive documents. This response is more than 4 months after the required production and more than 2 months after the deposition of the 8 Defendant Witnesses. (A copy of Defendant's counsel's letter dated April 15, 2005 advising of the additional production is annexed as Exhibit D). Even this late production of documents, made at the eleventh hour deadline in response to my notice of April 1, 2005 to Defendant's counsel of my intention to bring discovery enforcement proceedings before this Court, was still not adequate. (A copy of my letter to Defendant's

counsel dated April 1, 2005 is annexed as Exhibit E, and a copy of my letter to Defendant's counsel dated April 26, 2005 is annexed as Exhibit F).

10. In summary, both the quantity and quality of Defendant's document production were seriously deficient.

11. With respect to the lack of candor and deliberate evasiveness of Defendant Witnesses, the most glaring example is that neither Mr. Thompson, Mr. Archer, nor Mr. Morton, could remember receiving or acting upon vital DCAA audit reports that were addressed to them that required their immediate action. The Defendant's unresponsiveness to these vital reports was perhaps the Defendant's most single glaring act of mismanagement that eventually led the Defendant to breach its Contract with the Plaintiff. Copies of pages 15-19 of Herbert Thompson's deposition; copies of pages 20-36 of Edward Archer's deposition and copies of pages 39-44 of Scott Morton's deposition are annexed as Exhibit G. Additionally, these witnesses could not recall any contact with either DCIS or DCAA concerning Plaintiff's invoicing procedures which were questioned in the DCAA audit report. (*id.*)

12. At the depositions of the Defendant Witnesses, I requested certain additional documents. Although some of those requests were responded to at the time of the depositions, there were a number that were not addressed and to date no additional documents (except as stated in ¶9 above) have been furnished. In particular Plaintiff had requested and is entitled to receive 1) a critical position paper written by Mark West concerning the disposition of the Equipment, 2) any analysis that showed how Defendant arrived at the fact that it paid 100% of the Equipment costs, and 3) a critical e-mail from the Contracting Officer authorizing Raytheon Technical Services to appropriate the Equipment. Those requests are stated on page 54 of the deposition of Mark West, pages 85 and 86 of the deposition of Edward Archer, and page 73 of

the deposition of Herbert Thompson, respectively, copies of which are annexed hereto as Exhibit H. (Also see Exhibit F, my letter of April 26, 2005).

13. Finally, at the time the depositions of Defendant Witnesses were taken the Defendant attempted to excuse the lack of disclosure by stating there were "too many FOIA requests" and "a computer virus". (Copies of the West Deposition pages 73 and 74 are annexed as Exhibit I.) These excuses are unacceptable because even if there was a "virus", what organization does not have a backup system? Furthermore these "excuses" are not in compliance with to paragraph (g) of the Definitions and Instructions of the Plaintiff's Document Request, which required that:

> If any document within the scope of this request has been destroyed, discarded or lost, furnish a list identifying each such document: The date said document was prepared; the date said document was destroyed, discarded or lost, the location of all copies of said document; each author and addressee; each person to whom copies of the document were furnished or to whom the contents thereof were communicated; a summary of the subject matter of the document; the person authorizing the destruction of having responsibility for the destruction or loss of said document; the reason for the destruction or loss; and the number of the request under which said document would otherwise be produced.

14. I have made several good faith attempts to have Defendant comply with these discovery requests. (See Affirmation of Good Faith annexed hereto).

15. To date, except as noted in ¶4 of the Affirmation of Good Faith and ¶9 above, no response has been made by the Defendant herein.

16. The information sought is material and necessary to the prosecution of this action.

17. No previous request has been made for the relief requested herein.

WHEREFORE, Plaintiff Die Casters International, Inc. respectfully requests that this Court issue an order pursuant to RCFC 37 (a) (2) (A) compelling Defendant to provide full and complete responses to all the outstanding discovery items set forth herein, together with such other and different relief as this Court may deem just and proper.

Dated: Rockville Centre, New York
April 29, 2005

s/ Gary Marcus
GARY MARCUS