Goldberg & Connolly

• ATTORNEYS AT LAW •

G&C Building
66 North Village Avenue • Rockville Centre • New York 11570
516-764-2800 • Fax 516-764-2827

April 26, 2005

***By Fax: (202) 514-7965***

William K. Olivier, Esq.
U.S. Department of Justice
Civil Division - Commercial Litigation Branch
1100 L Street, NW, 8th Floor
Washington, DC 20530

Re: Die Casters International, Inc.
v. The United States
United States Court of Federal Claims
Index No. 04-1113C

Dear Mr. Olivier:

I am in receipt of your letters of April 15 and April 18, 2005 responding to my letter of April 1, 2005, in which I set forth in detail the extent of your client's inadequate responses to my client's discovery requests. While Your April 15th letter advised me that your client has subsequently produced some additional 610 pages of documents, this additional eleventh hour disclosure, which I received on April 18, 2005, comes no where near meeting your client's disclosure obligations for the reasons set forth below:

1) Your client's production of the additional 610 pages of documents at this late date (four months after it was due), validates my assertions that your client did not give adequate disclosure in response to my client's Request For Production Of Documents ("Document Request"). Equally disturbing is the fact that 1) I was not advised of these disclosures until 4:05 PM on April 15, 2005 when my office received by facsimile your letter of that date and 2) this additional production of documents was in response to my letter of April 1, 2005 in which I set a deadline of the close of business of April 15, 2005 to address issues with respect to your client's inadequate document production.

2) I have subsequently had an opportunity to review these additional disclosures and, for the most part, they appear just to be a string of Mr. Archer's e-mail files. While there are some

significant documents, in particular, documents concerning the wrongful appropriation and disposition of the Equipment by the Defendant in the Fall of 2001, which supports my position that your client's initial disclosures were inadequate, these new documents now pose an additional problem. At their depositions, Mr. Archer and Mr. Thompson could not recall significant facts concerning the Defendant's wrongful appropriation and disposition of the Equipment. In fact, they seemed to indicate that they were not directly involved in the Defendant's decisions or the implementation of those decisions. These "recently discovered documents" clearly indicate that both Mr. Archer and Mr. Thompson were pivotal parties in the decision and the subsequent actions with respect to the Equipment. With the use of these documents, I now need to continue the depositions of both Mr. Archer and Mr. Thompson and hopefully they will be able to recall the critical events that occurred with respect to the Defendant's wrongful acquisition and disposal of the Equipment in the Fall of 2001. Because of the failure of the Defendant to produce these documents in a timely manner, I hereby request that you either agree to produce Mr. Archer and Mr. Thompson in my office in New York for the continuation of their depositions, or, in the alternative, the Defendant reimburse my law firm the cost of my travel to Fort Belvior to continue the depositions of these two critical witnesses.

3) Notwithstanding the excuses contained in your April 18, 2005 letter, the documents that your client produced were not in accordance with the Court rules or the instructions of the Plaintiff's Document Request. My client is entitled to have the documents that you did produce, produced in the course in which they are usually kept. The fact that your client did not restore the documents to that condition subsequent to responding to requests under the Freedom of Information Act ("FOIA") is no excuse. It really irks me that your client produced reams of blank paper and unintelligible material (because of substantial and unnecessary redaction) in response to legitimate FOIA requests and now uses its abuses of its obligations under FOIA, as an excuse not to produce the same documents in a cohesive and comprehensible manner. Additionally, the fact that I chose not to travel to Washington to review the files is of little consequence, most of the 5706 pages that were produced appear to be merely a conglomeration of e-mails which were probably never contained in any systematic hard file.

4) Your allegations concerning your providing documents that were specifically requested during the deposition is not true. While you were able to produce some of the documents that were requested, some of the documents that you asserted were produced and that you claimed I should have been able to identify, were, in fact, produced, but were produced in such a random and disconnected order that it was virtually impossible to match the two documents together. Case in point would be a certain document that was an attachment to a memorandum, whereby the memorandum was produced as document 04893 and the so-called attachment was produced as document 00933, with some 3760 pages intervening between the two documents.(See page 59 of Mr. Archer's deposition of February 10, 2005.) Additionally,

while I have not yet reviewed every transcript, at a minimum I can identify the following documents that were requested at the depositions and have not yet been produced:

a) a critical position paper prepared by Mr. West. (West Dep Page 54).

b) any analysis that showed how the Defendant arrived at the fact that it paid 100% of the Equipment costs. (Archer Dep. page 85 and 86).

c) a critical e-mail from Mr. Thompson authorizing Raytheon Technical Services to appropriate the Equipment. (Thompson Dep. page 73).

5. Your contention that you are not required to produce copies of documents that we already have in our possession or that we have obtained through the FOIA is not supportable under the relevant law. First of all, as stated above many of the documents that we may have received pursuant to FOIA requests contained massive deletions of information to the extent that they were incomprehensible. Secondly, the mere fact that we have a document or that we have been previously furnished the document from another source does not excuse your production. See *The Walt Disney Company v. Sean Paul DeFabiis, et al*, 168 F.R.D. 281, and *Paul Weiner and Eleanor Weiner v. Bache Halsey Stuart, Inc., et al*, 76 F.R.D. 624. The bottom line is that your client is required to produce all responsive documents, whether or not the documents are in the possession, custody, control, or otherwise accessible to the plaintiff.

6. With respect to the volume of documents, while some of the documents my client produced pursuant to your Document Requests may have been duplicative, the same can be said with respect to the documents that your client produced. There are numerous instances where the same e-mail or letter have been produced five or six times. Even editing out all of the duplicate documents, the Defendant's document production pales in the light of the documents produced by the Plaintiff. Additionally, your requests call for "all documents" not "all documents that are not duplicates".

7. With respect to the return of the Rule 30 (b) (6) Deposition, please be advised that, as I had stated during Mr. Archer's deposition (page 12), I believe I never had a discussion with you as to what was to be covered during the deposition. However, I clearly asked Mr. Archer questions that concern the "issues raised by the pleadings" as set forth in the Plaintiff's Notice Of Deposition. Furthermore, under any analysis, the return of the 30 (b) (6) Deposition is still not timely. We agreed that the questions I asked Mr. Archer would be treated as interrogatories. The deposition was furnished to your office on February 22nd and, therefore, your response was due

on or before March 22, 2005. It is now April 26th, and your anticipated response is more than 30 days late.

In all candor I still do not think that your client has gotten the message with respect to the need to fully and adequately disclose. Furthermore, I also do not think your client has gotten the message that its actions giving rise to Plaintiff's causes of action are indefensible. I suggest to you that the time and efforts of both parties would be better spent in exploring a settlement of this mater either with or without the Court's assistance. Trying to make a reluctant client comply with reasonable discovery requests is just not a good use of our judicial resources.

Very truly yours,

GOLDBERG & CONNOLLY

By
Gary Marcus

GM/bas

cc: ***By Fax*: (202) 514-8071**
Peter D. Keisler,
Assistant Attorney General
Civil Division, U.S. Department of Justice
Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530

***By Fax*: (202) 307-0972**
David M. Cohen, Director
Civil Division, U.S. Department of Justice
Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530

***By Fax*: (202) 305-7644**
Mark A. Melnick, Assistant Director
Civil Division, U.S. Department of Justice
Classification Unit, 8th Floor
1100 L Street, NW
Washington, DC 20530

cc: ***By Fax:* (703) 767-4550**
David C. Rickard
Deputy General Counsel
Defense Threat Reduction Agency
8725 John J. Kingman Road
Fort Belvior, VA 22060-6201