**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, | ) | |
| v. | ) | No. 04-1113C (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCLOSURES AND DEFENDANT'S CROSS-MOTION TO COMPEL DISCLOSURES**

Defendant requests that the Court deny plaintiff's motion to compel disclosures upon the grounds that defendant has not failed to respond properly to plaintiff's requests for information. Defendant also requests an order from the Court requiring plaintiff to comply with its responsibilities to provide reasonable initial disclosures, pursuant to Rule 26(a)(1) of the Rules of the Court of Federal Claims ("RCFC").[1]

[1] Defendant notes that the parties have fully briefed cross-motions for summary judgment in this matter that may affect the need for further discovery in this case. The Court advised the parties that it anticipated issuing a decision upon the cross-motions for summary judgment by the end of March or the middle of April 2005 and, therefore, wisely suggested that the parties not engage in discovery that would involve a significant expenditure of funds, such as a trip to the Ukraine for depositions, until the Court issues its ruling. Defendant has conducted its discovery accordingly, deferring depositions until after April 2005. Plaintiff, on the other hand, has failed to abide by the Court's admonition as well as the Court's rules, as our motion to compel disclosures and our response to plaintiff's motion to compel disclosures reflects. Rather than focus the discovery, plaintiff has created a need for substantially more discovery. Indeed, fact discovery now is due to close on July 1, 2005. Thus, defendant requests that the Court advise the parties of the current anticipated date for issuing a decision upon the cross-motions for summary judgment because it will affect the Court's ruling in this matter and our need for further discovery.

I. Plaintiff Failed To Provide Adequate Initial Disclosures

On November 18, 2004, plaintiff served its Initial Disclosures upon defendant. Def. App. 8-14.[2] However, those initial disclosures were grossly inadequate and, in fact, disclosed nothing at all. Id.

For its list of witnesses, plaintiff identified 40 witnesses, but provided no indication of the relevance of each witness to any issue in the case. Def. App. 11-14. Plaintiff's generic list of witnesses is no more than an invitation for us to conduct a substantial number of possibly needless depositions. Clearly, Rule 26 contemplates much more meaningful disclosure than that.

Also, such an initial disclosure does not comply with the requirements to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . identifying the subjects of the information." RCFC 26(a)(1)(A) (emphasis added). Thus, plaintiff's list of witnesses in its initial disclosures is deficient for failure to identify the subject matter of their alleged knowledge.

[2] "Def. App." is a citation to the appendix attached to this cross-motion.

For its list of documents, plaintiff provided a generic description of categories of documents, e.g., "correspondence, memos, or faxes," with no effort to identify the documents or to provide copies of the documents upon which plaintiff intended to rely to support its claim. Def. App. 8. A party is required by RCFC 26(a)(1)(B) to provide "a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses . . . ." (Emphasis added.)

The categories of documents that plaintiff identified in its initial disclosures were so general that they could be fairly assumed to apply to any case and had no specific application to this case, except for the identification of the contract in this matter. Therefore, plaintiff's initial disclosures are tantamount to saying, "here's a haystack, find the needles." Indeed, plaintiff's disclosures cannot meet the intent of RCFC 26(a)(1) because these disclosures fail to provide any early disclosure of meaningful evidence that is the basis for the rule. Rather than providing an initial disclosure that would reduce the extent of further discovery, as clearly intended by Rule 26, plaintiff's disclosure obscures what information will be pertinent to the case, which will require much more discovery.

By comparison, defendant provided in its initial disclosures a list of witnesses and the anticipated subject of any testimony to be provided by the witness. In addition, defendant provided in its initial disclosures a list of documents with a description appropriate for an exhibit list, as well as a copy of all the documents on the list. Def. App. 15-23.

Plaintiff has been pressing for an early trial in this matter and, as such, should have been in a position to provide detailed information for its initial disclosures. Yet, plaintiff has done virtually nothing to advance this case toward trial. Indeed, plaintiff has done just the opposite by creating a large volume of potentially discoverable information that likely will extend the need for discovery over a longer period of time.

Defendant's counsel orally discussed plaintiff's inadequate initial disclosures with plaintiff's counsel soon after receiving them and again when defendant's counsel visited the office of plaintiff's counsel to review documents, but plaintiff's counsel flatly refused on both occasions to provide any more detailed information. Def. App. 1. Instead, plaintiff performed what is commonly referred to as a "document dump" upon defendant by producing at the office of plaintiff's counsel approximately 15 boxes of documents that may or may not have had anything to do with our requests or plaintiff's initial disclosures. It took three people for defendant approximately three days to review

those documents. In the end, less than ten percent of the documents was helpful. Def. App. 2.

Clearly, plaintiff perceives discovery and Rule 26 disclosures to be a one-way street that only defendant must travel. While defendant produced documents that responded to plaintiff's requests for documents and, at plaintiff's further request, copied over 6,000 pages of documents at Government expense, and shipped the documents to plaintiff, plaintiff refused to copy its documents either before or after defendant traveled to the office of plaintiff's counsel to review those documents. Therefore, defendant again bore the cost of copying approximately 900 pages of documents at Government expense. In fact, plaintiff has not paid for the copying of any documents to date, either defendant's documents or its own documents. Id.

Plaintiff's motion to compel document production from defendant is shocking in light of its shift of its production and disclosure obligations to the Government. At the very least, plaintiff should be required to disclose to the Government the documents and information from witnesses that led it to file suit against the Government in the first place. It has not done so.

Accordingly, defendant requests that the Court order plaintiff to provide full and complete disclosure by specifying the documents that plaintiff intends to rely upon to prove its case and a list of witnesses that plaintiff believes have

discoverable information, with the subject of their knowledge, in accordance with the specific requirements of Rule 26.

## II. Defendant Did Not Fail To Produce Properly Requested Documents

Plaintiff contends that defendant has failed to produce documents that have been requested by plaintiff and that the documents are material to plaintiff's case. Plaintiff is wrong on both contentions.

First, the documents plaintiff requested are not material to plaintiff's case because, as defendant demonstrated in its motion for summary judgment, the Government paid all of the money the contract required it to pay to plaintiff for plaintiff to perform the contract. Also, the Government delivered to the joint venture partner proposed by plaintiff the equipment that was purchased by plaintiff with the Government's money. Defendant is ready, willing and able to transfer title to the equipment to the joint venture as soon as plaintiff consummates the joint venture partnership, something it has failed to do for over seven years.

Second, defendant has produced or otherwise made available to plaintiff all of the documents in its possession that Government employees have identified as reasonably responding to plaintiff's requests. Defendant initially made all of the documents so identified available for plaintiff to review at the DTRA office in Fort Belvoir, Virginia, in the form that the files are maintained in the ordinary course of business, as required by

RCFC 34(b). However, plaintiff chose not to review those documents. Instead, plaintiff's counsel merely asked if the documents could be copied and sent to him. The Government voluntarily agreed to send copies of the documents to plaintiff's counsel and did so. The Government did not voluntarily agree to copy the documents in any particular form. The Government simply sent the documents to a commercial copy service and had them copied in bulk. The Government also had each page Bate-stamped so that it could prove what it sent to plaintiff. Def. App. 3.

Apparently, plaintiff did not even bother to review the 5,706 pages of documents that the Government first sent to plaintiff. During the depositions that plaintiff conducted of the Government's employees,[3] plaintiff's counsel repeatedly stated that the Government had not produced a document. Each time, defendant went to the body of Bate-stamped documents and withdrew a copy of the document bearing the Bate-stamp number of

---

[3] Plaintiff's allegation that witnesses for defendant, including Edward Archer's responses in a deposition, purportedly noticed under RCFC 30(b)(6), lacked candor and were evasive is without merit. The witnesses testified to the best of their recollection and exhibited straight forward, frank demeanor in their responses. Plaintiff's effort to try to color their responses cannot help it. If plaintiff wanted to record the demeanor of the witnesses, it could have video taped the depositions. It did not. Plaintiff cannot now import meaning to the demeanor of the witnesses that did not exist. Indeed, when these witnesses testify at time of trial, if this matter goes to trial, the Court will be able to make its own credibility determinations regarding the witnesses and will also be able to make its own credibility determinations of plaintiff's allegations regarding the witnesses.

the document, which proved that the document that plaintiff claimed had not been produced had, in fact, been produced. Def. App. 6, 24.

Nevertheless, plaintiff's counsel persisted in making the same unwarranted claim with regard to other documents that defendant also withdrew from the body of Bate-stamped documents proving that it had been produced. Plaintiff's counsel apparently intended the depositions to be a forum for defendant's counsel to perform plaintiff's work for it by finding documents that plaintiff was too lazy to find for itself. Plaintiff apparently conducted only a "most cursory of reviews." Plaintiff's Motion at 5. Therefore, defendant simply objected to plaintiff's characterization that the document had not been produced. Def. App. 24. Accordingly, plaintiff's laziness in looking for documents that it received should not be misconstrued as defendant's failure to produce them.

Also, when defendant informed plaintiff that the documents it had requested would be made available for it to review at the office of DTRA in Fort Belvoir, plaintiff did not ask whether that body of documents included documents from other agencies. When defendant voluntarily agreed to make copies of the documents in DTRA's files, defendant did not agree to also make copies of documents in the files of other agencies as well. If plaintiff wanted to review those documents, plaintiff could have done so,

by coming to defendant's offices and reviewing them. Defendant has never refused to allow plaintiff to review those documents. Defendant has only declined to produce duplicate documents that have previously been produced by sending plaintiff more copies.

In addition, defendant objected to many of plaintiff's requests for production of documents upon the grounds that they were vague and ambiguous. For example, plaintiff requested "[a]ny and all documents pertaining in any way to any subsequent funding of the Contract including any requests by DCI for subsequent funding of the Contract." See defendant's response to plaintiff's Request for Production Number 7, attached to plaintiff's motion. Defendant searched through all pertinent agencies for documents that referenced Die Casters International, Inc., and produced those records when found. However, those records are irrelevant because plaintiff's contract was fully funded and, as defendant established in its motion for summary judgment, plaintiff admitted it needed no further funding to complete the contract. Certainly, plaintiff was not entitled to any additional funding.

Defendant cannot explain why the documents that plaintiff identified as plaintiff's letters to the Government were not in the body of documents that the Government produced to plaintiff. Our inability to produce the letters allegedly sent by plaintiff is irrelevant to plaintiff's motion. Plaintiff has no basis to

seek to compel production of documents that are in its possession. Moreover, the fact that they were documents created by plaintiff and in plaintiff's custody demonstrates that the Government did not withhold information from plaintiff. However, we do not know why the Government does not possess copies of the documents. Indeed, the Government cannot confirm that the letters from plaintiff were ever received. As Mr. Lewis notes in his declaration, a note on plaintiff's copy of the letter indicates a problem with plaintiff trying to telecopy the letters to DTRA, all in the same time period. Def. App. 7, 25. It may have been plaintiff's telecopier that was the problem, not DTRA's telecopier. If the letters were received, which we do not concede, they were inadvertently lost. In any event, a search for those records has not revealed their existence. Def. App. 7.

Plaintiff's insistence that the Government provide a list of documents lost or destroyed is without merit. It is, of course, not reasonably possible for the Government to make a list of things that do not exist. Plaintiff's presumption that it successfully forwarded letters that the Government does not now possess does not provide a basis to assume the Government has lost or destroyed documents. Plaintiff's motion is based upon unfounded speculation.

Further, the fact that defendant produced an additional 611 pages of documents after the depositions of Government witnesses

demonstrates our continuing good faith disclosure of relevant documents, not, as plaintiff suggests, that defendant was withholding documents. Our production following depositions simply reflects that the documents were not identified by the witnesses until their depositions. Defendant produced those documents as soon as possible after the depositions. Upon learning of their existence, the witnesses had to search for the documents and the documents had to be sent out for copying and Bate-stamping. In addition, defendant recently produced additional documents that defendant's counsel just obtained from the Office of the Secretary of Defense. Our latest production further reflects defendant's conscientious production of the non-privileged documents that plaintiff requested to which no objections were posed. Def. App. 1-7. Indeed, defendant has been much more cooperative in discovery in this matter than plaintiff has been.

Accordingly, we respectfully request that the Court deny plaintiff's motion to compel disclosures and grant defendant's motion to compel disclosures.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ *Mark A. Melnick*
*by Donald E. Kinner*
MARK A. MELNICK
Assistant Director

/s/ *William K. Olivier*
WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Blane B. Lewis
Associate General Counsel
Defense Threat Reduction Agency

Dated: May 16, 2005