# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, v. THE UNITED STATES, Defendant. | No. 04-1113C (Judge Braden) |

## APPENDIX TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCLOSURES AND DEFENDANT'S CROSS-MOTION TO COMPEL DISCLOSURES

Attached is the Appendix to Defendant's Response to Plaintiff's Motion to Compel Disclosures and Defendant's Cross-Motion to Compel Disclosures.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

*/s/ Mark A. Melnick*
*by Donald E. Kinner*
MARK A. MELNICK
Assistant Director

*/s/ William K. Olivier*
WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Blane B. Lewis
Associate General Counsel
Defense Threat Reduction Agency

Dated: May 16, 2005

# INDEX TO APPENDIX

Declaration of William K. Olivier . . . . . . . . . . . . . . . . 1

Declaration of Blane B. Lewis . . . . . . . . . . . . . . . . . 5

Plaintiff's Initial Disclosures . . . . . . . . . . . . . . . . 8

Defendant's Initial Disclosures . . . . . . . . . . . . . . . 15

Excerpt, Transcript of Deposition of Edward Archer, February 10, 2005 . . . . . . . . . . . . . . . . . . . . . 24

Letter, from Die Casters, International, Inc., purportedly to Harry Cook, dated November 23, 1998 . . 25

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 04-1113C (Judge Braden) |

DECLARATION OF WILLIAM K. OLIVIER

I, William K. Olivier, declare as follows:

1. I am an attorney with the United States Department of Justice and counsel of record for the United States in this case.

2. After receiving plaintiff's initial disclosures and finding them inadequate, I orally discussed them with plaintiff's counsel, Gary Marcus, and another attorney in his office, who both claimed that plaintiff's initial disclosures were adequate. Therefore, Mr. Marcus refused to provide any more detailed information for plaintiff's initial disclosures.

3. After producing over 6,000 pages of documents to plaintiff in response to plaintiff's request for production of documents at Government expense, I requested that Mr. Marcus copy plaintiff's documents and produce them to the Government. He and another attorney in his office, however, refused to copy plaintiff's documents claiming that plaintiff had many more documents than what the Government produced to plaintiff. Thus, defendant's counsel was required to travel to New York to review plaintiff's documents.

4. Upon arriving at the office of Mr. Marcus with counsel from the Defense Threat Reduction Agency ("DTRA"), Blane Lewis, and another agency employee, Mr. Marcus and another attorney in his office showed us to an office containing approximately 15 boxes of documents. It took the three of us approximately three days to wade through the 15 boxes of documents to find approximately 900 pages of documents that were helpful to any issue in the case, which was less than one box.

5. After designating approximately 900 pages of documents, defendant again requested that the documents be copied. However, Mr. Marcus declined to copy them for us, which required us to send them to a commercial copier. The Government bore the cost of copying the approximately 900 pages of documents at Government expense.

6. Plaintiff has not paid for the copying of any documents produced in discovery in this case, either defendant's approximately 6,000 pages of documents or plaintiff's own approximately 900 pages of documents. While Mr. Marcus offered to pay for the Government's copying of a set of documents for plaintiff, I explained to him that it may not be possible to do so due to the nature of the Government's contract with a commercial copying service. Instead, I requested that he pay to send his copies to the Government and the Government would pay to send its copies to him. He declined that arrangement.

7. I have produced to plaintiff all non-privileged documents that have been sent to me by the agency in this matter. I offered Mr. Marcus the opportunity to review the Government's documents in the DTRA office in Fort Belvoir, Virginia, in the form that the files are maintained in the ordinary course of business, as required by RCFC 34(b). However, Mr. Marcus chose not to review those documents. Instead, he merely asked if the documents could be copied and sent to him. I agreed to do so and did do so. I did not voluntarily agree to copy the documents in any particular form. However, the documents were copied in the order they appeared in the files. I informed Mr. Marcus that I would simply send the documents to a commercial copy service and have them copied in bulk, which I did. I also had each page Bate-stamped so that I could prove what was sent to Mr. Marcus.

8. When I informed Mr. Marcus that the documents plaintiff had requested would be made available for it to review at the office of DTRA in Fort Belvoir, he did not ask whether that body of documents included documents from other agencies. When I agreed to make copies of the documents in DTRA's files, I did not agree to also make copies of documents in the files of other agencies as well. If plaintiff wanted to review those documents, plaintiff could have done so by coming to defendant's offices and reviewing them. I have never refused to allow plaintiff to review those documents. I only declined to produce duplicate documents that have previously been produced to plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 13, 2005, at Washington, D.C.

William K. Olivier

WILLIAM K. OLIVIER

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-113C |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant | ) | |

DECLARATION OF BLANE B. LEWIS

I, Blane B. Lewis, declare as follows:

1. I am an Associate General Counsel for the Defense Threat Reduction Agency. I have been employed in this position since November 30, 2004.

2. I have, as part of my duties since December 2004, assisted counsel of record, William K. Olivier, United States Department of Justice, with the litigation in the above-captioned case. Among other things, I have assisted Mr. Olivier in gathering documents to respond to plaintiff's request for production of documents.

3. In response to plaintiff's request for production of documents, I have contacted the Defense Threat Reduction Agency's contracting office and cooperative threat reduction program office, the Office of the Secretary of Defense for Cooperative Threat Reduction Policy, the Department of State's Bureau of European and Eurasian Affairs (Office of the Coordinator of U.S. Assistance to Europe and Eurasia), and Brookhaven National Laboratory. I have provided plaintiff's request for production of documents to each of these offices, requesting them to provide me with any documents responsive to plaintiff's request. They have all responded and provided me with documents, if any, that respond to plaintiff's request. I provided those documents to Mr. Olivier at the Department of Justice.

4. During his deposition on February 9, 2005, Herbert Thompson indicated that he may have copies of e-mails related to Die Casters in his personal office computer. As a result, I obtained those e-mails from Mr. Thompson as soon as possible after Mr. Thompson searched his archives for the records. I extracted those that were not duplicates of e-mails already provided to plaintiff's counsel. I also polled the other deponents to see if any of them had e-mails in personal files that had not been copied to the contracting office or program office files. Only one other deponent identified and provided such e-mails. As with Mr. Thompson's e-mails,

I provided Mr. Olivier at the Department of Justice with all that were not duplicates of e-mails already provided.

5. During the depositions, plaintiff's counsel repeatedly interrupted the depositions to request documents that he claimed the United States had not provided. The first few times this occurred, I searched for those documents and found them among materials already provided to plaintiff's counsel. When I was able to find document after document, it became clear that plaintiff's counsel had not thoroughly examined the documents already provided. For example, plaintiff's counsel requested an e-mail that Mr. Thompson sent on 28 September 2001 (Thompson deposition, page 73). Plaintiff's counsel insists, in his motion to compel at page 7, that the United States still has not provided that e-mail. However, during depositions I found a copy of that e-mail in documents already provided (Bates stamped 04895-04896) and Mr. Olivier identified it for plaintiff's counsel at the conclusion of a deposition the following day (Archer deposition, pages 86-87).

6. Plaintiff's motion to compel illustrates other examples where plaintiff's counsel erroneously claims that the United States has not provided documents. For example, he claims that the Government did not provide a copy of plaintiff's claim (motion, page 5). Although the Government did not reproduce the entire contents of the two, very thick binders that plaintiff included with its claim, which would have been burdensome and unnecessary, the Government did reproduce the claim's executive summary and plaintiff's statement of facts (Bates 01844-01867). Plaintiff's counsel also claims that the Government did not provide any documents showing an analysis of plaintiff's claim (motion, page 5). However, documents that the Government previously provided to plaintiff reflect discussion within the agency regarding the merits of plaintiff's claim (e.g., Bates 00199 and 04812-04821). In addition, plaintiff's counsel claims that we did not provide any contractual documents regarding Raytheon Technical Services (motion, page 5). However, documents that the Government previously provided reflect the contract definitization and transportation request for Raytheon Technical Services (Bates 00030-00038). Further, plaintiff's counsel claims that the Government did not provide a point paper authored by Mark West (West deposition, pages 47-54 and motion, page 7). However, documents that the Government previously provided reflect an e-mail sent by Mr. West with attached point paper that appears to respond to this request (Bates 03732-03734). Also, plaintiff's counsel claims that the Government did not provide a requested analysis regarding the equipment (motion, page 7, citing West deposition, pages 85-86). However, in his deposition, Mr. West did not state that a written analysis was ever produced (West deposition, page 85). Nevertheless, documents that the Government previously provided respond to this request (discussion within the agency, culminating in a letter to Die Casters – Bates 05705-05706, 05769-05774, and 05990-05992).

7. Plaintiff's motion, at page 5, references three letters from November 1998. I have again reviewed all government documents provided to me and I do not find any of the three letters among them. I cannot verify whether the letters were ever actually received. Despite Plaintiff's request for extensive details regarding any documents that may have been discarded or destroyed (request for production, page 3), neither the contracting office nor program office files contain records that provide those details. Likewise, none of the other offices I contacted have identified any records that provide such details regarding discarded or destroyed documents. Regarding the November 1998 letters Die Casters identified in its motion, two are addressed to a Defense Threat Reduction Agency employee – the first is dated 17 November 1998 and the second is dated 23 November 1998. Each letter indicates it was purportedly transmitted by facsimile. The second contains a notation by Die Casters that the addressee's "fax number still does not answer."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2005 at Fort Belvoir, Virginia.

BLANE B. LEWIS
Associate General Counsel
Defense Threat Reduction Agency

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

------------------------------------X

**DIE CASTERS INTERNATIONAL, INC.,**

Plaintiff,

- against -

**UNITED STATES OF AMERICA,**

Defendants.

------------------------------------X

No. 04-1113C
(Judge Braden)

PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO RCFC 26 (a) (1)

PLEASE TAKE NOTICE, that pursuant to Rule 26(a)(1) of the Rules of the United States Court of Federal Claims, the Plaintiff discloses the following information:

A) The names and addresses of each individual likely to have discoverable information that the Plaintiff may use to support its claims are: See attached list.
The subject of the discoverable information relates to the issues raised by the pleadings herein.

B) A description by category and location of all documents, data compilations, and tangible things in the possession, custody, or control of the Plaintiff and that Plaintiff may use to support its claims, are: 1) Contract # DNA001-95-C-0169, including any amendments or modifications thereto, 2) correspondence, memos or faxes, 3) public vouchers and supporting documents, 4) audit reports and related documents, 5) shipping documents and other documents

relating to the Defendant's appropriation and disposition of the Equipment, and 6) damage calculations, all relating to the subject matter of this action. Copies of said documents are presently located either in the offices of the Plaintiff or in the offices of Goldberg & Connolly, 66 North Village Avenue, Rockville Centre, New York 11570.

C) A computation of any category of damages claimed by the plaintiff, making available for inspection and copying as under RCFC 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, are: As to those damages relating to the cost of the Equipment, the computation is based on the costs incurred and the value as established under the Joint Venture Agreements. With respect to damages for anticipated lost profits, the computation is based on the analysis set forth in Plaintiff's certified claim submitted to the Defendant on February 26, 2004.

Dated: Rockville Centre, New York
November 18, 2004

Goldberg & Connolly
Attorneys for Plaintiff
Die Casters International, Inc.

By: ______________________
Gary Marcus, Esq.
66 North Village Avenue
Rockville Centre, New York 11570-4620
(516) 764-2800

To: William K. Olivier, Esq.
Attorney for Defendant
Commercial Litigation Branch
Civil Division
Department of Justice
Attention: Classification Unit, 8th Floor
1100 L. Street, N.W.
Washington, D.C.

**LIST OF POTENTIAL WITNESSES**

Alan C. Frederickson
Wayne, NY
973-696-9100

James Ballentine
Palm Beach, FL
561-845-1839

John Tomlinson
Atlanta, GA
770-671-1510

Amb. John E. Upston, Jr. (ret)
Washington, DC
and Myrtle Beach, SC
910-575-3360

Juilette Passer, Esq.
Long Island, New York
516-627-7486

David W. Troutman
Mt. Gilead, OH
740-382-4114

Bill Flickenger
Toledo, OH
419-946-0222

David Kraklau
Benton Harbor, MI
269-849-1000

George Hambel, CPA
White Plains, NY
914-421-5635

Scott Morton
DTRA
Ft. Belvoir, VA

Ann Bridges Steely
DTRA
Ft. Belvoir, VA

Ed Archer
DTRA
Ft. Belvoir, VA

Herbert Thompson
DTRA
Ft. Belvoir, VA

Michael L. Benavides
DTRA
Ft. Belvoir, VA

Dave Rickard, Esq.
DTRA
Ft. Belvoir, VA

General Bongiovi
DTRA
Ft. Belvoir, VA

Dr. Jay Davis
DTRA
Ft. Belvoir, VA

Paul Boren
DTRA
Ft. Belvoir, VA

Harry Cook
DTRA
Ft. Belvoir, VA

John C. Connell, Jr.
DTRA
Ft. Belvoir, VA

Mark West
DTRA
Ft. Belvoir, VA

Raytheon Technical Services Co.
Alexandria, VA

Richard Nordin
Richmond, VA

Russell Reynolds
Richmond, VA

Marc Palevitz
DoD
Pentagon, VA

Susan Koch
DoD
Pentagon, VA

Jim Reid
DoD
Pentagon, VA

Upendra Rohatgi, PhD
Brookhaven Labs
Upton, NY

Regina A. Hanel
DCAA
Wayne/Totowa, NJ
973-785-6664

Thomas F. Pezanorski
DCAA
Picatinny Arsenal, NJ

Margaret Casula
DCAA
Picatinny Arsenal, NJ

Peter Koulet
DCAA
Picatinny Arsenal, NJ

Gordon Spanek
DCAA
Hasbrouck Heights, NJ

Mr. Lenhard
DCAA
Picatinny Arsenal, NJ

Peter Kornutick
DCAA

Kempton Jenkins
Washington, DC
202-955-4504

James P. Bradley
Greeneville, TN
423-639-2559

Joan Edwards
Washington, DC

Craig S. Sim
New York, NY
212-892-3399

Don Gray
Baltimore, MD

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, | ) | |
| v. | ) | No. 04-1113C (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S RULE 26(a)(1) INITIAL DISCLOSURES**

Pursuant to Rule 26(a)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, provides the following initial disclosures to plaintiff:

A. The following witnesses may have discoverable information and may be relied upon by defendant in this matter:

1. Edward Archer, former Division Chief and Contracting Officer, Defense Threat Reduction Agency. Mr. Archer may be contacted through defendant's counsel in this matter. He is knowledgeable in the administration of the contract that is the subject of this dispute and plaintiff's performance of the contract from 1999 to 2002.

2. Herbert A. Thompson, former Contract Specialist and Contracting Officer, Defense Threat Reduction Agency. Mr. Thompson may be contacted through defendant's counsel in this matter. He is knowledgeable in the administration of the

contract that is the subject of this dispute and plaintiff's performance of the contract from 1999 to 2002.

3. Robert Bemben, Contracting Officer, Defense Threat Reduction Agency. Mr. Bemben may be contacted through defendant's counsel in this matter. He is knowledgeable in the administration of the contract that is the subject of this dispute and plaintiff's performance of the contract since February 2004.

4. John Connell, former Program Manager, Defense Threat Reduction Agency. Mr. Connell may be contacted through defendant's counsel in this matter. He is knowledgeable about plaintiff's performance of the contract that is the subject of this dispute, discussions regarding the decision of whether to add funds to the contract, the arrangements for assuming possession of the capital equipment relating to the subject contract, communications with officials in Ukraine regarding the equipment, and actions concerning delivery of the equipment to Burevestnik from 1998 to 2002.

5. Mark West, Program Manager, Defense Threat Reduction Agency. Mr. West may be contacted through defendant's counsel in this matter. He is knowledgeable about plaintiff's performance of the contract that is the subject of this dispute, communications with and about plaintiff concerning the contract, arrangements for assuming possession of the capital equipment relating to the subject contract, and actions concerning delivery of the equipment to Burevestnik since 2002.

6. Michael Benavides, former Contracting Officer, Defense Threat Reduction Agency, currently employed with the Federal Deposit Insurance Corporation. Mr. Benavides may be contacted through defendant's counsel in this matter. He is knowledgeable in the administration of the contract that is the subject of this dispute and plaintiff's performance of the contract from 2002 to 2004, including but not limited to the retrieval and shipment of the contract capital equipment.

7. Ann Bridges Steely, former Director of Acquisition Management at Defense Threat Reduction Agency, currently employed with the Federal Deposit

Insurance Corporation. Ms. Steely may be contacted through defendant's counsel in this matter. She is knowledgeable in the administration of the contract that is the subject of this dispute from 2000 through 2003, including but not limited to communications with plaintiff regarding the contract and the disposition of the contract capital equipment.

8. Regina A. Hanel, Senior Auditor, Defense Contract Audit Agency. Ms. Hanel may be contacted through defendant's counsel in this matter. She is knowledgeable in the audit and accounting analysis of plaintiff's books and records for the contract that is the subject of this dispute from 1999 through 2001.

B. The following documents and things may be relied upon by defendant in this matter:

1. Contract No. DNA001-95-C-0169, including all amendments and modifications;

2. Letter, dated June 13, 2000, from Edward Archer to Alan C. Frederickson, regarding the subject contract;

3. Letter, dated April 14, 2003, from Michael L. Benavides to Alan C. Frederickson, Subject:

Closeout of subject contract;

4. Letter, dated April 14, 2004, from Robert Bemben to Alan C. Frederickson, regarding plaintiff's claims on the subject contract;

5. Letter, dated June 25, 2004, from Edward Archer to Alan C. Frederickson, Subject: Contracting Officer's Final Decision regarding plaintiff's claims on the subject contract;

6. Letter, dated March 15, 1996, from C.W. Maillefert to Scott Morton, regarding the subject contract;

7. Letter, dated March 28, 1996, from Alan C. Frederickson to Scott Morton, regarding the subject contract;

8. Letter, dated July 14, 2000, from Herbert Thompson to Alan C. Frederickson, regarding the subject contract;

9. Report of Transfer of U.S. Government Property, dated December 21, 2001, with attachments;

10. Report of Transfer of U.S. Government Property, dated January 24, 2002, with attachments;

11. Report of Transfer of U.S. Government Property, dated January 10, 2003, with attachments

12. Defense Contract Audit Agency (DCAA) Audit Report No. 6201-97B10250006, dated February 10, 1999,

Audit of Incurred Costs for Calendar Year 1995, concerning Die Casters International, Inc., together with a memorandum of the same date related to the report;

13. Defense Contract Audit Agency (DCAA) Audit Report No. 6201-1996B10100865, dated September 21, 2000, Audit of Incurred Costs for Calendar Year 1996, concerning Die Casters International, Inc., together with an undated memorandum related to the report;

14. Defense Contract Audit Agency (DCAA) Audit Report No. 6201-1997B10100865, dated July 2, 2001, Audit of Incurred Costs for Calendar Year 1997, concerning Die Casters International, Inc.;

15. Defense Contract Audit Agency (DCAA) Audit Report No. 6201-1998B10100865, dated September 19, 2001, Audit of Incurred Costs for Calendar Year 1998, concerning Die Casters International, Inc., together with a memorandum of the same date related to the report;

16. Defense Contract Audit Agency (DCAA) Audit Report No. 6201-1999B10100002, dated September 19, 2001, Audit of Incurred Costs for Calendar Year 1999, concerning Die Casters International, Inc.,

together with a memorandum of the same date related to the report; and

17. Memorandum, dated December 22, 2000, Subject: Contract DNA001-95-C-0169, Establishment of Property Ownership, Status Report, from Herbert A. Thompson; and

18. Memorandum, dated November 17, 2000, Subject: Response to Request for Audit Assistance Letter for Additional Information on DCI Contract DNA001-95-C-0169 Regarding POs Related to Equipment Purchased and Potential Third Party Security Interest, from Peter W. Kornutick, Defense Contract Audit Agency, including attachments.

Copies of the above listed documents that may not have been previously provided to plaintiff are enclosed with this disclosure statement.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

Mark A. Melnick/Robert E. Kirschman, Jr.

MARK A. MELNICK
Assistant Director

OF COUNSEL:

DAVID C. RICKARD
Deputy General Counsel
Defense Threat Reduction Agency

WILLIAM K. OLIVIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-7965
Email: william.olivier@usdoj.gov

Attorneys for Defendant

Dated: December 6, 2004

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 6th day of December, 2004, I caused to be sent by Federal Express for next day delivery copies of "DEFENDANT'S RULE 26(a)(1) INITIAL DISCLOSURES" addressed as follows:

Gary Marcus, Esq.
Goldberg & Connolly
66 North Village Avenue
Rockville Centre, NY 11570

William K. Olivier

Page 85

those sorts of things.
Q: Have you ever seen a balance sheet or income statement for DCI?
A: I don't recall seeing one. I might have, but I don't recall seeing one.
MR. MARCUS: Let's go off the record.
(Discussion off the record.)
BY MR. MARCUS:
Q: Again for the record, who came to the conclusion that the government paid for 100 percent of the equipment?
A: To my knowledge there was analysis that was completed and it was a consensus decision, but I don't recall the specifics.
Q: The analysis was written.
A: I don't recall the specifics as to how it was documented.
Q: And you don't know who would have done the analysis.
A: Well, within that, the folks that were looking at it would have been Herb Thompson certainly. There may have been another Contract

Page 86

Specialist involved. I certainly was involved at a higher level looking at it. But Herb would have been the primary, Herb and/or a Contract Specialist. I don't recall exactly what time. He did have some help at some point.
MR. MARCUS: I have not seen an analysis in all the documents you have produced. If there is such an analysis, I would like you to produce it.
MR. OLIVIER: Mr. Marcus, let me address that. We made the documents available. You did not see fit to come down and look at the documents. You asked us to send you the documents. We have copied off all the documents that we found that were relevant to any of your requests. We have produced them to you. We Bates stamped them and you have them. If you want us to go back through and find them for you, we may have to start charging you for our time in doing so.
Now let me pull out an e-mail that you requested in a prior deposition and we have subsequently searched. We found a document that

Page 87

appears to respond to your request. It is Bates stamped number 04896 and 04895. I don't know how that got stapled backwards but it did.
You know, I object to continuing to search documents that we have already produced to you in response to your request to produce additional documents. So if you want to go through and find the documents in the pile of stuff that we found for you and produced to you, then that's fine. But your constant insinuations that we are not producing documents I find offensive.
MR. MARCUS: Well, the problem is some documents have not been provided to me because I know there are documents that are missing.
MR. OLIVIER: Well, we have produced documents to you that you said were missing that had Bates stamped numbers on them. So I'm not very confident in your ability to identify documents that have not been produced.
MR. MARCUS: Okay. I have no further questions for this witness.
MR. OLIVIER: I have no questions.

Page 88

MR. MARCUS: We will close this deposition subject to furnishing of information that has been requested and any blanks — I don't think there are any blanks in the transcript.
MR. OLIVIER: I don't think there have been any blanks in the transcript and I don't think there have been any documents that have been requested that have not been produced.
MR. MARCUS: If that's your position, that's your position.
(Whereupon, at 3:30 p.m., the deposition in the above-entitled matter was closed.)

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(973) 696 - 9100 Fax: 696 - 9194 DCIWayne@aol.com

23 Nov
To: Mark West (CVR)
(703) 658-3446
Please send to Harry, his fax number still does not answer.
Alan

23 November 1998

Mr. Harry Cook
Cooperative Threat Reduction Office
Defense Threat Reduction Agency
45045 Aviation Drive
Dulles, Virginia 20166

Via fax: (703) 326-8557 (1 page)

Dear Harry:

It has become clear that a decision to fund our project has not been made. From Mr. Shulepov's questions that seemed to be structured for him to justify our existence and from your indication that no determination had been made about how the funds will be distributed nor who will be responsible for that decision, I just see more delays. In my opinion, all the business facts relating to our project are the same as they were nine or twelve months ago, except that I am much poorer and my personnel have been bled without compensation.

DCI is not a "General Motors" and has never claimed to be. I cannot finance any further our government's effort to help develop an small economic base for Ukraine and to provide some form of conversion. While the decision to provide funds (or not) has been delayed, my people have been supporting the project without pay. We have proven our dedication and that we can get Congressional and Ukraine ministerial support. While we may not be a "General Motors," we have the professional acumen and can get things accomplished.

Without a written decision that indicates how much DCI will receive under terms that are acceptable, at the end of this month I must close my office and tell all my people to find other work. I will not be closing DCI as an entity as DCI has liabilities accrued that are tied to the assets relating to our portion of the equipment in Kyiv and Moldova.

As indicated in my 17 November proposal, I have told Pavlenko that he must inform the Kyiv warehouse that DCI will not pay any further storage costs for the equipment in Kyiv. I am told that the warehouse previously imposed an additional daily charge for storage (like a penalty) because the equipment has been in storage for nearly one year, and the customs warehouse wants it removed. Without the extra funding, I cannot correct that problem. While we have paid for warehousing in Kyiv, we have not paid for storage of the equipment at Litmash. However, I have not talked with Litmash and have no idea what Litmash will do when they are told that DCI will no longer be involved with them and with a joint venture in Kyiv.

While the equipment is both DCI's and the US government's, the government effectively promised to contribute their portion to the Ukraine government for installation in Ukraine. Installation was supposed to be at DCI's joint venture, DCB, where DCI agreed effectively to contribute its portion of the equipment (currently approximately $770,000 worth) in return for equity in the joint venture. Without the extra funding, DCB will not happen. DCI, as a corporate entity, expects to get a return on that equipment whatever happens to it.

I will appreciate it greatly if you can expedite a decision.

Very truly yours,

Alan C. Frederickson