IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---------------------------------------- X

DIE CASTERS INTERNATIONAL, INC.,

Plaintiff,

No. 04-1113C
(Judge Braden)

v.

UNITED STATES OF AMERICA,

Defendant.

---------------------------------------- X

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR AN ORDER PURSUANT TO RCFC 37(a)(2)(A) COMPELLING DEFENDANT TO MAKE REQUIRED DISCLOSURES AND PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION TO COMPEL DISCLOSURES**

Plaintiff requests that this Court grant Plaintiff's motion for an Order pursuant to RCFC 37(a)(2)(A) compelling Defendant to make required disclosures ("Plaintiff's Motion") and to deny Defendant's cross-motion to compel disclosures, pursuant to RCFC 26(a)(1).

## I. Pending Summary Judgment Cross Motions and Discovery Schedule.

While Defendant's counsel, in Footnote 1 on Page 1 of its Response to Plaintiff's Motion ("Defendant's Response"), accurately points out that there is pending before this Court fully briefed cross-motions for summary judgment, he fails to characterize those cross-motions

accurately and fails to correctly portray the discussions with this Court concerning the continuation of discovery pending the Court's decision of those summary judgment cross-motions. The Scheduling Order filed on January 18, 2005, which was prepared subsequent to the filing of the summary judgment cross-motions and the Status Conference, indicates no reservations on proceeding forthwith with all fact discovery. In fact, it provides for all fact discovery to conclude on or before July 1, 2005 (Scheduling Order, p. 1). During the Status Conference held on January 11, 2005, which culminated in the Scheduling Order, Defendant's counsel addressed a need to have discovery in the Ukraine. In response, Plaintiff's counsel contested such a need but offered that if Defendant's counsel felt he needed to establish any facts in such depositions, that Defendant's counsel submit a list of such facts to which Plaintiff's counsel felt confident that he might be able to stipulate to and, therefore, avoid any such overseas discovery. It is now five month's later and Plaintiff has not received any proposed facts from Defendant's counsel. (Marcus Reply Affirmation, ¶ 3). (A copy of said Reply Affirmation is attached as Exhibit A.) Additionally, Plaintiff's Motion for Summary Judgment addresses only Count One of the Complaint. Any decision on that Motion does not and would not affect the discovery with respect to the remaining counts of the Complaint. Plaintiff's characterization of the Court in any way suggesting or admonishing the parties to defer or postpone discovery is simply not so. All the Defendant's counsel is doing is setting the groundwork for his future motion for an extension of the discovery deadlines set forth in the Scheduling Order. These contrived interpretations of the Court's directions concerning its Scheduling Order is just another attempt by Defendant to delay this litigation and frustrate Plaintiff's just recovery.

## II. The Plaintiff Has Provided All The Required Initial Disclosures And Defendant's Objection To Plaintiff's Initial Disclosures At This Late Date Is An Untimely Attempt To Divert The Court's Attention From Defendant's Failure To Make The Required Disclosures.

Contrary to Defendant's assertion, Plaintiff's initial disclosures satisfy the requirements of the RCFC. Specifically, Defendant complains that Plaintiff's witness list is deficient "for failure to identify the subject matter of their alleged knowledge" (Defendant's Response, p. 2). As a purported consequence of Plaintiff's failure to provide but a mere "generic list of witnesses" (Id.), Defendant alleges that it will be burdened with having "to conduct a substantial number of possibly needless depositions" (Id.). Defendant's position is untenable, under the circumstances of this case and, furthermore, is belied by the incontrovertible fact that Defendant has not noticed even one deposition to date, even though there is less than one month left before the July 1, 2005 discovery deadline in this litigation.

As this Court has recently made clear:

> "Initial disclosure is required only of 'each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses.' RCFC 26(a)(1)(A) (emphasis added) ... Generally, discoverable information required to be initially disclosed includes the identity of potential witnesses. See Fed. R. Civ. P. 26 advisory committee's note (1993 amend.)."

(Globe Sav. Bank, F.S.B. v. United States, 61 Fed. Cl. 91, 101 [2004]). The 1993 amendments to the advisory committee notes clarify that:

> "Subparagraph (A) requires identification of all persons who, based on the investigation conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties. All persons with such information should be disclosed, whether or not their testimony will be supportive of the position of the disclosing party. As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as

> witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties. **Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed."**

(1993 Advisory Committee Notes to Fed Rules Civ Proc R 26) (emphasis added). In this case, Plaintiff described the general topics as: "the issues raised by the pleadings herein".

Plaintiff had previously specifically described what those issues are in the parties' Joint Preliminary Status Report. In that report, Plaintiff clearly described the issues that it was referring to as follows:

> "(A) Whether defendant has breached Contract No. DNA001-95-C-0169 ("Contract") and is liable to plaintiff for damages for defendant's failure to provide plaintiff with plaintiff's share of an equitable distribution of the Equipment (as that term is defined in paragraph 7 of the complaint) as required by FAR 52.232-20, which was a provision of the Contract;
>
> (B) Whether defendant has wrongfully appropriated and disposed of the Equipment, which was acquired and provided by plaintiff under the Contract;
>
> (C) Whether defendant has breached the provisions of the Contract concerning the ultimate use of and title to the Equipment and is, therefore, liable to Plaintiff for damages;
>
> (D) Whether defendant has breached the provisions of the Contract and is, therefore, liable to plaintiff for damages relating to the intended future benefits to plaintiff caused by defendant's breach of the Contract and defendant's appropriation and disposition of the Equipment;
>
> (E) Whether defendant has breached the implied covenants of good faith and fair dealing under the Contract and is liable to the plaintiff for damages; and

> (F) Whether defendant has breached the Contract and is liable to plaintiff for damages caused by defendant's wrongful appropriation and disposition of the Equipment, which constituted a taking for which just compensation is due plaintiff under the Fifth Amendment of the United States Constitution."

(Joint Preliminary Status Report, pages 2-3). This report was filed on November 8, 2004, several days **before** Plaintiff's service of its initial disclosures on Defendant. Thus, Defendant was well informed as to what issues Plaintiff was referring to, in its initial disclosures, as being the subject matter of the witnesses' knowledge.

Defendant's objection to Plaintiff's initial disclosures at this late date is nothing more than an untimely attempt to divert the Court's attention from its own failure to make the required disclosures.

## III. Defendant's Illogical And Conclusory Allegations Attempting To Misdirect The Court's Attention, Do Not Correct Its Failure To Produce The Required And Requested Documents.

The Defendant attempts to justify its lack of document production by inventing such excuses as (1) the documents requested by the Plaintiff are not material (Defendant's Response, p 6), (2) the Defendant has produced all the required documents (Defendant's Response, p. 6), (3) the Plaintiff's counsel did not travel to Ft. Belvoir to inspect the documents (Defendant's Response, p. 6), (4) the Defendant only had to provide DTRA documents, not all Government documents (Defendant's Response, p.8), (5) the Plaintiff's document requests were "vague and ambiguous" and "irrelevant" (Defendant's Response, p. 9), and (6) Defendant does not have to produce documents that Plaintiff already has (Defendant's Response, p. 10). For the reasons set

forth below, none of these creative eleventh-hour excuses justify the Defendant's failure to produce the required documents.[1]

The Defendant's counsel attempts to excuse its lack of document production because the documents requested are not material (Defendant's Response, p. 6). It is not the Defendant's prerogative to decide what is material or not material to the Plaintiff's case. Furthermore, in all responses to the Plaintiff's document demands, Defendant states that "all reasonably available non-privileged documents responsive to this request that are within the Government's possession are available for your review and reproduction at the Defense Threat Reduction Agency . . ." (Plaintiff's Motion, Exhibit B). The Defendant, in stating its exceptions to Plaintiff's document requests, said nothing about materiality and, therefore, should have produced all documents material or not. At this late date for the Defendant to attempt to utilize newly made up ground rules and exceptions to justify its non-production is intellectually dishonest and impermissible.

The Defendant's failure to produce the requested documents is well documented in Plaintiff's Motion. The Defendant has not, as claimed in its Response, "initially made all of the documents so indicated available for the Plaintiff to review at the "Defense Threat Reduction Agency . . ." (Defendant's Response, p. 6). The fact that the Defendant has, subsequent to its initial document production of December 31, 2004 and subsequent to Plaintiff's deposition of

---

[1]In addition, although in Mr. Lewis' Affirmation attached to Defendant's Response, Defendant argues that it has complied with specific failures to disclose set forth in Plaintiff's Motion, the attached Reply Affirmation of Gary Marcus addresses those arguments on a point-by-point basis and demonstrates how those representations and alleged disclosures are inaccurate and incomplete. (See Marcus Reply Affirmation, ¶ 4-6 and 8-11).

Defendant's Witnesses on February 8th - 11th, 2005, produced on two separate occasions (April 15, 2005) (see Plaintiff's Motion, Exhibit D) and again on May 16, 2005 an additional 950 pages of documents speaks volumes concerning its claims that it "initially made all of the documents so indicated available". (A copy of Defendant's counsel's letter of May 16, 2005 is annexed as Exhibit B to this Reply). Furthermore, for Defendant's counsel to claim that the unorganized chaotic mess of documents it tendered to the Plaintiff was "in the form that the files are maintained in the ordinary course of business" (Defendant's Response, p. 6) is totally outrageous. (See Exhibit E to Plaintiff's Motion). Defendant's counsel compounds this indignity by questioning Plaintiff's counsel's ability to locate certain documents that his client produced in such a random and disorganized order when pages of the documents were separated by 3760 pages of other documents (Plaintiff's Motion, Exhibit F, item 4). The Defendant's disorganized production even prevented it from locating a fax cover sheet that refutes an answer Defendant gave to Interrogatory No. 1. (See letter of May 4, 2005 to Defendant's counsel annexed as Exhibit C).

With respect to any issue concerning why Plaintiff's counsel did not inspect the documents at Defendant's place of business, that decision was made on the basis of Defendant's counsel's representation that it had only "approximately a banker's box" of documents [see Plaintiff's Motion, Affirmation of Good Faith Pursuant to RCFC 37(a)(2)(A) ¶3(a)] and (Marcus Reply Affirmation, ¶ 7). No negative insinuation can be logically drawn from Plaintiff's counsel's decision to forego a trip to Washington to review this paltry sum of documents. It just didn't and doesn't make any economic or logistical sense.

With respect to the allegations contained in Footnote 3 on Page 7 of the Defendant's Response concerning the Defendant's Witnesses' lack of candor and evasiveness, Defendant's counsel merely discusses their demeanor. The issue is not the witnesses' demeanor, it is the truth of their testimony. You do not have to see these witnesses to know they are being evasive and disingenuous. You only have to read the transcripts to see how the addressees of audit reports alleging fraud could not remember receiving these reports. (Plaintiff's Motion, Marcus Affirmation, ¶ 11).[2]

Finally, the most absurd of Defendant's points is found on page 8 of its Response where Defendant's counsel states "When defendant voluntarily agreed to make copies of the documents in DTRA's files, defendant did not agree to also make copies of documents in the files of other agencies as well." Not only did Plaintiff's First Request for the Production of Documents in numerous demands request documents from "DTRA or any Department or Agency of the United States Government" (Plaintiff's Motion, Exhibit A, ¶3, 5, 18, 19, 20, 22, 23, 24), but in the Defendant's Response to Plaintiff's First Request for Production of Documents each and every response states that it is providing "all reasonably available non-privileged documents responsive to this request that are within the Government's possession . . ." (Emphasis added). (Plaintiff's Motion, Exhibit B). It does not state within DTRA's possession. Relying upon representations in Defendant's Document Response and the statement of DTRA's counsel, Mr. Rickard, neither Plaintiff's counsel, nor any other reasonable person, could believe that Defendant's offer to copy a "banker's box" of documents did not include documents "from other agencies". (Defendant's

[2]These audit reports were specifically called out in Defendant's initial disclosures as documents that it may rely upon. (Defendant App. 19-21).


F:\users\bschneider\Gary Marcus\Legal Documents\DCI- Reply to Defts Response to Motion to Compel.wpd - June 2, 2005

Response, p. 8). It is beyond comprehension how the Defendant admits it was required to produce all Government documents, acknowledges that it was producing all Government documents and yet when it agreed to copy the documents it only copied the DTRA documents. How absurd.

Defendant's defense of its non-production of documents in response to Plaintiff's Request for Production Number 7, stating that it is "vague and ambiguous" and "irrelevant" (Defendant's Response, p. 9), also steps well beyond the bounds of credibility. The demand clearly asks for documents "pertaining in any way to any subsequent funding of the Contract including any requests by DCI for subsequent funding of the Contract". The Defendant does not have the prerogative to decide what is relevant with respect to Plaintiff's case (the fact is that these documents are an important element of Plaintiff's case); it has only the obligation to comply with the request and not invent creative excuses why it did not comply. The correspondence and inter-governmental decision to provide additional funds for this Contract continued over a period of some 4 or 5 years, and the Defendant's failure to fund is a breach of the Contract and the proximate cause of other breaches, but somehow the Defendant deems these disclosures irrelevant.

Equally, the Defendant cannot justify how it deems documents which were sent by the Plaintiff to the Defendant and which were not produced by the Defendant were not relevant to this matter. All this shows is that the Defendant is playing fast and loose with the discovery rules and producing only those documents it chooses to produce or was lucky enough to surface during

a half-hearted search. The Plaintiff identified specific documents that Defendant did not produce and in response, instead of producing them or showing a course of action to locate them, the Defendant issued lame excuses such as (1) the failure to produce is irrelevant to Plaintiff's motion (this is a motion to compel; how is it irrelevant) (Defendant's Response, p. 9 & 10); (2) Plaintiff has no right to seek to compel production of documents in its possession (Id., p. 10) (Rebutted conclusively by Plaintiff's Motion, Exhibit F, ¶5); and (3) it must be the fault of the fax machine (when the Plaintiff's note showing the transmission problem is to another DTRA employee asking him to forward to addressee). (Def. App., 25). The Defendant's assumption that "Plaintiff's presumption that it successfully forwarded letters that the Government does not now possess does not provide a basis to assume the Government has lost or destroyed documents" does not answer the bell. The Defendant has to offer an explanation of why it cannot produce these documents and what it did to try and locate them. A simple "We cann't (sic) find them, therefore they don't exist or don't count" is not an adequate response.

In total, the Defendant's Reply can best be summed up as:

1. We did produce documents until we were called to task by the Plaintiff and then we delivered a few more documents hoping Plaintiff would go away.

2. If we can't produce it, it doesn't exist.

3. The Plaintiff didn't comply with our demand and produced too much, therefore we have an excuse not to comply with its demand and can produce too little.

4. We do what we want, when we want, that is the attitude by which we managed the Contract, why should we change now?

These are not adequate responses to this Motion, just as the Defendant's document production and the Defendant's Witnesses' testimony were inadequate responses. For these reasons this Court should grant Plaintiff's motion and issue an order pursuant to RCFC 37(a)(2)(A) compelling Defendant to provide full and complete responses to all the outstanding discovery items set forth herein, together with such other and different relief as this Court may deem just and proper.

Respectfully submitted,

s/Gary Marcus
Attorney for Plaintiff
Goldberg & Connolly
66 North Village Avenue
Rockville Centre, NY 11570
Tel: (516) 764-2800
Fax: (516) 764-2827
E-Mail: gmarcus@goldbergconnolly.com

Dated: June 2, 2005