IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, | ) | No. 04-1113C |
| v. | ) | (Judge Braden) |
| UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION FOR A JUDICIAL DETERMINATION OF THE ADMISSIBILITY OF A DOCUMENT PERTAINING TO THE VIABILITY OF PLAINTIFF'S BUSINESS PLAN

Defendant respectfully moves for a judicial determination as to the admissibility of a document into evidence at the trial of this matter. The document, prepared by David L. Konick, an attorney, during his employment by plaintiff, Die Casters International, Inc. ("DCI"), contains Mr. Konick's opinions as to the viability of DCI's business plan, and the bases for his opinions.[1] We identified Mr. Konick as a potential Government witness on our trial witness list, and identified Mr. Konick's analysis of DCI's business plan on our trial exhibit list. Counsel for DCI

[1] We obtained a copy of Mr. Konick's analysis in response to a subpoena served upon Tymac Controls. The document contained no markings indicating that it was in any way privileged. Moreover, the author of the document, Mr. Konick, was not identified as an attorney. We also received a copy of the document from Robert Engh, a former officer of DCI. Copies of the document obtained from the two sources were turned over to DCI.

In response to our inquiry of counsel for DCI whether DCI had withheld any documents based upon privilege, we were assured that the only documents withheld were communications between DCI and the law firms that represent or represented DCI.

When we questioned counsel for DCI why Mr. Konick's analysis was not found among the documents that DCI made available for our inspection and copying, counsel could provide no explanation. An adverse inference can clearly be drawn when a significant document within the control of a party is inexplicably missing.

has objected to Mr. Konick testifying,[2] and to the admissibility of Mr. Konick's analysis, upon the ground that the information contained within that document is protected by the attorney-client privilege.[3] This motion is supported by the declarations of David L. Konick and John Mickowski, submitted herewith.

The linchpin of DCI's claim for $130,000,000 in lost profits, allegedly resulting from the breach by the Government of DCI's contract to start a die casting operation in Ukraine, is the viability of DCI's business plan. As previously mentioned, Mr. Konick sets forth in the document in question both his opinions as to the viability of DCI's business plan, and the bases for those opinions. Without a judicial determination that the communications contained within the disputed document are not protected from disclosure by the attorney-client privilege, Mr. Konick is unwilling to confer with the Government and is unwilling to testify at trial. We are, therefore, requesting that the Court address this evidentiary issue before the commencement of the trial of this matter on November 14, 2005.

## BACKGROUND

On October 27, 1995, the Defense Threat Reduction Agency ("DTRA') awarded DCI a $4.1 million contract to assist in the conversion of the a former Soviet military-production facility in Ukraine from a military to a non-military die casting production facility.

---

[2] DCI's objection to the testimony of David Konick is wholly unfounded. Mr. Konick can, without question, as a percipient witness to matters relevant to this lawsuit, testify as to the circumstances surrounding his employment by DCI; his duties and responsibilities at DCI; his performance of those duties, insofar as he does not divulge privileged information; and the reasons why he resigned from DCI.

[3] Ordinarily, it is incumbent upon the party seeking to exclude evidence to file a motion in limine. Because DCI indicated that it did not intend to do so, we have filed this motion, the functional equivalent of a motion in limine but seeking the opposite result.

In a March 15, 1996 letter to the DTRA contracting officer, Christopher W. Maillefert, DCI's Executive Vice President, responsible for finance and contract administration, informed DTRA that he and David L. Konick, a Russian speaking attorney knowledgeable of legal affairs in the NIS,[4] George P. Michaely, Secretary and Corporate Counsel; and Robert Engh, Vice-President for Ukraine Operations, were all resigning from DCI. See Maillefert letter attached as Exhibit C to the Declaration of David L. Konick In Support Of Defendant's Motion For A Judicial Determination Of The Admissibility Of A Document ("Konick Decl.").[5]

The specific reasons provided by Mr. Maillefert for their resignations included concerns with the management ability of Alan Frederickson's, DCI's founder, sole shareholder, and president; concerns over how resources were being obligated and utilized in the project; and concerns over the virtual insolvency of DCI. Id. Mr. Maillefert's letter further explained how DCI was financing its portion of the cost-share contract through partial payments on employee salaries and vendor invoices, and described DCI's "demonstrable lack of progress in obtaining financing," and their "grave concerns about the Company's viability and ability to perform under the contract." Id.

Mr. Konick's duties and responsibilities while employed by DCI consisted

---

[4] "NIS" is used to refer to the "newly independent states" of the former Soviet Union.

[5] At the end of 1996, John Mickowski, DCI's Chief Engineer and a DCI Director, also resigned, citing similar concerns as those expressed in Mr. Maillefert's March 1996 letter. Mr. Mickowski specifically cited "a loss of confidence in the management of DCI" and overall "doubts and concerns about [DCI's] continued viability." See letter attached as Exhibit A to the Declaration of John Mickowski In Support Of Defendant's Motion For A Judicial Determination Of The Admissibility Of A Document ("Mickowski Decl.").

of evaluating and assessing legislation for defense conversion; the establishment of a joint venture between DCI and Stock Partnership Meridian ("Meridian") under the laws of Ukraine, including the review of certain Meridian agreements; due diligence with respect to Meridian; meetings with Meridian officials and Ukraine State Property Committee officials regarding the Ukraine privatization process; assisting DCI management in their negotiations with Meridian; the preparation of various documents; and other duties as assigned. Konick Decl. ¶ 8.

In approximately January 1996, Mr. Konick was asked by Mr. Frederickson to analyze the business plan that Mr. Frederickson had submitted to DTRA as part of DCI's proposal that led to the award of the contract to DCI for a defense conversion project in Ukraine. Konick Decl. ¶ 9. A copy of that business plan is attached as Exhibit A to the Konick Declaration.

DISCUSSION

The attorney-client privilege protects communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice. American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 745 (Fed. Cir. 1987). The advice provided from counsel to client is privileged to the extent it discloses, directly or indirectly, what the client told the lawyer. The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998).

The attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle to the search for truth. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). The party asserting the privilege bears the burden of demonstrating that the attorney-client privilege applies, that is, that

the communications were protected and that the privilege was not waived. United States v. Aramony, 88 F.3d 1369, 1389 (4th Cir. 1996).

The attorney-client privilege is waived upon any voluntary disclosure of confidential information to a third party. Carter v. Gibbs, 909 F.2d 1450 (Fed Cir 1990)(En Banc); In re Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 254 (6th Cir.1996).

ARGUMENT

A. Mr. Frederickson Did Nor Seek Legal Advice From Mr. Konick Regarding His Business Plan

The only communication made by Mr. Frederickson to Mr. Konick in connection with this issue is the business plan itself. Thus, the confidential information conveyed to Mr. Konick and about which Mr. Frederickson sought Mr. Konick's legal advice, must be contained therein. The business plan that Mr. Konick analyzed at the request of Mr. Frederickson contains no confidential communications to Mr. Konick from Mr. Frederickson. Konick Decl. ¶11. Moreover, Mr. Konick played no role in the generation of the business plan. Konick Decl. ¶ 10.

It is clear beyond cavil that Mr. Frederickson did not seek legal advice from Mr. Konick when he asked Mr. Konick to review his business plan. As Mr. Konick states in his declaration, Mr. Frederickson did not seek his legal advice in connection with his business plan and Mr. Konick did not provide any. Konick Decl. ¶ 12. Since Mr. Frederickson did not seek legal advice from Mr. Konick regarding his business plan, and Mr. Konick provided no legal advice to Mr. Frederickson in responding to Mr. Frederickson's request that he review the business plan, Mr. Konick's review is not protected from disclosure by the attorney-client privilege.

Moreover, in evaluating the business plan, Mr. Konick used his knowledge and

experience in business, not in law. Konick Decl. ¶ 12. Mr. Konick was not requested by Mr. Frederickson to perform a legal analysis of the plan nor did he do so. Id. Such is evident from a perusal of Mr. Konick's analysis itself. See Exhibit B to Konick Decl.. In addition, it is the legal opinion of Mr. Konick that the types of information and opinions sought by the Department of Justice pertaining to the viability of Mr. Frederickson's business plan, including Mr. Frederickson's financial resources and his ability to raise venture capital, do not involve the disclosure of privileged information. Konick decl. ¶15.

For the foregoing reasons, the Court should find that Mr. Konick's analysis of Mr. Frederickson's business plan is not protected from disclosure by the attorney-client privilege because the information and opinions provided by Mr. Konick in that document do not constitute legal advice and does not disclose, directly or indirectly, what Mr. Frederickson might have told Mr. Konick in confidence. See American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 745 (Fed. Cir. 1987).

B. If Mr. Frederickson's Business Plan Contained Confidential Information, Mr. Frederickson Waived Its Privileged Nature By Disclosing It To Third Parties.

If in fact the business plan contained any confidential communications from Mr. Frederickson, he waived such privilege when he provided the plan to DTRA as part of his proposal. In addition, Mr. Frederickson provided copies of his business plan to a number of individuals and entities in an attempt to raise capital for the project. Konick Decl. ¶ 11.

For the foregoing reasons, the Court should find that Mr. Konick's analysis of Mr. Frederickson's business plan is not protected from disclosure by the attorney-client privilege, and even if it were, Mr. Frederickson waived the privilege by disclosing the allegedly privileged information in the business plan to third parties. See Carter v. Gibbs, 909 F.2d 1450 (Fed Cir

1990)(en banc).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick.
MARK A. MELNICK
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

November 1, 2005

Attorneys for Defendant