IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, | ) | |
| v. | ) | No. 04-1113C (Judge Braden) |
| UNITED STATES, Defendant. | ) | |

DECLARATION OF DAVID L. KONICK IN SUPPORT OF DEFENDANT'S MOTION FOR A JUDICIAL DETERMINATION OF THE ADMISSIBILITY OF A DOCUMENT

1. My name is David L. Konick. I am an attorney licensed to practice law in the Commonwealth of Virginia. I have been a licensed attorney since 1977.

2. I am in private practice and specialize in the following areas: corporate/small business law, litigation, international law involving the former Soviet Union, real estate, zoning, and estate planning.

3. In or about late 1995, I met Alan Frederickson, President of Die Casters International, Inc. ("DCI"), through Christopher Maillefert and Robert Engh, who I understood were employees or agents for DCI since the fall of 1995.

4. In January 1996, because of my understanding of post-Soviet law, I was approached by Mr. Frederickson about the prospects of working for DCI in Ukraine.

5. Based upon discussions with Mr. Frederickson, I proposed certain legal and consulting activities that I would be prepared to undertake upon behalf of DCI. Those agreements are memorialized in documents I gave to Mr. Frederickson. I intended that such information be incorporated into an employment contract that George Michaely, Esq., was to prepare upon behalf of DCI as its counsel.

6. The agreement that I proposed was to have been for one year, and was to have included salary, bonus, stock options, benefits, and other items. Among other things, I was to be given a title to be determined by DCI. It was my suggestion that my title should be "General Counsel." However, Mr. Frederickson informed me that DCI already had a General Counsel, Mr. Michaely. Accordingly, Mr. Frederickson gave me the title of Vice

President Corporate Development. My employment proposal and contract had to be approved by DCI's board of directors; the necessary approvals were never obtained by Mr. Frederickson. Thus, I neither signed nor received a formal employment contract from DCI.

7. Despite the fact that I did not have a contract of employment with DCI, I undertook certain work for DCI, including a review and analysis of various DCI business plans, with the understanding that I would work and be paid as an employee.

8. My duties and responsibilities while so employed by DCI generally consisted of evaluating and assessing legislation for defense conversion and the establishment of a joint venture between DCI and Stock Partnership Meridian ("Meridian") under the laws of Ukraine, including review of certain Meridian agreements; due diligence with respect to Meridian; meetings with Meridian officials regarding the Ukraine privatization process; assisting DCI management in their negotiations with Meridian and preparation of various documents; and other duties as assigned.

9. In approximately January 1996, I was asked by Mr. Frederickson to analyze the business plan that he had submitted to the Defense Threat Reduction Agency ("DTRA") as part of his proposal that led to the award of the contract to DCI for a defense conversion project in Ukraine. A copy of that business plan is attached as Exhibit A.

10. I played no role in the formulation or writing of that business plan, which was prepared long before my involvement with DCI.

11. The business plan that I analyzed, at the request of Mr. Frederickson, contained no confidential communications to me from Mr. Frederickson. In addition, Mr. Frederickson had not only provided the business plan to DTRA, he had provided copies to a number of individuals and entities in attempts to raise capital for the project, including at least one financial institution.

12. In evaluating the business plan, I used my knowledge and experience in business. I was not requested by Mr. Frederickson to perform a legal analysis of the plan nor did I do so. A copy of the analysis that I performed, as provided to me by the Department of Justice, is attached hereto as Exhibit B.

13. I am willing to discuss all non-privileged matters pertaining to my involvement with DCI with DOJ and to testify about such matters at the trial of this matter.

14. Based upon my involvement with, and knowledge of, Mr. Frederickson and DCI, I am concerned that DCI might initiate formal legal action against me or file an ethics complaint with the Virginia State Bar if I speak to DO personnel concerning the various matters generally referenced herein.

15. It is my legal opinion that the types of information and opinions sought by DO pertaining to the viability of Mr. Frederickson's business plan, including Mr. Frederickson's financial resources and his ability to raise venture capital, do not involve the disclosure of privileged information.

16. By letter dated March 15, 1996, Christopher Maillefert notified DTRA that he along with me, Robert Engh, and George Michaely were resigning from DCI. A copy of the March 14 letter is attached as Exhibit C.

17. By letter of the same date I submitted my resignation to Mr. Frederickson. A copy of that letter is attached as Exhibit D.

18. I have retained some of the documents that were generated during my involvement with DCI. Attached at Exhibit E is a list of the documents that I have retained. I have noted the documents that I believe are, or may be, privileged.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2005.

David L. Konick

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

**PROPOSAL FOR DEVELOPING**

**JOINT VENTURE PARTNERSHIPS**

**FOR THE PURPOSE OF DEFENSE CONVERSION AND**

**ASSISTANCE IN ESTABLISHING**

**STRONG, LONG TERM COMMERCIAL BUSINESSES**

**IN UKRAINE**

**PART II: COST PROPOSAL**

**DEFENSE CONVERSION IN UKRAINE**

-------------------------------------------

**DEFENSE NUCLEAR AGENCY**
**DNA001-94-R-0084**

**SUBMITTED BY:**

DIE CASTERS INTERNATIONAL, Inc.
One Spruce Terrace
Wayne, New Jersey 07470

CONTACT: Mr. Alan C. Frederickson
Tel: 201-696-9100
Fax: 201-696-9100

DATE: 15 September 1994

02818

A

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

September 15, 1994

Mr. Thomas L. Cox (AM2)
HQS, Defense Nuclear Agency
Acquisition Management Office
6801 Telegraph Road, Room 112
Alexandria, VA 22310-3398

RE: Request for Proposal
DNA001-94-R-0084
Parts I, II, IV and V

Dear Mr. Cox:

Die Casters International, Inc. ("DCI") is pleased to submit the attached proposal to assist with the defense conversion of up to three companies located in Ukraine in direct response to your solicitation, DNA001-94-R-0084 ("The Solicitation"). As per your instructions, submitted herewith are Part I (Administrative Data), Part II (Cost Proposal), and Part V (Financial Information). Part III (Management/Technical Report) is submitted separately. Part IV (Small Business Subcontract Plan) is not included with this submission as DCI is a small business itself and all of its subcontract proposals are with small businesses or non-profits. However, at your request, DCI is prepared to submit a plan on short notice.

This proposal focuses on helping the following enterprises develop their production capabilities to meet international standards and on providing the marketing and sales acumen and distribution network to meet market demand internally within Ukraine, regionally within the Commonwealth of Independent States ("CIS," republics of the former Soviet Union), and externally to the CIS' export, hard currency markets. DCI has received protocols of intent and has developed plans in this proposal to assist:

- Korolev Radiopryiad Plant ("Korolev," located in Kyiv),
- Mayak Plant ("Mayak," located in Kyiv), and
- Fiolent Joint Stock Company ("Fiolent," located in Simferopol, Crimea).

02819

DCI's cost proposal includes a prioritization schedule that ranks Korolev first followed by either Mayak or Fiolent. The proposal has been designed to provide DNA with the flexibility to design the project to fit within the funds available while maximizing the benefits provided to the Ukraine conversion process. DCI has brought together experts in business skills training as well as production and quality control consulting that will prepare the companies for certifications under international qualty control standards. In addition, DCI will offer special seminars that will be targeted at each company's on-going needs. Each of these services can apply to one Ukraine enterpriise, or, with minimal incremental costs, can apply to all three. DCI's program is designed to establish long-term relationships to continue the conversion program well past the funding offered under this solicitation. It is the intent of DCI and its subcontractors to enter into joint ventures with Ukrainian enterprises where appropriate.

DCI is a New Jersey corporation recently formed for the explicit purpose to implement a long term strategy to develop business within the CIS and to help the CIS develop critically needed hard currency cash flow. The strategy was formulated by DCI's principals nearly three years ago, which is proof that this proposal is not a short term project established only to secure the funds covered by this solicitation. The formation of DCI was a well defined step in principals long term strategy, a step taken to focus activity on the implementation of the plans set forth in this proposal. DCI has a well established team of industry and business experts that will add significant value to DCI's activities. For instance, working with DCI as outside director-nominees are the past chairman of KPMG/Main Hurdman (now KPMG Peat Marwick) who is considered one of the nations leading cost accounting experts, the past chief financial officer (CFO) of Avon Products, the former president and owner of a large die cast business located in the mid-west, the founder of TYMAC Controls (a leader in die cast technology), the president of a regional bank, and two highly-seasoned international marketing and sales executives.

In response to the solicitation's request for cost sharing, DCI is proposing a plan that provides cost sharing through uncompensated direct expenses and services, reduced overhead allocations, and significantly reduced margins. More important, DCI will commit to reinvesting profits generated by its joint venture operations in Ukraine rather than repatriating the funds. In addition, the Ukraine enterprises will be investing significant assets into the joint ventures, will be performing numerous uncompensated tasks, and will be implementing significant operating improvements at their own cost, significantly increasing the effective cost sharing involved with this proposal. Cost sharing also includes the short term losses for of DCI's operations in Ukraine and Europe, which DCI is prepared to accept, as DCI's strategic plan develops a long term, manufacturing-based distribution business. Few of these costs are definable until DNA has provided DCI with its goals and objectives, including funding level, for DCI's award. At that time, DCI will provide a better breakdwon of these cost sharing elements than is provided in the "blue-sky" numbers offered in this proposal.

Concerning leveraging, DCI has raised capital to purchase a small manufacturing-based New Jersey business to support its growth into the CIS. DCI is actively pursuing this acquisition as depicted in the letter to DCI from the sole-owner of the company (located in the appendix). In addition, DCI plans to raise at least $2.5 million debt/equity in the private, commercial and/or governmnet financial markets to support this activity.

We look forward to your favorable response to our proposal.

Sincerely,
DIE CASTERS INTERNATIONAL, INC.

Alan Frederickson

Alan C. Frederickson
President

Enclosures: Part I - Administrative Data
Part II - Cost Proposal
Part V - Financial Information

02820

Attached Under Separate Cover: Part III - Management/Technical Proposal

*Die Casters International, Inc.*
**Defense Conversion In Ukraine**
**DNA001-94-R-0084**

**Summary of Costs - DCI Activity**

| Description | Estimated Costs | Contract Costs | DCI Direct Cost Share | Effective DCI Cost Share | Total DCI Cost Share | Ukraine Plant Cost Share | Comment |
|---|---|---|---|---|---|---|---|
| **TYMAC Estimates:** | | | | | | | |
| Korolev Die Cast Assets | $2,676,000 | $2,676,000 | $0 | $669,000 | $669,000 | $200,000 | Install, Retool, Outfit |
| Fiolent Die Cast Assets | $2,362,000 | $2,362,000 | $0 | $590,500 | $590,500 | $200,000 | " |
| Mayak Die Cast Assets | $2,362,000 | $2,362,000 | $0 | $590,500 | $590,500 | $200,000 | " |
| **Die Casting Plant Assets** | **$7,400,000** | **$7,400,000** | **$0** | **$1,850,000** | **$1,850,000** | **$3,700,000** | |
| **Export Products Investment Estimates (Korolev)** | | | | | | | |
| Range Griddles | $340,000 | $0 | $340,000 | $0 | $340,000 | $25,000 | Die Cast Working Capita |
| Electric Griddle | $355,000 | $0 | $355,000 | $0 | $355,000 | $25,000 | " |
| Clothes Irons | $230,000 | $0 | $230,000 | $0 | $230,000 | $25,000 | " |
| Consignment Inventory | $250,000 | $0 | $250,000 | $0 | $250,000 | $25,000 | " |
| **Export Product Investment** | **$1,175,000** | **$0** | **$1,175,000** | **$0** | **$1,175,000** | **$100,000** | |
| **Training Subcontracts** | | | | | | | |
| NIWT (Business Skills) | $360,000 | $300,000 | $60,000 | | | $10,000 | Facilities & Food (DCI?) |
| IMAX (Quality & Production) | | | | | | | |
| Korolev | $331,000 | $296,000 | $35,000 | $0 | $35,000 | $15,000 | Overhead, New Opns |
| Fiolent | $70,000 | $50,000 | $20,000 | $0 | $20,000 | $15,000 | " |
| Mayak | $70,000 | $50,000 | $20,000 | $0 | $20,000 | $15,000 | " |
| **Training Subcontracts** | **$831,000** | **$696,000** | **$135,000** | **$0** | **$75,000** | **$55,000** | |
| **DCI Activities** | | | | | | | |
| Ukraine JVs and Subsidiary | $252,000 | $152,000 | $100,000 | | $100,000 | | |
| Market Network Expansion | $77,000 | $47,000 | $30,000 | | $30,000 | | |
| Manuals Translation | $36,000 | $20,000 | $16,000 | | $16,000 | | |
| First TYMAC Installation | $47,000 | $27,000 | $20,000 | | $20,000 | | |
| Other Installations | $16,000 | $16,000 | $0 | | $0 | | |
| Purchase Machines | $88,000 | $58,000 | $30,000 | | $30,000 | | |
| Korolev Assembly Setup | $100,000 | $60,000 | $40,000 | | $40,000 | | |
| Korolev Plant Setup | $105,000 | $105,000 | $0 | | $0 | | |
| Jt Venture QC & Prodn Training | $105,000 | $75,000 | $30,000 | | $30,000 | | |
| Costing, Pricing, & Literature | $141,000 | $101,000 | $40,000 | | $40,000 | | |
| Special On-Site Seminars | $157,000 | $127,000 | $30,000 | | $30,000 | | |
| Imax QC Support | $83,000 | $53,000 | $30,000 | | $30,000 | | |
| **Total DCI Activities** | **$1,207,000** | **$841,000** | **$366,000** | **$0** | **$366,000** | | |
| **Totals** | **$10,613,000** | **$8,937,000** | **$1,676,000** | **$1,850,000** | **$3,466,000** | **$3,855,000** | |
| **Other Cost Sharing/Leveraging** | | | | | | | |
| Korolev Plant, Joint Venture Assets Contributed | | | | | | $3,000,000 | Assets, Plant, etc. |
| Korolev Plant, Remanufacturing JV Assets | | | | | | $2,000,000 | " |
| Mayak Plant, Joint Venture Assets Contributed | | | | | | $3,000,000 | " |
| Fiolent Plant, Joint Venture Assets Contributed | | | | | | $3,000,000 | " |
| DCI Other Expenses Not Charged | | | $100,000 | | $100,000 | | |
| DCI Operating Expenses Post-Jt Ventures | | | $1,800,000 | | $1,800,000 | | |
| **Summary Total Cost Estimates** | | **$8,937,000** | **$3,576,000** | **$1,850,000** | **$5,366,000** | **$14,855,000** | |

| | |
|---|---|
| **DNA Contract Costs - All Projects & Three Companies** | **$8,937,000** |
| **DCI & Ukraine Cost Sharing & Leveraging** | **$20,221,000** |

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

September 15, 1994

Mr. Thomas Cox/AM2
HQS, Defense Nuclear Agency
Acquisition Management Office
6801 Telegraph Road, Room 114
Alexandria, VA 22310-3398

RE: Part I: Administrative Data
Request for Proposal
DNA001-94-R-0084

Certification of Acceptance of Contract Clauses and General Provisions

Dear Mr. Cox:

This certifies that Die Casters International, Inc. ("DCI") accepts the proposed contract schedule clauses and General Provisions.

The proposal submitted has been broken down into distinct and, in some cases, independent projects that can be evaluated individually. DCI has structured its proposal to include conversion for three Ukraine companies. While the pricing offered for each project assumes a contract award that includes all projects, DCI is willing to renegotiate pricing and terms for any of the projects or companies taken individually. The cost sharing and leveraging elements of the proposal are, at best, "blue-sky" estimates until DCI is able to more specifically define the full work scope of the project. If any or all of this proposal is approved, at your request, I am available to negotiate with the assigned contracting officer a contract payment schedule including cost sharing, based upon agreed deliverables and targeted milestones. A proposed schedule is included in Part II. Because the contract award may vary considerably, depending on which services and equipment your office awards to DCI, I am also available to negotiate the final deliverables prior to the time of the award.

Thank you.

Very truly yours,

Alan Frederickson

Alan C. Frederickson
President

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

# PROPOSAL FOR DEVELOPING

# A JOINT VENTURE PARTNERSHIPS

# FOR THE PURPOSE OF DEFENSE CONVERSION AND

# ASSISTANCE IN ESTABLISHING A

# STRONG, LONG TERM COMMERCIAL BUSINESS

## STRICTLY CONFIDENTIAL

## PART V: FINANCIAL INFORMATION

## DEFENSE CONVERSION IN UKRAINE

-------------------------------------------

**DEFENSE NUCLEAR AGENCY**
**DNA001-94-R-0084**

**SUBMITTED BY:**

DIE CASTERS INTERNATIONAL, Inc.
One Spruce Terrace
Wayne, New Jersey 07470

CONTACT: Mr. Alan C. Frederickson
Tel: 201-696-9100
Fax: 201-696-9100

15 September 1994

02823

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

## PART FIVE: FINANCIAL INFORMATION

## STRICTLY CONFIDENTIAL AND PROPRIETARY

DCI is a newly formed New Jersey corporation with no historical financials to present as requested by this solicitation. DCI was formed for the specific purpose to execute the strategic plan for defense conversion and to build a growing base of die cast operations in the CIS, utilizing Nunn-Lugar funds and following the intent of the original legislation by employing veterans in the expanding operations. To accomplish the strategic goals to expand beyond the initial joint ventures, DCI plans to raise outside capital and bank financing. The granting of an award will facilitate this process, which DCI will pursue in earnest once an intent to make an award is known.

The first phase of its capitalization plans has been completed with the raising of startup capital that has allowed DCI to put forth an offer to purchase Fairfield Technologies, Inc. (A copy of the owners intent to sell is included, and DCI is in the final process of negotiating the deal with the owner.) At the same time, DCI has completed its agreement with TYMAC to be their exclusive distributor. With both of these agreements, DCI will have approximately $5.5 million in sales.

Included in the technical proposal (Part III) is a organizational chart of the new organization. After completing the acquisition, Fairfield Technologies will become the holding company of DCI, and FTI will incorporate the other business areas to form the General Products Trading Company (which will be responsible for TYMAC sales, among other things) and TIA Electric.

The second phase of its capital investment plans involve raising $2 to 5 million in private capital and bank financing. The funds will be used as working capital to advance the CIS die casting strategy. Mr. Frederickson, the directors of DCI, and the some of the director-nominees have had discussions with the owners of the two companies, one of whom is Mr. Mickowski (a director of DCI), and both owners have expressed a strong interest to close a sale of their business.

Because both companies are privately-held, financials are not available at this time. Mr. Frederickson is putting together a private placement memorandum to raise the outside funds and will provide this upon request by the contract officer. Financial information on the two companies cannot be released without the owners permission, such permission is not expected to be denied.

The new FTI aggregate just over $5 million in sales with a small operating cash flow and profitability. FTI has a substantial credit line and is currently expecting a major government order as a subcontractor to a prime that is selling equipment to the United States Air Force.

While the acquisition will provide a strong base to expand the die cast business, the acquisition is not essential to the successful completion of this proposal nor to the long term success of the venture. DCI has already obtained commitments for private equity capital that will allow it to function under this proposal, while not being enough to purchase the above two companies.

As highlighted in the solicitation's scope of work, the purpose of the funds is to act as seed money for an entrepreneurial venture to start a conversion process in the CIS that can be used as a model for other conversions. The plan advanced by DCI accomplishes that exact purpose. With the targeted $2 to 5 million of funds, DCI will build a substantial new company that will increase employment within the United States by an estimated 150 new direct jobs plus a substantial number of jobs at subcontractors (for an estimated total of over 500 new jobs including the multiplier effect). Within Russia, the number of new jobs can be estimated by adding 300 new employees at the two die cast joint ventures, adding employees that will contribute to the value-added functions at its Ukraine partners facilities (unknown at this time), and then using a multiplier effect of at least four for the CIS (resulting in at least 1200 new jobs in the CIS).

The granting of funds to DCI for defense conversion will have numerous beneficial effects. Mr. Frederickson is available and ready to provide whatever reasonable information is requested and can quickly negotiate the terms and conditions of any contract awarded to DCI.

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

# PROPOSAL FOR DEVELOPING

# JOINT VENTURE PARTNERSHIPS

# FOR THE PURPOSE OF DEFENSE CONVERSION AND

# ASSISTANCE IN ESTABLISHING

# STRONG, LONG TERM COMMERCIAL BUSINESSES

# IN UKRAINE

## PART II: COST PROPOSAL

## DEFENSE CONVERSION IN UKRAINE

---

## DEFENSE NUCLEAR AGENCY
## DNA001-94-R-0084

SUBMITTED BY:

DIE CASTERS INTERNATIONAL, Inc.
One Spruce Terrace
Wayne, New Jersey 07470

CONTACT: Mr. Alan C. Frederickson
Tel: 201-696-9100
Fax: 201-696-9100

DATE: 15 September 1994

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

September 15, 1994

Mr. Thomas L. Cox (AM2)
HQS, Defense Nuclear Agency
Acquisition Management Office
6801 Telegraph Road, Room 112
Alexandria, VA 22310-3398

RE: Request for Proposal
DNA001-94-R-0084
Parts I, II, IV and V

Dear Mr. Cox:

Die Casters International, Inc. ("DCI") is pleased to submit the attached proposal to assist with the defense conversion of up to three companies located in Ukraine in direct response to your solicitation, DNA001-94-R-0084 ("The Solicitation"). As per your instructions, submitted herewith are Part I (Administrative Data), Part II (Cost Proposal), and Part V (Financial Information). Part III (Management/Technical Report) is submitted separately. Part IV (Small Business Subcontract Plan) is not included with this submission as DCI is a small business itself and all of its subcontract proposals are with small businesses or non-profits. However, at your request, DCI is prepared to submit a plan on short notice.

This proposal focuses on helping the following enterprises develop their production capabilities to meet international standards and on providing the marketing and sales acumen and distribution network to meet market demand internally within Ukraine, regionally within the Commonwealth of Independent States ("CIS," republics of the former Soviet Union), and externally to the CIS' export, hard currency markets. DCI has received protocols of intent and has developed plans in this proposal to assist:

- Korolev Radiopryiad Plant ("Korolev," located in Kyiv),
- Mayak Plant ("Mayak," located in Kyiv), and 02819
- Fiolent Joint Stock Company ("Fiolent," located in Simferopol, Crimea).

DCI's cost proposal includes a prioritization schedule that ranks Korolev first followed by either Mayak or Fiolent. The proposal has been designed to provide DNA with the flexibility to design the project to fit within the funds available while maximizing the benefits provided to the Ukraine conversion process. DCI has brought together experts in business skills training as well as production and quality control consulting that will prepare the companies for certifications under international qualty control standards. In addition, DCI will offer special seminars that will be targeted at each company's on-going needs. Each of these services can apply to one Ukraine enterpriise, or, with minimal incremental costs, can apply to all three. DCI's program is designed to establish long-term relationships to continue the conversion program well past the funding offered under this solicitation. It is the intent of DCI and its subcontractors to enter into joint ventures with Ukrainian enterprises where appropriate.

DCI is a New Jersey corporation recently formed for the explicit purpose to implement a long term strategy to develop business within the CIS and to help the CIS develop critically needed hard currency cash flow. The strategy was formulated by DCI's principals nearly three years ago, which is proof that this proposal is not a short term project established only to secure the funds covered by this solicitation. The formation of DCI was a well defined step in principals long term strategy, a step taken to focus activity on the implementation of the plans set forth in this proposal. DCI has a well established team of industry and business experts that will add significant value to DCI's activities. For instance, working with DCI as outside director-nominees are the past chairman of KPMG/Main Hurdman (now KPMG Peat Marwick) who is considered one of the nations leading cost accounting experts, the past chief financial officer (CFO) of Avon Products, the former president and owner of a large die cast business located in the mid-west, the founder of TYMAC Controls (a leader in die cast technology), the president of a regional bank, and two highly-seasoned international marketing and sales executives.

In response to the solicitation's request for cost sharing, DCI is proposing a plan that provides cost sharing through uncompensated direct expenses and services, reduced overhead allocations, and significantly reduced margins. More important, DCI will commit to reinvesting profits generated by its joint venture operations in Ukraine rather than repatriating the funds. In addition, the Ukraine enterprises will be investing significant assets into the joint ventures, will be performing numerous uncompensated tasks, and will be implementing significant operating improvements at their own cost, significantly increasing the effective cost sharing involved with this proposal. Cost sharing also includes the short term losses for of DCI's operations in Ukraine and Europe, which DCI is prepared to accept, as DCI's strategic plan develops a long term, manufacturing-based distribution business. Few of these costs are definable until DNA has provided DCI with its goals and objectives, including funding level, for DCI's award. At that time, DCI will provide a better breakdwon of these cost sharing elements than is provided in the "blue-sky" numbers offered in this proposal.

Concerning leveraging, DCI has raised capital to purchase a small manufacturing-based New Jersey business to support its growth into the CIS. DCI is actively pursuing this acquisition as depicted in the letter to DCI from the sole-owner of the company (located in the appendix). In addition, DCI plans to raise at least $2.5 million debt/equity in the private, commercial and/or governmnet financial markets to support this activity.

We look forward to your favorable response to our proposal.

Sincerely,
DIE CASTERS INTERNATIONAL, INC.

Alan C. Frederickson
President

Enclosures: Part I - Administrative Data
Part II - Cost Proposal
Part V - Financial Information

02820

Attached Under Separate Cover: Part III - Management/Technical Proposal

*Die Casters International, Inc.*
**Defense Conversion In Ukraine**
**DNA001-94-R-0084**

**Summary of Costs - DCI Activity**

| Description | Estimated Costs | Contract Costs | DCI Direct Cost Share | Effective DCI Cost Share | Total DCI Cost Share | Ukraine Plant Cost Share | Comment |
|---|---|---|---|---|---|---|---|
| **TYMAC Estimates:** | | | | | | | |
| Korolev Die Cast Assets | $2,676,000 | $2,676,000 | $0 | $669,000 | $669,000 | $200,000 | Install, Retool, Outfit |
| Fiolent Die Cast Assets | $2,362,000 | $2,362,000 | $0 | $590,500 | $590,500 | $200,000 | " |
| Mayak Die Cast Assets | $2,362,000 | $2,362,000 | $0 | $590,500 | $590,500 | $200,000 | " |
| **Die Casting Plant Assets** | **$7,400,000** | **$7,400,000** | **$0** | **$1,850,000** | **$1,850,000** | **$3,700,000** | |
| **Export Products Investment Estimates (Korolev)** | | | | | | | |
| Range Griddles | $340,000 | $0 | $340,000 | $0 | $340,000 | $25,000 | Die Cast Working Capita |
| Electric Griddle | $355,000 | $0 | $355,000 | $0 | $355,000 | $25,000 | " |
| Clothes Irons | $230,000 | $0 | $230,000 | $0 | $230,000 | $25,000 | " |
| Consignment Inventory | $250,000 | $0 | $250,000 | $0 | $250,000 | $25,000 | " |
| **Export Product Investment** | **$1,175,000** | **$0** | **$1,175,000** | **$0** | **$1,175,000** | **$100,000** | |
| **Training Subcontracts** | | | | | | | |
| NIWT (Business Skills) | $360,000 | $300,000 | $60,000 | | | $10,000 | Facilities & Food (DCI?) |
| IMAX (Quality & Production) | | | | | | | |
| Korolev | $331,000 | $296,000 | $35,000 | $0 | $35,000 | $15,000 | Overhead, New Opns |
| Fiolent | $70,000 | $50,000 | $20,000 | $0 | $20,000 | $15,000 | " |
| Mayak | $70,000 | $50,000 | $20,000 | $0 | $20,000 | $15,000 | " |
| **Training Subcontracts** | **$831,000** | **$696,000** | **$135,000** | **$0** | **$75,000** | **$55,000** | |
| **DCI Activities** | | | | | | | |
| Ukraine JVs and Subsidiary | $252,000 | $152,000 | $100,000 | | $100,000 | | |
| Market Network Expansion | $77,000 | $47,000 | $30,000 | | $30,000 | | |
| Manuals Translation | $36,000 | $20,000 | $16,000 | | $16,000 | | |
| First TYMAC Installation | $47,000 | $27,000 | $20,000 | | $20,000 | | |
| Other Installations | $16,000 | $16,000 | $0 | | $0 | | |
| Purchase Machines | $88,000 | $58,000 | $30,000 | | $30,000 | | |
| Korolev Assembly Setup | $100,000 | $60,000 | $40,000 | | $40,000 | | |
| Korolev Plant Setup | $105,000 | $105,000 | $0 | | $0 | | |
| Jt Venture QC & Prodn Training | $105,000 | $75,000 | $30,000 | | $30,000 | | |
| Costing, Pricing, & Literature | $141,000 | $101,000 | $40,000 | | $40,000 | | |
| Special On-Site Seminars | $157,000 | $127,000 | $30,000 | | $30,000 | | |
| Imax QC Support | $83,000 | $53,000 | $30,000 | | $30,000 | | |
| **Total DCI Activities** | **$1,207,000** | **$841,000** | **$366,000** | **$0** | **$366,000** | | |
| **Totals** | **$10,613,000** | **$8,937,000** | **$1,676,000** | **$1,850,000** | **$3,466,000** | **$3,855,000** | |
| **Other Cost Sharing/Leveraging** | | | | | | | |
| Korolev Plant, Joint Venture Assets Contributed | | | | | | $3,000,000 | Assets, Plant, etc. |
| Korolev Plant, Remanufacturing JV Assets | | | | | | $2,000,000 | " |
| Mayak Plant, Joint Venture Assets Contributed | | | | | | $3,000,000 | " |
| Fiolent Plant, Joint Venture Assets Contributed | | | | | | $3,000,000 | " |
| DCI Other Expenses Not Charged | | | $100,000 | | $100,000 | | |
| DCI Operating Expenses Post-Jt Ventures | | | $1,800,000 | | $1,800,000 | | |
| **Summary Total Cost Estimates** | | **$8,937,000** | **$3,576,000** | **$1,850,000** | **$5,366,000** | **$14,855,000** | |

| | |
|---|---|
| **DNA Contract Costs - All Projects & Three Companies** | **$8,937,000** |
| **DCI & Ukraine Cost Sharing & Leveraging** | **$20,221,000** |

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

September 15, 1994

Mr. Thomas Cox/AM2
HQS, Defense Nuclear Agency
Acquisition Management Office
6801 Telegraph Road, Room 114
Alexandria, VA 22310-3398

RE: Part I: Administrative Data
Request for Proposal
DNA001-94-R-0084

Certification of Acceptance of Contract Clauses and General Provisions

Dear Mr. Cox:

This certifies that Die Casters International, Inc. ("DCI") accepts the proposed contract schedule clauses and General Provisions.

The proposal submitted has been broken down into distinct and, in some cases, independent projects that can be evaluated individually. DCI has structured its proposal to include conversion for three Ukraine companies. While the pricing offered for each project assumes a contract award that includes all projects, DCI is willing to renegotiate pricing and terms for any of the projects or companies taken individually. The cost sharing and leveraging elements of the proposal are, at best, "blue-sky" estimates until DCI is able to more specifically define the full work scope of the project. If any or all of this proposal is approved, at your request, I am available to negotiate with the assigned contracting officer a contract payment schedule including cost sharing, based upon agreed deliverables and targeted milestones. A proposed schedule is included in Part II. Because the contract award may vary considerably, depending on which services and equipment your office awards to DCI, I am also available to negotiate the final deliverables prior to the time of the award.

Thank you.

Very truly yours,

Alan C. Frederickson
President

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

# PROPOSAL FOR DEVELOPING
# A JOINT VENTURE PARTNERSHIPS
# FOR THE PURPOSE OF DEFENSE CONVERSION AND
# ASSISTANCE IN ESTABLISHING A
# STRONG, LONG TERM COMMERCIAL BUSINESS

## STRICTLY CONFIDENTIAL

## PART V: FINANCIAL INFORMATION

## DEFENSE CONVERSION IN UKRAINE

--------------------------------------------

DEFENSE NUCLEAR AGENCY
DNA001-94-R-0084

**SUBMITTED BY:**

DIE CASTERS INTERNATIONAL, Inc.
One Spruce Terrace
Wayne, New Jersey 07470

CONTACT: Mr. Alan C. Frederickson
Tel: 201-696-9100
Fax: 201-696-9100

15 September 1994

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

## PART FIVE: FINANCIAL INFORMATION

## STRICTLY CONFIDENTIAL AND PROPRIETARY

DCI is a newly formed New Jersey corporation with no historical financials to present as requested by this solicitation. DCI was formed for the specific purpose to execute the strategic plan for defense conversion and to build a growing base of die cast operations in the CIS, utilizing Nunn-Lugar funds and following the intent of the original legislation by employing veterans in the expanding operations. To accomplish the strategic goals to expand beyond the initial joint ventures, DCI plans to raise outside capital and bank financing. The granting of an award will facilitate this process, which DCI will pursue in earnest once an intent to make an award is known.

The first phase of its capitalization plans has been completed with the raising of startup capital that has allowed DCI to put forth an offer to purchase Fairfield Technologies, Inc. (A copy of the owners intent to sell is included, and DCI is in the final process of negotiating the deal with the owner.) At the same time, DCI has completed its agreement with TYMAC to be their exclusive distributor. With both of these agreements, DCI will have approximately $5.5 million in sales.

Included in the technical proposal (Part III) is a organizational chart of the new organization. After completing the acquisition, Fairfield Technologies will become the holding company of DCI, and FTI will incorporate the other business areas to form the General Products Trading Company (which will be responsible for TYMAC sales, among other things) and TIA Electric.

The second phase of its capital investment plans involve raising $2 to 5 million in private capital and bank financing. The funds will be used as working capital to advance the CIS die casting strategy. Mr. Frederickson, the directors of DCI, and the some of the director-nominees have had discussions with the owners of the two companies, one of whom is Mr. Mickowski (a director of DCI), and both owners have expressed a strong interest to close a sale of their business.

Because both companies are privately-held, financials are not available at this time. Mr. Frederickson is putting together a private placement memorandum to raise the outside funds and will provide this upon request by the contract officer. Financial information on the two companies cannot be released without the owners permission, such permission is not expected to be denied.

The new FTI aggregate just over $5 million in sales with a small operating cash flow and profitability. FTI has a substantial credit line and is currently expecting a major government order as a subcontractor to a prime that is selling equipment to the United States Air Force.

While the acquisition will provide a strong base to expand the die cast business, the acquisition is not essential to the successful completion of this proposal nor to the long term success of the venture. DCI has already obtained commitments for private equity capital that will allow it to function under this proposal, while not being enough to purchase the above two companies.

As highlighted in the solicitation's scope of work, the purpose of the funds is to act as seed money for an entrepreneurial venture to start a conversion process in the CIS that can be used as a model for other conversions. The plan advanced by DCI accomplishes that exact purpose. With the targeted $2 to 5 million of funds, DCI will build a substantial new company that will increase employment within the United States by an estimated 150 new direct jobs plus a substantial number of jobs at subcontractors (for an estimated total of over 500 new jobs including the multiplier effect). Within Russia, the number of new jobs can be estimated by adding 300 new employees at the two die cast joint ventures, adding employees that will contribute to the value-added functions at its Ukraine partners facilities (unknown at this time), and then using a multiplier effect of at least four for the CIS (resulting in at least 1200 new jobs in the CIS).

The granting of funds to DCI for defense conversion will have numerous beneficial effects. Mr. Frederickson is available and ready to provide whatever reasonable information is requested and can quickly negotiate the terms and conditions of any contract awarded to DCI.

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

# PROPOSAL FOR DEVELOPING JOINT VENTURE PARTNERSHIPS FOR THE PURPOSE OF DEFENSE CONVERSION AND ASSISTANCE IN ESTABLISHING STRONG, LONG TERM COMMERCIAL BUSINESSES IN UKRAINE

## PART III: MANAGEMENT AND TECHNICAL PROPOSAL

## DEFENSE CONVERSION IN UKRAINE

---

**DEFENSE NUCLEAR AGENCY**
**DNA001-94-R-0084**

SUBMITTED BY:

DIE CASTERS INTERNATIONAL, Inc.
One Spruce Terrace
Wayne, New Jersey 07470

CONTACT: Mr. Alan C. Frederickson
Tel: 201-696-9100
Fax: 201-696-9100

DATE: 15 September 1994

03117

| Name (Print) | Signature | Division | Phone | Date |
|---|---|---|---|---|
| [illegible] | | | [illegible] | |
| [illegible] | K | GC | | 1/14/99 |
| | | | | |

INVENTORY & CHARGE-OU

Contract No. 95-C-0169

Contractor Die Casting, Ulster, Inc.

File No. 4 of [redacted] 5

| Control No. or Date | Class. | Item | Page Count/ Leaf Count | Copy |
|---|---|---|---|---|
| | | | 4 | |

DNA FORM 444
30 Jan 74

(OVER FOR CHARGE-OUT CARD)

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 (Telephone & Fax)

**SEPTEMBER 15, 1994**

**REQUEST FOR PROPOSAL**
**DNA001-94-R-0084**

**PART III: MANAGEMENT AND TECHNICAL PROPOSAL**
**DEFENSE CONVERSION IN UKRAINE**

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| | **OVERVIEW** | |
| | **SECTION ONE: INTRODUCTION.** | |
| 1. | Executive Summary. | 1 |
| 2.. | Purpose and Layout of the Plan. | 3 |
| 3. | Business Description. | 4 |
| 4. | Products and Services -- Description and Critical Elements. | 5 |
| 5. | Competitive Picture. | 6 |
| | **SECTION TWO: THE STRUCTURE OF THE VENTURE.** | |
| 6. | Korolev, Mayal, and Fiolent. | 8 |
| 7. | Installation of TYMAC Systems in the CIS and the DCI Organization. | 8 |
| 8. | Needs of the Venture. | 9 |
| 9. | The Market. | 10 |
| 10. | Competition: | 19 |
| 11. | Sales Expectations. | 19 |
| 12. | Technical Development Requirements. | 20 |
| 13. | People and Organization. | 21 |
| | **SECTION THREE: STRATEGIC AND OPERATING OVERVIEWS.** | |
| A. | **Purpose** | 25 |
| B. | **Project Overview** | 25 |
| C. | **Objectives.** | 27 |
| D. | **Strategic Plan.** | 28 |
| E. | **Operating Plan.** | 29 |
| | **SECTION FOUR: STRATEGIC FINANCIAL PLAN.** | |
| A. | Two Proformas. | 34 |
| B. | Basic Assumptions. | 34 |
| C. | Calculations. | 35 |
| | Postscript | 35 |
| | **SECTION FIVE: VENDOR TECHNICAL BROCHURES/DATA/REPORTS.** | |

03120

# OVERVIEW

Personnel associated with Die Casters International, Inc. ("DCI") have been working for nearly three years to establish a viable, long-term defense conversion strategy for the republics of the former Soviet Union, now commonly referred to as the Commonwealth of Independent States ("CIS"). The strategy builds on the manufacturing and engineering strengths of the CIS and its people and on the advanced machine control technology and marketing expertise of DCI's team to establish die cast joint ventures that will produce products for export from the CIS into a $20 billion worldwide marketplace. During the past six months, DCI has developed two additional areas of commercialization that increase the opportunities for successful conversion and significantly increase the profit and hard currency potentials for DCI's joint ventures. These additions allow DCI to focus on three markets, all associated with die casting:

- **Die cast products.** $20 billion worldwide market. Components that are cast and then machined or finished to be assembled into end assemblies
- **Small Electric Appliances and Hand Tools**: These products are unique to DCI's strategy as their major material cost is in die cast components. By having the quality and cost advantages estalished by the use of TYMAC systems, DCI can become verycompetitive in these markets.
- **Die cast Machine Remanufacturing**: Because TYMAC's control system includes the most important portion of a die cast machine, TYMAC has developed a history of selling complete, used die cast machines that have TYMAC systems retrofitted on the "front-end" of the machine. The resulting machine generally performs better than a new machine, but at significantly lower capitall cost.

Normally, DCI does not approach defense conversion projects incorporating all three markets. However, One of the Ukraine companies has the cpability, management, and engineering to be a very competitive remanufacturer, and all of the companies DCI is promoting in this proposal are already in the appliance/commercial markets. While the proposal covers three companies, they are severable and the cost structure has been arranged to allow a "pick and choose" approach to the capital appropriation decision process. In fact, under a restricted budget, all three companies could be covered at a lower production rate, post-award.

DCI's strategy meets all the requirements of this solicitation and will generate a long term business built on the unique abilities and large potential that is represented by developing three joint ventures with:

- Kyiv Korolev Radioplylad Plant ("Korolev," approximately 4,800 employees) 03121
- Kyiv Mayak Plant ("Mayak," approximately 7,000 employees).
- Simferopol Fiolent Joint-Stock Company ("Fiolent,"approximately 5,100 employees).

During site visits by DCI's management to Kyiv last month and following communications with Fiolent, DCI has executed three protocols of intent to establish a joint venture die cast operation which each of the companies. Part of the Korolev protocol includes DCI and Korolev forming a joint venture for the purpose of establishing a die cast machine remanufacturing operation in the CIS. Each of the Ukraine enterprises will commit substantial assets to the joint ventures and DCI will reinvest all its joint venture profits to grow the joint ventures. In addition, DCI will commit itself to the conversion process through the establishment of a wholly-owned Ukraine subsidiary staffed by Ukrainians who will service TYMAC products and the joint ventures through DCI international marketing and sales distribution operations.

This proposal focuses on assisting Korolev, Fiolent, and Mayak to convert from a military dominance to commercial enterprises that will be highly competitive in the international markets. The companies' manufacturing and engineering strengths will be enhanced and combined with DCI's capabilities to market and sell products into the international, hard currency markets. DCI's proposed strategy and operating plan identifies several specific projects and/or steps which DCI will accomplish if the funds awarded cover those items. DCI has brought together a highly qualified team of professionals with the expertise to contribute significantly to the goals DCI has expressed in this proposal. Importantly, DCI's strategy is the result of an extensive, nearly three-year effort to help the CIS republics convert their defense assets to commercial purposes.

The proposal maximizes the benefits derived by the three enterprises, especially as measured by the evaluation criteria addressed in the solicitation offer. Implementing DCI's strategy will have a positive and immediate impact upon the manufacturing and marketing capabilities of those companies. The proposal also includes training (on-the-job-training, on-site seminars, and Ukraine-based classroom training that will lead to a potential joint-ventured long-distance, E-Mail training and instructor supportbusiness in the Ukraine). Such training will benefit the entire organization at each enterprise. DCI's efforts will promote the long term economic development of each company as a competitive international manufacturer and will help improve the related manufacturing infrastructure within Ukraine.

Importantly, DCI has been taking steps to prepare for an award, including obtaining a letter of intent to purchase a company that will increase DCI's capabilities. Besides operating from a stronger base with a substantial working capital line of credit, the acquisition provides a consistant and relatively secure investment for DCI shareholders. It creates a basic foundation upon which DCI can expand. Not to be overlooked, DCI has proposed a cost sharing mechanism that leverages the returns that will be generated from the grant funds, and DCI has included extra elements to contribute future profits towards helping expand the cultural and community environment in Kyiv. It is very important that American companies recognize the prominence that the Ukrainesian culture, people, and organizations place on making contributions to the general society. DCI plans to lead the way by implementing profit sharing programs at its wholly-owned subsidiary (to be formed in Kyiv) and at its die casting joint ventures. DCI will implement social programs similar to many other enterprices in the CIS, such as providing some support for collective farms and local school systems. In addition, DCI plans to establish Ukraine-United States cultural exchange programs, where DCI's management is beginning such activity by working with the Tolstoy Foundation to raise funds to begin a program of joint American/Russian concerts in the United States and in the CIS (a descriptionis in the Appendix). DNA funds from this solicitation will not be used for these cultural purposes. However, the DNA funds will provide the foundation ofr future profits that DCI plans to use to help build lasting, positive relationships between our two countries.

## SECTION ONE: INTRODUCTION

### *1. Executive Summary:*

Die Casters International, Inc. ("DCI") has brought together TYMAC Controls Corporation ("TYMAC", a New Jersey corporation that is a leader in the design and manufacture of electronic control systems for the die cast industry), three other well established companies, and outstanding executives in international marketing, sales, manufacturing, training, and finance. This team has been organized over the past three years to establish a strong base of manufacturing in the former Soviet Union (commonly referred to as the Commonwealth of Independent States, "CIS") that can be used to produce simple products for export into hard currency markets. The defense companies located in Ukraine offer a unique means for DCI to advance its strategy and to establish its first joint ventures with competent, strong partners in Kyiv and in the Crimea. The Ukraine team is lead by the Korolev Radioprylad Plant, which is committing significant resources and capital assets to a planned joint venture with DCI.

Die casting is similar to plastic injection molding, where new or recycled molten metal (generally aluminum) is injected into a precision mold (die) that is clamped shut under pressure (the primary function of the die cast machine). The die is cooled, solidifying the metal and producing a part or multiple parts. The die is opened and the part is removed, after which the process repeats itself many hundreds of times each day. The die casting process produces cost effective parts with close tolerances that generally require little extra machining to generate a finished part. The process is used to produce parts that can be found in almost all industries.

TYMAC sells state-of-the-art, real-time, closed-loop monitoring and process control systems for the die cast industry. TYMAC's systems have been placed on almost all types of die cast machines and offer the die caster much improved quality, significantly lower production costs, and increased throughput, resulting in a rapid payback and a high return on investment. The primary applications sold to date include die casting of aluminum, magnesium, and zinc. There is virtually no direct competition to the TYMAC system. TYMAC has the capability to expand its applications technology to almost any linear injection process, including plastics. They have an excellent reputation, one example of which is TYMAC's recent contract as the exclusive source of control systems for Weingarten, a major German die cast machine manufacturer, in conjunction with Alcoa's and Audi's new Aluminum Intensive Vehicle program.

DCI plans to assist the Ukraine defense conversion program generate internationally competitive, commercial production facilities and to establish a growing manufacturing base in the CIS that can support indigenous market demand as that demand materializes backed by a viable economy by implementing an operating plan with the following elements:

- **Die Cast Joint Ventures**: DCI will form joint venture with one to three Ukraine enterprises to upgrade their die casting capacity, largely through the installation of TYMAC systems and remanufactured die cast machines. The resulting productive capacity will allow the joint ventures to increase current die cast production by multiples of ten or even one hundred annually. The increased capacity can be used for export products and/or internal markets, but a majority will be for export sales as each company and the republic needs to generate hard currency flow which can only be done by exports.
- **International Marketing and Sales**: DCI will build its international marketing operations to sell die cast products that can be sourced from the joint ventures as well as to sell a multitude of other products which DCI will introduce to each facility and which can be produced by current manufacturing and design facilities. DCI will assist the enterprises to establish cost structures and pricing formulations that will allow them to manage profits. In addition, DCI will assist to develop the appropriate marketing and sales literature that will be used by DCI to sell/export Ukraine products into Europe and the rest of the free market countries as well as for the joint venture to sell indigenously. Through its close relationship with each joint venture, DCI will also assist them to develop its own or joint-DCI distribution and sales network within Ukraine. DCI will also establish distribution/sales capabilities throughout the CIS.
- **Production Control, Costing, and Management Training**: DCI will assist the enterprises to establish cost structures and pricing formulations that will allow them to manage profits. By working closely with its partners to upgrade the die cast joint venture and to implement production control and

03123

quality control procedures, DCI will help its partners become international manufacturing facilities. Training programs, in-plant seminars, and on-the-job-training will be used to aid management and the work force in the critical areas necessary to become certified as a high quality producer. A special, concentrated program to train a limited number of key executives (including retrainers) will be provided in the United States in the critical areas encompassing free market business management.

➢ **Strategic Planning, Budgeting, Technology Transfers, and Private Labeling**: Through its joint venture affiliations and through close executive management involvement with each enterprise as their distributor (and "partner"), DCI will provide the companies with basic consulting services and on-the-job-training to develop budgeting procedures and strategic planning processes. Once this has been established, the basics for ensuring that products produced will have consistent quality and consistent/predictable costs will be established. DCI will begin to promote the entire manufacturing capabilities of eah partner to bring in other American technologies and products that will increase each plant's product lines for indigenous markets. These product introductions could be in the form of technology transfers and/or in rights for the companies to produce under private labels. DCI will act as the finder and negotiator, and these services will be provided as part of DCI's cost sharing for this proposal and as part of DCI's long term relationship with each plant. One exampleof this activity isDCI's current activity to discuss technology transfers with United States small appliance firms to produce their products at Korolev for sales in the Ukraine, the CIS, and Europe. In addition, Korolev has provided DCI with a technology that it has developed that is not in use in America. DCI is approaching several American firms to determine if they might be interested in licensing such a technology from Korolev/DCI.

➢ **Growth of Die Cast Facilities - A Model for the Future**: Once each partner's current die cast facilities, or portion thereof, have been merged into the joint venture with DCI and once the TYMAC systems have been installed, DCI plans to use the joint venture facility as a model for other die cast facilities within Ukraine (and other CIS federations). Similar to a franchising growth strategy, the initial model will be used to develop and refine the proper operating procedures and cost/pricing structure which will be used for additional joint ventures. Each additional joint venture will increase the effective production capacity that can be sold through DCI's marketing network and will increase employment opportunities within the CIS. (One typical die cast facility can employ up to 150 people using three shifts). Where possible, the various Ukrainian die cast shops will utilize Korolev's vast and competent machining and plating facilities to add value to the export products and to increase volume and profits for the joint venture, which can be retained in the joint venture to promote future growth.

➢ **Equipment Purchases - Purchasing Agency**: Each enterprise has needs to upgrade its manufacturing equipment, including the purchase and installation of TYMAC systems and of remanufactured die cast machines ( a cost effective approach agreed upon with TYMAC). DCI plans to purchase these materials using funds awarded under this contract, where DCI will use its and FTI's expertise to competitively bid the purchases. In addition, DCI can act as the enterprise's exclusive purchasing agent (through FTI, see below) to buy goods and services originating in the United States.

➢ **End-Product Sales**: The three Ukraine companies add significant commercial value to DCI's strategic plans for conversion. All companies are involved in the commercial, end-product markets which use die cast components as a major part of their bill of materials. By expanding into these markets with the Ukraine partners, DCI will be able to genreate much higher sales and profits for the same captal investment. The return potentials for DNA's contribution will be greatly enhanced.

➢ **Remanufacturing of Die Cast Machines**: Korolev has the ability and talent to expand into the rebuilding of die cast machines. This can be extremely advantageous to DCI and DNA, as it could mean that Korolev could supply machines directly, obtaining used machines through DCI. In addition, Korolev and DCI (as its partner) could begin to rebuild obsolete Russian machines and either export or sell them back to current manufacturers or to other customers. Under a well thought -out plan that DCI will develop with Korolev, the joint venture has a tremendous opportunity to retrofit a very large population of CIS die cast manchines.

➢ **Long-Term, Significant Investment By All Parties**: DCI will reinvest all its joint venture profits until tax ramifications cause it to begin repatrioting some profits. The joint venture partners will contribute die casting operations and assets to the joint venture that are equivalent to $1 million to more than $3 million each. Following a recent acquisition by DCI, DCI plans to leverage the DNA award with outside financing equal to 50 to 100 percent of the award funds. All parties will be committed to the long-term.

DCI's team of experts will provide the specialized services needed to accomplish its operating plan with the Ukraine partners and to accomplish its long term strategy to expand the die cast operations throughout the CIS. Company affiliations that will contribute to all of DCI's activities under this proposal include:

➢ **Fairfield Technologies, Inc**. (FTI): To assist DCI with the purchasing and exportation of equipment covered under this proposal, DCI has teamed with FTI, an established small business concern that includes experts with well over thirty years of experience purchasing and exporting materials. DCI has reached a basic agreement to acquire FTI within the next three or four months. This acquisition will definately happen fi an award is made to DCI.

➢ **National Institute for World Trade (NIWT)**: To provide free enterprise and business management skills training for each Ukraine enterprise, DCI has teamed with NIWT, a non-profit organization that has experience providing training programs for international, and specifically, Russian, personnel.

➢ **IMAX**: To help the enterprises improve their production operations and prepare for international quality control certifications, such as for European ISO-9000 certification, DCI has teamed with IMAX, a New Jersey consulting firm that is highly experienced in areas of quality and productivity.

➢ **Others Experienced in Veterans Affairs**: As part of a longer term growth of the die casting base in Ukraine and to build on the intent of the Nunn-Lugar funds to train and employ demobilized veterans, DCI has established relationships with other companies and non-profit organizations involved with veteran placement and training and with American and CIS veteran associations.

DCI's executive management team includes Mr. Alan C. Frederickson, founder, CEO and sole owner of DCI, who is the driving force behind the defense conversion strategy. Mr. Frederickson (51 and a Vietnam-era veteran) has over twenty years of international marketing, sales and executive management experience including three years as the executive manager of five European sales and service subsidiaries for an American export distributor and five years with The Bendix Corporation. He has over ten years of entrepreneurial experience consulting with new ventures as well as working to start his own operations such as DCI. He has two years experience in investment banking and has recently completed a successful turnaround consulting assignment with a $55 million technology company. Mr. Frederickson has worked with TYMAC and its founder for the past four years. Through this relationship, Mr. Frederickson developed the conversion strategy and the exclusive rights to promote and utilize TYMAC systems in the CIS.

Once the proposal funds have been awarded, Mr. Frederickson plans to bring in other top executives including:

➢ **Mr. Vladimir Hintze** (62, Regional Vice President) who has over twenty years of experience trading with the former Soviet Union and is fluent in Russian, German and Chinese;

➢ **Mr. Bernard Skown** (53, Executive Vice President) who has vast experience in the manufacturing, project management, and business development areas; and

➢ **Mr. Dave Kuhlman** (51, Vice President - Operations) who was raised in the die cast industry and has nearly 20 years of experience as general manager and CEO for a large, mid-west die cast company. Mr. Kuhlman will become president of DCI once the FTI acquisition is consummated and the DCI operations are restructured to be a wholly-owned subsidiary of FTI.

The reputation and capabilities of this executive team are best exemplified by the quality of the director-nominees who have expressed an interest to join DCI's board of directors once the government funding is awarded. These director-nominees include:

➢ **Mr. Richard Hickok**, the previous chairman of Main Hurdman (now Peat Marwick, KPMG) who is considered one of the nation's leading cost accounting experts;

➢ **Mr. Jules Zimmerman**, the former chief financial officer of Avon Products;