IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIE CASTERS INTERNATIONAL, INC., Plaintiff, | ) | No. 04-1113C |
| v. | ) | (Judge Susan Braden) |
| UNITED STATES, Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF MS. JAROSLAWA JOHNSON AND ALL EVIDENCE OF ANY ALLEGED LEGAL IMPEDIMENTS TO DCI'S CONSUMMATION OF A JOINT VENTURE IN UKRAINE

Defendant respectfully submits its opposition to the motion in limine of Die Casters, International ("DCI") to (1) "preclude the testimony of Ms. Jaroslawa Johnson," and (2) to preclude the admission of "all evidence of any alleged legal impediments to DCI's consummation of a joint venture in Ukraine." See Plaintiff's Motion In Limine to Preclude the Testimony of Ms. Jaroslawa Johnson and All Evidence of Any Alleged Legal Impediments To DCI's Consummation of a Joint Venture in Ukraine. DCI's position is unsupported and unsupportable. DCI's motion with respect to Ms. Johnson is solely premised upon its contention that the Government's failure to timely identify Ms. Johnson as an "expert" should preclude her from testifying. Contrary to DCI's assertions, Ms. Johnson is expected to testify as a fact witness concerning (1) DCI's attempt to obtain funds from the Western NIS Investment Fund, of which she was, and is, a director; (2) Ukrainian law pertaining to the privatization of former military facilities owned by the Ukrainian government; (3) the Ukranian law pertaining to the formation of joint ventures; and (4) the privatization status of Burevestnik based upon public records.[1]

[1] Contrary to DCI's assertion, counsel for DCI was informed shortly after Government's counsel's return from Ukraine in the first week of August 2005, that the

With respect to DCI's request that the Court preclude the Government from offering any evidence of "alleged legal impediments to DCI's consummation of a joint venture in Ukraine," DCI has wholly failed to offer any legal basis upon which this Court could exclude evidence pertaining to the viability od DCI's business plan, the gravamen of DCI's lost profits claim.

DISCUSSION

Rule 210 of the Federal Rules of Evidence provides that the Court may, and sometimes must, take judicial notice of adjudicative facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Rule 201(b). A court may take judicial notice, whether requested or not. A court, however, must take judicial notice if requested by a party and supplied with the necessary information.

The Court can take judicial notice of publicly-available legal documents. Vons Companies, Inc. v. United States, 51 Fed. Cl. 1 (2001). Judicial notice of matters of foreign law is governed by Rule 44.1 of the Federal Rules of Civil Procedure. Rule 44.1 provides that the Court in determining foreign law may consider any relevant material or source, including testimony, whether or not admissible under the Federal Rules of Evidence.

The usual method of establishing adjudicative facts is through the introduction of

---

Government had retained an attorney in Kiev and that she was expected to testify regarding various legal issues, and the Government was also seeking to retain an individual in Kiev whose expertise was in the Ukrainian economy. At that time, counsel for DCI did not indicate that he was going to object to testimony regarding either the laws of Ukraine or the economic climate there. On the Government witness list, Ms. Johnson was listed in the section containing the names of the Government's experts. Her name could just as appropriately have been included in that section containing the names of fact witnesses.

evidence, ordinarily consisting of the testimony of witnesses. As Professor Davis says: "The reason we use trial-type procedure, I think, is that we make the practical judgment, on the basis of experience, that taking evidence, subject to cross-examination and rebuttal, is the best way to resolve controversies involving disputes of adjudicative facts, that is, facts pertaining to the parties. The reason we require a determination on the record is that we think fair procedure in resolving disputes of adjudicative facts calls for giving each party a chance to meet in the appropriate fashion the facts that come to the tribunal's attention, and the appropriate fashion for meeting disputed adjudicative facts includes rebuttal evidence, cross-examination, usually confrontation, and argument (either written or oral or both). The key to a fair trial is opportunity to use the appropriate weapons (rebuttal evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention." A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69, 93 (1964).

## ARGUMENT

### I. Ms. Johnson Is Expected To Testify As A Fact Witness

Ms. Johnson is expected to testify that in 1994 she was appointed by President William Clinton to the Board of Directors of the Western NIS Enterprise Fund ["The Fund"], a position in which she still serves. The Fund's mission was to invest $150 million provided by the United States Government into small and medium size businesses in Ukraine, Moldova, and Belarus. Ms. Johnson served on the Fund's Investment Committee for over 10 years and in that capacity observed and participated in Ukraine's investment environment.

From 1991-1997, Ukraine's post Soviet economy was slow to attract investment as sources of venture capital were deterred by Ukraine’s lack of economic and legal reforms, as well

as endemic corruption during this period. The Fund and multilateral financial institutions, such as the European Bank for Reconstruction Development ("EBRD") and the Overseas Private Investment Corporation ("OPIC"), were the primary sources for investment capital. Investment capital from private sources was generally unavailable.

In August 1996, and again in September 1997, Die Casters International, Inc. ("DCI") approached The Fund seeking investment capital for its proposed joint venture first with Meridian, Die Casters Meridian ("DCM"), and later with Burevestnik, Die Casters Burevestnik ("DCB"). See appendix to this brief. However, each time DCI's business plan was rejected by the Fund. In addition, DCI sought funding from EBRD and OPIC. Id.

During that time, The Fund's focus was on small and medium sized private and privatizing firms and would invest only in firms it expected to be economically viable. The Fund was also interested in working with corporate and financial partners from the U.S., Europe, and elsewhere. Although Ms. Johnson was not directly involved in the decision to reject DCI's applications, as a member of The Fund's Investment Committee, she was aware that The Fund was very selective in choosing the projects it would finance and it would not invest in firms unless they were expected to be economically viable. In fact, projects where The Fund felt there was little promise of success would not make it past the initial screening, as was the case with DCI on both occasions. See id.

Based upon her review of various documents related to DCI's proposed joint venture, Ms. Johnson is expected to testify why DCI would not have been attractive as an investment for The Fund. In addition to the challenging economic climate in Ukraine at that time, there is no evidence that DCI had taken the necessary steps toward the privatization of the state owned

enterprise Burevestnik. DCI would not have been able to form a joint venture with Burevestnik until it was privatized and The Fund would have had no interest in a project without an established joint venture and certainly one where one of the joint venture partners had yet to be privatized.

Ms. Johnson is also expected to testify that from 1991-1997, Ukraine's post Soviet economy was slow to attract investment as sources of venture capital were deterred by Ukraine's lack of economic and legal reforms, as well as endemic corruption during this period. The Fund and multilateral financial institutions, such as the EBRD and OPIC, were the primary sources for investment capital. Investment capital from private sources was generally unavailable.

The Russian stock market crises in August 1998 further discouraged venture capital investment in the entire region for the next three years due to continuing concerns about economic stability and the inherent risks of investing into such an environment. Evidence of a general economic recovery in the region began to appear in 2001. However, Ukraine at the time was embroiled in a political crises that continued to dampen investor sentiment about the Ukrainian investment climate (Ukraine's President was accused of complicity in the murder of a journalist and in selling arms-detection equipment to Iraq). Ukraine's political crisis continued through the presidential election in 2004 and the well-publicized "Orange Revolution". Despite this political turmoil, limited venture capital started to return to Ukraine in 2002 when Ukraine's macroeconomic indicators reflected a growing economy.

Based upon the above, it is clear that Mr. Johnson is expected to testify about matters of which she has personal knowledge and upon matters that are generally known, and a matter of public records, concerning the history and economic climate of Ukraine. As such, there is no

basis upon which to exclude her testimony.

## II. The Court May Take Judicial Notice to Ukrainian Law

### A. Ukrainian Law Concerning The Privatization Of State Owned Enterprises

Ms. Johnson is expected to testify that, based upon her review of public records, from March 1995 to November 1996, Burevestnik was classified as a strategic enterprise and therefore could not be privatized under the law in Ukraine. In January 1998, Burevestnik was included on a list of companies subject to privatization, but no apparent steps were taken toward privatization. In July 1999 Burevestnik was removed from the list and again classified as a strategic enterprise and exempt from privatization. Copies of the public records and their English translations will be provided to the Court.

Ms. Johnson is also expected to testify that under Ukrainian law, state-owned enterprises, such as Burevestnik, have no ownership right to the state assets under their control. They merely have the right to use state assets for purposes of the state enterprise. As a matter of law, only the State Property Fund ("SPF") is authorized to negotiate joint ventures and actually to participate in them on behalf of the government of Ukraine. A state enterprise, as a legal entity, has no legal role in the establishment of a joint venture and, in fact, is prohibited from such activity unilaterally. The SPF, in the process of setting up a joint venture, takes the necessary state assets from the enterprise and contributes them to the joint venture.

### B. Ukrainian Law Concerning Joint Ventures

Ms. Johnson is expected to testify that Ukrainian law pertaining to joint ventures provides for a proportionality of capital shares to capital contributions, and the number of votes held by a shareholder must be proportional to that shareholder's capital share. In other words, under

Ukrainian law one share carries one vote and the number of shares a shareholder receives in a new venture must be proportional to the amount of capital that shareholder contributes to the joint venture. In addition, Ukrainian law provides that most decisions can be made by a simple majority of the shareholders. Copies of the laws and their English translations will be provided to the Court.

The Court can, and should, take judicial notice of the Ukrainian laws regarding the privatization of government owned military facilities and the law in Ukrainian regarding the relationship between the capital contribution of each member of a joint venture and the relative ownership right of each partner in the joint venture. These are issues of which DCI was well aware when it was trying, albeit unsuccessfully, to establish a joint venture with Burevestnik and Technomet, the linchpin of its performance under the contract that is the subject matter of this dispute.

Moreover, there is no legal or factual basis upon which this Court could, or should, preclude the Government from presenting evidence that DCI's efforts to consummate a joint venture agreement with Burevestnik and TechnoMet, that began in 1997 and ended in June 2003 when the agency made the decision not to add funds to DCI's contract, were unavailing.

For the forgoing reasons, DCI's motion in limine to preclude the testimony of Jaroslawa Johnson and all evidence of any alleged legal impediments to DCI's consummation of a joint venture in Ukraine should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick.
MARK A. MELNICK
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

November 2, 2005 Attorneys for Defendant