# APPENDIX

## EXHIBITS


Letter from DCI to Western NIS Enterprise Fund dated August 24, 1996 . . . . . . . . . . . . . . . . . . A

Letter from DCI to Western NIS Enterprise Fund dated September 9, 1996 . . . . . . . . . . . . . . . B

Letter from DCI to Western NIS Enterprise Fund dated September 12, 1996 . . . . . . . . . . . . . . C

Letter from DCI to Western NIS Enterprise Fund dated October 1, 1996 . . . . . . . . . . . . . . . . . . D

Letter from DCI to Western NIS Enterprise Fund dated October 274, 1996 . . . . . . . . . . . . . . . . E

Letter from Western NIS Enterprise Fund to DCI dated February 28, 1997 . . . . . . . . . . . . . . . . F

Letter from DCI to Western NIS Enterprise Fund dated September 15, 1997 . . . . . . . . . . . . . . G

Letter from DCI to Western NIS Enterprise Fund dated October 23, 1997 . . . . . . . . . . . . . . . . . H

Letter from DCI to Western NIS Enterprise Fund dated October 27, 1997 . . . . . . . . . . . . . . . . . . I

Western NIS Enterprise Fund, background information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J

Letter from Defense Enterprise Fund to DCI dated December 11, 1996 . . . . . . . . . . . . . . . . . . . K

Letter from Defense Enterprise Fund to DCI dated May 12, 1997 . . . . . . . . . . . . . . . . . . . . . . . L

Letter from Defense Enterprise Fund to DCI dated January 29, 1998 . . . . . . . . . . . . . . . . . . . . . M

Letter from Defense Enterprise Fund to DCI dated April 13, 1998 . . . . . . . . . . . . . . . . . . . . . . . N

Letter from OPIC to DCI dated January 14, 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . O

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 Fax: (201) 696 - 9194

24 August 1996

Mr. Scott A. Carlson
President
Western NIS Enterprise Fund
15 West 39th Street, 11th Floor
New York City, New York 10018

Dear Mr. Carlson:

I just met with Mr. John Tomlinson and Ambassador John Upston concerning their meeting with you this week. They both enjoyed the discussions and indicated to me that your enterprise fund would be an excellent fit with the goals and objectives of Die Casters Meridian (DCM), a joint venture founded by Die Casters International (DCI) and by the Ukrainian joint stock company, Meridian. I understand that you spend a major portion of your time in Kyiv, and John Tomlinson and I look forward to meeting you there on our next trip to Ukraine.

Thank you for suggesting that we meet with Roberta Feldman at the International Finance Corporation (IFC) and with Messrs. Jaroslav Kinach and Mark Tomlinson at the European Bank for Reconstruction and Development (EBRD). We have previously met with Mr. Kinach in Kyiv, so he is aware of our defense conversion project. John Tomlinson and I are planning to schedule meetings with EBRD and with IFC once everyone returns in September and will keep you advised.

DCI is requesting $11,500,000 for it's joint venture with DCI/Meridian, a retail products and die casting company founded in conjunction with the Nunn-Lugar program with a contract administered by the Defense Special Weapons Agency. DCM has been founded on the concept that the low wage rates in the Ukraine combined with a well educated work force and state of the art equipment can produce a world class, low cost manufacturing facility. We believe that the labor savings alone on manufacturing payroll would be in the range of 22% of sales compared to a North American die cast facility. Comparisons to a European facility would be even more beneficial toward the project, because of the financially burdensome European health care and pension schemes.

My understanding is that the next step is for us to get the DCI business plan to your Mr. Harry Schroeder when he returns to your New York office and that you will assign an investment officer from your staff in Ukraine. We will advise you of our travel plans and attempt to schedule a meeting that is most convenient for you.

We look forward to meeting you again and thank you for the courtesies that you extended to Ambassador Upston and Mr. Tomlinson.

Very truly yours,

Alan C. Frederickson
Chairman & Chief Executive Officer

cc: John Tomlinson (DCI)
Ambassador Upston (DCI)

NAV 017320

A

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 Fax: (201) 696 - 9194

9 September 1996

Mr. Harold J. Schroeder
Chief Investment Officer
Western NIS Enterprise Fund
15 West 39th Street, 11th Floor
New York City, New York 10018

Dear Mr. Carlson:

Ambassador John Upston has been in touch with your office to arrange a meeting between us to discuss Die Casters International's joint venture project in Kyiv, Ukraine. It is my understanding that you and Mr. Scott Carlson will be traveling to Kyiv this week. I will be traveling to Ukraine and Europe within the next two weeks, and will contact your office there to schedule a meeting there. If I am unable to reach you myself, I may ask my partner there, Mr. Alexander V. Pavlenko, to contact you.

In preparation for our meeting, I am forwarding you a copy of our business plan for Die Casters Meridian, the joint venture between Die Casters International and Joint Stock Company "Meridian."

I look forward to meeting with you.

Very truly yours,

Alan C. Frederickson
President

atth: Die Casters Meridian, Confidential Business Plan -- August 1996

NAV 017319

13

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 Fax: (201) 696 - 9194

12 September 1996

Mr. Harold J. Schroeder
Chief Investment Officer
Western NIS Enterprise Fund
4 Muzeyny Provulok
Third Floor
252-001 Kyiv
Ukraine

Dear Mr. Schroeder:

I apologize for the delay in getting the business plan to you.

I have asked my partners, Messrs. Pavlenko and Hintze to deliver the attached business plans to you in Kyiv. I will be contacting your offices to determine when both you and Scott Carlson will be available in Kyiv so that I may plan my travel schedule to meet you there, if possible.

I look forward to meeting you and Scott.

Very truly yours,

Alan C. Frederickson

atth: Two copies, Die Casters Meridian Confidential Business Plan, August 1996

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(201) 696 - 9100 Fax: (201) 696 - 9194

1 October 1996

Mr. Harold J. Schroeder
Chief Investment Officer
Western NIS Enterprise Fund
15 West 39th Street, 11th Floor
New York City, New York 10018

Via Fax: (212) 556-9321

Dear Mr. Schroeder:

Thank you for taking the time and effort to analyze our project and for reviewing your concerns with me today. I was sorry that we could not have met to discuss those concerns, as I feel that we do have most of the issues under control. What you highlighted are real questions about the financing, and I appreciate your candor and honesty.

You discussed several critical reasons for not pursuing our project: From availability of commercial debt to an overburdened debt structure to our optimistic EBITDA multiple evaluating the market cap of the joint venture. As I mentioned, we were not expecting to place any commercial debt in Ukraine. In fact we have been working with The European Bank (EBRD) which has expressed interest in placing approximately $6 million of the debt, and I have been talking with several German banking sources. The debt structure is flexible, where we would be willing to discuss greater equity (less debt) as well as security and equity kickers on the debt. Concerning the multiple we used (seven times), that is always a subjective valuation. However, there are numerous ways that the equity investment can be structured to meet target hurdles. We would be happy to discuss such alternatives with you.

Your marketing and sales issue is also a valid area of concern. DCI is working with Black & Decker and is also pursuing several automotive customers on a supplier development program. As mentioned in the plan, the timing of these activities is difficult as our plant will not be producing until next July. However, we are beginning the marketing efforts that will address your concerns. In addition, our project will have a very positive secondary benefit in Moldova, where we will be sourcing die cast machines for the joint venture and for future sales in Europe.

I apologize for the misunderstanding concerning one issue you raised. Apparently, you determined that Die Casters was not a real investor in the project as we were going to raise the financing and recoup our investment. We do not make money on the financing. The way DCI makes money to generate returns for DCI and its investors is to sell the products produced by the joint venture. Therefore, we have to make the factory productive with products that can be sold in the export markets, and we have to sell. Our motivation is exactly what is critical to the success of the joint venture. Believe me when I say that DCI is in this business to create profitable and long term businesses that will produce returns for the joint venture's and for DCI's investors. We are long term investors in Ukraine.

I was sorry not to have been able to meet with Scott Carlson in Kyiv. However, I understand that you and he are very busy, and we appreciate the time you and Scott have given to our project. I will keep you advised of our situation if important factors change which might alter your evaluation of our project. In the meantime, I wish you and WesNIS the very best.

Very truly yours,

Alan C. Frederickson

cc: Scott Carlson (Via Fax: 380-44-291-0289)
Ambassador John Upston
John Tomlinson

NAV 017316

D

# Die Casters International, Inc.

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(973) 696 - 9100 Fax: (973) 696 - 9194

(202) 955-4506

bcc: To: Kempton Jenkins

FYI. Thanks for the lead. I wanted to mention how die casting is hotter than ice cream, but they seem to be more interested in soft deals where they can skim the cream off the top. Ala

27 October 1996

Mr. Harold J. Schroeder
Chief Investment Officer
Western NIS Enterprise Fund
15 West 39th Street, 11th Floor
New York City, New York 10018

Via Fax: (212) 556-9321 (1 page)

Dear Mr. Schroeder:

Thank you for your quick review of our Ukraine business plan. I was surprised that you did not want to conduct at least a site inspection of our joint venture, as the operations are real and profitable -- not something you see often in Ukraine. Following the discussions that Mr. Jenkins had with Scott and with Scott being in Kyiv, we thought this would have been a simple action.

However, your success is based on quickly filtering out the projects that are not real and/or that do not meet your criteria, so that you can concentrate on the projects that will produce your desired returns. With the abundance of high return projects in Ukraine that you must be considering, I understand why you would not consider ours. Thank you for returning our plan.

We wish you success in your future investments that will generate real returns for the investors in your fund.

Sincerely,

Alan C. Frederickson

Scott: Sorry we could not meet. From what I have heard about you, we have many similar goals. It would have been profitable, interesting & fun.
Best of luck, Ala

cc: Scott A. Carlson (via fax, 380-44-247-5589)
Kempton Jenkins

NAV 017315

E

# *Western NIS Enterprise Fund*

4 Muzeyny Provulok
3rd floor
252001 Kyiv, Ukraine
Tel: (380)(44) 247-5580
Fax: (380)(44) 247-5589

169 Stefan cel Mare
Business Centre "TIS", Office 2-3
272004 Chisinau, Moldova
Tel: (7)(0422) 625-220
Fax: (7)(0422) 625-853

15 W. 39th Street
11th Floor
New York, NY 10018
Tel.: (212) 556-9320
Fax: (212) 556-9321

February 28, 1997

Recd 12 Mar 97
priority mail
mailed 10 Mar 97

Mr. Alan Frederickson
Co-Chairman
Die Casters Meridian
One Spruce Terrace
Wayne, New Jersey
USA 07470

Dear Mr. Frederickson:

Thank you very much for the business plan, which you submitted to Western NIS Enterprise Fund. The professionals of the Fund thoroughly reviewed the possibility of investing into this project.

I am very sorry to inform you that unfortunately it does not correspond to the present investment policy of the Fund. I am confident, that other Western or Ukrainian investors will be interested in your project.

I wish you every success in your business endeavors.

Sincerely,

E. M. Loza

Eugene Loza
Investment Officer

Returned the DCM business plan.

NAV 017314

F

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(973) 696 - 9100 Fax: (973) 696 - 9194

15 September 1997

Mr. Scott A. Carlson
President
Western NIS Enterprise Fund
15 West 39th Street, 11th Floor
New York City, New York 10018

Dear Mr. Carlson:

As you may recall, Die Casters International has been working on a defense conversion project since the end of 1995. Our project has undergone significant changes since your office reviewed our original business plan last year. That plan was for a joint venture with Meridian and involved a startup investment. Since then, we have changed our partner and are now working with a plant that has growing, profitable sales, sixty percent of which is into hard currency markets.

I have attached the Executive Summary of the new joint venture, DCB, for your information.

If you have any interest, please feel free to contact me at (973) 872-4704.

Very truly yours,

Alan C. Frederickson

atch: September 1997 DCB Executive Summary



G

**Die Casters International, Inc.**

*Quality and Service Worldwide*

One Spruce Terrace, Wayne, New Jersey, USA 07470
(973) 696 - 9100 Fax: (973) 696 - 9194

23 October 1997

Mr. Scott A. Carlson
President
Western NIS Enterprise Fund
15 West 39th Street, 11th Floor
New York City, New York 10018

Dear Mr. Carlson:

Mr. Kempton Jenkins informed us that you and he had a very good conversation about our project in Kyiv, Ukraine at lunch yesterday. Kempton knows DCI's project and plans very well, having been at several of my presentations at OPIC and other investment resources. While I had sent you an Executive Summary last month, I understand that he also provided you with a copy. Kempton indicated that it would be a good idea to send you the enclosed complete plan for your review.

Since we had talked last, over one year ago, we have made many improvements and have accomplished significant goals within our strategic plans. Ambassador John Upston, whom you met last August (1996), or I will be contacting your office to setup a meeting with you at your earliest convenience. Interestingly, all of my Ukraine people (and Moldovan machine manufacturer) will be here at the end of next week as I am taking them to the North American Die Casting Trade Show the first week in November. If you are interested in our project, maybe we can arrange a time for you to meet the key players.

John and I look forward to working with you.

Very truly yours,

Alan C. Frederickson

cc: Ambassador John Upston (ret)

NAV 017311

H

# *WESTERN NIS ENTERPRISE FUND*

15 West 39th Street
11th Floor
New York, New York 10018
(T) 212 556 9320
(F) 212 556 9321

169 Stefan cel Mare
Business Center 'TIS', Office 2-3
272004 Chisinau, Moldova
(T) 37 32 625 - 220
(F) 37 32 625 - 853

4 Prospekt F. Skoriny
Suite 116
Minsk 220050, Belarus
(T) (375) (172) 22-4770
(F) (375) (172) 22-4772

4 Muzeyny Provulok
3rd Floor
Kyiv, Ukraine 252001
(T) 380 44 247 5580
(F) 380 44 247 5589

Mr. Alan C. Frederickson
Die Casters International
One Spruce Street
Wayne, New Jersey 07470
Telephone: 973 696 9100
Facsimile 973 696 9194

VIA FACSIMILE AND POST

October 27, 1997

Dear Mr. Frederickson,

Scott Carlson asked that I review the business plan submitted on October 23, 1997 by Die Casters Burvestnik. I received it Friday morning and reviewed it, in detail, over the past week-end. I had received and reviewed an Executive Summary of the Project in September. The Fund had rejected a predecessor financing request for the project.

After review, the Fund is not interested in pursuing this financing at this time. I will return, under separate cover, the placement memorandum for Die Casters Burvestnik.

I wish you success in arranging financing for your project.

Sincerely,

Harold J. Schroeder
Chief Investment Officer

cc: Scott A. Carlson - Kyiv, Ukraine

NAV 017313

# *Western NIS Enterprise Fund*

*Belarus Moldova Ukraine*

585 THIRD AVENUE
SUITE 1000
NEW YORK, NEW YORK 10022-4802
TELEPHONE (212) 906-1215
FACSIMILE (212) 751-4864

## Western NIS Enterprise Fund

The United States, through the U.S. Agency for International Development, has created an enterprise fund to promote private sector development in Belarus, Moldova and Ukraine. The Western New Independent States (NIS) Enterprise Fund will be capitalized with $150 million in foreign assistance appropriations over the next 3-4 years. The Fund, which is managed by a private Board of Directors, has authority to make equity investments and loans and offer technical assistance to promote new private companies and entrepreneurs in the Western NIS, with special emphasis on the promotion of small and medium-sized enterprises. The Fund will be encouraged to use its U.S. Government funding to attract other resources for private sector development in the three target states.

The Western NIS Enterprise Fund is similar in purpose and authorities to the existing Enterprise Funds in Russia, Poland, Hungary, the Czech and Slovak Republics, and Bulgaria. The Enterprise Fund concept was created in the "Support for Eastern European Democracy Act" of 1989 and was extended to Russia and the other New Independent States in the 1992 Freedom for Russia and Emerging Eurasian Democracies and Open Markets (FREEDOM) Support Act.

The Administration had expressed its intention to establish the Western NIS Enterprise Fund during President Clinton's visit to Belarus and Ukraine in January 1994. The Enterprise Fund complements other U.S. assistance programs in the region, including those in the FY1994 $2.5 billion bilateral support package for the new independent states of the former Soviet Union.

The President announced that Glenn H. Hutchins, former Managing Director of the Thomas H. Lee Company, will be the Chairman of the Enterprise Fund. In addition to Mr. Hutchins, the Fund's Board of Directors will include William B. Bader, President of the Eurasia Foundation; Robert Cotten, International Counsel at Hughes Aircraft Company; Paula J. Dobriansky, Advisor at the law firm of Hunton & Williams; Dennis Johnson, President and CEO of St. Paul Bank for Cooperatives; Jaroslawa Zelinsky Johnson, Partner of Altheimer & Gray; Paul A. Laudicina, Vice President of A.T. Kearney; and Jeffrey C. Neal, Vice Chairman of Investment Banking at Merrill Lynch. Subsequently, four additional members were elected to the Board of Directors. These include Patrick H. Arbor, Chairman of the Chicago Board of Trade, Ronald W. Burkle, Managing Partner of The Yucaipa Companies, Martin S. Davis, President of Wellspring Associates, Inc., and Charles S. Johnson, Executive Vice President of Pioneer Hi-Bred International, Inc.

# *Western NIS Enterprise Fund*

*Belarus Moldova Ukraine*

885 THIRD AVENUE
SUITE 1000
NEW YORK, NEW YORK 10022-4802
TELEPHONE (212) 906-1215
FACSIMILE (212) 751-4864

## HOW TO WORK WITH THE WESTERN NIS ENTERPRISE FUND

### Introduction

On July 21, 1994, the President of the United States of America announced the formal creation of the Western New Independent States (NIS) Enterprise Fund. The Fund will promote private sector development in Belarus, Moldova, and Ukraine.

The United States, through the U.S. Agency for International Development, plans to capitalize the Fund with $150 million in foreign assistance appropriations over the next 3-4 years. The Fund, which will be managed by a Board of Directors comprised of private individuals, will have authority to make equity investments and loans and offer technical assistance to promote new private companies and entrepreneurs in the Western NIS, with special emphasis on the promotion of small and medium-sized enterprises. The Fund will be encouraged to use its U.S. Government funding to attract other resources for private sector development in the three states.

### Eligibility

The Fund will focus on small and medium-sized private and privatizing firms, which may include firms with as many as 2,500 workers, although it is expected that most loans and investments will be aimed at firms that are considerably smaller than this threshold.

The Fund's primary focus is on the development of economically viable private enterprises. The Fund will actively seek corporate and financial partners from the U.S., Europe, and elsewhere.

**Application Process**

One of the primary means by which the Fund will identify potential investments is through proposals received directly from firms and entrepreneurs. The Fund has designed a standard application process that will minimize the time required on the part of applicant and will allow the Fund to determine in an efficient manner whether a proposal is of interest on an initial basis. The Fund will be very selective in choosing the projects it will finance and will invest only in firms it expects to be economically viable. Fund decisions will be final, and it will not reconsider applications that have been declined. The Fund's management and its directors have exclusive authority over investment decisions.

If after the initial review of the proposal a project seems promising, the Fund will appoint a team to evaluate it rigorously. The process will entail extensive interviews with management and on-site visits to the company. Project sponsors should expect a proposal to undergo several rounds of analysis, negotiation and structuring.

Once the team has completed its evaluation, it will submit its recommendations to senior management. If the project is approved, the Fund will draft necessary documentation. Some projects may require approval of the Fund's Board of Directors.

Following approval, the Fund will monitor the investment closely. The Fund will consult frequently with management, send field missions to visit the enterprise, and will require periodic financial and other reports on developments that might materially affect the enterprise. Project sponsors should bear in mind that a proposal may be declined at any stage in the review process until closing. Sponsors will be informed in writing whether a proposal has been accepted or declined.

**Presenting Proposals to the Fund**

Proposals may be submitted to any of the Fund's offices. The initial submission should consist of an approximately ten page "Project Description" that will enable the Fund to assess the attractiveness of the proposal. The description can be in Belorussian, Moldovan, or Ukrainian, although English or Russian are preferred. Each proposal should cover the following:

- A description of the company including its legal status and ownership structure.
- Qualifications and experience of the key management of the company.
- A detailed description of the product, potential market, list of major customers, export and domestic markets, the method of distribution, and the factors that determine market acceptance.
- A detailed description of the manufacturing process, including plant and equipment.
- Important suppliers and main raw materials used.
- Competitive strengths and weakness of the company.
- Estimate of financial needs and the intended use of the funds to be invested. In the case of existing firms, the most recent financial statements should be appended.
- A suggested financial structure, indicating the expected need for equity and/or debt financing.
- The names and address of joint venture partners, if any.
- Financial projections and the key assumptions underlying the projections, with an explanation of how these were derived.
- A discussion of relevant environmental, legal, and regulatory issues.

## *Western NIS Enterprise Fund*

The Fund will respond to the initial submission as quickly as possible, indicating whether the Fund is interested in pursuing the project.

### Contacting the Fund

Project descriptions and inquiries may be directed to the Fund's headquarters in New York or our branch office in Kiev, Ukraine at the following addresses and telephone numbers:

Western NIS Enterprise Fund
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1235
Facsimile: (212) 751-4864

Western NIS Enterprise Fund
#7 Kudriavsky Uzviz, 2nd Floor
254053 Kiev, Ukraine
Telephone: 7 (044) 4 16-98-41
Facsimile: 7 (044) 4 17-14-19

We plan to open branch offices in Minsk, Belarus and Chisinau, Moldova in 1995.





JAN 23 '95 16:56 FR LATHAM & WATKINS 212 906 1219 TO 7505147 P.06/06

**Defense Enterprise Fund**

Alexander V. Pavlenko
Deputy Chairman
JSC Meridian
Ivana Lepse Boulevard, 8
Kiev, 252124 Ukraine

December 11, 1996

Alan C. Frederickson, Sr.
Die Casters International Inc.
One Spruce Terrace
Wayne, New Jersey 07470 USA

Gentlemen:

We are in receipt of your business plan and other related information describing your joint venture's plans to convert the Ukrainian company JSC Meridian from a former military productions factory to a commercial die casting operation. We would like to thank you for your interest in the Newly Independent States' defense conversion process and for presenting this investment opportunity to us.

The Defense Enterprise Fund would like to inform you that based on a comparison of the material you have presented to us, and from our recent discussions with you, that this project meets all of our current minimum investment criteria and has been selected to advance to the next phase of our due diligence process.

The next step in our due diligence review will be to test your business plan in more detail, analyzing both the qualitative and quantitative information provided, ensuring that the project meets our investment goals. This process will involve analyzing the: management team, marketing plan, technical capabilities, financial forecasts, and the deal structure. To assist in this process, the project should identify a Western strategic partner as quickly as possible.

The normal duration of our due diligence review is two to four months. Pending the satisfactory completion of this due diligence review, the DEF management team would submit the project to the DEF Board of Directors for their final approval, at which time the investment could be funded.

We are pleased about the prospects of working with you, and hope to meet with you soon.

Yours sincerely,

John Nowell
President and Chief Executive Officer

6630 West Broad Street
Suite 100
Richmond, Virginia 23230-1702

Telephone (804) 673-6230
Facsimile (804) 281-0708

TOTAL P.01

**Defense Enterprise Fund**

May 12, 1997

Alan C. Frederickson, Sr.
Die Casters International Inc.
One Spruce Terrace
Wayne, New Jersey 07470 USA

Mr. Frederickson:

The Defense Enterprise Fund (DEF) is in receipt of your letter dated April 24, 1997, and would like to clarify some of the incorrect assertions and assumptions that you have made with regard to Die Casters International's (DCI) request for investment funds from our venture capital company.

First, we do recognize the efforts you have expended in supporting your request to us for funding, and we thank you for your time and assistance. Your support for the project, and your commitment to its success, have never been in doubt at the DEF. We also would like to thank you for taking the time to allow our due diligence team, including Mr. Matthew Maly from our Moscow office, and the die casting expert Mr. Patrick Ferro, to review your technical plans and capabilities during his recent visit to the Ukraine.

However, we must inform you that Mr. Ferro and his employer, Failure Analysis Associates (FaAA), have not submitted their final report on their review of your technical capabilities to us at the current time. What has been provided to date is in two parts, a draft report and a set of additional comments. In its present form, it is sufficient for our needs, but not suitable for public distribution. FaAA has notified us that we should expect their final report to be issued by the end of this week. It is our policy not to release such information, since it reflects our methodology and as such is sensitive and proprietary. The DEF would also like to inform you that since we are a private venture capital firm, investment documents are not available through the Freedom of Information Act.

The important issue concerning both of us is the status of our investment in your project. As you have noted, Mr. Richard Nordin has previously informed you of the significant problems that he had with the viability of your proposed investment. In addition, both Rich and Mr. Maly reviewed the DEF's concerns with Ms. Passer back in March. As you have asked for these issues to be put in writing, I will review our concerns with the project once again.

**<u>Rate of Return Not Commensurate with Risk</u>**: Our primary concern with this project revolves around the fact that your anticipated rate of return to investors does not adequately compensate for the significant risks contained within the investment. From our analysis, it does not appear that

the Die Casters Meridian (DCM) project has the ability to generate returns large enough to offset the following risks:

- **Implementation Risk** (No current die casting production; untrained workforce; start-up risks)
- **Production Risk** (Production capabilities are uncertain, no test product has been produced)
- **Market Risk** (Lack of orders; higher transportation costs due to distance from market)
- **Technical Risk** (No planned ingot production eliminates a natural hedge for die casting companies)
- **Strategic Risk** (No Western partner with significant monetary investment in the deal; DCI principals have only sweat equity in deal)
- **Project Risk** (Privatization situation of Meridian is unclear; plan is not arranged to reduce risks by incremental monetary investments based on meeting specific milestones)
- **Management Risk** (Ukrainian partners have no experience managing a die casting operation; Western partner lacks identified candidates for floor level casting foremen and foundrypersons)
- **Financial Risk** (probability of additional capital being required is high, as start-up costs grow due to higher than expected costs, and slower receipt of orders than expected)

All of these issues boil down to two major concerns: (1) That in our best judgment, the business as proposed is not well-positioned for success, and would likely struggle to achieve profitable operations, and (2) That the capital structure of the firm is fundamentally flawed, and would not produce the level of return competitive with similar opportunities the DEF is currently funding.

Lastly, to correct some misstatements of your perception of the purpose of the DEF and our interest in your project. The DEF does not have the requirement in its mandate to help Americans build their export capabilities to position American industry in a lead position for when the NIS markets finally develop. Our primary objective is to successfully convert former military production facilities in the former C.I.S. If there is any improvement in the economy of the U.S., or increase in American jobs as a result, that is simply an added bonus to our work.

In constructing the DEF's portfolio of 12 to 15 carefully-chosen investments, it is physically impossible for the DEF investment staff to service the desires of the nearly 900 applicants for funding that have contacted us. The DEF reserves the right to meet with applicants at times and places most conducive to the achievement of DEF's investment mandate. As a venture capital fund manager, our sole duty is to the protection of the interests of our investor. For this reason, among others, DEF decided to not join you at the meeting with OPIC representatives in

Washington D.C.. We felt that our presence would be inappropriate, given that our investment decision had not been made at the time. Both yourself and Ambassador Upston stated, at the time, that you understood our position. In your recent communications, you indicate that this is evidence of either incompetence, indifference, or betrayal (it is unclear from the text). Our view is that it, and the numerous other meetings with others that we have declined to attend, are reflections of our dedication to our fiduciary duty to our investor by focusing on those activities that most effectively fulfill the investment mandate we have been given.

The DEF has tried, on many different occasions, to make you understand the concept of the "Letter of Interest" that we forwarded to you on December 11, 1996. It states simply that your project has met the minimum requirements of a submittal to the DEF, and that we are investigating the project further. (The minimum requirements of a submittal at that time included: Verifiable defense conversion; location in one of the four former C.I.S. republics we operate in; anticipated returns of 30% or more; and a Western partner with a significant commitment to the project.) DCM met most of these requirements, except for the last one mentioned, and this requirement for a Western partner is clearly stated in our Letter of Interest to you. The DEF has not provided written confirmation that DCM is no longer a project that we are considering, because we have been hoping that the issues that both Mr. Nordin and Mr. Maly communicated to you would be corrected, and that the project would become more attractive as an investment.

In conclusion, the DEF does feel that DCM is a "real project", capable of achieving sustainable operations, only after facing significant risks and early hardships. One of the major strengths of the project is the experience of its top management team, we believe. However, the significant start-up risks the venture faces, combined with the relatively low rate of return, make the investment uncompetitive with other current opportunities the DEF is considering, and therefore we are unable to make a commitment to invest funds at this time. If you would like to approach us further into the start-up cycle, when some of the risks identified above have been disposed of, the DEF would welcome considering the project again. In the meantime, we wish you success in your pursuit of this venture, and we would be happy to work with you to identify other sources of financing for your project. If you would like this assistance, please contact Michael Rhodes at (804) 673-6225.

Yours sincerely,

Thomas Maletta
Executive Vice President and Chief Financial Officer

Defense
Enterprise
Fund

Received 5 Feb (return from Kyiv)

29 January, 1998

Mr. Alan C. Fredrickson, Sr., CEO
Die Casters International, Inc.
One Spruce Terrace
Wayne, NJ 07470, USA

Dear Mr. Fredrickson:

I am writing to inform you that, after careful and detailed review and analysis, the Defense Enterprise Fund will decline your offer to invest in the Die Casters Burevestnik Project in Ukraine. As presented, the characteristics of your project are not as attractive as those of other projects we are currently considering.

The primary reason that we are declining the proposal is the financial performance you predict for the project. This forecast shows the project to be very sensitive to fluctuations in cash flows and unattractive from a rate of return standpoint (the DEF would need to sell its share at an unrealistically high P/E multiple to meet its hurdle rate).

We appreciate the effort that you have invested in this proposal – especially in light of the fact you have, essentially, submitted the project twice. The second version was improved over the first, but the low level of return projected coupled with the financial/cash flow sensitivity of the project result in our decision not to invest.

We appreciate your bringing this opportunity to us for our review. We regret not being able to invest in the project, and wish you the utmost success in your future endeavors.

Sincerely,

James F. Walsh
Vice President & Chief Financial Officer
The Defense Enterprise Fund

6630 West Broad Street
Suite 100
Richmond, Virginia 23230-1702

Telephone (804) 673-6230
Facsimile (804) 281-0708



M

08/25/98 11:46 ☎202 736 7060 NIS ASSISTANCE ⊘002

cc: Kim

Defense
Enterprise
Fund

John D. Nowell
*President*
*Chief Executive Officer*

April 13, 1998

The Honorable Richard L. Morningstar
Special Advisor to the President and Secretary of State
on Assistance to the NIS
Room 4419, Department of State
Washington, DC 20520

Dear Ambassador Morningstar:

Our understanding is that Mr. Alan Fredrickson seeks to understand the reasons for which the Defense Enterprise Fund declined to invest in Die Casters International. This letter summarizes the key factors which led to the Fund's decision.

The Defense Enterprise Fund declined to invest in DCI for four reasons:

- In our opinion, it was not a viable business as proposed
- Based on DEF's onsite visit and DCI's proposals for management development, DEF did not believe that the management team was up to the task of building that business in Ukraine
- The western partners were neither in that business, nor did they propose to assume any tangible risk in the deal
- In our view, the rate of return was unacceptably low, while the financial risk was unacceptably high.

In each of these critical areas, DCI neither met DEF's threshold criteria for investing, nor was it competitive with other deals that DEF was evaluating, including several others DEF did not invest in. I will address these four points above briefly and directly.

However, before doing so, I must point out that Mr. Fredrickson has the mistaken impression, which we have tried several times to dispel, that his project was in competition with another project, called Liform (a.k.a. Dosvid). <u>We consider each and every project on a stand-alone basis.</u> A decision to invest in one project has neither a positive nor a negative impact on our decision to invest in another project, irrespective of any real or perceived similarity between the two projects. In fact, had both projects met our minimum criteria and had they both been attractive investment opportunities, we would have invested in both. However, Mr. Fredrickson's project did not meet those minimum criteria and it was not an attractive investment opportunity from our viewpoint. Therefore we decided not to invest.

The reason we believe the business is not viable as proposed relates to two key issues. The first is the lack of a market for DCI's proposed product. In his business plan, Mr. Fredrickson points to a market in decline or "shaking out". This is not attractive to the investor, as there is likely to be downward pressure on prices and greatly increased competition. The second is that Mr. Fredrickson also failed to demonstrate any tangible evidence that there were customers willing to purchase DCI's production. These facts place the projected revenue stream in serious doubt.

03713

6630 West Broad Street
Suite 100
Richmond, Virginia 23230-1702

Telephone (804) 673-6230
Facsimile (804) 281-0708

P.03/08

N

AUG-25-1998 18:42

We also believe that DCI's management is not up to the task of building a business in Ukraine, as none of the principals from the Ukrainian side had significant private sector experience, while none of the employed managers from the U.S. side offered any casting experience. We were further concerned that several "managers" presented to DEF as crucial to the success of the project were merely consultants – not under the employ of the venture. In other words, key expertise needed to make the venture viable was not adequately connected to the business. It was also not clear to us that DCI's U.S.-based management would be spending the amount of time "in-country" that we believe is essential to the success of such a venture.

In the proposal presented to the Fund, DCI was not risking any of its own capital. This is a crucial criteria in the Fund's decision process, because undertaking such a risk greatly enhances the commitment of the Western partners to the deal – including – as often happens in a new venture, when there are difficult problems to overcome. DCI was offering to contribute funds they allegedly received through a grant from the U.S. government. This, in our judgment, does not entail the assumption of risk.

Finally, our analysis of the financial projections leads us to the conclusion that the business will not be sustainable (meaning it does not generate significant positive cash flow) until the fifth year of the venture, and only then if ideal conditions are met. We think it likely that the capital requirements will be greater than proposed, and the revenue stream less than projected (especially in light of the fact that there are no ready customers). This leads to an elevated financial risk for the project, and a greatly reduced likelihood that the business will *survive* five years, let alone generate a cumulative rate of return that is commensurate with the risk of the project.

I hope that this letter has served to clarify the relevant issues to you with respect to the Defense Enterprise Fund/Dic Casters International relationship. We had concrete reasons for declining the request to invest in Mr. Fredrickson's project. They were related to issues of implementation risk, financial risk, management risk, and market risk. We gave him several months to address these issues in a manner satisfactory to us, and he did not do so. We spent a great deal of time and resources analyzing the project and meeting with Mr. Fredrickson and several of his associates. Unfortunately our analysis determined that the project was not attractive enough either to warrant additional review nor the possibility of DEF investment. We were pleased to have the opportunity to evaluate Mr. Fredrickson's proposal, and we wish him the best of luck in the future.

Sincerely,

03714

OPIC Overseas Private Investment Corporation

1100 New York Avenue, N.W.
Washington, D.C. 20527-0001
(202) 336-8400
FAX (202) 408-9859

January 14, 1998

Mr. Alan C. Frederickson
Die Casters International Inc.
One Spruce Terrace
Wayne, New Jersey 07470

RE: The Die Casters Buresvestnik Project in Ukraine

Dear Mr. Frederickson:

Thank you for the updated business plan for the Die Casters Buresvestnik project in Ukraine. We appreciate your continued interest in OPIC's loan program and the additional information regarding the project. Unfortunately, however, the project does not appear to meet the basic eligibility criteria for OPIC financing. This decision is based, in part, on the following:

1. The sponsor will not have any of its own cash equity in the project. Under OPIC's eligibility criteria, we require that the U.S. project sponsor assume a meaningful share of the risk in a project, generally through the cash purchase of at least 25 percent of the equity in a project. Your business plan indicates that most of the U.S. sponsor (Die Casters International Inc.) investment will be from a grant, rather than having its own cash equity at stake. This does not meet the requirement.

2. The sponsor does not have a proven track record in the line of business. OPIC requires that the project sponsor demonstrate a successful track record in a line of business similar to that of the proposed project. OPIC requires such documentation to be presented in the form of at least three years of audited financial statements, including balance sheets, income statements, and cash flow statements. Since neither Die Casters International nor its principal owners have operated a business in this industry, a track record can not be demonstrated and the criterion is not met.

3. Insufficient marketing and feasibility study. OPIC must be certain that a viable market exists for the projects that it supports. Further, OPIC must also be certain that a project will use prudent marketing concepts to capture an identified market. Your business plan only briefly addresses these issues. OPIC requires that a comprehensive market/feasibility study be performed by a qualified independent entity, which indicates that a strong market exists and can be met by the project.

4. Insufficient resources for project completion guaranty. OPIC requires the U.S. sponsor to guarantee repayment of the loan or provide a satisfactory project completion agreement. In the case of Die Casters International, which appears to have little or no cash equity, this

agreement should be a joint and several guaranty signed by the U.S. owners of the project. The agreement would guaranty the project company's obligations under the loan agreement, until the project reaches "completion." This obligates the owners to provide any additional capital necessary to complete a project and to have adequate working capital when certain operating tests are met, or to repay the OPIC loan in full if the sponsors abandon the project. It is our understanding from our discussions that the owners do not have the wherewithal to provide this guaranty. Nonetheless, in order to determine if they have sufficient resources to guarantee the loan or their obligations under the project completion agreement, we need personal financial statements from each of the U.S. owners.

Based on the points discussed above, the project does not qualify for OPIC financing at this time. We are returning the copy of your business plan. Upon successfully addressing the above issues -- and other criteria and policies outlined in detail in the OPIC Program Handbook, Finance Application, and supporting material, which you have already received -- we would be pleased to reconsider the loan request.

Again, we thank you for your interest in OPIC programs.

Sincerely yours,

James E. Gale

James E. Gale
Regional Manager of Business Development
Europe, Russia, and New Independent States

Enclosure